## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

AF HOLDINGS, LLC        :
                          :

        Plaintiff,        :

                          :

v.                          :   Civil Action No.
                          :   2:12-cv-00262-WCO

RAJESH PATEL,        :

                          :

        Defendant.     :

### Defendant's Motion for Sanctions

COMES NOW, Rajesh Patel, by and through counsel, filing this **Defendant's Motion for Sanctions** based on the grounds set forth in the attached **Memorandum of Law**.

Defendant requests the following relief:

(a) A hearing as to whether bad faith exists in this case on the part of Plaintiff and Plaintiff's counsel;

(b) The Court issue an order to show cause finding that personal jurisdiction exists over Prenda, Gibbs, Steele, Lutz, and which requires these persons or entities to appear at the hearing regarding bad faith sanctions;

(c) The Court issue an order requiring Plaintiff to disclose the total amount of settlements received in Georgia cases connected with an assignment agreement signed by one "Alan Cooper," and require Plaintiff to refund

1

those amounts to the respective defendants as well as treble the settlement amount to the Court;

(d) Any other relief that the Court deems just and appropriate.

Dated April 6, 2013:

Respectfully Submitted:

_____/s/ Blair Chintella_____
Blair Chintella
GA Bar No. 510109
806 Meadowlane Dr.
Douglas, GA 31533
(404) 579-9668
bchintel1@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

AF HOLDINGS, LLC    :
          :
    Plaintiff,   :
          :
v.          : Civil Action No.
          : 2:12-cv-00262-WCO
RAJESH PATEL,    :
          :
    Defendant.  :

### Memorandum of Law

### Summary of Facts

> *Q. Do you have an obligation to make sure that your client, AF Holdings, receives settlement proceeds, don't you have an ethical obligation as an attorney?*
>
> *A.  Are you asking me as an attorney?*
>
> *Q.  I'm asking you as an attorney for Alpha Law Firm.*
>
> *A.  Well, I can say as an attorney I have no concern over how the proceeds are handled.*
>
> *--- Hansmeier Deposition, Page 101 <u>Exhibit A</u> .*

Even though this case was recently dismissed *with prejudice*, sanctions are appropriate under the court's inherent power due to Plaintiff's egregious behavior (and other individuals associated with Plaintiff), including filing the case for an improper purpose and without a reasonable investigation into the facts,

3

intentionally hiding the parties with a pecuniary interest, and filing at least one potentially forged document with the Court. This case is merely one example of many virtually identical cases filed across the country over the last few years, the purpose of which have been to pressure people into settling by threatening them with public accusations of downloading pornography.

Overall, bad faith sanctions under the court's inherent power (including attorneys' fees) are warranted not only to rectify the harm done to Defendant, but also to protect the integrity of the judicial system.

## I.    Introduction to the Key Players

The key players in this case are John Steele ("Steele"), Paul Hansmeier ("Hansmeier"), Paul Duffy ("Duffy"), Brett Gibbs ("Gibbs"), and Mark Lutz ("Lutz"). Steele is an attorney licensed in Illinois who *purports* to work for one of "Chicagoland's premier family law and consumer bankruptcy law firms."[1] Hansmeier is an attorney licensed in Minnesota who, according to his deposition, first met Steele in law school. Hans.144. Duffy is an attorney who Steele says he also met in law school. *Sunlust Pictures, LLC v. Tuan Nguyen*, 8:12-cv-01685, ("Sunlust Case") ECF # 40-5. Gibbs is an attorney licensed in California who has filed numerous cases has acted as a proxy for Steele and Hansmeier. Lutz is *not* an

---

[1] *See* www.steele-law.com (last accessed 3/28/2013).

4

attorney and his role is somewhat convoluted.  Hans.141.  Lutz at times testifies that he works as a paralegal for the law firms owned by Steele, Hansmeier, and/or Duffy.  However, he also appears to be a "corporate representative" or CEO for one or more of the firms' clients (while at the same time being listed agent for Prenda).  *See generally* Exhibit A.

## II.  Ramping up National Litigation: A Shakedown

Despite the family-oriented veneer of his website, Steele began filing cases accusing people of downloading pornography on September 2, 2010.  *See e.g. Hard Drive Prod's, Inc. v. Does 1-100*, N.D. Ill. No. 1:10-cv-0506.[2]  One week later, Hansmeier created a company called Steel Hansmeier, PLLC ("S&H") and Steele began filing cases through S&H.  *See e.g. MCGIP, LLC v. Does 1-1,164*; N.D Ill., No. 1:10-cv-07675 (12/2/2012).  Duffy was eventually substituted into the cases filed by Steele.  *See e.g. Hard Drive Productions, Inc. v. Does 1-44*; Case No. 1:11-cv-02828, (12/8/11), ECF 32.  As early as March 28, 2011, Gibbs began filing cases in California through S&H, s*ee e.g. MCGIP, LLC v. Does 1-18*, N.D. Ca., Case No. 3:11-cv-01495, and Duffy began filing cases in the District of Columbia and elsewhere.  *See e.g. Hard Drive Productions, Inc. v. Does 1-1,495*; D.D.C., Cast No. 1:11-cv-01741 (9/27/11).

---

[2] Five identical cases were filed on the same day on behalf of different companies.

On November 7, 2011, Duffy created Prenda Law, Inc. ("Prenda"), Exhibit B, and he and Gibbs began filing cases through Prenda. S*ee e.g. Hard Drive Productions, Inc. v. John Doe*; N.D. Ill., Case No. 1:11-cv-08333 (11/21/11) (Duffy); *AF Holdings, LLC v. John Doe*; Case No. 5:11-cv-05633, ECF 1 (N.D. Ca.) (Gibbs).

Numerous attorneys across the country have either filed cases through S&H or Prenda, or through various law firms on behalf of S&H/Prenda clients. Michael Dugas ("Dugas") has filed many cases in Minnesota through Alpha Law Firm, LLC ("Alpha"), *see e.g. AF Holdings, LLC v. John Doe*, D. Mn., Case No. 0:12-cv-01445 (6/15/12), which happens to be another company created by Hansmeier. Exhibit B.[3]  Another major filer was Joseph Perea ("Perea") who filed cases in Florida. *See e.g. AF Holdings, LLC v. John Doe*, S.D. Fl., Case No. 1:12-cv-20320 (2/6/12).  In Georgia, current counsel for Plaintiff has been the primary filer of these cases:

| AF Holdings, LLC | 5:12-cv-00429; 1:12-cv-03482; 1:12-cv-03542; 2-12-cv-00262; 1-12-cv-00263. |
| --- | --- |

---

[3] Incidentally, when asked to explain this role in these cases and his connection with Dugas in particular, Hansmeier testified that, "I don't recall hiring him and I don't recall reviewing his resume." Hans.Depo.136.  Hansmeier made this statement despite appearing with Dugas (and Steele) just a few weeks prior in a state-court case: *Guava, LLC v. Spencer Merkel*; State of Minnesota, County of Hennepin, File No. 27-cv-1220976 (1/25/2013). A true and correct copy of a January 25, 2013 transcript is attached as Exhibit N.

| Quad Int'l, Inc. | 1:12-cv-03645; 1-12-cv-03646; 1-12-cv-03648; 1-12-cv-03645; 1-12-cv-03647. |
|---|---|
| First Time Videos, LLC | 4:12-cv-00281; 1:12-cv-03665; 1-12-cv-03772; 1-12-cv-03773; 2-12-cv-00259; 1-12-cv-03839. |
| Sunlust Pictures, LLC | 1-12-cv-00166; 3-12-cv-00143; 1-12-cv-00144; 1-12-cv-03838 |
| Openmind Solutions, Inc. | 1-12-cv-03862 |
| Guava, LLC | 5-12-cv-00398 |

In response to the massive amount of cases being filed, on February 2, 2012, in response to a Court order, Gibbs was forced to admit that although hundreds of cases had been filed in California (involving thousands of defendants) not a single Defendant had been served.  *See AF Holdings, LLC v. Does 1-135*; N.D. Ca., Case No. 5:11-cv-03336, ECF No. 43-1.  After this damaging admission, a relatively small number of defendants have been served.  However, of the approximately 740 cases filed thus far, Exhibit L, **the undersigned is not aware of a single one that has gone to trial.**  This litigation model was so successful that by October 15, 2012 Steele publicly claimed to have made millions of dollars.[4]

## III.   Faulty Reports, Conflicts, and Potential Forgery

---

[4] *See* "How Porn Copyright Lawyer John Steele Has made A 'Few Million Dollars' Pursuing (Sometimes Innocent) 'Porn Pirates,'" http://www.forbes.com/sites/kashmirhill/2012/10/15/how-porn-copyright-lawyer-john-steele-justifies-his-pursuit-of-sometimes-innocent-porn-pirates/ (last accessed 4/1/2013).

These cases typically rely on technical reports prepared by Hansmeier's **brother**, Peter Hansmeier ("Peter").  *See e.g. Pacific Century International, Ltd. v. does 1-31*, E.D. Ill., Case No. 1-11-cv-09064, ECF 5-2 (12/22/11).  Initially, Peter worked under a company called Media Copyright Group, LLC ("MCG"), another company created by Hansmeier.  Exhibit B.  More recently, he has been working through 6881 Forensics, LLC ("6881").  *See e.g. AF Holdings, LLC v. Does 1-1,058*; D.D.C., Case No. 1-12-cv-00048, ECF 4-1.

These reports are used to support motions seeking to obtain the name, address, and phone numbers for *thousands* of Internet subscribers, after which, subscribers are contacted via telephone or letter (or both) and are pressured to settle in order to avoid litigation involving pornography.[5]  When questioned about his brother's qualifications, Hansmeier testified that he did not know what type of degree his brother had or if it was computer-related: "There's only one way that I can say that I don't know what exact degree my brother has."  Exhibit A, page 173.

One of the companies filing these cases has been MCGIP, LLC ("MCGIP"), another company created by Hansmeier.  Exhibit B.  Both MCG and MCGIP share the same address as Hansmeier's law firm Alpha.  Exhibit B.  There is also some evidence that Hansmeier may have forged his brother's signature:

---

[5] Defendant asks the Court to take judicial notice of one such letter filed as the California consolidated case discussed below, attached hereto as XXXX.

8

| *Lightspeed Media Corporation v. Does 1-100*; N.D. Ill, Case No. 1-10-cv-05606, ECF 6-1 (9/2/2010). | *Hard Drive Productions, Inc. v. Does 1-14*; N.D. Ill, Case No. 1-11-cv-02981, ECF 5-2, (5/5/11). |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on September 2, 1010, in Minneapolis, MN.<br><br>_____<br>Paul Hansmeier | Executed on May 5, 2011, in Minneapolis, MN.<br><br><br>_____<br>Peter Hansmeier |

When asked to explain the similarity of the signatures, Hansmeier testified that he could not identify his brother's signature because he could not, "recall having seen him sign anything," Exhibit A, page 236, and he concluded that, "There's a big difference between filing a declaration that you verify that it's signed and carefully analyzing the signature." Exhibit A, page 22.

## IV.   Ethics and Unauthorized Practice of Law

In late 2011, attorney Graham Syfert ("Syfert") filed UPL grievances against Steele and Perea in Florida. Attached hereto as Exhibit K are true and correct copies of their responses. On page six of Steele's response, he states that Prenda is composed of "Attorney Joe Perea and Paralegal Mark Lutz."[6] He also stated that he is a "client of Prenda [and] maintains an ownership interest in several of Prenda's larger clients." *Id.* Perea's response contains a similar statement: "Mr.

---

[6] No mention of Duffy.

Steele has no role as an attorney with Prenda," but "two of his companies are clients of Prenda Law and I often have to let him know the status of various matters related to his companies." Attached to Steele's response is an affidavit by Lutz stating that he was "formally"[7] a paralegal for S&H but currently works for Prenda. ¶ 1. He then proceeds to describe how he negotiates settlements (ironic considering the context in which the affidavit is used). *See* ¶ 10, ("I informed Mr. Syfert that I could not settle the matter by simply dropping his client from the litigation").

## V.     The Florida Sunlust Case

On November 27, 2012, a hearing was held regarding one of Prenda's clients in the Sunlust Case. A true and correct copy of the transcript is attached as Exhibit C. Upon learning of the hearing, Duffy sent a letter to the Court stating that Prenda did not represent Sunlust and that he [Duffy] could not appear as ordered because of eye surgery. A true and correct copy of the letter is attached as Exhibit E.

Lutz did appear at the hearing claiming to be a "corporate representative" for Sunlust, but was soon dismissed because he could not identify a single owner or

---

[7] An apparent "Freudian slip." Lutz probably meant "formerly."

officer of the company.  Sunlust.14-15.[8]  Lutz also testified that he does *not* work

for Prenda, does *not* "personally" know Duffy, and has never spoken with him.

Pages 16-17.  Lutz made these statements despite serving as Prenda's registered

agent in Florida since November 9, 2011.  See Exhibit E.

The withdrawing attorney testified that he was hired by Gibbs who he

understood to be the "principal" of Prenda, and that he was promised a

contingency fee of seventy-five percent.  Pages 4, 6, 7.

Ultimately, the Court dismissed the case for "failure to present a lawful

agent" and "attempted fraud on the Court" and invited a sanctions motion.  Exhibit

B, page 20.  In response to a sanctions motion, Gibbs filed an affidavit explaining

that part of his job for Prenda is to "retain counsel to bring lawsuits" and

"occasionally" prepare documents.  Sunlust Case, ECF 40-3, ¶ 8.  He also

explained that complaints are "prepared by Prenda Law and filed in each case" and

that Prenda promises to ". . . help provide any support he needed to . . . litigate

these cases."  ECF 40-3, ¶¶ 12, 20, 29.  In the Sunlust case in particular, Gibbs

contacted attorneys who responded to advertisements placed on Craigslist by

---

[8] Steele subsequently filed a memorandum arguing that Lutz's lack of knowledge was the Court's fault because it used the term "representative" in its order instead of specifically requesting an "officer or principal."  ECF 40, page 13-14.

Prenda seeking local counsel.  Sunlust.10, 18, 27.  The Court has yet to rule regarding sanctions.

Steele actually appeared at the hearing and answered some questions from the Court, although he was never swore in.  However, he subsequently submitted an affidavit in response to a sanctions motion stating that his legal residence was Las Vegas, Nevada.  Sunlust.ECF No. 40-5, ¶ 2 (12/20/12).  This is significant because three months later Steele would file a declaration stating that he was not subject to jurisdiction in California because his legal residence was Florida.  California Action, ECF No. 83, ¶ 3 (3/8/13).  And both of these affidavits state that he is "of counsel" to Prenda, which conflicts with his response to the UPL Complaint where he states that he is solely a client of Prenda and Perea's statement that two of Steele's companies are clients of Prenda (1/26/12).

## VI.   Deposition of Hansmeier: A Primer in Obfuscation[9]

> *I don't know what the definition of a natural person is under the law.  --- Hansmeier Deposition, Page 79-80.*

On February 19, 2013, Hansmeier was deposed as a Rule 30(b)(6) designee in *AF Holdings, LLC v. Joe Navasca*; N.D. Ca.; Case No. 3:12-cv-02396 (page cites are to Exhibit A).

### A.   AF Holdings and Mark Lutz

---

[9] *See* Exhibit P.

According to Hansmeier, Plaintiff was created in May of 2011 by Aisha Sargeant who is located in Nevis or the Federation of St. Kitts, and Lutz has been the its sole employee/manager/CEO since its creation.  Pages 21-22, 28, 32.  Lutz does not receive compensation from Plaintiff for his work.  Pages 24, 27, 29-35.  Some of Lutz's responsibilities include making litigation decisions and negotiating copyright assignments (even though he is not an attorney).  Pages 13, 141, 151, 208.  Lutz was appointed to this position by Aisha Sargeant.[10]  Page 142.

Hansmeier also testified that Plaintiff has always been owned by a trust, but he does not know the name of the trust, its beneficiaries or where it is organized. Exhibit A, pages 9, 37, 37, 39, 40, 46, 54.  However, he did know that the trust was also created by Aisha Sargeant, at the direction of Lutz..  Page 41.  Plaintiff has never filed taxes in Nevis or the United States, it does not have an accountant, and Lutz maintains all financial records, which consist of *several EXCEL spreadsheets*.  Pages 196-99.

There is conflicting testimony as to what happens with the settlement monies.  Hansmeier testifies that they are generally put into the trust account for the lawyer handling the case.  Pages 11-12, 81-82.  However, he then testifies that he is not "aware of any attorney who directly" received settlement monies.  Exhibit

---

[10] As alluded to above, Lutz was apparently still a paralegal for Prenda and a registered agent for Prenda in Florida at the time.

13

A, pages 88, 90-91.  Hansmeier did state unequivocally that settlement money goes into Prenda's trust account for various attorney, including cases filed through his law firm Alpha.  Pages 90, 95, 91-92 ("Beyond that I would be speculating as to whether the money is directly forwarded to Prenda Law or if its first passed through the trust accounts of the counsel in any given jurisdiction.").

The settlement money is supposedly held in lawyer trust accounts to cover "litigation expenses," which includes attorneys' fees.  Page 108.  Hansmeier testified that he does not know how much money there is, but that reimbursement for expenses can be made by contacting a bookkeeper in Las Vegas (who he does not know the last name of).  Pages 99, 108.  Most lawyers are compensated on a contingency fee basis but he does not know the "precise" percentages.  Pages 110-14.  Apparently, Alpha litigated its cases for free.  Page 113.

Lastly, Hansmeier testified that he does not know what role that Lutz played when he worked for S&H.  Page 130.  Hansmeier stated this despite Lutz serving as the registered agent for S&H (a firm created by Hansmeier) in Florida starting on September 23, 2011.  *See* Exhibit H.

### B.    Alan Cooper and Copyright Assignment

According to Hansmeier, an individual named Alan Cooper signed the copyright assignment as an *unpaid* "corporate representative" for Plaintiff.  Pages

14

11, 121.[11]  Lutz purportedly asked Steele to find a "corporate representative" and Steele returned the assignment agreement with the signature of "Alan Cooper." Pages 121-22.  Plaintiff first learned that it might be a forgery when Cooper filed his lawsuit.  Page 122.  Lutz then confronted Steele who stated that the signature was authentic, although Steele would not respond when asked whether Cooper and "Alan Cooper" were the same person.  Pages 122-23, 126-27.  Regarding the copyright assignment, Hansmeier testified that he was not clear on the consideration given for the assignment.  Page 274.

## VII.   Alan Cooper and Potential Forgery

The potential forgery of "Alan Cooooper" was brought to light on January 23, 2013.  *See* ECF #13-1 in the instant case.  On February 7, 2013, Judge Wright in *Ingenuity 13 LLC v. John Doe*; C.D. Ca., Case No. 2:12-cv-08333 ("California Action") issued an order to show cause (ECF 48) why sanctions should not be imposed because of the apparent forgery.  Steele, Hansmeier, Duffy, Lutz, Peter, and failed to appear at the March 11, 2013 hearing.  A true and correct copy of the transcript is attached as Exhibit F.

### A.    Cooper Testimony

---

[11] Hansmeier define what a "corporate representative" is.  The concept arose previously in the Sunlust case…Perhaps it is a Nevis/St.Kitts legal term of art.

Cooper testified at the hearing that around 2006 he began working for Steele as a caretaker for certain real property in exchange for a place to live.  Exhibit F, 21-22 (below page cites are to this exhibit).   He also testified that Steele explained his goal of making $10,000 per day sending out demand letters threatening public humiliation:

> *I don't know exactly how this works.  That he would just*
> *send out a letter stating that if they didn't send a check*
> *for a certain amount, that he would make it public to*
> *these people's family and friends what they were looking*
> *at.*

Pages 24-25.  As part of his scheme, Steele told Cooper to contact him if "anything seemed out of place."  Page 25.  Cooper also testified that nobody asked him to be a representative for AF Holdings and that he did not sign the assignment agreements (Ingenuity 13 & AF Holdings).  Pages 27-28.

## B.     Gibbs's Testimony

According to Gibbs, the "decision makers" for cases field by S&H and Prenda were Hansmeier and Steele (*not* Duffy).  Pages 74, 77.  Along those lines, subpoenas were sent out from the "Chicago and Minnesota offices," Page 104, Steele and Hansmeier determined when to file and dismiss cases ("they essentially were the ones that would initiate cases"), whether to settle, and what settlement amounts were acceptable.  Pages 74, 77-79 ("sometimes they gave me certain

parameters which I could settle the case myself"). Gibbs explained that sometimes letters using his signature were mailed without his permission[12] and that Lutz instructed him to "talk with John and Paul about this." Pages 90, 111-12. Gibbs also testified that he never received the settlement checks because they went to Prenda. Pages 77, 84. Steele and Hansmeier even dictated how documents were created. Pages 79-80 ("I was instructed to fill those documents out like I did.").

Gibbs also testified that Steele and Hansmeier were his primary source of information. For example, Gibbs never spoke with AF Holdings. Page 78 ("All my communications were straight through Paul Hansmeier and John Steele."). He never met Cooper and relied exclusively on their representations that the assignment agreement was not forged. Pages 95-97. Gibbs also testified that an employee of Prenda had access to his CM/ECF and that Hansmeier might have as well. Gibbs.106, 110. Gibbs did confirm, however, that Steele had access (but *not* Duffy). Pages 107, 110.[13]

## VIII.  Pleading the Fifth Amendment

---

[12] <u>See</u> Exhibit O, which Gibbs testified was signed and mailed without his permission, <u>Exhibit F</u>, pages 90, 111.
[13] Steele went as far to admit that he still checks his e-mail address jlsteele@wefightpiracy.com on page five of his response to the UPL complaint. www.wefightpiracy.com is the website for Prenda (which was recently transferred to another company created by Gibbs). *See* <u>Exhibit B.</u>

The Court in the California Action held another hearing on April 2, 2013, and Steele and others *did* attend, but they claimed the Fifth Amendment.  Attached as <u>Exhibit G</u> is a copy of the transcript.

## IX.   Allan Mooney and Anthony Saltmarsh

There are other instances where Steele and others have possibly misappropriated identities and/or forged documents; for example, regarding one Allan Mooney[14] and Anthony Saltmarsh or "Saltmarsh."  A summary of these potential fraudulent filings can be found in the California Action, ECF No. 52, 53, 59.

**Argument and Citation to Authority**

Ordinarily, attorneys' fees are not recoverable in the absence of a statute or contract to that effect.  <u>*Rothenberg v. Sec. Mgmt. Co.,*</u> 736 F.2d 1470, 1471 (11th Cir.1984).  However, attorneys' fees (or other sanctions) can be imposed under a court's "inherent power" when a party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons."  <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45-46 (1991).

Thus, "if a court finds that 'fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the

---

[14] Hansmeier testified that Mooney was a former client of his.  <u>Exhibit A</u>, page 243.

responsible party."  Chambers, 501 U.S. at 45-46.  See e.g. Wachovia Bank v. Tien, 406 Fed.Appx 378 (11th Cir. 2010) (affirming sanctions when, *inter alia*, corporate documents were forged).  Submitting an affidavit for purposes of delay can contribute to a finding of bad faith, nVision Global Technology Solutions, Inc. v. Cardinal Health 5, LLC, 887 F.Supp.2d 1240 (N.D. Ga. 2012).

Sanctions are also warranted when a *meritorious* claim is asserted for the "purpose of harassing an opponent."  See Walker at 1309.  Sanctions under a court's inherent power can be imposed on parties and lawyers alike.  Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911 (11th Cir. 1982).

The document attached as Exhibit B of Plaintiff's Complaint (Assignment) is potentially forged, which implicates a public interest that a party should not obtain a judgment through fraud, misrepresentation, misconduct or fraud upon the Court.  Compania at 951.  See generally Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978) (discussing fraud as a basis for setting aside a judgment).

Plaintiff initiated this action on November 2, 2012 alleging claims of copyright infringement, civil conspiracy, and negligence.  ECF 1.  On November 11, 2012, Plaintiff filed its Corporate Party Disclosure Statement stating that "AF Holdings LLC does not have a parent corporation that owns 10% or more of its stock," and which did not list *any additional persons* as having an interest in the

19

litigation.  ECF 4.  On February 27, 2012, the Clerk entered a default, ECF 11, and on March 4, 13 Defendant moved to set the entry of default.  ECF 13.  Plaintiff voluntarily dismissed this action *with prejudice* on March 18, 2013.  ECF 14.

Like similar cases filed across the country, the complaint in this case lists Gibbs's e-mail address.  ECF. No. 1.  As shown above, Gibbs has essentially acted as a proxy for Steele and Hansmeier.  According to his testimony, he basically follows the orders from Steele and Hansmeier regarding what cases to file, what settlements to negotiate (if any), whether to dismiss a case, and even as to whether documents are authentic.

On or around March 6, 2013, counsel for Plaintiff stated that he was not sure who owned the copyright in question and that he merely receives a "packet" of information to file.  Exhibit J.  This comports with Prenda's business model, especially as shown in the Sunlust case where Gibbs admits that Prenda prepares the complaints in these cases and sends out the subpoenas from its "Chicago and Minnesota" offices.

Like Gibbs in California, counsel for Plaintiff appears to either be merely taking orders from Steele and/or Hansmeier, or at least Gibbs, who acts as a proxy for Steele and Hansmeier.  Attached as Exhibit I are several e-mails between the undersigned and counsel for Plaintiff back in July of 2012.  Since that time,

counsel has apparently not taken any additional action to verify the documents filed with the Court.

**B.      Interested Persons**

Plaintiff intentionally omitted the owner of AF Holdings and sanctions are appropriate.  Attached as <u>Exhibit M</u> is a filing in a California where the owner of Plaintiff is identified as "Salt Marsh."  Moreover, Hansmeier testified that the owner of Plaintiff is an "unidentified beneficiary trust."  Is "Salt Marsh" perhaps the name of the trust?  This is unknown because Hansmeier, despite knowing who formed the trust, testifies that he does not know the name of the trust or where it was created.  What we do know, however, is that Plaintiff lists its owner as "Salt Marsh" in California but fails to list any company as its owner in this case.

Moreover, Steele may have an interest in Plaintiff.  He stated in response to the Florida UPL complaint that he did not work for Prenda, but was merely a client of Prenda and had an interest in companies that are clients of Prenda.  Perea added that Steele owned two companies that were clients of Prenda.  Plaintiff may be one of the companies that Steele has an interest in, in which case he should be listed. Or perhaps Steele has an interest in the "undefined beneficiary trust," which is purportedly the owner of Plaintiff, so Steele stands to benefit.  What we do know is

21

that Steele claims to be a million on or around October 15, 2012 (Forbe's article) long after he claims to *only* appear as "of counsel" on special occasions.

Also, Hansmeier states that attorneys working for Prenda work on a contingency fee basis according to Hansmeier, yet no other party is listed as having an interest in the litigation.

### C.     Forgery

It seems clear that the assignment agreement in this case is forged. Hansmeier, during his deposition to Steele even though Gibbs testified that he and Steele were the people who supervised him and that he was responsible for nationwide litigation.  Moreover, Steele made representations that the assignment agreement was legitimate and claims to have the original, but has yet refused to testify in the California Action, instead claiming the Fifth Amendment.

The only Cooper to make an appearance in these cases is Steele's former caretaker, who testified that Steele informed him of his plan to make thousands of dollars by threatening people with public humiliation.  And this strategy worked, because on October 15, 2012 Steele bragged in a Forbes article that he had made millions of dollars.

The Forbes article is significant for another reason because it was published on October 15, 2012, well after Steele claims to have stopped practicing law.

Moreover, in the article Steele speaks as if he is running this litigation on a national scale.  This comports with Gibb's testimony that Steele and Hansmeier were the attorneys' supervising him not only during S&H's rein, but during Prenda's as well.

They all pleaded the Fifth Amendment, which gives rise to a negative inference in civil cases.  Thus, Steele, Hansmeier, and the others have themselves created the inference that the signature is a forgery.  As Judge Wright stated in the California Action in his show cause order, ECF No. 48 (2/7/13):

> Upon review of papers filed by attorney Morgan E. Pietz, the Court perceives that Plaintiff may have defrauded the Court . . . At the center of this issue is the identify of a person named Alan Cooper and the validity of the underlying copyright assignments.  If it is true that Alan Cooper's identity was misappropriated and the underlying copyright assignments were improperly executed using this identity, then Plaintiff facts a few problems.
>
> First, with an invalid assignment, Plaintiff has no standing in these cases.  Second, by bringing these cases, Plaintiff's conduct can be considered vexatious, as these cases were filed for a facially improper purpose.  And third, the Court will not idle while Plaintiff defrauds this institution.

On March 15, 2013, counsel for Plaintiff stated the following in an e-mail:

> I understand that there is an insane liberal group which is flying around Mr. Alan Cooper for its own benefit. This group is akin to "Anonymous". It doesn't believe in

23

> copyright laws. It does believe that computer hacking should be legal. I'm not certain if these southern courts (unlike liberal San Francisco Courts) will hold the same beliefs that this crazy "its ok to hack websites" group holds.

This e-mail is yet another example of the bad faith that Plaintiff engages in.  The undersigned has already settled at least one case involving Plaintiff's counsel in the past involving the forged assignment agreement…Exhibit J.

## Conclusion

Inherent sanctions would be appropriate in this case due to the bad faith behavior of Plaintiff and those associated with Steele, Hansmeier, Gibbs, Prenda *et al*.  Sanctions are especially appropriate considering that a forged document was filed with the Court, in order to vindicate the Court as well as rectify the monetary harm caused to Defendant to a vexatious case.


Respectfully submitted April 6, 2013:


BLAIR CHINTELLA

806 Meadowlane Dr.
Douglas, GA 31533            _____/s/ Blair Chintella_____
404-579-9668                 Blair Chintella
No Fax Number                Georgia Bar No. 510109
bchintel1@gmail.com          Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

AF HOLDINGS, LLC                      :
                                      :
            Plaintiff,                :
                                      :
v.                                    :   Civil Action No.
                                      :   2:12-cv-00262-WCO
RAJESH PATEL,                         :
                                      :
            Defendant.                :

## <u>Local Rule 7.1(D) Certification</u>

I hereby certify that **Defendant's Motion for Sanctions** and accompanying

**Memorandum of Law** comply with LR 5.1B.


Dated April 6, 2013:


                                    Respectfully Submitted:


                                    _____/s/ Blair Chintella_____
                                    Blair Chintella
                                    GA Bar No. 510109
                                    806 Meadowlane Dr.
                                    Douglas, GA 31533
                                    (404) 579-9668
                                    bchintel1@gmail.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

AF HOLDINGS, LLC       :
      :
      Plaintiff,       :
      :
v.       :    Civil Action No.
      :    2:12-cv-00262-WCO
RAJESH PATEL,       :
      :
      Defendant.       :

<u>**Certificate of Service**</u>

I hereby certify that on April 6, 2013, I filed the **Defendant's Motion for**

**Sanctions** and accompanying **Memorandum of Law** with the Clerk of Court

using the CM/ECF system which will automatically send e-mail notification to the

following attorney(s) of record:

**Jacques Nazaire**

Dated April 6, 2013:

           Respectfully Submitted:


           _____/s/ Blair Chintella_____
           Blair Chintella
           GA Bar No. 510109
           806 Meadowlane Dr.
           Douglas, GA 31533
           (404) 579-9668
           bchintel1@gmail.com