# Exhibit N

```
 1   STATE OF MINNESOTA                              DISTRICT COURT

 2   COUNTY OF HENNEPIN                    FOURTH JUDICIAL DISTRICT

 3                                        DIVISION I, MINNEAPOLIS

 4   ----------------------------------------------------------------

 5   Guava, LLC,

 6                      Plaintiff,           FILE NO:  27-CV-1220976

 7           vs.

 8   Spencer Merkel,

 9                      Defendant.

10   ----------------------------------------------------------------

11        The  above-entitled  proceeding  came  duly  on  for  hearing

12   before the Honorable Tanya M. Bransford, one of the Judges of the

13   above-named  Court  on  January  25,  2013,  at  Hennepin  County

14   Government  Center,  City  of  Minneapolis,  County  of  Hennepin,

15   State of Minnesota.

16

17                          APPEARANCES:

18        PAUL HANSMEIER, Attorney at Law, appeared for and on behalf

19   of the Plaintiff, Guava, LLC.

20        MICHAEL DUGAS, Attorney at Law, appeared for and on behalf

21   of the Plaintiff, Guava LLC.

22        JOHN STEOOE, Attorney at Law, appeared for and on behalf of

23   the Plaintiff, Guava, LLC.

24        TRINA MORRISON, Attorney at Law, appeared for and on behalf

25   of the Defendant, Spencer Merkel.
```

```
 1
 2                      A P P E A R A N C E S
 3                           (continuing)
 4
 5      MARK SANTI, Attorney at Law, appeared for and on behalf of
 6  various John Does.
 7      PAUL GODFREAD, Attorney at Law, appeared for and on behalf
 8  of various John Does.
 9      DAVID CAMAROTTO, Attorney at Law, appeared for and on behalf
10  of Qwest Communications, Embarq Communications, Century Tel
11  Broadband Services, Inc. and Midcontinent Media, Inc.
12      EDWARD SHEU, Attorney at Law, appeared for and on behalf of
13  John Doe, IP Address 17319225244.
14
15            Lynn R. Burkett, Official Court Reporter
16               Kimberlee Shelton, Law Clerk
17
18
19
20
21
22
23
24
25
```

1          (WHEREUPON, the following proceedings were duly

2     had.)

3          THE COURT:  Okay we're here in the case of Guava,

4     LLC vs. Spencer Merkel and there are numerous motions to

5     quash subpoenas.  Could the attorneys please identify

6     yourselves and indicate who you're representing?

7          MR. SANTI:  Good morning, Your Honor, Mark Santi

8     for various John Does.  I've included their IP address in the

9     papers.

10          THE COURT:  And I'm sorry you have to spell your

11     name.

12          MR. SANTI:  Sure, Santi, S-a-n-t-i, Mark with a

13     K.

14          MR. GODFREAD:  Good morning, Paul Godfread, G-o-

15     d-f-r-e-a-d, appearing on behalf of several other different

16     John Does also making Motions to Quash.

17          THE COURT:  Okay you know it's going to be

18     impossible for me to keep that straight which John Doe who's

19     representing, but anyway.

20          MR. GODFREAD:  Identified by IP addresses if you

21     like I can recite that list.

22          THE COURT:  That's okay.

23          MR. GODFREAD:  Thank you, Your Honor.

24          MR. CAMAROTTO:  Good morning Your Honor, David

25     Camarotto, C-a-m-a-r-o-t-t-o, for Bassford & Remele.  I can

1    tell you the names of my clients they're internet service

2    providers and they're Qwest Communications, Embarq

3    Communications, Century Tel Broadband and Midcontinent

4    Media.

5              MR. SHEU:  Good morning Your Honor, Edward Sheu

6    from Best and Flanagan on behalf of one John Doe, IP Address

7    17319225244.

8              THE COURT:  And could you spell your last name,

9    sir?

10              MR. SHEU:  S-h-e-u.

11              THE COURT:  S-h-e-u?

12              MR. SHEU:  That's correct, Your Honor.

13              THE COURT:  Thank you, Mr. Sheu.

14              MS. MORRISON:  Good morning, Your Honor, Trina

15    Morrison on behalf of Spencer Merkel.

16              MR. STEOOE:  Good morning, Your Honor, John

17    Steooe, J-o-h-n, S-t-e-o-o-e, on behalf of Plaintiff Guava.

18              THE COURT:  And aren't you, didn't I sign to

19    allow you to appear In Forma Papyrus not In Forma Papyrus

20    proceed Pro Hac Vice?

21              MR. STEOOE:  Yes, Your Honor.

22              THE COURT:  So you're not licensed in Minnesota?

23              MR. STEOOE:  That's correct I'm licensed in the

24    State of Illinois.

25              THE COURT:  Okay.

1          MR. STEOOE:  And just for clarification we also

2     have a pending Motion to Strike.

3          MR. HANSMEIER:  Good morning Your Honor, Paul

4     Hansmeier, H-a-n-s-m-e-i-e-r, on behalf of Plaintiff Guava,

5     LLC.

6          MR. DUGAS:  Michael Dugas, D-u-g-a-s, appearing

7     on behalf of Plaintiff Guava, LLC.

8          THE COURT:  So why do you have three all three of

9     you are going to speak, why do you have three lawyers

10    representing the Plaintiff?

11         MR. STEOOE:  No, I'm primarily going to speak

12    there's no significant reason why associate counsels here.

13         THE COURT:  All right, let's see I'll start with

14    the named third-party that is objecting so I'll just start

15    with you, Mr. Camarotto.

16         MR. CAMAROTTO:  Thank you, Your Honor.  These are

17    some unusual facts that we have to present before the Court

18    and while we filed our motion when we filed our Motion to

19    Quash we were simply challenging the validity of the motions

20    themselves.  In between filing the initial motion and our

21    Reply Brief, some facts came to light that raise some

22    threshold issues before the Court and I'd like to raise

23    those first if that's all right with Your Honor?

24         THE COURT:  Right because one of them is whether

25    we have jurisdiction to even be here.

1    MR. CAMAROTTO:  Absolutely, Your Honor.

2         THE COURT:  And I think jurisdiction is something

3    that the Court needs to consider.

4         MR. CAMAROTTO:  Absolutely, Your Honor.  I'd

5    first like to talk about this agreement between or this

6    supposed agreement between Defendant Spencer Merkel and

7    Plaintiff Guava.  If there's an agreement that Guava is not

8    going to persecute Mr. Merkel that they're not seeking

9    damages from him, then we're only here for the purpose of

10   third-party discovery.

11        THE COURT:  Okay, but they said that they don't

12   have an agreement so why don't we just go to the--and I

13   don't know whether they do or not except for your somebody

14   in your office talked to Ms. Morrison.

15        MR. CAMAROTTO:  Yes, Your Honor, I'm not speaking

16   to the actual fact of the agreement.

17        THE COURT:  And so in fact that Ms. Morrison was

18   a witness and that sounds like a problem.

19        MR. CAMAROTTO:  And I can move past that argument

20   if you like to simplify the Res Judicata arguments as it

21   relates to that information as well.

22        THE COURT:  Okay but there's different parties so

23   I'm trying to figure out how Guava, LLC is the same as

24   whomever these other people were.  Mr. Merkel.

25        MR. CAMAROTTO:  As are we, Your Honor.

1          THE COURT:  Okay.

2          MR. CAMAROTTO:  As a background, Mr. Merkel was

3    identified as an individual who utilized his computer to

4    access some copyrighted material and that material was owned

5    by Hard Drive Productions, he was sent a demand letter from

6    Hard Drive Productions which indicated we have your IP

7    address, we know which movie you downloaded, we know the

8    date upon which you downloaded it.  We're going to initiate

9    a lawsuit against you for copyright infringement in Federal

10   Court in Illinois.  You have an option to pay $3,400.00 if

11   you like to resolve your case.

12          THE COURT:  So you sent that information?

13          MR. CAMAROTTO:  Absolutely Your Honor, that

14   settlement letter is attached to my affidavit.

15          THE COURT:  Yep, okay so I read all that.

16          MR. CAMAROTTO:  My Reply Brief.  When inquiring

17   about this litigation Ms. Morrison disclosed to me that

18   Guava or that Hard Drive Productions Prenda Law, who

19   represents Hard Drive Productions approached Mr. Merkel and

20   said there's another manner in which you can settle your

21   claim.  You can agree to be sued and we can provide you with

22   the name of a lawyer who will defend you in Minnesota.  Make

23   no mistake Mr. Merkel doesn't live here he lives in

24   Beaverton, Oregon.

25          THE COURT:  Okay so let's just go to that point

1    first.   Who's speaking on behalf of the Plaintiff or no for

2    the Defendant, Ms. Morrison?

3              MS. MORRISON:  Yes, Your Honor.

4              THE COURT:  Where does your client live?

5              MS. MORRISON:  Beaverton, Oregon.

6              THE COURT:  Now we'll move to the Plaintiff.  So

7    why are we here?

8              MR. STEOOE:  Well, Your Honor, first of all, I'm

9    not sure how there's any relevance to another matter with

10   another Plaintiff that I don't represent.

11             THE COURT:  I just want to know if Mr. Merkel is

12   a resident of Oregon and where is Guava, LLC Incorporated?

13             MR. STEEOE:  Well, I believe Mr. Merkel is a

14   resident of Oregon.

15             THE COURT:  So my question is, why are we here

16   tell me what jurisdiction is?

17             MR. STEOOE:  Sure.

18             THE COURT:  Okay can you tell I have a jury

19   trial.  I have four lawyers on this jury trial.  I told the

20   jury to be back at 9:30 so we're going to need to get to the

21   point.

22             MR. STEOOE:  Sure, Your Honor.  Well, first of

23   all, jurisdiction is an issue that can be reviewed by

24   obviously the Judge we need to make sure jurisdictions

25   proper, but first of all that's something that can be waived

1    by the parties and it certainly has been in this case.

2         THE COURT:  Okay so you admit that we don't

3    really have jurisdiction in Minnesota because I can dismiss

4    based upon that alone?

5         MR. STEOOE:  No, I'm not saying we don't have

6    jurisdiction.

7         THE COURT:  Well you just said you're waiving it.

8         MR. STEOOE:  No, I'm saying--

9         THE COURT:  So tell me right now how we have

10    jurisdiction in this District Court, State District Court in

11    Minnesota?

12         MR. STEOOE:  Sure.  Much of the action that

13    occurred in this sharing of the information and the acts

14    that we allege happened in Minnesota with and as many of the

15    witnesses and people involved are Minnesota residents and

16    the acts are happening obviously through servers and the

17    internet and it can in be as many states involved where this

18    was occurring.  So obviously we could have there's other

19    jurisdictions we also could have filed this Complaint in but

20    Minnesota's certainly one of the jurisdictions that we--

21         THE COURT:  Okay so where is Guava, LLC as a

22    limited liability company where is their headquarters?

23         MR. STEOOE:  They have an office in Las Vegas.

24    They're also based out of I believe they're in Nevis.

25         THE COURT:  Where is Nevis?

1                MR. STEOOE:  It's an Island in the Caribbean.

2                THE COURT:  As opposed to a little spot in

3  northern Minnesota?

4                MR. STEOOE:  Correct.  Correct, Your Honor,

5  correct.

6                THE COURT:  I'd rather be from the Islands too.

7                MR. STEOOE:  I would too.  I would too.

8                THE COURT:  Okay.  All right so the Plaintiff's

9  Office is out of Las Vegas did you just say?

10               MR. STEOOE:  They have an office there.

11               THE COURT:  And do they have any presence in

12  Minnesota?

13               MR. STEOOE:  It's my understanding that they do

14  have some computer equipment and various offices and one of

15  the places would be Illinois and Las Vegas.

16               THE COURT:  Okay so and Mr. Merkel lives in

17  Oregon, Beaver--

18               MS. MORRISON:  Beaverton, Oregon.

19               THE COURT:  Beaverton.  Okay I'm not familiar

20  with Oregon except for Portland then.  All right so then why

21  are we here?

22               MR. STEOOE:  Well because the location and

23  progress verifying various activities were trying to show

24  that much of the activity, or certain amounts of the

25  activity, was occurring in Minnesota so it's the acts

1    themselves that are occurring in Minnesota.

2         THE COURT:  Okay so the third, the people who

3    aren't parties who allegedly--I need the underlying facts

4    here because this is very confusing to me.  You're saying

5    that these that--Mr.-- you allege in your Complaint why

6    don't you summarize for me what you alleged in your

7    Complaint that Mr. Merkel was in civil conspiracy with all

8    these unknown potential John Doe third-parties for hacking

9    into Guava's computer stuff?

10        MR. STEOOE:  Yes.

11        THE COURT:  And illegally getting their

12   pornographic stuff?

13        MR. STEOOE:  Well we're not alleging that they

14   accessed their movies they have other data and materials

15   such as user lists, passwords and so on that they can use to

16   access veracious websites.

17        THE COURT:  Okay so I thought when this other

18   gentlemen was first talking that you were concerned because

19   all these unknown third-party people were potential hackers,

20   hacking into unknown innocent consumers' personal--

21        MR. STEOOE:  --information.

22        THE COURT:  Information.

23        MR. STEOOE:  Right.

24        THE COURT:  And that's why this was urgent you

25   needed to get to this right away?

1          MR. STEOOE:  Yes, because we store the as we

2     listed in the emergency motion there are credit card

3     information, address, private data on the servers because

4     they post all these membership sites where someone signs up,

5     pays with a credit card and so on so by accessing these

6     servers they're obviously getting access to people's private

7     data and obviously I'm sure this Court's aware that this

8     happens on a regular basis where hackers you know they break

9     into computer systems and compromise the data that's in

10    there.  It's not necessarily just a matter of stealing

11    movies.

12          THE COURT:  Okay you may sit down.  Go ahead, Mr.

13    Camarotto.

14          MR. CAMAROTTO:  Thank you, Your Honor.  To

15    address some of the points that Mr. Steeoe just made.

16    First, the Complaint does not allege that any of the acts of

17    conspiracy took place in Minnesota.  There is no affidavit

18    in the record or provided as a part of these motions that

19    state that any of these alleged conspiracies took place in

20    Minnesota.  That's a statement by Mr. Steeoe today.  There's

21    no support for that.  They say they have agents, they say

22    they have software that tracks all of this, they're Geo

23    location and I can tell you that we have the same Geo

24    location and that three out of the four of my clients have

25    no connection, none of the ISP's sought are in Minnesota so

1    to state that--

2              THE COURT:  So only Qwest?

3              MR. CAMAROTTO:  I beg your pardon?

4              THE COURT:  Only Qwest?

5              MR. CAMAROTTO:  Absolutely.  There are a minor

6    number of unidentified individuals who have IP addresses in

7    Minnesota.  So for Mr. Steeoe to say my understanding is a

8    lot of this took place in Minnesota there's no support for

9    that statement.

10             Second, as we're talking about Guava, LLC and

11   where it's incorporated and where it does business, Guava,

12   LLC is not registered with the Secretary of State to do

13   business in Minnesota.  As such, under statute, Minn. Stat.

14   § 322b.94, before a limited liability company transacting

15   business in this State may not maintain any action, suit or

16   proceeding in any court in this state until it possesses a

17   Certificate of Authority.  No such Certificate of Authority

18   has been presented.  There's no indication that Guava's

19   licensed to do business here.  So again, we've got a foreign

20   company not licensed to do business here using the Court to

21   sue a Beaverton, Oregon resident.  That's all we got here.

22   That's the jurisdictional issue for the Court to determine.

23             THE COURT:  Okay, you can go to the next one

24   because at this point I think that would take care of

25   everything else.  I would dismiss for lack of jurisdiction.

1    Do you have some bases to show why Guava, LLC is either a

2    Minnesota, licensed to do business in Minnesota or

3    authorized to bring action.

4              MR. HANSMEIER:  Your Honor, the statute that

5    opposing counsel references has a pre-requisite to having

6    any relevance in this case and the triggering fact in the

7    statute is transacting business.

8              THE COURT:  So if you're alleging that they

9    didn't transact any business in the state then why are we

10   here?

11             MR. HANSMEIER:  The key is not transacting

12   business.  The term transacting business itself a highly

13   technical term it requires--

14             THE COURT:  Tell me the statute number again?

15   Tell me the statute number.

16             MR. CAMAROTTO:  Yes, Your Honor, § 322b.94.

17             MR. HANSMEIER:  And if you review the statute you

18   see that there are many things that would normally fall

19   under the common definition of transacting business or when

20   you think of transacting business and, for example, and I

21   don't have the statute in front of me, but I've actually

22   done quite a bit of work in this area and simply having an

23   office is not transacting business or having bank accounts

24   is not transacting business and certainly I would suggest

25   that there was no, there was no court holding in existence

1    that would say being the victim of a crime constitutes

2    transacting business.

3            THE COURT:  Well then why don't you go to the

4    County Attorney's Office or one floor up?

5            MR. HANSMEIER:  I'm sorry?

6            THE COURT:  Why don't you go as a victim to the

7    County Attorney's Office, they're one floor up, and say

8    we've been victimized?  They do research and they and they

9    prosecute cases.  I've had cases like well similar where

10   they get people for white collar crime or for theft of for

11   whatever you're alleging.

12           MR. HANSMEIER:  Absolutely, Your Honor, and that

13   is something we are exploring but at the same time the

14   statute that we are prosecuting this case under does have a

15   private right of action and frankly the process of going

16   through and going to the County Attorney's Office and having

17   them research and so forth and so on, well, frankly most of

18   the data that they would require to do their case would no

19   longer exist by the time they were able to make a decision

20   one way or another and further, our client's business faces

21   an exceptional threat from this activity.

22           THE COURT:  What is that?

23           MR. HANSMEIER:  Well if their computer servers

24   have no integrity and their information has no integrity,

25   people aren't going to be very excited about signing up from

1    the sites when they're using them to now being distributing

2    all over the internet.

3          THE COURT:  Okay.  So you're saying that §

4    322b.94 doesn't apply because you were the victim of theft?

5          MR. HANSMEIER:  It does not apply because Guava,

6    LLC was not transacting business in the State of Minnesota.

7    It's only from a limited liability company that is

8    transacting business that cannot bring a suit or that

9    requires a Certificate of Authority before bringing a suit.

10         THE COURT:  Okay Mr. Camarotto, anything else you

11   want to go to the merits of the Motion to Quash?

12         MR. CAMAROTTO:  Sure.  One more point on the Res

13   Judicata, Your Honor, if they had an agreement in Hard Drive

14   Productions case that they would dismiss any action against

15   Spencer Merkel and if he agreed to be sued in Minnesota,

16   look at the Complaint filed by Guava it does not contain a

17   date or a time or a location in which Mr. Merkel is alleged

18   to have breached these proprietary computer systems and I'll

19   present to the Court that if it's the same as that was

20   presented in the Hard Drive Productions case that is the

21   accessing the movie Immature Allure by IP address

22   24.21266.72, if on July 6, 2011, that's specific information

23   that they have the ability to locate.  If it's the same

24   information that's the basis for this lawsuit, then the

25   claim is barred it's already been litigated.

1      MR. STEOOE:  And Your Honor, I would like to

2   respond.  Counsel's used the word if about 12 times then.

3   Since none of that is true we can just move on and ignore

4   those.  This case is completely different than anything that

5   was brought by a different party in a different time zone

6   against Mr. Merkel.  So I'd like to I think it's appropriate

7   to stick to this case and not bring up hypotheticals about

8   another Plaintiff that I--

9      THE COURT:  Well there could be a concern though

10   with regard to Ms. Morrison so I think I might need to have

11   Ms. Morrison stand and be sworn in.

12                  **TRINA MORRISON,**

13      after having been first duly sworn, was

14         examined and testified as follows:

15      THE COURT:  Thank you.  So Ms. Morrison, there

16   are some allegations in here that says that you talked to an

17   attorney--well, first of all, state your full name for the

18   record.

19      MS. MORRISON:  My name is Trina Morrison.

20      THE COURT:  Spell your first and last name.

21      MS. MORRISON:  T-r-i-n-a, M-o-r-r-i-s-o-n.

22      THE COURT:  And you are an attorney licensed to

23   practice law in the State of Minnesota?

24      MS. MORRISON:  I am, Your Honor.

25      THE COURT:  Pardon me?

1         MS. MORRISON:  I am, yes.

2         THE COURT:  And since when?

3         MS. MORRISON:  Since May Twenty Eleven.

4         THE COURT:  Okay and so your friends and you

5   graduated from law school with Mr. Dugas?

6         MS. MORRISON:  I did, Your Honor.

7         THE COURT:  There's nothing illegal about

8   practicing against someone that you went to law school with

9   many of us do that, right?

10         MS. MORRISON:  Correct.

11         THE COURT:  Okay.  So tell me how you got to have

12   this Mr. Spencer Merkel as a client and whether or not there

13   was any agreement?

14         MS. MORRISON:  Your Honor, I have an affidavit

15   from my client that can speak to much of this information,

16   but the basic story is--

17         THE COURT:  Did you submit that affidavit I

18   didn't see it?

19         MS. MORRISON:  I have not I have it with me I

20   just received it late last night from my client.

21         THE COURT:  Okay.

22         MS. MORRISON:  So I'd be happy to present it to

23   you now if you like?

24         THE COURT:  Well I want to hear from you first.

25         MS. MORRISON:  Right.

1       THE COURT:  But I can look at that statement of

2  the same time, have you shown it to all opposing counsel?

3       MS. MORRISON:  Mr. Carmarotto has seen it but

4  opposing counsel has not seen it.  I have with me only two

5  copies.

6       THE COURT:  Okay well I'll take the original.

7       MS. MORRISON:  May I approach?

8       THE COURT:  You may.

9       MS. MORRISON:  It is a scanned copy as my client

10  lives in Oregon.

11       THE COURT:  Okay go ahead.

12       MS. MORRISON:  The way I became involved in this

13  case is Mr. Hansmeier and Mr. Dugas had approached me with

14  an offer of they had these types of cases, they had pro se

15  Defendants whom they had much rather have represented

16  because it's easier to work with another lawyer than a pro

17  se Defendant which is understandable and I said I was

18  interested in gaining the experience so they knew that I was

19  potentially willing to be a pro bono attorney in one of

20  these cases.  Mr. Merkel contacted them upon receiving the

21  Hard Drive Productions, Inc., letter saying yes I downloaded

22  the video, I am interested in finding a way to settle this

23  case because I do not have $3,400.00 to pay you.  I just, he

24  doesn't have that kind of money, Your Honor, he lives

25  essentially at the poverty line which is why he is In forma

1    Papyrus in this suit.  Before I was involved in the case
2    they said essentially well we don't know any attorneys in
3    Oregon but if you're interested we could sue you in
4    Minnesota and we know a potential pro bono attorney for you.
5    He agreed.  There was--he also discussed the agreement with
6    them that was he would agree to be sued, they would get the
7    BitTorrent Law from his computer, which would supposedly
8    corroborated IP addresses that that they had already
9    observed using these various websites and they would then
10   drop the case against him.
11          THE COURT:  Okay and I've had a chance now to
12   look at his affidavit so it sounds like he thought he was
13   going to be sued by Hard Drive Productions and all of a
14   sudden he was sued by Guava, LLC and that he--
15          MS. MORRISON:  Correct, there was also the brief
16   that Prenda Law would be bringing the suit as opposed to
17   Alpha Law Firm.  There's been some bait and switch you might
18   call it in this case.
19          THE COURT:  Okay who wants to speak on behalf of
20   Guava?
21          MR. STEOOE:  Well, Your Honor, I'm obviously
22   trying to read this as fast as I can here.
23          THE COURT:  Okay that's okay.  Ms. Morrison, you
24   can be seated.  I want to hear briefly from either Mr.
25   Camarotto or any of these other these other John Doe's with

1    regards to the Motion to Quash.

2         MR. CAMAROTTO:  Sure, I'll make it very brief,

3    Your Honor.  When Mr. Steooe says these are just different

4    cases and you should ignore what he says because they're

5    different.  Again, that's a statement by a lawyer in court

6    without any support in affidavit, any support in the record.

7    They could have gotten something from Guava they could have

8    told us a days in which Spencer Merkel is alleged to breech

9    their system.  They choose not to say that they choose to

10   say ignore what they say.  I'll move on to the propriety of

11   the subpoenas themselves.

12        THE COURT:  Thank you.

13        MR. CAMAROTTO:  The information sought has to be

14   relevant, Your Honor.  There's no indication that there are

15   any ties to Spencer Merkel given the information that

16   they're seeking.  They say they're trying to find the co-

17   conspirators for Mr. Merkel for this alleged hacking scheme.

18   As shown in the affidavit there is been no discovery in this

19   case.  This case is 90 days old and they haven't even asked

20   Mr. Merkel the head of his hacking scheme for his computer

21   or for discovery or deposition.  That's not why they're

22   seeking discovery they're looking for this third party, non-

23   party discovery to identify more targets.  They're on a

24   fishing expedition, Your Honor.  I'm summarizing my

25   arguments in light of your time constraints.

1    THE COURT:  Right because I've already read them

2    I just wanted to make sure that you had an opportunity to

3    speak.

4    MR. CAMAROTTO:  Yes, there's no indication that

5    there's any jurisdiction over these alleged coconspirators

6    they're from 20 different states.  These claims are

7    preempted by federal law.  If the proprietary information

8    that has been accessed is the same as which is in the Brenda

9    Law letter, the brand letter from Mr. Merkel from September

10   26, 2012, and he's alleged to have accessed a pornographic

11   movie that has a copyright then federal preemption law.  I'm

12   sorry federal copyright law preempts the several conspiracy

13   theory, that's being forwarded before the Court here and,

14   finally, this is discovery for improper purpose.  They're

15   simply looking for settlement targets. That's what they've

16   done in the past that's what they're doing now.  Mr. Steooe

17   may stand up and say ignore these facts but we have to look

18   at the purpose for the litigation and if the purpose for the

19   litigation is only to seek non-party discovery then that

20   discovery can't be had, Your Honor.  I'll rest on my written

21   submissions, thank you.

22   THE COURT:  Thank you.  Okay Mr. Santi.

23   MR. SANTI:  Thank you, Your Honor, I'll be very

24   brief.  I have not read the affidavit that was submitted

25   today.  I've heard reference to a bait and switch.  I would

1  note as Your Honor knows Rule 12.06 Minnesota Rules of Civil

2  Procedure permits the Court on its own volition to strike a

3  pleading as a sham and the cursory review of the Complaint

4  shows that it's extremely vague and facts that arisen by

5  affidavits filed by officers of the Court and it sounds like

6  today an affidavit filed by the Defendant that perhaps the

7  pleading is a sham.  Again I have not yet read the

8  affidavit.

9         Speaking to merits of the protective order, we

10 cited a case that says that the protections of the Civil

11 Rules of Procedure should be applied liberally to protect

12 people from annoying and embarrassment and harassment and I

13 pulled the 2007 census figures that say the average American

14 household is 2.65 number so when this subpoena goes to a

15 household and if you factor in people using open Wifi's and

16 you factor in guests in a household there's maybe a 30

17 percent chance that even if the infringement occurred, the

18 federal copyright infringement is preempted even if it's

19 occurred there is a 70 percent chance you got the wrong

20 person.  So I think there's a very high chance of undue

21 burden, Your Honor, thank you.

22        THE COURT:  Thank you.  Mr. Godfread, do you have

23 anything you wish to add?

24        MR. GODFREAD:  I'll keep it very brief.  I think

25 I just mostly like to echo what Mr. Santi and Mr. Camarotto

1    said, but I'd just also like to note this week it seems like

2    the pattern of abusing discovery to demand money from people

3    identified to be the real purpose.  In your Order that

4    authorized discovery in this case you had limited it to

5    using the information solely for the purpose of this case,

6    but it seems like the pattern has continued as Prenda and

7    Alpha have done in the past.  Once these people are

8    identified the real purpose is to see if they'll pay them.

9    I apologize I did not have adequate time I've been called by

10   additional prospective clients who have told me essentially

11   yes in this very Guava and Merkel, Guava v. Merkel case

12   people have received letters threatening them that if they

13   must protect their information, but making no demand.

14            MR. STEOOE:  Your Honor, I would object this is

15   hearsay from some mysterious person that he's saying he

16   didn't have time to get their substantial information from.

17   How am I supposed to respond to what he says someone said to

18   him over the phone?

19            THE COURT:  Well I have these other letters from

20   other people that I think are probably unrepresented ISP

21   numbers.

22            MR. STEOOE:  We attached the letter that we've

23   sent out to some of the witnesses and multiple pleadings in

24   this case which we stand by.  We don't demand any kind of

25   money, we don't try to tell them they have to settle.

1    MR. GODFREAD:  Your Honor.

2    MR. STEOOE:  And obviously opposing counsel

3  sometimes likes to bring in letters from other cases in

4  which we are about to sue somebody and we go ahead and sue

5  them.  We've sued hundreds.  I'm personally aware of

6  hundreds of individual cases in which we've sued

7  individuals, named them, served them and moved forward with

8  them.  So in those cases yes we will send a, you know, this

9  is letting you know we're about to sue you if you don't wish

10  to settle which is totally fine.  In this case is a very

11  different letter that we attached to our pleadings and will

12  stand by that letter and says this is what's going on, this

13  is the case and you'll see the one-page letter has

14  absolutely no reference to money, settlement or whatever.

15    MR. GODFREAD:  Your Honor, if I may?

16    THE COURT:  Go ahead.

17    MR. GODFREAD:  Mr. Steooe's correct on that point

18  what he's omitting is that when unrepresented parties call

19  the phone number of the Anti-Piracy Law Group they're told

20  by whoevers picking up the phone call either pay $4,000 or

21  we'll see you in court.  This would imply to me that the

22  purpose of these is not to find these people to be

23  witnesses, but to find these people to be targets for

24  additional attempts to extract money from them.  This is

25  what Prenda Steel Alpha have done.  This seems to be the

1    only case they bring.  So with that, I'll adapt the

2    arguments as raised by Mr. Santi and Mr. Camarotto.  The

3    purpose of this litigation the purpose of these subpoenas is

4    only to find people to ask money from them.

5            MR. STEOOE:    Your Honor, obviously there's a

6    lot--

7            THE COURT:  Just a minute I'm not ready to hear

8    from you yet.  Mr. Sheu, did you have anything to add?

9            MR. SHEU:  Just briefly, Your Honor, thank you.

10   I agree with and adopt the arguments by the other John Doe

11   counsel and Qwest counsel.  I would just highlight for Your

12   Honor again the statute we talked about before § 322b.94.

13   It requires a Certificate of Authority for a foreign

14   liability company to do business in this State and to bring

15   a lawsuit.  The comment made earlier that oh, that's only

16   for foreign companies that are doing business here doesn't

17   make any sense for a company that's not doing business here

18   has the right to access the Court's that doesn't make any

19   sense, that's not how it reads.  There's a good reason this

20   isn't a technicality, Your Honor.  The foreign company has

21   to certify to the Secretary of State when they file this

22   request for Certificate of Authority.  I am a lawful

23   company, I exist somewhere, I haven't been dissolved and so

24   they even though they've been on notice of this deficiency I

25   don't know how many weeks, I would have thought today they

1    would show up with a certificate saying we paid our $70

2    bucks h ere we are we have the right to be here.  They

3    didn't.  They don't want to make that certification to the

4    Minnesota Secretary of State and they don't have access to

5    the Courts.  Thank you.

6            THE COURT:  Okay thank you.  Mr. Steooe.

7            MR. STEOOE:  Your Honor, I'll address most of

8    these issues except for the one just raised by Mr. Sheu, but

9    I think that there's some things being Defense Counsel

10   purposely left out.  Our client is the victim.  They're the

11   ones that had their computer systems hacked and so no and so

12   what's happening here and I've been standing up in front of

13   Judges on these types of cases for several years and at

14   least one hundred and some odd cases.

15           THE COURT:  Okay just tell me why in your

16   Complaint you don't say like when it was hacked and where it

17   was hacked and the date it was hacked and how it was hacked?

18    I don't see any of that.  I just see--

19           MR. STEOOE:  Well--

20           THE COURT:  --vague.  I just see date.  I don't

21   see year, I don't see a place.  I don't see anything.

22           MR. STEOOE:  Well because it's my understanding

23   and I'm not the technical side of this and obviously we have

24   juniors with you know the forensic evidence and so on, but

25   we don't know all that information yet.  We don't have the

1   exact details of every time different things have occurred

2   because we're at the early threshold stages of discovery and

3   that's what I was trying to get at here.  There's a lot of

4   throwing out all kinds of conspiracy theories and different

5   statements to try to detract from the simple fact that these

6   people don't want to be identified because they're caught

7   doing something wrong.

8           THE COURT:  Okay but wait.  So this was filed on

9   October 17th, today is January 25, what discovery have you

10  done to find out this information?

11          MR. STEOOE:  We've sent out the subpoenas that--

12          THE COURT:  I mean from Mr. Merkel?

13          MR. STEOOE:  Well the information a decent amount

14  of information that we have needed from Mr. Merkel we don't

15  even know what the totality of it is yet because we need to

16  know who else he was involved with, we need to know more

17  data and who is all the people that were allegedly with him.

18          THE COURT:  Okay but one point that Mr.

19  Camarotto, if I pronounced his name right, made kind of made

20  sense to me was why wouldn't you get his computer or you

21  know request documents or however you access electronic

22  data, get his hard drive, why wouldn't you start there to

23  see every place that he had contacted?

24          MS. HANSMEIER:  Your Honor, if I may, I have a

25  little more background on technical side.  So, you know,

1    these guys are trying to say this is a BitTorrent case and

2    that's part of the confusion they're trying to create here.

3    There's different types of cases they're BitTorrent cases

4    and there's hacking cases.  In hacking cases or BitTorrent

5    case I'll start with those.

6         THE COURT:  What is a BitTorrent case I don't

7    know what a BitTorrent case is?

8         MR. STEOOE:  So that appears file sharing you

9    download something from the internet.

10        THE COURT:  Okay.

11        MR. STEOOE:  In a BitTorrent case it would be

12   logical and helpful to get the computer right away.  The

13   reason why it would be helpful, logical and helpful to get

14   the computer right away because you see the copyrighted file

15   on there you would see BitTorrent files you would see a lot

16   of hallmarks of the activity.  In a hacking case on the

17   other hand, there's very little that we would expect to even

18   find on his computer.  In a hacking case the main evidence

19   is on the main technical forensic evidence would be on the

20   computers or well the servers that were hacked into and so

21   and frankly you wouldn't necessarily know exactly what to

22   look for.  In a BitTorrent case you know what kind of file

23   to look for you know what kind of software they have, when

24   they're doing it.  In a hacking case you're not going to

25   have any of that information at the threshold of discovery.

1    So once you collect any male put the puzzle pieces together

2    and say who's really associated with these IP addresses is

3    the persons who's IP addresses it was that was hacking or

4    someone hacking their computer and route the traffic through

5    a variety of computers through the eventual hacking target

6    as a way to mask their identities.

7         THE COURT:  I'm not real technological but I'm

8    assuming that you'd still want to, I don't know, for

9    instance depose or send some questions to the Defendant.

10        MR. HANSMEIER:  Absolutely.

11        THE COURT:  And find out what all he did or

12   didn't do as the basic starting point.

13        MR. HANSMEIER:  Well actually, Your Honor--

14        THE COURT:  And I don't understand why you

15   wouldn't want to be able to access his hard drive or take

16   the computer and use your, have your forensic people analyze

17   it to see whether it had been hacked or not.

18        MR. HANSMEIER:  Again, his computer is doing the

19   hacking it hasn't been hacked into necessarily.

20        THE COURT:  But wouldn't it show traces?  I mean

21   my computer, you know, how you can go back once you go into

22   something you can tell where you've been, wouldn't it show

23   traces?

24        MR. HANSMEIER:  Well the point I would make about

25   the deposition so for example we took his deposition right

1   now and we would say well, were you collaborating with these
2   other IP addresses right now and he'd say no.  And we would
3   say okay, well thanks, that's all we can do but if for
4   example we've had an opportunity to search the pins, get the
5   identities of these other people, talk with them and say
6   what do you know about this Spencer Merkel guy?  Are you
7   aware of him?  Are you familiar with him?  Can you tell us
8   whether your computers been hacked into or routed into or
9   anything else? Then when we're deposing Mr. Merkel we can
10  say did you collaborate with these other IP addresses?  No.
11  Well, please explain this evidence that shows that you were
12  passing information through these computers and are you
13  familiar with these guys and so forth and so on.  It's not
14  going to be a very effective deposition at this threshold
15  stage.
16            THE COURT:  Okay is there anything further, Mr.
17  Steooe?
18            MR. STEOOE:  Yes.
19            THE COURT:  You have like a couple of minutes.
20            MR. STEOOE:  Oh but yes, Your Honor.  I haven't
21  addressed any of the items raised by the other parties.  The
22  Rule 45 issue well first let me address this issue of this
23  affidavit.  Obviously just reading it my understanding is
24  that you know I have been involved in other cases where the
25  information does come back after we start doing information

1   or seeking subpoenas and so on and there's not a lot of

2   evidence for us to move forward on and then of course we

3   would cease to you know pull a case or depending on the

4   strength of the case et cetera several or whatever.  There

5   is no deal, so to speak, that I'm aware of that has been any

6   evidence of.  Now obviously there's an affidavit now from

7   Mr. Merkel saying that he thinks that there's a deal, but I

8   would respectfully suggest that obviously opposing counsel

9   is truly opposing counsel she'd obviously representing her

10  client and trying to get out from under this lawsuit which

11  but the reality is that we don't think that there's a deal.

12  The client certainly not agreed to any deal because they're

13  moving forward and aggressively pursuing not just this one

14  person but looking at the whole conspiracy which is I say

15  why it's important to understand these people don't want to

16  be caught just like bank robbers would prefer not to give

17  the police their identity because they don't want to be in

18  trouble for what they've done.  So all we are asking for at

19  this early threshold stage is basic information.  It's

20  certainly not protected by the First Amendment.  In fact

21  yesterday I was in Federal Court on the same issue in

22  another case very similar to this and the Judge dismissed

23  all these Motions to Quash and very similar issues, but the

24  important thing to understand is well first of all subpoenas

25  don't go to individuals and that goes into the Rule 45

issue.  The only reasons why we even quash a subpoena have

to deal with, you know, undue burden and so on.  There's no

other, there is simply just no other section under Rule 45

that would apply to this case so where's the undue burden.

The ISP's are compensated for any costs to provide us

information.  Other non-parties there's no undue burden

because they're not asked to do anything.

THE COURT:  Yeah, because you don't know.  I mean

don't know if you all got this, but I got this letter from

some charter subscriber case number 12-3972.  I'm assuming

it maybe wasn't filed it was just sent in.  This is someone

saying I don't know what's going on all I know is I have a

home computer.  All I would do is I would come home and pay

my bills on line and all of a sudden I got a message from my

bill payment saying there was a problem and don't pay on

line and that's all she used it for and she doesn't know

what's going on.

MR. STEOOE:  Well that's because she received a

letter from her ISP simply telling her that they were going

to release her information to us pursuant to the subpoena,

but she has no obligation or burden to do anything she's

just being notified because the Cable Act requires her to be

notified.  We don't ask any of the non-parties other than

ISP's to do anything because obviously there's no order to

that effect.  So the only entity that can possibly raise an

1    undue burden argument is the ISP's because they're the only

2    ones being asked to do anything.  Now they haven't stated

3    why it's an undue burden to simply click on a few keys on

4    their computers and provide us information and get paid very

5    well for doing that at a price that they said and we just

6    pay every single time.  Every ISP in the country that I'm

7    aware of has provided this information to our firm at some

8    point or another and has been compensated this isn't earth

9    shattering type of issue.

10          THE COURT:  Okay but you are aware the first time

11   your co-counsel came in here and asked us for this I believe

12   there was 900, 400, 400 different ISP's that were listed?

13          MR. STEOOE:  The reason why was because--

14          THE COURT:  And I said no you need to show me

15   somehow, how these are all related.  I had a feeling there

16   would be much more people in the courtroom objecting if

17   there's 400 people.

18          MR. STEOOE:  I understand why it's a

19   comprehensive list because we had a different case last year

20   there was requests to simply just list any possible person

21   that may get a subpoena.  We didn't subpoena 400 people, all

22   right, that's just a all the ISP's in America.  There's no

23   tie in that we're going to pursue each one of those.

24          THE COURT:  Okay but the Order that was requested

25   was for me to allow you to apparently do all the ISP's in

1  the United States.

2      MR. STEOOE:  No.

3      THE COURT:  That's what the Order was that you

4  submitted that's what you just said.

5      MR. STEOOE:  No, it's my understanding that no,

6  no, it's my understanding that depending on where which ISP

7  had the information we are going to ask that ISP.  So if

8  there's only three ISP's information that we needed we only

9  subpoena three.

10      THE COURT:  Okay but what about the argument that

11  you're trying to get these ISP's and that there's very

12  little likelihood that you'd even get to the right person?

13      MR. STEOOE:  Well I've heard this argument

14  before.

15      THE COURT:  Because of wireless internet and 2.5

16  people that use it per time.

17      MR. STEOOE:  I've heard this argument raised and

18  been unsuccessful almost every time that I've addressed it.

19  It's easy analogy, Judge, if you say this is a bank robbery

20  and the witness sees a different license or a license plate

21  on a car, right, and the person owns the car says no, no, do

22  not look up who's the owner of this car, don't do this.

23  Well it may not have been the owner of the car, okay, but

24  chances are as one of the Judges said in court recently, the

25  chances are either it is the person or that person will lead

1    you to the person because obviously if we don't know who--

2         THE COURT:  Okay sir, that analogy doesn't really

3    work because that was already found unconstitutional in our

4    State.  The idea of just bringing people to court for the

5    camera taking their license plate because anyone could be

6    driving the car and you don't know that that person was

7    guilty of driving the car so that analogy doesn't work

8    because we found that was unconstitutional because just

9    because you have the license plate of the car doesn't mean

10   you have the right driver so that's the same kind of

11   analogy.  Just because you have the ISP address doesn't mean

12   that you have the right person.

13        MR. STEOOE:  Yep.

14        THE COURT:  Okay I don't know think we can get

15   past jurisdiction.

16        MR. STEOOE:  Okay.

17        THE COURT:  So I'm going to dismiss the whole

18   thing and find there is not jurisdiction because I don't

19   think that you're a foreign limited liability company that

20   has, that's transacting business in the State that you've

21   documented anything that you can maintain or bring any

22   action, suit or proceeding in a State, in a Court in the

23   State under § 322b.94.

24        MR. STEOOE:  Your Honor, I didn't address that,

25   Your Honor, I don't think it's, with all due respect, I have

1    to fight for my client's rights here.  We at least need a

2    chance.  My co-counsel's the one that's going to address

3    that issue he hasn't even spoken.  Five people spoke on the

4    other side.  Isn't there an opportunity that my client gets

5    to at least say something to address the concern?

6              THE COURT:  I thought you were.  I thought he

7    did.

8              MR. STEOOE:  No, I haven't talked about it I said

9    my co-counsel would address the one issue that is raised by

10   Mr. Sheu.

11             THE COURT:  He did he said that you weren't

12   transacting business you addressed that.  You said you

13   weren't transacting business because you were a victim of a

14   crime.

15             MR. STEOOE:  I believe my co-client said--

16             THE COURT:  And I don't buy that I don't buy

17   that.

18             MR. STEOOE:  Your Honor.

19             THE COURT:  You have to have something you just

20   can't be a foreign LLC coming into our State without filing

21   the Certificate.

22             MR. HANSMEIER:  Your Honor, I understand your

23   concern.  We'll be glad to file the Certificate.  Would the

24   Court consider staying the case pending our receipt of the

25   Certificate of Authority for Minnesota?  Seventy bucks we

1    can get right away.

2         THE COURT:  Well gosh, hasn't this case been

3    pending and this motion I thought you wanted it to be set in

4    December when I was out of town for a death in the family so

5    I think this case has been pending since October.

6         MR. STEOOE:  That's true it's been pending since

7    October.

8         THE COURT:  So that means you've had over three

9    months to do it.

10        MR. STEOOE:  Well Your Honor, I don't believe

11   it's really going to be--been raised as an issue until I

12   think very recently.

13        THE COURT:  In somebody's responses they pointed

14   out that some lawyer for Bassford came at the last time we

15   were at a hearing and I said well I have nothing in writing

16   I'm not going to take this argument but it was raised so you

17   knew at least that it was going to be raised from the last

18   hearing in December.

19        MR. HANSMEIER:  Well I would just re-raise my

20   request, Your Honor, in cases like this where the Court's

21   find that there is you need a Certificate of Authority or

22   what have you, since it is such a simple ministerial act to

23   do the traditional approach because equities favor

24   stipulations on the merits so simply stay the case and we'll

25   have it today.

```
 1          THE COURT:  Okay, I don't see--
 2          MR. STEOOE:  And I further reiterate, Your Honor,
 3     that no one has made a showing by affidavit, by motion, by
 4     even stating any facts that what is example that we're doing
 5     that constitute transacting business so just for the sake of
 6     the record I would note that no one has submitted a single
 7     fact that would tend to show a transacting business in
 8     Minnesota.
 9          THE COURT:  I believe the interpretation of the
10     case I mean of the statute and I'll look, I'll look more at
11     it, I'll take it under advisement but I'm not going to allow
12     any post-hearing submissions.  But I believe that the way--
13     it doesn't make sense for it to say for the legislature to
14     assume that any foreign limited liability company can sue in
15     our State whether or not you know if they're not transacting
16     business in the State.  It doesn't make sense what you're
17     saying.
18          MR. HANSMEIER:  Well I think it does make sense
19     and I think the policy reason behind filing requiring people
20     to file or file the Certificate of Authority, Certificate of
21     Qualification is to require foreign companies who are
22     transacting some form of business in Minnesota, so they're
23     making the Minnesota State, the Minnesota markets, the
24     Minnesota Services roads, what have you, they're not
25     registered in Minnesota so they can't be you know so someone
```

1  who wants to take an action against some foreign company
2  who's caused some harm in Minnesota can simply go and find
3  out the information from the Minnesota Secretary of State.
4  Okay here's where they're organized so forth and so on but
5  the idea that someone who is not making use of Minnesota
6  roads systems and everything else can be a victim,
7  victimized by someone in Minnesota and then--
8          THE COURT:  But isn't the nature of your
9  victimization and the copyright infringement?
10          MR. HANSMEIER:  Again that--
11          THE COURT:  So you should be in Federal Court.
12          MR. HANSMEIER:  That is an absolutely false
13  representation on their side.  They have no basis for saying
14  this is a copyright infringement case.  This is a common
15  thing that they do they just say well it's a copyright
16  infringement case and we say back to them okay, you think
17  it's a copyright infringement case, prove it, show some fact
18  that says this is a copyright infringement case.  Tell us
19  the copyright work, tell us the date and time of the
20  infringement activity, show us copyrighted work, tell us
21  anything that would tend to show us any correspondence from
22  us that said this company is involved in copyright.  They
23  just say it and they have no basis for doing it.  I mean
24  they may as well say this is a hit and run case.
25          THE COURT:  Okay so they don't so copyright

1   infringement but I'm just looking at your Complaint and you

2   also weren't here when it was just Mr. Dugas and Ms.

3   Morrison and so when Mr. Dugas brought this motion saying

4   yeah we want all these ISP's and Ms. Morrison I said any

5   objection?  She just sat there and looked and said no, no

6   objection.  I thought that's very strange that a Defendant

7   would have no objection to all of this other so it did

8   appear that there was some kind of illusion or plot, plan

9   going on and it looks like by Mr. Merkel's affidavit that

10   he's kind of agreeing with that.

11          MR. HANSMEIER:  I think it's very natural for a

12   Defendant to want to say that this case is settled and

13   there's no reason for it to continue.  But again, if there's

14   an agreement that he's going to be exonerated from

15   liability, I would expect to see something in writing.  I

16   don't think I would--well our client is not agreed to settle

17   the matter I guess is the bottom line.

18          THE COURT:  Okay.  All right well I'll take this

19   matter under advisement.  I'll review everything that's been

20   submitted but my tendency right now is to think that we

21   don't have jurisdiction.

22          MR. STEOOE:  Your Honor, can we brief the issue

23   about the questions your concerns that you've raised and

24   provide within a few days some pleading addressing the

25   concerns that you raised?

1        THE COURT:  Didn't they already raise that in
2    their first initial--I can't remember which documents I read
3    it in but wasn't it already raised and you have sufficient
4    time to reply and you have sufficient time to reply.  Who
5    are you?
6        MR. LEVINTHAL:  I apologize for my late arrival.
7    I'm here on behalf of Phil Gainsley.  My name is Seth
8    Levinthal I'm representing a John Doe on behalf of Mr.
9    Gainsley he asked me to attend on his behalf and on behalf
10   of his client John Doe and he raised this argument in his
11   brief on December 12th.  So it has been raised and they've
12   had plenty of time to respond.
13       THE COURT:  And I'm sorry I did recognize you,
14   but I just didn't know what you had to do with this case.
15       MR. LEVINTHAL:  And of course there would be no
16   reason that you would it was the last minute and Mr.
17   Gainsley said I haven't heard from the Court about appearing
18   by phone and he said 9:30 and whoops.
19       THE COURT:  It was 8:30.
20       MR. LEVINTHAL:  So I apologize for that.
21       THE COURT:  Because I have already have the
22   request for last submissions is denied and I already have my
23   jury waiting.  All right so the late submission is denied
24   and I already have all the information that I need and thank
25   you we'll note your appearance as well, Mr. Levinthal.

1       Thank you.

2

3

4   STATE OF MINNESOTA)

5                     )

6   COUNTY OF HENNEPIN)

7

8        I, Lynn R. Burkett, do hereby certify that the above

9   and foregoing transcript is a true and correct transcript of my

10  stenograph notes and is a full, true and complete transcript of

11  the proceedings to the best of my ability.

12

13  Dated:  March 4, 2013

                                    Lynn R. Burkett
14                              Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25