# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

AF HOLDINGS, LLC,                           Civil Action No. 2:12-CV-00262-WCO

          **Plaintiff,**

v.

RAJESH PATEL,

          **Defendant.**

_____

## PLAINTIFF'S CROSS-MOTION FOR SANCTIONS AND RESPONSE TO DEFENDANT'S MOTION FOR SANCTIONS

On April 6, 2013, attorney Blair Chintella filed a motion for sanctions on behalf of his client, Rajesh Patel. (ECF No. 16.) In his motion, Defendant seeks sweeping relief, including an evidentiary hearing on the issue of bad faith, a finding that personal jurisdiction exists over numerous third-parties, an order requiring Plaintiff to make an accounting of its litigation efforts throughout Georgia, and an order requiring Plaintiff to disgorge any settlements it has ever received in Georgia and to pay treble those amounts to the Court. (*Id.* at 1.) In sum, Defendant seeks to have this Court eschew its Article III duties in order to convene an inquisition on the propriety of BitTorrent-related copyright infringement litigation in Georgia. The Court should decline the Defendant's invitation.

The Plaintiff in its Cross-Motion hereby requests the following relief: 1) An Order dismissing Defendant's motion and this action in its entirety; 2) An Order holding that bad faith exists on the part of Defendant's counsel; 3) An Order sanctioning Defendant's counsel $200 for each frivolous exhibit submitted in its motion; 4) An order requiring Defendant's counsel, who is a member of the Electronic Frontier Foundation (EFF) to disclose the total amount of monetary benefits received by Alan Cooper from the EFF and its members, agents, colleagues and followers. Should the case not be dismissed, an order scheduling a hearing into possible witness tempering by the EFF.

## Background

The plaintiff's attorney filed a complaint against Rajesh Patel on behalf of plaintiff. The complaint alleged in part that "Defendant had a duty to secure his Internet connection….Defendant's failure to secure his Internet access account, thereby allowing for its illegal use, constitutes a breach of the ordinary care…defendant's negligent actions allowed numerous others to unlawfully copy and share Plaintiff's copyrighted Video, proximately causing financial harm"

Defendant failed to respond to Plaintiff's Complaint and as a result a default was entered against the Defendant. The undersigned offered to stipulate to dismiss the matter. Defendant's counsel, Blair Bartholomew Chintella, a

member of the EFF refused to stipulate to the same, although it would have been beneficial to his client to do so. His client has admitted to the allegations in the complaint. The declaration of Rajesh Patel (Exhibit A) states the following.

> "2. After receiving paperwork from my mother, I placed it amongst the rest of my mail and was unable to find it until approximately February 28, 2013."

> "3. During the pendency of this litigation I have been managing two gas stations and there has been an extremely high turnover rate of employees due to them either quitting or being terminated as a result of misconduct."

> "8. At the time of the alleged infringement, I operated two gas stations, one of which had free wireless access for my customers."

Here the Defendant admitted to the allegations of the complaint which stated that Defendant had failed to secure his internet. Defendant admitted that, although he had employees who were engaged in misconduct, he failed to secure his internet access. Defendant admitted to residing with a responsible adult who handed him a copy of the summons prior to the answering deadline. The defendant set forth neither a meritorious defense, nor a reason for not failing to respond. This Court could have easily held the default in place. The Defendant is fortunate that Plaintiff's counsel filed the voluntary dismissal. Nevertheless, Defendant's attorney, Blair Chintella, who is  a member of the EFF had other agendas and therefore, failed to agree to dismiss this matter although it was offered.

Not wanting to be accused of bad faith, the undersigned asked Mr. Chintella on several occasions to stipulate to dismiss the matter. Chintella declined. Finally, Chintella sent an email reminding plaintiff's counsel that this

action could be dismissed under Rule 41(a)(1).  Mr. Chintella knew that the undersigned was familiar with this rule and knew that a reminder was not necessary. As such, the undersigned took Mr. Chintella's sentence to suggest that a Voluntary Dismissal would be in good faith.

The undersigned would not expect a fellow attorney to suggest any bad faith filings. However, it is clear that Mr. Chintella had other motives.

As Defendant's filing makes clear, attorney Blair Chintella harbors deep personal resentment towards attorney John Steele. Defendant spends a good portion of his brief discussing the history of Steele's involvement in BitTorrent-related infringement litigation without attempting to show how Steele—who is neither a party to this case nor has filed an appearance in it—has directed any bad faith conduct towards this Court. *See generally id.* By way of background, upon information and belief, Steele and Chintella have had an acrimonious relationship prior to the commencement of this action.  Chintella has failed to notify this court of this relationship in his motion.

Mr. Chintella perhaps believes that Mr. Steele has spread Chintella's mug shot, from a 2011 DUI arrest, across the Internet. However, Mr. Chintella's mug shot was circulated by infamous websites that post mug shots from public arrest records and demand monetary payment for their removal (www.bustedmugshots.com and www.justmugshots.com). Nevertheless, Plaintiff

4

believes that Chintella's acrimony towards Steele is important context for the Court to consider when reviewing Defendant's motion, which seeks, *inter alia*, substantial relief against Steele, even though Steele is not a party or attorney involved in this case. Plaintiff's attorney has a copy of the mugshot and can provide the same to the Court if so requested.

One other important fact for the Court to consider is Chintella's role as a panel attorney for the Electronic Frontier Foundation ("EFF"). (*See* https://www.eff.org/issues/file-sharing/subpoena-defense). The overriding mission of the EFF has been to shield the Internet from effective regulation—"defending it from the intrusion of territorial government." Jack L. Goldsmith & Tim Wu, Who Controls the Internet?: Illusions of a Borderless World 18 (2006). This mission relies on undermining effective enforcement of intellectual property rights. Purporting to speak on behalf of "cyberspace," a co-founder of EFF (who presently serves on its board of directors) has warned the "Governments of the Industrial World" that "[y]our legal concepts of property, expression, identity, movement, and context do not apply to us." John Perry Barlow, A Declaration of the Independence of Cyberspace (Feb. 8, 1996), available at https://projects.eff.org/~barlow/Declaration-Final.html (as of April 17, 2013).

The EFF is a left wing organization which has some of the same goals as the anti-government group "Anonymous" as well as the terrorist group "Wikileaks".

The EFF has been actively and unsuccessfully fighting digital copyright enforcement efforts for over one decade. Memorandum of Amici Curiae, *Sony Music Entertainment, Inc. et al., v. Does 1-40*, No. 04-00473 (S.D.N.Y. Apr. 7, 2004). As the sweeping nature of his requests for relief make clear, Chintella's interests in this case are far broader than those of his client.

## Argument

The Court should deny Defendant's motion because it fails to establish a lawful basis for the relief he seeks. First, Defendant's discussion of other cases is not sufficient to establish a finding of bad faith in this case. Second, Defendant's discussion of this case makes clear that the foundation of his motion is speculative assertions. Third, Plaintiff did not engage in bad faith conduct.

### I.   Defendant's Discussion of Other Cases is Not Sufficient to Establish a Finding of Bad Faith in this Case

Defendant spends seventeen pages discussing other cases, including: an inaccurate listing of the "key players" associated with a third-party law firm, a superficial summary of BitTorrent copyright litigation, a bizarre set of accusations regarding declarations not filed in this case, a description of a Florida Bar proceeding not involving the undersigned counsel, a description of a case pending in the U.S. District Court for the Middle District of Florida involving different parties and counsel, a misleading summary of a doctored 30(b)(6) deposition transcript from a

different case, a description of Alan Cooper's testimony that was delivered well after the case at bar was filed, a condemnably inaccurate summary of Fifth Amendment law, and individuals named Allan Mooney and Anthony Saltmarsh, whose relationship to this case is unclear. (ECF No. 16 at 2-18.)

Defendant's seventeen-page discussion of other cases leaves important questions unanswered. Why do these other cases matter to Defendant or to the Court? How would the disposition of a frivolous complaint filed against Steele with the Florida Bar, for example, have anything to do with whether bad faith conduct occurred in this case?

While it may have been cathartic for Defendant's counsel to embark on a seventeen-page diatribe against Steele, facts from other cases are not relevant to the instant proceeding. Nor are they admissible in this case. Further, to the extent that consideration of third-party cases aids the Court's evaluation of Defendant's motion, it bears mentioning that upwards of thousands of BitTorrent copyright infringement cases that have been brought by copyright holders across the United States over the past three years. Defendant is only able to point to two cases where courts have raised specific concerns.

Additionally, it is reported on the internet that  Mitch Stoltz, a staff attorney with the EFF has stated that EFF took care of Cooper's travel arrangements to testify in a California case. As such, any statements made by Mr. Cooper should be

suspect. There is no evidence to suggest that Mr. Cooper has worked an honest day in his life. Rather, it appears that Mr. Cooper has spent his lifetime depending on the kindness of others. Logic dictates that the more Mr. Cooper testifies against those opposed to the EFF, the longer he is allowed to travel from state to state.

## II.   Defendant's Discussion of this Case Makes Clear That the Foundation of his Motion Consists Entirely of Speculative Assertions

In contrast to the seventeen pages he spends discussing other cases, Defendant spends only seven pages of his memorandum discussing this case. The salient features of Defendant's argument section are his pervasive use of qualifiers and his complete lack of evidence. (*See, e.g.*, ECF No. 16 at 19) ("The document attached as Exhibit B of Plaintiff's Complaint (Assignment) is *potentially* forged") (emphasis added); *id.* at 20 ("Counsel for Plaintiff *appears* to either be merely taking orders….") (emphasis added); *id.* at 21 ("Plaintiff *may* be one of the companies that Steele has an interest in") (emphasis added); *id.* ("Or *perhaps* Steele has an interest in the 'undefined beneficiary trust'"); *id.* at 22 ("It *seems* clear that the assignment agreement in this case is forged.") (emphasis added).

The only fact established by Defendant's arguments is that the foundation of his motion is speculative assertions. A court cannot rest a finding of bad faith on conjecture; instead, a finding of bad faith must be fully supported by the record.

*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 642-43 (1976) (per curiam) (stating, "Certainly the findings contained in the memorandum opinion of the District Court quoted earlier in this opinion are fully supported by the record."). In this case the record is clear. Plaintiff alleged a *prima facie* case of copyright infringement in its complaint. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). ("To establish infringement, two elements must be proven:

(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."). It also attached a copyright assignment agreement to its complaint that was previously recorded with the U.S. Copyright office, thereby establishing a presumption of its validity. *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1065 (7th Cir. 1994) ("Once Plaintiff produced the certificate of copyright, the burden shifted to Defendant to demonstrate why the claim of copyright is invalid."). Defendant has not offered evidence to rebut the validity of Plaintiff's claims or to establish subject bad faith conduct. Instead, he offers citations to an interview John Steele gave to Forbes. (ECF No. 16 at 7, 22-23.)

## III.   Plaintiff Has Not Engaged in Bad Faith Conduct

Defendant identifies two specific instances of alleged bad faith conduct:  failure to properly complete the Local Rule 3.3 Certificate of Interested Persons and Corporate Disclosure Statement and knowingly submitting an assignment agreement that contains a forged signature. Both of these allegations are without legal or factual merit.

9

1.    **Plaintiff's Certificate of Interested Persons and Corporate Disclosure Statement is Accurate**

Plaintiff accurately completed its Certificate of Interested Persons and Corporate Disclosure Statement. Northern District of Georgia Local Rule 3.3 requires parties to identify parent corporations, publicly held corporations and persons, associations, firms, partnerships, or corporations having either a financial interest in or other interest which could be substantially affected by the outcome of a particular case. LR 3.3, NDGa. In this matter, Plaintiff AF Holdings, LLC did not identify any such persons, and this was an accurate statement. The membership interests in AF Holdings are held in trust. (*See* Declaration of Mark Lutz ¶ 1, attached hereto as Exhibit B.) The name of the trust is "Salt Marsh." (*Id.* ¶ 2) A trust is not a corporation (publicly held or otherwise), a person, an association, a firm or a partnership. The class of potential beneficiaries of the trust are, "Any children born to or adopted by me, and any of my subsequent descendents." The first-person references in the trust's beneficiary provisions relate to Plaintiff's CEO, Mark Lutz. (*Id.* ¶ 4) Because Mr. Lutz does not have any children and because his descendents will not be fixed until the time of his passing, there is no defined beneficiary to identify on the Certificate of Interested Persons and

Corporate Disclosure Statement. (*Id.* ¶¶ 3, 6.)

As an aside, in considering this issue, the Court must look at the circumstances under which attorneys are obligated to make disclosures of financial interest in the litigation. Here, in the Northern District of Georgia, the only duty to disclose financial interests is set forth in a single rule—LR 3.3, NDGa. The rule exists for a single purpose, to allow the court to determine whether it is necessary to disqualify or recuse itself. LR 3.3, NDGa ("In order to enable judges and magistrate judges of this court to evaluate possible disqualification or recusal . . . ."). As such, leaving aside the evidence, there is no reason to believe that the Court would be obligated to recuse or disqualify itself with respect to any of the individuals mentioned in Defendant's motion. Thus, any failure to provide such information—and there has been no failure here— would have no impact on the litigation or the efficiency of the court. Therefore, sanctions under the Court's inherent power would be inappropriate.

## 2.   Plaintiff's Assignment Agreement is Valid

Defendant asserts that Plaintiff's assignment agreement is forged. (ECF No. 16 at 22) ("It seems clear that the assignment agreement in this case is forged.") Plaintiff does not know on what basis Defendant asserts that the assignment agreement is forged because he fails to provide any substantiation for his

statement. Nevertheless, Plaintiff rebuts Defendant's claims with actual law and facts.

Transfer of copyright ownership is governed by 17 U.S.C. 204(a), which provides that "a transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." Put more plainly, the formal requirements of a valid assignment are a *writing* that is executed by the *assignor*. *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990) ("If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Charta: a one-line pro forma statement will do.").

In this case, the copyright assignment is in writing and it was executed by the assignor. Defendant does not challenge either of these facts. Nor could he. There can be no serious dispute regarding the writing requirement. Further, the assignor executed an affidavit verifying his signature. The assignment was recorded with the copyright office giving it *prima facie* validity.

What Defendant is trying to allege is not that the assignment agreement is forged, but that Plaintiff misappropriated the identity of a corporate representative who acknowledged the assignment on Plaintiff's behalf. The problem with this

allegation is that the Court could strike Plaintiff's signature from the assignment agreement and the assignment agreement would still be effective. *See Sunham Home Fashions v. Pem-America, Inc.*, 2002 U.S. Dist. LEXIS 24185 at 22 (S.D. N.Y. 2002).   The signature of the assignee is irrelevant to the validity of the transfer so long as the assignor signs the instrument.[1]

Further, the issue of identity misappropriation is not a right of the Defendant. It is the right of the person whose identify was allegedly misappropriated. Defendant has no standing to seek relief on the grounds of the alleged misappropriation of someone else's identity. The important question for the Defendant and for the Court is whether the assignment agreement is valid. For the reasons described above, it indisputably is.

Additionally, the defendant, Patel, has admitted in his declaration that he was negligent in failing to secure his website as alleged in paragraphs "62-70" of plaintiff's complaint. As such, plaintiff's complaint is meritorious. For Chintella to assert otherwise is an outright lie.

---

[1] **Plaintiff would like to make clear that it takes allegations of identity misappropriation extremely seriously and categorically denies engaging in any such conduct. For the Court's background, an individual named Alan Cooper (who was Steele's former caretaker) recently testified before the U.S. District Court for the Central District of California that he was not a corporate representative of AF Holdings LLC and that the signatures on the assignment agreements were not his. Cooper has a financial interest in establishing that Steele misappropriated Cooper's signature. There are several lawsuits currently pending on this issue. *See, e.g., Cooper v. Steele et al.*, 27-CV-13-3463 (Minn. Dist. Ct., Hennepin Cty., 2013); *Prenda Law, Inc. v. Godfread et al.*, 13-cv-00207 (S.D. Ill.); *Duffy v. Godfread et al.*, 13-cv-01569 (N.D. Ill.).**

**IV.    Defendant's Counsel Should be sanctioned for his Bad Faith Conduct**

Sanctions are warranted when a claim is asserted for the "purpose of harassing an opponent." See Walker at 1309. Sanctions under a court's inherent power can be imposed on parties and lawyers alike. Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911 (11th Cir. 1982).

Here Mr. Chintella has clearly made this motion to harass individuals such as John Steele. He clearly does not have his client's interest at heart. Furthermore, he attaches exhibits which are neither evidence nor material to this case. This exhibits tantamount to gossip. Defense counsel should be sanctioned  $200 for making this motion on a case that is clearly marked "warning, case closed on 3/18/13." He should also be punished $200 for each frivolous exhibit which he has filed. Defense counsels arguments have no merit and are made for the sole purpose of harassing individuals and attorneys who protect copyrights. Additionally, Defense counsel's assertions are inflammatory.

Defense counsel states that "Like Gibbs in California, counsel for Plaintiff appears to either be merely taking orders from Steele and/or Hansmeier, or at least Gibbs, who acts as a proxy for Steele and Hansmeier."

While the foregoing comment is once again gossip to which Defendant's

14

counsel is addicted, the undersigned must respond to protect his integrity.

From what has been put forth, Brett Gibbs is a fairly new attorney much like Defendant's counsel.  The undersigned, on the other hand, has over 16 years experience practicing law, has settled over millions of dollars worth of cases, including state and federal cases and has also served in Afghanistan as a Foreign Claims Commissioner, settling foreign claims in a war zone.

The undersigned would not assign Brett Gibbs to negotiate a left turn with his vehicle, let alone a settlement on behalf of a client, regardless of whether the case was venued in Georgia, California or Afghanistan. While Gibbs may be a pleasant young man, to assert that Plaintiff's attorney takes orders from Brett Gibbs is absurd and laughable.

Defendant's counsel's so called evidence that Plaintiff's counsel has engaged in unethical behavior is that plaintiff's attorney's first name is not listed in an email address. Defense counsel cites Superior Court rule allegedly requiring the same. Mr. Chintella forgets this case is venued in federal court. Under Local Rule 11.1, Counsel's name, complete address, telephone number, facsimile number and Georgia Bar number shall appear on every pleading and other paper presented for filing. As this court will notice, Mr. Chintella is not in compliance with Local Rule 11.1. His facsimile number is absent on all documents filed by him. Nevertheless, Plaintiff's counsel is not seeking sanctions for such an immaterial omission. LR

11.1 is mentioned here to demonstrate the level of pettiness being exhibited by the inexperienced defense counsel.

### V.     The Court should inquire into Whether Defendant's Counsel attempted to Extort $3,000 from Plaintiff's Counsel

Pursuant to O.C.G.A. 16-8-16 (2010)

(a) A person commits the offense of theft by extortion when he unlawfully obtains property of or from another person by threatening to:

(2) Accuse anyone of a criminal offense;

(3) Disseminate any information tending to subject any person to hatred, contempt, or ridicule or to impair his credit or business repute;

On April 2, 2013, Defendant's Counsel threatened plaintiff's counsel via telephone by stating that he would inform the Court of a potentially forged document if plaintiff failed to pay up. If this action is not dismissed, plaintiff's counsel request that the court review this matter and determine whether such a threat violates any ethical rules or criminal statutes.

### Conclusion

The Court should deny Defendant's motion for sanctions. This Court should sanction Blair Chintella for opening a closed case, failing to disclose his relationship to the EFF and its relationship to Cooper, putting his client at risk and for harassing individuals, who are not parties herein.

16

                              Respectfully Submitted,

                              AF Holdings LLC,

DATED: April 20, 2013

                              By:        /s/ Jacques Nazaire

                              Jacques Nazaire (Bar No. 142388)
                              125 Town Park Drive, Suite 300
                              Kennesaw, Georgia 30144
                              Telephone: (404) 923-0529
                              Facsimile: (678) 559-0798
                              nazaire.jacques@gmail.com
                              *Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| **AF HOLDINGS, LLC** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : **Civil Action No.** |
| | : **2:12-cv-00262-WCO** |
| **RAJESH PATEL,** | : |
| | : |
| **Defendant.** | : |

_____

**<u>Local Rule 7.1(D) Certification</u>**

I hereby certify that Plaintiff's Cross- Motion for Sanctions and Response to

Defendant's Motion and accompanying Memorandum of Law comply with all

paragraphs of LR 5.1.


Dated April 20, 2013:


Respectfully Submitted:

_____/s/ Jacques Nazaire_____
Jacques Nazaire (Bar No. 142388)
125 Town Park Drive, Suite 300
Kennesaw, GA 30144
(404) 923-0529
Facsimile: (678) 559-0798
nazaire.jacques@gmal..com

18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

AF HOLDINGS, LLC       :
                   :
         Plaintiff,    :
                   :
v.                   :  Civil Action No.
                   :  2:12-cv-00262-WCO
RAJESH PATEL,       :
                   :
         Defendant.  :
_____

## <u>Certificate of Service</u>

I hereby certify that on April 20, 2013, I filed the Plaintiff's Cross-Motion for Sanctions and Response to Defendant's Motion and accompanying Memorandum of Law with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification to the following attorney(s) of record:


Blair Chintella


Dated April 20, 2013:

                             Respectfully Submitted:

                             /s/ Jacques Nazaire_____
                             Jacques Nazaire ( GA Bar No. 142388)
                             125 Town Park Drive, Suite 300
                             Kennesaw, GA 30144
                             Telephone: (404) 923-0529
                             Facsimile: (678) 559-0798
                             nazaire.jacques@gmail.com

2
0