# Exhibit A-1

- *Sunlust Pictures, LLC v. Tuan Nguyen*, M.D.Fl., Case No. 8:12-cv-01685 ECF #44-2,[1] 49-1, 51.
- *Ingenuity 13 LLC v. John Doe*, C.D.Ca., Case No. 2:12-cv-08333, ECF #19-1, 50, 58, 61, 83, 117-3, 124.
- *AF Holdings LLC v. Does 1-96*, N.D.Ca., Case No. 3:11-cv-03335, ECF #17.
- *AF Holdings, LLC v. Doe 1*, N.D.Ca., Case No. 4:11-cv-03067, ECF #20, 26.
- *AF Holdings, LLC v. Does 1-1058*, D.D.C., Case No. 1:12-cv-00048, ECF #32.
- *AF Holdings, L.L.C. v. David Harris*, D.Az., Case No. 2:12-cv-02144, ECF #12-1.
- http://newswire.xbiz.com/view.php?id=161511 (last accessed April 29, 2013).

---

[1] For some reason this document does not have the ECF stamp up top.  However, an identical document can be found at ECF #40-4, which was filed by Sunlust itself.  In case Plaintiff challenges this document's authenticity, Defendant hereby attaches ECF #40-4 to Exhibit B.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

Case No. 8:12-cv-01685-MSS-MAP

SUNLUST PICTURES LLC,

       Plaintiff,

vs.

TUAN NGUYEN,

       Defendant.

_____/

## DECLARATION OF BRETT L. GIBBS

I, Brett L. Gibbs, under penalty of perjury, declare as follows:

1. I am an individual who lives and works in Mill Valley, California.

2. I am not aware of any business I have done within the State of Florida.

3. I do not own property in the State of Florida.

4. I am not engaged in "substantial and not isolated activity" within the State of Florida.

5. I am attorney who works as "Of Counsel" for Prenda Law, Inc. I am not an employee or partner of Prenda Law, Inc. I have a license to practice law in California, and no other states.

6. In my role as "Of Counsel," I draft, file and litigate copyright lawsuits for Prenda Law, Inc. in California.

7. In my role as "Of Counsel," I also advise and educate other attorneys working with Prenda Law, Inc., as well as Prenda Law's clients, generally on proceeding in lawsuits protecting the rights of copyright holders in federal court.

8. In my role as an advisor and educator, I help Prenda Law, as well as their clients, retain counsel to bring lawsuits in other states, and consult with the lead counsel on those cases as the cases progress. I occasionally help lead counsel prepare documents including motions and responses to facilitate lawsuits representing their clients. I do not act as co-counsel on any cases in states where I do not have a license to practice law.

9. In July of 2012, several clients of Prenda Law, Inc. – Sunlust Pictures, First Time Videos, Openmind Solutions, AF Holdings LLC, and Ingenuity13 LLC—needed to file copyright infringement lawsuits against alleged copyright infringers of those clients' copyrighted works.

10. In or around July of 2012, Prenda Law, Inc. posted an ad on Craiglist to find counsel for that could represent the above-referenced clients in the District Court in the Middle District of Florida. I never personally saw the ad.

11. In late July of 2012, I spoke with Mr. George Banas, who I understood was interested in filing and litigating these cases. As I described it to Mr. Banas, he was to be counsel of record for Sunlust, FTV, Openmind Solutions, AF Holdings and Ingenuity13 on nine separate cases. Mr. Banas agreed to be counsel.

12. I explained to Mr. Banas, the complaints would be prepared by Prenda Law and reviewed and filed by Mr. Banas in each case.

13. Mr. Banas agreed to represent these companies.

14. Several days after filing these cases, Mr. Banas made several phone calls to me.

15. When I called him back, Mr. Banas explained that he was very uneasy going forward with these cases. When asked why, he said that he had been contacted by Mr. Graham Syfert. According to Mr. Banas, Mr. Syfert had explained to Mr. Banas that he was

2

opposing counsel on three cases, and explained to Mr. Banas that he had filed a bar complaint against a former Prenda Law employee, and would do the same if Mr. Banas continued on with these cases.

16. A few days after my initial conversation with Mr. Banas, he called me back and told me that he no longer wanted to be involved in these cases because of the possibility that Mr. Syfert's threats would become true.

17. In early August, he requested Prenda Law to find someone to replace him as counsel in these cases.

18. Again, in early August Prenda Law, Inc. set up an ad on Craigslist to find counsel for that could represent the above-referenced clients in the currently open cases in the Middle District of Florida.

19. Soon thereafter, I contacted Matthew Wasinger, an attorney who resided and practiced in the Middle District of Florida and who had responded to the new Craiglist ad.

20. I had a conversation with him, caught him up on the status of the cases, and informed him that Prenda Law, Inc. would help supply any support he needed to help him litigate these cases on behalf of the above-referenced clients.

21. During that conversation, I warned Mr. Wasinger about the past complaints from Mr. Banas about Mr. Syfert. Mr. Wasinger, knowing this, let me know that he still felt comfortable representing all of the companies in all of their cases described above.

22. Approximately one week later, Mr. Wasinger informed me that Mr. Syfert had contacted him. A confidential settlement was reached with one of Mr. Syfert's clients, and that case was dismissed. As for his other two clients, Defendant Oppold and Defendant Nguyen, offers were made that were rejected by Sunlust and FTV respectively.

3

23. In the days that followed, Mr. Wasinger again contacted me. In that contact, among other things, Mr. Wasinger said that Mr. Syfert was contacting him through email and by the phone about small and irrelevant issues related to two Responses to Motions to Dismiss and, specifically, Mr. Syfert making threats about filing bar complaints with the Florida Bar if Mr. Wasinger continued with these cases against Mr. Syfert's clients. Mr. Wasinger told me that these threats bothered him, but ultimately would not cause him to withdraw as counsel in these cases.

24. Days later, Mr. Wasinger told me over the phone that he was withdrawing as counsel of record for these cases.

25. Again, in that conversation, Mr. Wasinger cited Mr. Syfert's threats to file a bar complaint against Mr. Wasinger as one of the main factors in his decision to exit the cases.

26. Mr. Wasinger expressly acknowledged that he believed that there was absolutely no basis for Mr. Syfert to file a bar complaint against him for continuing in these cases, but, nonetheless, his reputation would be in jeopardy if continued as the representative in this case.

27. Again, in early November, Prenda Law, Inc. set up another ad on Craigslist to find counsel for that could represent the above-referenced clients in the currently open cases in the Middle District of Florida.

28. I contacted an attorney named Jonathan Torres who resided and practiced in the Middle District of Florida and who had responded to the new Craiglist ad.

29. Again, I had a conversation with Mr. Torres, caught him up on the status of the cases, and informed him that Prenda Law, Inc. would help supply any support he needed to litigate these cases for the above-referenced clients.

30. On November 16, 2012, Mr. Torres entered his appearance as counsel of record in this case.

31. Day later, Mr. Torress called me after talking with Mr. Syfert to tell me that he too intended to withdraw as counsel in this case and all other cases he had recently joined in the Middle District of Florida. Mr. Torres cited the only reason for his choice to withdraw as counsel for Sunlust: Mr. Syfert had expressly told him that he would be the subject of a bar complaint if he continued in this case.

32. In this conversation with Mr. Torres, he told me that Mr. Syfert could not cite any bar rule that Mr. Torres was in violation of, but Mr. Torres still decided that it would be best to remove himself prior to getting entangled in more litigation against Mr. Syfert, something that he felt could affect his future career. Mr. Torres, though angry about the unexplained threats coming from Mr. Syfert, told me that he did not want to risk his still relatively new practice in light of Mr. Syfert's threats.

33. In a later conversation, Mr. Torres explained that he had called the Florida Bar advice line, told an attorney about Mr. Syfert's threats, and was advised that, if those threats did in fact occur, Mr. Torres would have a valid claim to file a complaint with the Florida Bar against Mr. Syfert. In an email Mr. Torres said the following: "Also just so you know, I did anonymously (for now) call the Florida Bar and explain the circumstances behind this and they gave me some general advice. They did indicate that Mr. Syfert's conduct towards me and Mr. Wassinger might be in violation of Rule 4-3.4 subsection h)

5

FAIRNESS TO OPPOSING PARTY AND COUNSEL, which states that A lawyer shall not (h) present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter."

34. Attached as Exhibit A is a true and correct copy of an email sent to me talking about this conversation he had with an attorney at the Florida bar and on signing the declaration relating to Mr. Syfert's conduct.

35. Attached as Exhibit B is a true and correct copy of the proposed Declaration of Jonathon Torres that I sent to Mr. Torres; a document that Mr. Torres said that he would sign once he had modified some of the language. Mr. Torres never signed nor submitted an alternative version of that declaration.

36. After the November 27, 2012 hearing, I again contacted Mr. Wasinger, and confirmed with him that the reason that Mr. Wasinger had attempted to be released from this case was because of Mr. Syfert's bar-complaint threats.

37. Additionally, following the November 27, hearing, and in light of Mr. Torres' apparent confusion regarding his role in this matter, Prenda Law has reached out to its referral attorneys to confirm that they accurately understand what their role is.

38. I never traveled to Florida in relation to this case or any other case filed in Florida, and/or personally participated in any proceedings related to this case or any other case filed in Florida.

I, Brett L. Gibbs, declare under the penalty of perjury that the forgoing is true and correct.

Executed on December 21, 2012, in Mill Valley, CA.

Brett L. Gibbs

Exhibit "A"
Declaration of Brett Gibbs - 4/11/2013

1

2

3 **DECLARATION OF BRETT L. GIBBS**

I, Brett L. Gibbs, declare and state as follows:

1.     I am an attorney at law duly licensed to practice before all of the courts in the State of California.     I have personal knowledge of the facts set forth below, and I could and would competently testify to them if called upon to do so.

2.     I was previously "Of Counsel" to Prenda Law and was attorney of record for Prenda Law clients in connection with copyright litigation in California.

3.     At some point in time in 2012, I was asked by John Steele and Paul Hansmeier, who I have previously referenced as "senior members" of Prenda Law in a declaration submitted in a California District Court,[1] to be a resource to answer questions and provide guidance in connection with certain copyright cases filed by attorneys hired by Prenda Law in Florida, including *Sunlust Pictures, LLC v. Tuan Nguyen,* Case No. 8:12 –cv- 01685 MSS-MAP (the "*Sunlust* Action"). If questions from the Florida counsel arose about issues that I was not familiar with or required decisions by Prenda Law's clients, I would raise them  with John Steele and Paul Hansmeier and receive instructions from John Steele and Paul Hansmeier that I would then pass onto the Florida counsel.

4.     For example, the decision to file the *Sunlust* Action was made by Messrs. Steele and Hansmeier, the settlement parameters were given to me by Messrs. Steele and Hansmeier, and it was Messrs. Steele and Hansmeier who gave me instructions concerning how to advise the Florida counsel in the *Sunlust* Action. Moreover, I believe that it was Mr. Steele that was responsible for locating the various Florida counsel to handle the litigation in Florida on behalf of Prenda Law.

5.     I have no recollection of talking to Paul Duffy concerning the *Sunlust* Action prior to the Court's November 8, 2012 Order requiring "a principal of Prenda

27 _____

28
[1] DKT. 58  in *Ingenuity 13, LLC v. John Doe, Case No.: .2:12 – cv -- 08333 ODW -- JC.*

1

Law, Inc." to attend that hearing. I no recollection of discussions with Mr. Duffy relating to strategic decisions in this matter.

6.      I was told by either Paul Hansmeier or John Steele that Mark Lutz would show up at the November 27, 2012 hearing in the *Sunlust* Action. I believe that it was either John Steele or Paul Hansmeier that made this decision. I was not part of the decision making process which led to Mark Lutz appearing at the November 27th hearing.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration is executed on the *ll* th day of April, 2013, in Mill Valley, California.

_____
BRETT L. GIBBS

2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUNLUST PICTURES LLC,

        Plaintiff,

        v.

TUAN NGUYEN,

        Defendant.

Case No. 8:12-CV-01685-MSS-MAP

_____/

## MEMORANDUM OF NON-PARTY JOHN STEELE IN SUPPORT OF MOTION TO STRIKE AND MOTION FOR SANCTIONS AGAINST DEFENDANT TUAN NGUYEN AND ATTORNEY GRAHAM SYFERT

Non-Party John Steele[1] respectfully moves the Court for three forms of relief. First, the Court should strike Defendant Tuan Nguyen's notice of agreements on motion for sanctions. Doc. 49. Second, the Court should impose sanctions on Defendant's counsel under 28 U.S.C. Section 1927. Third, the Court should issue an order to show cause under its inherent power to address Defendant's apparent fraud on the Court. For the reasons described herein, the Court should grant these requests for relief.

### BACKGROUND

Defendant Nguyen's latest filing, Doc. 49, is his fourth attempt to have sanctions imposed against Steele in a matter that Steele is neither a party to nor attorney of record in. Defendant Nguyen first sought sanctions against Steele and the other non-parties to this

---

[1] Steele files his motion *pro se* because Brett Gibbs' contradictory testimony in this matter has created an apparent conflict of interest that necessitates the Non-Parties' counsel's withdrawal from this matter. *See* Fla. R. Prof. Conduct 4-1.7, 4-1.9, 4-1.16, and commentary. Steele anticipates a motion for withdrawal to be filed by his existing counsel in the coming weeks.

matter (the "Non-Parties") pursuant to 28 U.S.C. Section 1927, on the theory that the Non-Parties had unreasonably multiplied this litigation. Doc. 31. Defendant Nguyen also sought to have Steele and the other Non-Parties held jointly and severally liable for the award of attorney's fees he sought against the Plaintiff, Sunlust Pictures LLC ("Sunlust"). Doc. 35. The Non-Parties, including Steele, responded to both motions. Doc. 40, Doc. 42.

Defendant then filed a second motion for sanctions against Steele. Doc. 46. The Middle District of Florida Local Rules prohibits the filing of a reply brief without leave of court. LR 3.01(c). Defendant Nguyen neither sought nor received leave of the Court to file a reply brief. Much of Defendant Nguyen's second motion for sanctions against Steele responded to matters raised in the Non-Parties' response to his prior sanctions motion and the exhibits to that response.

Defendant has now filed a document titled notice of agreements on motion for sanctions. Doc. 49. Once again, much of Defendant's filing responds to matters raised in the Non-Parties' response to his original sanctions motion.

The background of this matter, numerous facts relevant to the Court's evaluation of Defendant's latest filing, and a discussion of relevant legal principles are set forth in these prior responses. In order to avoid burdening the court record with duplicative filings, rather than repeat the matters contained in the prior responses, Steele adopts and incorporates by reference those responses and will cite to the responses and the corresponding exhibits whenever possible.

2

I. **The Court should strike Defendant's notice of agreements and the exhibits attached thereto**

The Court should strike Defendant's notice of agreements. While titled a notice of agreements, the notice is, in actuality, a second unauthorized effort by Defendant to respond to the arguments raised in the Non-Parties' response to Defendant's original sanctions motion. For example, Defendant states, "It is the belief of the Defendant that Mr. Wasinger was duped by Prenda Law and is a victim of their actions, who acted solely upon their direction." Doc. 49 at 2. He further states, "Mr. Wasinger was contacted an[d] hired through Brett Gibbs, however, the use of Brett Gibbs was an effort to conceal and eliminate the identity of John Steele and the other actors within Prenda Law who were directing the case." *Id.* He also states, "Mr. Gibbs ... was acting as merely as [sic] go-between for the managers and litigation decision makers of Illinois attorney John Steele and Minnesota attorney Paul Hansmeier." *Id.* at 5. The overriding purpose of Defendant's notice of agreements is to further attack Steele.

The Court should strike Defendant's notice of agreements for several reasons. First, the Local Rules of this District prohibit the filing of a reply brief without leave of court, which Defendant Nguyen neither sought nor received. LR 3.01(c). Further, Defendant's filing is gratuitous; it bears no relevance to the concerns raised by the Court at the November 27, 2012 hearing. Finally, Defendant's filing attempts to further malign Steele, for whom defendant's counsel harbors deep personal resentment. On these counts, Defendant's notice should be stricken under the Court's inherent power and Federal Rule 12(f). *See* Fed. R. Civ. P. 12(f) ("the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). The fact that this has now

3

become a familiar tactic on Defendant's part does not lessen its impropriety; rather, it magnifies the need for the Court to end this practice.

The Court should also strike the exhibits to Defendant's notice of agreements. All of the exhibits lack foundation (Defendant has not established how he has personal knowledge regarding the authenticity of any of the documents). Fed. R. Evid. 602. The exhibits also constitute inadmissible hearsay and double hearsay. Fed. R. Evid. 801(c). Exhibits B and C also contain irrelevant material. (They concern litigation outside of this case). Fed. R. Evid. 401. For all of these reasons, the Court should strike the exhibits to Defendant's filing.

## II. The Court should award Steele his reasonable excess costs and attorney's fees pursuant to 28 U.S.C. Section 1927

The Court should award Steele his reasonable costs and attorney's fees pursuant to 28 U.S.C. Section 1927. Steele has been forced to expend substantial resources in defending himself against Defendant's repeated unreasonable and vexatious filings in this matter. The Court never invited a motion for sanctions against Steele. Nor did the Defendant have a good faith basis for bringing one. In a November 27, 2012 e-mail, Defendant's counsel identified his grounds for seeking sanctions against Steele, "I include John Steele because, well, I believe he has the purse strings and I believe he has the most against me personally and he showed up at the hearing today." Doc. 40-6 at 1. Defendant's counsel acknowledged his lack of grounds for seeking fees against Steele:

> I will be requesting fees in the amount of approximately 10K for Nguyen, and filing a motion for sanctions against Wasinger, Gibbs, Duffy, Steele, and Prenda Law, Inc.... *We all know this game. While I might not be successful of [sic] pinning every one of you in, you and I know I will make things incredibly awkward.*

4

*Id.* (emphasis added).

28 U.S.C. Section 1927 provides, "Any attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 allows district courts to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith. *See Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1544 (11th Cir. 1993). A movant seeking sanctions under 28 U.S.C. 1927 must demonstrate bad faith conduct that unreasonably and vexatiously multiplies the proceedings. *Id.* These elements are present here.

Defendant's basis for seeking sanctions against Steele was his attorney's personal grudge: "I include John Steele because, well, I believe he has the purse strings and I believe he has the most against me personally and he showed up at the hearing today." Doc. 40-6 at 1. Using the federal courts to satisfy a personal grudge is the epitome of bad faith, especially when the filer acknowledges the frivolity of his filings. The purpose of the federal courts is to resolve cases and controversies, not personal disputes. Because Defendant's stated motives for bringing his motions were improper, the Court should find that he acted in bad faith.

Attorney Syfert's bad faith conduct has unreasonably and vexatiously multiplied these proceedings. On November 27, 2012, the Court indicated it would entertain a motion for sanctions against specified persons. Doc. 28 at 20-21. Steele was not one of them. *Id.* Nevertheless, since that time attorney Syfert has filed four independent sanctions motions against Steele. Doc. 31, Doc. 35, Doc. 46, Doc. 49. Each of these filings has required Steele

to incur substantial fees to defend against. As demonstrated in the Non-Parties' responses to Defendant's filings, the filings against Steele have lacked even a shred of legal or factual merit. Doc. 40, Doc. 42. Instead of the carefully defined scope of motions invited by the Court at the November 27, 2012, hearing, the docket has been overwhelmed by Defendant's repeated unwarranted filings against Steele and others.

Finally, there is nothing to indicate that Defendant's counsel will stop using this Court as a platform for airing his grievances. Defendant's actions have imposed an extreme burden on both Steele and the Court. The Court should require attorney Syfert to reimburse Steele for the excess financial burden Steele has suffered as a result of Syfert's vexatious filings. The Court should also consider imposing any other sanctions necessary to deter future vexatious filings by Defendant in this matter. The Court is authorized to do so under its inherent power. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46 (1991) ("[A] court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'").

## III.  Defendant's filing is an apparent fraud on the Court

Defendant's filing is an apparent fraud on the Court. The affidavit attached to Defendant's filing contains demonstrably false testimony that was procured through an offer of settlement. Moreover, Defendant misled the Court regarding the circumstances of procuring the false testimony.

### A.  The affidavit attached to Defendant's filing is demonstrably false testimony

The new Gibbs affidavit is demonstrably false testimony in several independent respects. First, Gibbs falsely characterizes himself as a junior attorney at Prenda Law who

6

was supervised by Steele and Hansmeier. Second, Gibbs falsely states that he played no role in the recruitment of attorneys Banas, Wasinger and Torres. Finally, Gibbs falsely states that he played no role in Mr. Lutz's attendance at the November 27, 2012 hearing.

### 1. Gibbs falsely characterizes himself as a junior attorney at Prenda Law who was supervised by other attorneys

In his December 20, 2012 affidavit, Doc. 40-4, Gibbs testified that his role at Prenda Law, Inc. was to "advise and educate other attorneys working with Prenda Law, Inc., as well as Prenda Law's clients, generally on proceeding in lawsuits protecting the rights of copyright holders in federal court." Doc. 40-4 ¶ 7. Gibbs further testified that "In [his] role as an advisor and educator, [he] help[s] Prenda Law, as well as their clients, retain counsel to bring lawsuits in other states, and consult[s] with the lead counsel on those cases as the cases progress." *Id.* ¶ 8. He also described his efforts to "help lead counsel prepare documents including motions and responses to facilitate lawsuits representation their clients." *Id.* In sum, Gibbs held himself out as an "advisor and educator" with respect to other Prenda Law attorneys, attorneys around the nation and Prenda's clients. This testimony contradicts Gibbs' new affidavit, which characterizes him as a junior attorney who simply took orders from others.

The record and other evidence also contradict Gibbs' new testimony. At the November 27, 2012 hearing, attorney Jonathan Torres testified that "[He] was contacted by Brett Gibbs in order to be local counsel to appear on behalf of Prenda Law." Doc. 28 at 5. When later asked by the Court, "And who were you contacted by?", Torres responded, "I was contacted by Mr. Brett Gibbs from Prenda Law." *Id.* at 7. The Court questioned Torres, "Who is Mr. Gibbs in relation to Mr. Duffy?" Torres responded, "Well, Mr. Gibbs apparently

is a principal at Prenda Law, to my understanding." *Id.* at 11. The tenor of Torres' testimony led the Court to conclude that Brett Gibbs served a substantial role at Prenda Law: "So, Mr. Torres, you don't know who your general counsel is other than Mr. Gibbs...." *Id.* at 12.

Meanwhile, at the same hearing Steele informed the Court, "I'm an attorney, but not involved in this case ... I'm not an attorney with any law firm right now ... but I am certainly familiar with this litigation just because I've been involved in many different cases like this in the past." *Id.* The Court asked for clarification, "But not this case?" Steele responded, "Correct." *Id.* When the Court later questioned Steele regarding Plaintiff, Steele informed the Court, "I no longer actively practice law." *Id.* at 19. The Court confirmed the substance of Steele's statement, "You're not practicing law?" *Id.* Steele responded, "Correct. I do appear occasionally at hearings on an ad hoc basis, but I do not have any current clients." *Id.* Steele further stated, "I want to make very clear to this Court I'm not purporting in any way to be an attorney licensed in the State of Florida." *Id.* No contradictory testimony was presented at the hearing.

Gibbs had an opportunity to offer corrections to the record established at the November 27, 2012 hearing in his December affidavit. To a certain extent he did. For example, while the Court described Gibbs as Prenda's general counsel, Gibbs clarified that he was "Of Counsel." Doc. 40-4 ¶ 5. What Gibbs did *not* do, though, was in any way refute Steele's statements that Steele was not with a law firm or otherwise actively practicing law. *See generally id.* Gibbs even endorsed Steele's statements when he joined Steele's affidavit in the December 27, 2012 filing, in which Steele stated that he had no involvement in this case. Doc. 40-5 ¶ 6.

8

Testimony from one of Gibbs' former clients, Mark Lutz, also rebuts Gibbs' new testimony.[2] According to Lutz, Mr. Gibbs was responsible for handling all of his cases nationwide. Lutz Aff. ¶ 4. Lutz further states, "If I ever had a question regarding any of my companies, including AF Holdings and Ingenuity13, I would always speak to Mr. Gibbs." *Id.* ¶ 6. A retainer agreement furnished by Lutz identifies Gibbs as the individual in charge of Lutz's cases and Lutz's primary point of contact at Prenda Law. Lutz Aff. Ex. A. In a disengagement letter signed by Gibbs, Gibbs described himself as the outgoing "Lead Counsel" for Lutz's companies. Lutz Aff. Ex. B.

Gibbs' own testimony, testimony from the November 27, 2012 hearing, Gibbs' tacit and explicit joining of Steele's statements disclaiming involvement in this case and testimony from Gibbs' *own client* all establish the falsity of Gibbs' "junior attorney" narrative.

### 2. Gibbs falsely disclaims involvement in recruiting attorneys Banas, Wasinger and Torres.

Gibbs' new affidavit disclaims his involvement in recruiting attorneys Banas, Wasinger and Torres. Doc. 49-1 ¶ 4 ("I believe that it was Mr. Steele that was responsible for locating the various Florida counsel to handle the litigation in Florida on behalf of Prenda Law.") Yet, Gibbs' original testimony described in great detail his role in recruiting and managing these attorneys. Doc. 40-4 at 9-37 (describing his extensive communications with attorneys Banas, Wasinger and Torres). Further, attorney Torres' testimony at the November 27, 2012 hearing identified Gibbs as the individual who recruited him to file cases on behalf

---

[2] Mr. Lutz is the managing member of two of Prenda's clients, AF Holdings LLC and Ingenuity13 LLC. When Lutz appeared at the November 27, 2012 hearing, he was not appearing on behalf of these entities, but as a corporate representative for Plaintiff. The circumstances of Mr. Lutz's appearance at the hearing are more fully described herein.

of Plaintiff in Florida.  Doc. 28 at 7.  Torres made no mention of Mr. Steele or anyone else in this regard.  *See generally id.*  Mr. Steele disclaimed any such involvement.  Doc. 40-5 ⁋ 6. Finally, Gibbs' response to Defendant's motion for sanctions stated, "Mr. Gibbs assisted Sunlust in this matter by locating and assisting Sunlust to retain counsel in Florida." Doc. 40 at 8.  His current statements to the contrary are simply false testimony.

### 3. Gibbs falsely disclaims involvement in Mr. Lutz's attendance at the November 27, 2012 hearing.

Gibbs disclaims any involvement with Lutz's attendance at the November 27, 2012 hearing.   Doc. 49-1 ⁋ 6.   Yet the attached affidavit of Lutz directly contradicts Gibbs' testimony.  Lutz Aff.  Lutz's affidavit states, "On or about November 21, 2012 I was notified by Brett Gibbs to appear at a hearing as a corporate representative for Sunlust Pictures." *Id.* ⁋ 10.  Lutz goes on to state that Gibbs informed him that the likely purpose of the hearing was for settlement purposes and that Lutz would qualify as a corporate representative for Plaintiff, particularly in light of the fact that Sunlust previously appointed Lutz as its corporate representative.  *Id.* ⁋ 9-14.  Lutz had a great deal of knowledge regarding the underlying facts relevant to this case, but was not intimately familiar with Plaintiff's corporate structure.  Lutz did not anticipate that the Court would be interested in exploring those topics and apologizes for not being more informed in that regard. *Id.* ⁋⁋ 12-14.  Lutz specifically disclaims talking to Steele or Hansmeier about appearing at the November 27, 2012 hearing.  *Id.* ⁋ 19.

10

**B.** **The false testimony attached to Defendant's filing was procured through an offer of settlement**

Syfert approached Gibbs on April 2, 2013, with an offer of settlement. Specifically, Syfert told Gibbs, "I want [you] to sign an affidavit stating that it was 'Person X, at Prenda Law [sic] directed by [sic] activities in the Sunlust v. Nguyen cases [sic] filed in Florida." Steele Aff. Ex. A. Syfert further stated, "If [you] sign an affidavit stating who specifically at Prenda Law directed [your] actions in the Sunlust Florida cases [sic], I will withdraw the motion for sanctions against [you] and ask for no money to be awarded." *Id.* Syfert made obvious whom he wanted "Person X" to be, "I will use it all ... to show that John Steele lied about his involvement in this case, and that he directed Brett Gibbs's actions." *Id.* Syfert's message to Gibbs was clear: lie about John Steele and I will withdraw my motion for sanctions.

The problem, of course, with Defendant's efforts is that he was offering Gibbs something of value to provide testimony that Defendant knew or should have known materially false. As discussed above, the testimony Defendant sought from Gibbs contradicted both Gibbs' prior statements and the record. Defendant was forced to address the obvious inconsistencies between Gibbs' original and updated testimony. *See* Doc. 49 at 4 ("The Defendant accepts the words of Brett Gibbs as truthful, with all seeming contradictions aside. The contradictions within the statements of Gibbs are indications of an eventual truth coming to light- not a fundamental deception.") Defendant acknowledges that Gibbs' new testimony could be construed as a "fundamental deception." Steele agrees.

11

C.   **Defendant misrepresented the circumstances of his procurement of the false testimony**

Defendant described the circumstances of obtaining Gibbs' testimony as follows:

> Defendant reached out to Brett Gibbs, through current counsel for Mr. Gibbs, and was directed to speak with [attorney] Andrew Waxler…. Specifically, Defendant contacted Mr. Gibbs looking for n [sic] answer as to who directed the litigation in the [sic] this Sunlust case, and who made the decision to place Mark Lutz in the courtroom as a corporate representative of the Plaintiff. The defendant wanted a more definitive statement from Mr. Gibbs that would shed light on the management decisions in this matter…. Mr. Gibbs offered the attached declaration [] against the interests of both John Steele and Paul Hansmeier, the original partners of Steele|Hansmeier [sic] PLLC.

Doc. 49 at 3. Defendant paints a picture in which he contacted Gibbs in the course of investigation and Gibbs provided disinterested testimony regarding Steele and Hansmeier. Defendant fails to disclose that he offered Gibbs consideration for his testimony, that he dictated the content of that testimony and that he knew or should have known that the testimony contained false statements of material fact.

D.   **The Court should defend itself against the apparent fraud being perpetrated on it**

A core purpose of the Court's inherent power is to safeguard the integrity of the judicial process. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944) ("Tampering with the administration of justice in [this] manner… involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public."). Defendant's latest filing raises serious concerns regarding whether he is perpetrating a fraud on the Court. Gibbs' new affidavit contradicts his prior sworn testimony and the record. Further, Gibbs' affidavit was procured via an offer of settlement that was not disclosed to the Court. Defendant actively misled the Court regarding the

circumstances of the testimony's procurement. Finally, Defendant dictated the content of Gibbs' testimony. Together, these facts are indicia of serious fraud.

The Court has the power and obligation to safeguard the integrity of the judicial process. In his zealousness to settle a score with Steele, Defendant's counsel has apparently crossed the line from zealous advocacy to engaging in serious misconduct. If the Court, after reviewing all of the relevant evidence, finds that Defendant submitted false testimony, then Defendant and his counsel would be in clear violation of 18 U.S.C. Section 1622 (subordination of perjury) and 18 U.S.C. Section 1512 (obstruction of justice). In that circumstance, a referral of Defendant's counsel to the Florida Bar and the U.S. Attorney for the Middle District of Florida would be warranted.

IV.     **Conclusion**

For the reasons described herein, the Court should strike Defendant's notice of agreements on motions for sanctions, award Steele his excess costs and fees under 28 U.S.C. Section 1927 and order Defendant to show cause regarding his apparent fraud on the Court.

Respectfully submitted,

John L. Steele
*Pro Se*
1111 Lincoln Road
Miami Beach, Florida 33139

## LOCAL RULE 3.01 CERTIFICATION

I HEREBY CERTIFY that on April 24, 2013, I conferred with counsel for Defendant and we were unable to agree on the resolution of the motion.

John L. Steele

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 26, 2013, I filed the foregoing with the Clerk of

the Court which will send a notice of electronic filing to:

Graham W. Syfert
graham@syfert.com

John L. Steele

I, John Steele, under the penalty of perjury, declare and state:

1. I am over eighteen years of age and am competent to testify as to the matters set forth herein. I make this affidavit on the basis of my personal knowledge and, if called, would be prepared to testify as follows.

2. Attached hereto as Exhibit A is a true and correct copy of an e-mail forwarded by Attorney Syfert to my attorney Katherine Yanes.

_____  4/25/13

John Steele

In witness whereof I hereunto set my hand and official seal

_____  4/25/13

Notary Public

My commission expires

Notary Public State of Florida
Jesus Acosta
My Commission DD934633
Expires 10/27/2013

# Exhibit A to Affidavit of John Steele

From: syfert@gmail.com [syfert@gmail.com] On Behalf Of Graham W. Syfert, Esq.
[graham@syfert.com]
Sent: Tuesday, April 02, 2013 6:30 PM
To: Katherine Yanes
Subject: Another Offer and Amendment to Steele Sanctions

Well, the fireworks I expected had water poured on them in the form Prenda law
invoking the 5th amendment at an Order to Show Cause hearing. Since nothing
new came of this, I will be filing the amendment to the second sanctions against
Steele.

I never heard from you regarding my offers of settlement. I take it that
means that they were rejected. Not to be a fussbucket about such things, but I do
hope that each offer was extended individually to each of your clients and not
through solely Mr. Steele, or solely through the
wefightpiracy.org<http://wefightpiracy.org> e-mail system.

All wefightpiracy.org<http://wefightpiracy.org> e-mail systems are controlled
by Mr. Steele and you may not be communicating with your clients. For example,
Mr. Gibbs is not using his wefightpiracy.org<http://wefightpiracy.org> e-mail
address anymore, and therefore all communication to him will go to Mr. Steele.
Please reach out to Mr. Gibbs directly by telephone with this offer.

I'd like to know specifically the response of Mr. Gibbs to my offer, before I
file this amendment. By Friday at 11:00 am. He has already signed an
affidavit stating that it was "Prenda Law" in my case, and now I want him to sign an
affidavit stating that it was "Person X, at Prenda Law directed my activities in
the Sunlust v. Nguyen cases filed in Florida."

If he signs an affidavit stating who specifically at Prenda Law directed his
actions in the Sunlust Florida cases, I will withdraw the motion for sanctions
against Mr. Gibbs and ask for no money to be awarded.

Back to the amendment:

I will be including the Affidavit of John Steele filed where he said he is a
resident of Florida. I will be including the transcript from the hearing in
California where Gibbs testifies that he was nothing more than a secretary for
John Steele and Paul Hansmeier in Florida cases. I will be noting that they all
invoked their fifth amendment right at this hearing today involving fraud in
California. I will be noting that Brett Gibbs states that he was "duped" and that
Matthew Wasinger states that he was "duped" and that generally everyone has
been duped by John Steele.

I will be filing John Steele's response to my second bar complaint against
him, wherein it states that Lutz and Perea are Prenda Law, where Lutz signed an
affidavit stating that I threatened him with a bar complaint.

I will use them to establish both general and specific jurisdiction of the
Tampa court. I will use it all to show that John Steele is still lying about . I
will use them to show that John Steele lied about his involvement in this
case, and that he directed Brett Gibbs's actions.

I will also be notifying the court that Matthew Wasinger has agreed to pay me
$500.00 and that such motion for sanctions is withdrawn.

I will be telling the court that given the level of involvement of Mr. Steele,
directing the actions of Mr. Gibbs, and therefore, any attorney beneath them,
and that he should have filed a Pro Hac Vice application in this matter.

There's not really anything more to discuss, but I'm available by phone. I
will file this by Friday unless I hear from you sooner regarding Mr. Gibbs's
offer specifically.


------------
Graham W. Syfert
Florida/Georgia Attorney at Law

http://www.syfert.com/

Graham W. Syfert, Esq., P.A.
1529 Margaret Street, Ste 2
Jacksonville, FL 32204
Phone: (904) 383-7448<tel:%28904%29%20383-7448>
Fax: (904) 638-4726<tel:%28904%29%20638-4726>

graham@syfert.com<mailto:graham@syfert.com>

NOTICE: The information contained in this email message is intended only for
the personal and confidential use of the recipient(s) named above. This message
may be an attorney-client communication and as such is privileged and
confidential. If the reader of this message is not the intended recipient or an agent
responsible for delivering it to the intended recipient, you are hereby notified
that you have received this communication in error.

I, Mark Lutz, under the penalty of perjury, declare and state:

1. I am over eighteen years of age and am competent to testify as to the matters set forth herein. I make this affidavit on the basis of my personal knowledge and, if called, would be prepared to testify as follows.

2. I manage various adult content related companies, including AF Holdings LLC and Ingenuity13 LLC.

3. In 2011, when I was still working as a paralegal for Steele Hansmeier, I met Brett Gibbs, who was counsel for all the California cases for Steele Hansmeier.

4. When the clients from Steele Hansmeier went over to Prenda Law in November 2011, Mr. Gibbs began to take on more responsibility for the cases nationwide.

5. I also became a client of Mr. Gibbs and Prenda Law on or around November 2011 when I signed a retainer agreement between my new adult companies that I had been building. The retainer agreement made it clear to me that Mr. Gibbs would be handling all of my cases nationwide. I have attached a true and correct copy of that retainer agreement as Exhibit A.

6. If I ever had a question regarding litigation involving any of my firms, including AF Holdings and Ingenuity 13, I would always speak to Mr. Gibbs.

7. Based on conversations I had with Mr. Gibbs, I understood that Mr. Gibbs was overseeing litigation for Sunlust Pictures as he was under my companies.

8. On or about November 21, 2012, I was notified by Brett Gibbs that my attendance at a hearing appear at a hearing before this Court as a corporate representative for Sunlust Pictures.

9. Mr. Gibbs and I discussed the probable purpose of the hearing and my role at the hearing.

10. Mr. Gibbs said that my experience as an owner of several adult content companies, and my experience dealing with pirates and hackers who stole my own content would help the Court evaluate the circumstances of this case.

11. I know of the owner of Sunlust Pictures, Daniel Webber, and have spoken to him and his wife, Sunny Leone, multiple times in the past.

12. I did have an opportunity to review the case with Mr. Gibbs and I do feel like I was prepared for purposes of acting as a corporate representative. Due to the lack of specific areas that the corporate representative was to be informed of, I assumed knowledge of the actual case, and experience in these type of cases was what this Court was seeking by way of ordering the appearance of a corporate representative.

13. Had the order I reviewed with Mr. Gibbs ordered a Sunlust Productions corporate representative to appear and be ready to discuss the internal corporate structure of Sunlust Productions, I would have made certain to be prepared for questions relating to such matters.

14. I apologize for misunderstanding this court's expectations of what the corporate representative was expected to know.

15. I prepared for the hearing on November 27, 2012, with Mr. Gibbs. This is standard practice since I normally speak to Mr. Gibbs regarding any hearings that come up in any of my own cases.

16. I drove up to Tampa for the hearing with Mr. John Steele, who was working with me on unrelated, albeit urgent, business matters during that week. I mentioned why I needed to appear at the hearing to Mr. Steele, and it was clear from Mr. Steele's responses that he had no knowledge of this case.

17. I never spoke to Mr. Steele, Mr. Duffy or Mr. Hansmeier about this case prior to the hearing.

18. Mr. Gibbs stopped serving as lead counsel for my companies on January 29, 2013 when he left Prenda Law. I have attached true and correct copies of disengagement letters I received from Mr. Gibbs, in which he indicated that Mr. Duffy would be the new lead counsel for my companies, as Exhibit B.

_____   4/25/13
Mark Lutz

In witness whereof I hereunto set my hand and official seal

_____   4/25/13

Notary Public
My commission expires:

Notary Public State of Florida
Jesus Acosta
My Commission DD934633
Expires 10/27/2013

# Exhibit A to Affidavit of Mark Lutz



**ENGAGEMENT LETTER**

November 15, 2011

*Re:    Anti-piracy legal services for AF Holdings LLC and Ingenuity 13 LLC, (and/or its related entities).*

Dear Mr. Lutz:

Prenda Law Inc. ("Prenda") will provide legal services to your company and the scope of the services we will render, the manner of calculating, billing and collecting legal fees, and other aspects of the proposed representation are mutually agreed to be as follows:

<u>Services to be Provided</u>

The firm has been engaged to provide to following services:  commencing discovery and settlement efforts against individuals who have been identified as infringing on your company's creative content or who have been identified as hacking into your company's web servers.

Although I will be working on several of your cases, you will have multiple counsels throughout the country involved in cases involving your companies.  The attorney who will be overseeing your company's litigation, and your primary contact at Prenda Law, will be Brett Gibbs.  Of course, you can always contact me as well.

<u>Excluded Services</u>

The firm has not been engaged to provide any legal services other than those described above.

<u>Fees and Expenses</u>

damages against persons who access your web servers or steal your copyrighted content without permission. Expenses related to filing the cases and billed by third parties include filing fees, ISP fees, and courier fees, and will be paid for out of your portion of the revenue.

### Client Cooperation

To enable us to represent you effectively, it is critical that you cooperate fully with us in all matter relating to our representation. We must rely on you to disclose fully and accurately all facts and documents that may be important to our services and you provide other information we request. When we start working on your matter or as the matter progresses, we may express opinions, beliefs or assessments concerning the subject of our representation and the results that might be anticipated. Statements made by any member or employee of Prenda are intended only to be expressions of opinions based on the information available to us at the time, and are not, of course, a promise, assurance or guarantee.

### Timetable

It is difficult to accurately estimate the time we will take to conclude this matter. Generally, these matters will be ongoing until theft of your content piracy has abated, unless developments in technology or the law undo the model. This is only an estimate, and the actual time required to conclude this matter may be longer than expected.

### Documentation

Due to the very special nature of the legal work provided, you understand that sensitive information regarding putative pirates, John Does, and subscribers related to suspected infringement will not be provided to you and shall be kept safe in our facilities until Prenda deems that the information is no longer needed. All parties understand that after a particular person or entity has settled or is otherwise released from any potential liability, or if Prenda believes the subscriber's information is no longer necessary, your instructions are to destroy the subscriber information. It is standard practice in the legal field for law firms to retain records for longer periods of time than outlined in this retainer agreement. However, due to your concern over your liability if third parties illegal access Prenda Law's data, you have instructed us to immediately remove any data-including subscriber information--that is no longer necessary for the prosecution of a current matter. You agree to hold Prenda Law harmless for following your directions regarding document retention described herein.

### Your Right to Terminate Representation

You may terminate this representation at any time with or without cause by notifying us in writing of your desire to do so. Upon receipt of the notice to terminate representation, we will stop filing any new cases on your behalf and shall work diligently to conclude any pending matters.

If you terminate the representation before the conclusion of the matter, we will be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work must be performed, or experience, ability, reputation, the responsibility involved and the results obtained.

### Our Right to Terminate Representation

We may terminate or representation (to the extent permitted by the ethical and court rules) at any time if you breach any material term of this agreement or fail to cooperate or follow our advice on a material matter, if conflict of interest develops or is discovered, or if there exists at any time any fact or circumstance that would, in our opinion, render our continuing representation unlawful, unethical, or otherwise inappropriate. If we elect to

terminate our representation, you will take all steps reasonably necessary and will cooperate as reasonably required to free us of any further obligation to perform legal services, including the execution of any documents necessary to complete our withdrawal from representation in accordance with the provision of this agreement.

On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have any questions, please feel free to contact Brett or myself. Otherwise, please confirm your understanding of this agreement by signing below and sending it back to Brett Gibbs at your convenience.

Sincerely,

/s
Paul A. Duffy, Esq.
*Licensed only in IL, MA, DC*
On behalf of Prenda Law Inc.

I agree to the terms described herein:

Mark Lutz
CEO, AF Holdings LLC and Ingenuity 13 LLC

# Exhibit B to Affidavit of Mark Lutz

BRETT L. GIBBS, ESQ.
ATTORNEY AT LAW

January 29, 2013

Brett L. Gibbs, Esq.

38 Miller
Avenue, #263

Mill Valley

California, 94941

P: 415.325.5900

blgibbs.wefightpiracy.com

Mark L. Lutz
Corporate Representative of Ingenuity13 LLC
C/O Ingenuity13 LLC
Springates East
Government Road
Charlestown, Nevis

*Via Email and US Mail*

Re:     *Ingenutiy13 Case Nos.: 12-1967, 12-1969, 12-4216, 12-1839, 12-1843, 12-4445, 12-4449, 12-4450, 12-2093, 12-4980, 12-4981, 12-4978, 12-4979, 12-4976, 12-4977, 12-2318, 12-2319 .*

        **Confirmation of Withdrawal as Counsel**

Dear Mr. Lutz:

Per our discussion this afternoon, I will be withdrawing as counsel of record in all of the above-referenced cases. Also, per our discussion, Mr. Paul Duffy will be substituting and entering his appearance as lead counsel in all of the above cases.

This is letter is a confirmation of these mutually agreed upon actions. As we both agree, Mr. Paul Duffy will be sufficient in handling the above cases as lead counsel.

Sincerely,

Brett L. Gibbs, Esq.,

CC: Paul Duffy, Esq. (via email)

BRETT L. GIBBS, ESQ.
ATTORNEY AT LAW

January 29, 2013

Brett L. Gibbs, esq.

38 Miller
Avenue, #263

Mill Valley

California, 94941

P: 415.325.5900

blgibbs@wefightpiracy.com

Mark L. Lutz
Corporate Representative of AF Holdings LLC
C/O AF Holdings LLC
Springates East
Government Road
Charlestown, Nevis

*Via Email and US Mail*

*Re:*     *AF Holdings Case Nos.: 12-1064, 12-1066, 12-1067, 12-1068, 12-1075, 12-1078, 12-1079, 12-2049, 12-2394, 12-2393, 12-2404, 12-2411, 12-2415, 12-1654, 12-1656, 12-1657, 12-1659, 12-1660, 12-1661, 12-1663, 12-3249, 12-1519, 12-1523, 12-1525, 12-4219, 12-4221, 12-1840, 12-2204, 12-2206, 12-2207, 12-4446, 12-4982.*

*Confirmation of Withdrawal as Counsel*

Dear Mr. Lutz:

Per our discussion this afternoon, I will be withdrawing as counsel of record in all of the above-referenced cases. Also, per our discussion, Mr. Paul Duffy will be substituting and entering his appearance as lead counsel in all of the above cases. Per our conversation, I will remain as counsel of record on Case No. 12-2396 through the Early Neutral Evaluation hearing; after which time, I will be withdrawing as counsel and substituting with Mr. Duffy.

This is letter is a confirmation of these mutually agreed upon actions. As we both agree, Mr. Paul Duffy will be sufficient in handling the above cases as lead counsel.

Sincerely,

Brett L. Gibbs, Esq..

CC: Paul Duffy, Esq. (via email)

## AFFIDAVIT OF ALAN COOPER

I, Alan Cooper, under the penalty of perjury state that the following is true:

1.  My name is Alan Cooper and I live at 2170 Highway 47 North, Isle, MN 56342.

2.  I am 38 years old and was born in Colleen, TX.

3.  I work seasonally as a construction worker.

4.  I was was hired in 2006 as a caretaker for a property owned by John L. Steele at 21255 220th Street, McGrath, MN 56350.

5.  The attached agreement is a true copy of the contract between myself and John Steele for taking care of his property.

6.  While taking care of his property I would regularly submit receipts to Steele for reimbursements of costs in repairing or maintaining the property. These receipts might include my signature when I paid by a credit card or debit card.

7.  It is my belief that Steele has used my name as the name of a CEO or manager for one or more companies.

8.  Steele did occasionally visit his property and we would talk.

9.  Steele had told me on at least one occasion that if anyone asked about companies that I should call him.

10. Steele has hold me that he had this plan involving copyright lawsuits.

11. I am not an owner or officer of any corporation or limited liability company.

12. I am not the owner or CEO of AF Holdings, LLC.

13. I am not the owner or a manager of Ingenuity13, LLC.

14. I did not give Steele permission to use my name or sign documents on my behalf.

15. I did not know that my name was being used in connection with these companies.



_____          12-3-12
Alan Cooper                        Date

Subscribed and sworn before me this 3RD day of December, 2012

_____
Notary Public

JAYNE MARY BLOOM
Notary Public
Minnesota
My Comm. Expires
Jan 31, 2015

1 | ANDREW J. WAXLER, SBN 113682
WON M. PARK, SBN 194333
2 | WAXLER♦CARNER♦BRODSKY LLP
1960 East Grand Avenue, Suite 1210
3 | El Segundo, California 90245
Telephone:  (310) 416-1300
4 | Facsimile:  (310) 416-1310
e-mail:   awaxler@wcb-law.com
5 | e-mail:   wpark@wcb-law.com

6 | Specially Appearing for Respondent
BRETT L. GIBBS
7 |

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 |

11 | INGENUITY 13 LLC,                    ) Case No.  2:12-CV-8333-ODW (JCx)
                                     )
12 |            Plaintiff,              ) [Assigned to Judge Otis D. Wright, II ]
                                     )
13 |    vs.                            ) **DECLARATION OF BRETT L.**
                                     ) **GIBBS IN SUPPORT OF**
14 | JOHN DOE,                         ) **RESPONSE TO FEBRUARY 7, 2013**
                                     ) **OSC**
15 |            Defendant.             )
   ——————————————————————————————    ) [Filed Concurrently With Response To
16 |                                     The Court's February 7, 2013 OSC And
                                       Request For Judicial Notice In Support
17 |                                     Of Response]

18 |                                     [Complaint Filed: August 1, 2012]

19 |                                     Date:  March 11, 2013
                                       Time:  1:30 p.m.
20 |                                     Dept:  11

21 |                                     Trial date: None set

22 |            **<u>DECLARATION OF BRETT L. GIBBS</u>**

23 |    I, Brett L. Gibbs, declare and state as follows:

24 |    1.    I am an attorney at law duly licensed to practice before all of the courts

25 | in the State of California and the United States District Court for the Central District

26 | of California.  I am "Of Counsel" to Prenda Law, Inc., counsel of record for

27 | Plaintiffs AF Holdings, LLC ("AF Holdings") and Ingenuity 13, LLC ("Ingenuity")

28 | in the actions entitled *AF Holdings, Inc. v. Doe*, United States District Court for the

Central District of California Case No. 2:12-cv-6636-ODW(JCx) ("Case No. 6636"), *AF Holdings, Inc. v. Doe*, United States District Court for the Central District of California Case No. 2:12-cv-6669-ODW(JCx) ("Case No. 6669"), *Ingenuity 13 LLC v. Doe*, United States District Court for the Central District of California Case No. 2:12-cv-6662-ODW(JCx) ("Case No. 6662"), *Ingenuity 13 LLC v. Doe*, United States District Court for the Central District of California Case No. 2:12-cv-6668-ODW(JCx) ("Case No. 6668") and *Ingenuity 13 LLC v. Doe*, United States District Court for the Central District of California Case No. 2:12-cv-8333-ODW(JCx) ("Case No. 8333" and collectively the "Copyright Litigations"). I have personal knowledge of the facts set forth below, and I could and would competently testify to them if called upon to do so.

2.     I make this declaration in support of Brett L. Gibbs' Response to the Court's February 7, 2013 Order to Show Cause.

3.     I am and have never had an ownership interest in the copyrights involved in the Copyright Litigations. As discussed in greater detail below, I did not make strategic decisions like whether to file actions, who to sue, and whether to make a certain settlement demand or accept an offer of settlement in the Copyright Litigations. These types of decisions were made by the clients, after consulting with senior members of the law firms that employed me in an "of counsel" relationship.

4.     I am very sorry that the Court is concerned with my conduct. I have strived to be honest and forthright with this Court, and all courts during my legal career.

5.     I am a 2007 graduate of the University of California, Hastings College of Law. I began practicing law in December 2007 at a small tax firm in Oakland, California, Taggart and Hawkins P.C. ("Taggart and Hawkins").

6.     My employment with Taggart and Hawkins was abruptly terminated on July 10, 2009 when I was diagnosed with inoperable/incurable Grade III/IV brain cancer. I stopped practicing law for almost two years while focusing on my health

and cancer treatments during that time.  I endured two brain surgeries, six-weeks of radiation, and 18 months of chemotherapy during that period.

7.    In 2011, I wanted to ease back into the practice of law.  On March 14, 2011, I was contacted and hired by Steele Hansmeier PLLC (hereinafter "S&H").   I began litigating copyright infringement cases in California on behalf of clients of S&H in or around March 2011.  I was an independent-contract attorney for S&H and litigated cases for the firm in my capacity as "Of Counsel."  I have never been a partner of or had an ownership interest in S&H.

8.    In or around November 2011, I was informed that S&H, and its book of business, had been sold to a Chicago firm, Prenda Law, Inc. ("Prenda"), and the principal of Prenda, Paul Duffy.  I was also informed that I would be continuing my work as "Of Counsel" and would continue in this role as an independent contract attorney for Prenda, pursuing copyright infringement actions on behalf of the clients I had been representing while I worked for S&H.  I have never been a partner of or had an ownership interest in Prenda.

9.    AF Holdings, was, and is, a limited liability company formed under the laws of the Federation of Saint Kitts and Nevis.  A true and correct copy of AF Holdings certificate of formation is attached hereto as Exhibit 1.  I have never had a financial or fiduciary (i.e., ownership) interest in AF Holdings.  AF Holdings was a client of S&H and then Prenda.  The face-to-face and direct interactions between S&H and later Prenda with AF Holdings were handled by the senior members of the law firms and not me.  It was explained to me and I understood that, AF Holdings was and is a valid company with assets including, but not limited to, the copyrights at issue in these litigations.  Livewire Holdings LLC recently purchased AF Holdings LLC.  AF Holdings LLC thereafter became a wholly owned subsidiary of Livewire Holdings LLC.  In January of 2013, I was hired as in house counsel for Livewire Holdings LLC.  I do not have a financial or ownership interest in Livewire Holdings, LLC.

10.     On or around June 21, 2011, I filed my first copyright case representing AF Holdings entitled, *AF Holdings LLC v. Does*, United States District Court for the Northern District of California Case No. 1-97, 4:11-cv-03067-CW ("Case No. 3067"). I had never heard of AF Holdings prior to representing it in Case No. 3067. When filing Case No. 3067 and representing AF Holdings in other cases, I had only one clearly defined relationship with AF Holdings: I was a contracted outside attorney representing AF Holdings in California on behalf of S&H (and later Prenda) in my role as Of Counsel to those law firms. I was informed and believed and still believe that AF Holdings is and was a company that owns the rights to copyrighted movies that were and are being uploaded and downloaded over the Internet by anonymous infringers.

11.     I have never met Alan Cooper, and do not know what the extent of Mr. Cooper's role is in AF Holdings aside from seeing a signature from an "Alan Cooper" on the copyright assignments and pleadings. Based on the assignment agreement, AF Holdings held the valid and exclusive rights to reproduce and distribute the film Popular Demand. I was not present when the assignment agreement was executed. I also never had any direct contact with either Raymond Rogers or Alan Cooper. I have never executed a document as "Alan Cooper." I did not play a role in or have knowledge of the assignment transaction at issue. Senior members of S&H provided the assignment agreement to me and informed me that the copyright assignment was a true and correct copy of the copyright assignment and to include it as an exhibit in complaints filed on behalf of AF Holdings LLC. Before filing any such complaints, I confirmed that AF Holdings LLC was in fact listed as the valid copyright holder.

12.     Ingenuity was, and is, a limited liability company formed and existing under the laws of the Federation of Saint Kitts and Nevis. As explained to me, Ingenuity was and is a valid company with assets including, but not limited to, the copyrights at issues in these cases. I have never had a financial or fiduciary interest

1 (i.e., ownership) in Ingenuity. Ingenuity was a client of S&H and then Prenda. The

2 face-to-face and direct interactions between S&H and later Prenda with Ingenuity

3 were handled by the senior members of the law firms and not me.

4      13.   On or around October 28, 2011, I, as counsel for Ingenuity, filed the

5 first copyright infringement case on behalf of Ingenuity entitled *In the Matter of*

6 *Ingenuity 13 LLC*, United States District Court for the Eastern District of California,

7 Case No. 2:11-mc-00084-JAM-DAD ("Case No. 84"). I had never heard of

8 Ingenuity before representing Ingenuity in Case No. 84 and other copyright

9 infringement actions. When filing Case No 84 and representing Ingenuity in other

10 cases, I had only one clearly defined relationship with Ingenuity: I was acting as a

11 contracted outside attorney representing Ingenuity in California in copyright

12 infringement actions on behalf of S&H (and later Prenda) in my role as Of Counsel

13 to those law firms. I was informed and believe that Ingenuity is and was a company

14 that owns the rights to copyrighted movies that were being uploaded and

15 downloaded over the Internet by anonymous infringers.

16      14.   Case No. 84 was based on a verified petition to perpetuate testimony

17 and, as stated therein, was intended to allow Ingenuity to identify alleged copyright

18 infringers of Ingenuity's copyrighted works. The petition was verified through an

19 electronic signature by "Alan Cooper". Pursuant to Eastern District of California

20 Local Rule 131(f), I confirmed that counsel for Ingenuity had a signed original

21 notarized verification for the petition.

22      15.   Prior to filing *any* verified petitions on behalf of Ingenuity, it was my

23 custom and practice to confirm that the verification of the authorized agent of the

24 client existed. I confirmed the existence of the client-executed verification either by

25 seeing a copy of the signed verification, or at the very least, being informed by a

26 representative of S&H or Prenda that a signed verification was in the possession of

27 S&H or Prenda.

28

16.     In Case No. 84, Mr. Pietz first asked for a copy of Mr. Cooper's verification to the petition to perpetuate testimony on or about December 2012, well after the petition had been discharged.  Given the length of time since the case was discharged, I was informed and understand that S&H (and later Prenda) no longer has a copy of Mr. Cooper's verification to the petition to perpetuate testimony.

17.     Mr. Pietz made a similar claim that the verified petition was improper or possibly fraudulent in another action he contested entitled *Guava, LLC v. Comcast Cable Communications, LLC*, In the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois Case No. 12-MR-417.  However, the verification in that case was notarized.

18.     On August 30, 2012, AF Holdings issued a subpoena to defendant's ISP, Verizon Online LLC, in order to obtain information regarding the subscriber associated with the IP address in Case No. 6669.  On September 5, 2012 and September 6, 2012, AF Holdings issued a subpoena to ISP, Verizon Online LLC, in order to obtain information regarding the subscriber associated with the IP address in Case No. 6636.

19.     The subpoenas to the ISPs in Case Nos. 6669 and 6636 were issued by a Prenda attorney from the U.S. District Court for the Northern District of Illinois.  Any responses to the subpoenas from the ISPs were mailed by the ISPs to a mailbox located in Chicago and not to me.  After the responses to the subpoenas are processed, the information associated with these responses would then be made available to me through a computer database.

20.     On October 19, 2012, the Court, issued its Order Vacating Prior Early Discovery Orders and Order to Show Cause in Case Nos. 6636 and 6669 (the "October 19, 2012 Orders").  In light of the requirement of Rule 4(m) to identify and serve the infringers within 120 days of the filing of the complaints, I reasonably interpreted the October 19, 2012 Orders to cease "discovery" to preclude AF Holdings from pursuing formal discovery related to the Rule 45 subpoenas, but did

not preclude AF Holdings from informal investigation to identify and name the infringers.  In other words, I believed and interpreted the October 19, 2012 Orders as only precluding formal discovery efforts such as pressuring the ISPs to respond to the subpoenas that had been served and precluding serving any additional subpoenas.

21.    Following receipt of the October 19, 2012 Orders, I caused the Court's October 19, 2012 Orders to be served on the registered agents for service of process of Verizon Online LLC to ensure that Verizon Online LLC had notice not to respond to the subpoenas that had already been served.

22.    In preparation to draft AF Holdings' response to the Court's October 19, 2012 Orders, I made a reasonable investigation by accessing  the computer database to determine what information, if any, had been returned in response to the subpoenas.  With respect to Case No. 6636 and 6669, I determined based on the information in the computer database that the ISPs had not responded to the subpoenas for the subscriber information.

23.    On or about November 7, 2012, after AF Holdings filed its November 1, 2012 Report in response to the Court's October 19, 2012 Order—and after serving each ISP of notice of the Court's order—information in response to the subpoenas issued to Verizon Online LLC in Case No. 6636 and Case No. 6669 was uploaded to the computer database.

24.    In November 2012, AF Holdings was still faced with the 120 day Rule 4(m) deadline to serve the complaints in Case No. 6636 and Case No. 6669.  Thus, I believed I had a duty to perform further informal investigation to comply with the Rule 4(m) deadlines.  I believed that the Court's October 19, 2012 Orders did not prevent AF Holdings from attempting to identify the infringers in Case Nos. 6636 and 6669 through informal means.  Thus, I conducted an informal investigation in an attempt to identify the infringers in Case Nos. 6636 and Case No. 6669.

25.     I did not appreciate that the Court, through its December 20, 2012 and December 21, 2012 OSCs re: Lack of Service in Case Nos. 6662 and 6668, had an expectation that Ingenuity would provide a complete recitation of all specific steps I took to indentify the infringers. I only understood the Court to be requesting Ingenuity summarize why the defendants in each case had not been served. Accordingly, Ingenuity's December 27, 2012 responses to the OSCs was intended to provide a summary of my efforts regarding service of the complaints and not a complete recitation of the steps I took to identify the infringers.

26.     On August 28, 2012, Ingenuity issued a subpoena to defendant's ISP, Verizon Internet Services, in order to obtain information regarding the subscriber associated with the IP address in Case No. 6662. The subpoena return identified David Wagar as the Internet subscriber whose IP address had been observed uploading and downloading Ingenuity's movie, "Five Fan Favorites."

27.     On November 7, 2012, I sent a letter to David Wagar informing him that he had been identified by Verizon, and his IP address assigned to him had been observed illegally downloading and sharing Ingenuity's movie. A true and correct copy of the November 7, 2012 letter is attached hereto as Exhibit 2. The letter further explained why the subscriber information had been requested/released; explained that, in light of the infringement, a lawsuit was likely to ensue against the infringer; informed him that he was "not being directly accused of committing the infringement" himself; notified he "or a member of [his] household" could be named in the suit; reached out to David Wagar on any information he had that could allow us to identify the infringer; and encouraged him to call me to "meet and confer prior to bringing any further litigation."

28.     On November 8, 2012, I followed up the November 7, 2012 letter by calling David Wagar and spoke with him. In response to my question regarding the infringement, David Wagar stated that he was not the infringer. Mr. Wagar also informed me that it was only he and his wife in the household. I also inquired about

1   the specific time period surrounding the date and time of the alleged infringement--

2   i.e. June 28, 2012 at 7:19 UTC—and David Wagar stated that he and his wife were

3   the only ones at the house during that time, and had been for years.

4       29.    Following my November 8, 2012 telephone discussion with David

5   Wagar, I conducted a further investigation of David Wagar.  Based on the

6   information obtained from the subpoena return from Verizon, David Wagar lived at

7   1411 Paseo Jacaranda, Santa Maria, California 93458.  I conducted a public

8   information search of David Wagar that revealed, among other things, that despite

9   David Wagar's claim that his household only consisted of he and his wife, that the

10  house was also occupied by their son, Benjamin Wagar, who according to the search

11  had been living at 1411 Paseo Jacaranda, Santa Maria, California 93458 since 1999.

12      30.    I thereafter conducted a web 2.0 search which revealed that, among

13  other interactions with the Internet, Benjamin Wagar had a Facebook page whereby

14  he showed interest in online video games which demonstrated that Benjamin Wagar

15  likely had access to an Internet connection during this time while he appeared to be

16  living at 1411 Paseo Jacaranda, Santa Maria, California 93458.

17      31.    In addition, in order to rule out neighbors of the 1411 Paseo Jacaranda,

18  Santa Maria, California 93458 location utilizing the internet connection, I performed

19  a Google map search and obtained a satellite picture of the corner house located at

20  1411 Paseo Jacaranda, Santa Maria, California 93458.  A further public search

21  revealed that the house was approximately 1,200 sq. ft. which sat on a 6,534 sq. ft.

22  lot.  Considering the position of the house on the lot, and its position away from the

23  neighboring houses, it seemed clear that, should the household have wireless

24  internet, it would not have been accessible by the neighbors.

25      32.    David Wagar did not respond to the November 7, 2013 letter.

26  Therefore, on November 21, 2013, I sent a second letter to David Wagar. A true and

27  correct copy of the November 21, 2013 letter is attached hereto as Exhibit 3. The

28  November 21, 2013 letter recommended that David Wagar "retain an attorney;" and

again encouraged him, or his attorney, to contact me to discuss the matter. Again, neither David Wagar, nor anyone else from his household, responded to my inquiries.

33. On December 11, 2012, I made a further attempt to telephone the Wagar household. I was not able to reach anyone in the household and left a message on the answering machine stating that Mr. Benjamin Wagar would be named in Case No. 6662 unless someone in the household could provide information that Benjamin Wagar was not the alleged infringer. Although I requested and encouraged Benjamin and/or David to respond with any potential facts to the contrary, the call was never returned.

34. On August 28, 2012, Ingenuity issued a subpoena to, Charter Communications, in order to obtain information regarding the subscriber associated with the IP address in Case No. 6668. The subpoena return identified Marvin Denton as the Internet subscriber whose IP address had been observed uploading and downloading Ingenuity's video, "Five Fan Favorites." On October 28, 2012, I called Marvin Denton. However, the phone number provided by Charter in its supboena return was no longer in service.

35. On November 8, 2012, I sent a letter to Marvin Denton. A true and correct copy of the November 8, 2012 letter is attached hereto as Exhibit 4. The November 8, 2012 letter informed Marvin Denton of the information that had been released by his ISP and why it was requested/released; explained that, in light of the infringement, a lawsuit was likely to ensue against the infringer; informed him that he was "not being directly accused of committing the infringement" himself; notified he "or a member of [his] household" could be named in the suit; reached out to Marvin Denton on any information he had that could allow Ingenuity to identify the infringer; and encouraged him to call me to "meet and confer prior to bringing any further litigation." I did not receive a response to the November 8, 2012 letter.

36.    I also conducted a further investigation to identify the infringer.  The return in response to the subpoena from Charter Communications stated that Marvin Denton lived at 635 S. Vanderwell Avenue, West Covina, California 91790.  I conducted a public information search of Marvin Denton.  The public information search revealed, among other things, that there were three other individuals who were living in the house located at 635 S. Vanderwell Avenue, West Covina, California 91790: two females (ages 65 and 33), and Mayon Denton (age 31).

37.    I performed additional research as to Mayon Denton which revealed that he had been involved in, or the owner of, four different movie production companies during, or prior to, the alleged date of the infringement (i.e. July 4, 2012).  At least one of those production companies was active and operating (according to the public database search) before, during and beyond July 7, 2012 and the business was located at the same address as the residence that Charter had provided Internet access to - 635 S. Vanderwell Avenue, West Covina, California 91790.  This company, Against the Grain Film, LLC, which listed Mayon Denton as a "Member", has a website--http://www.againstthegrainfilm.com/-- that has video content on the site which directly stated that Mayon Denton was the "Film Editor" of the film advertised on the site and also that the film had been "Executive Produced by" Mayon Denton.  In light of the fact that activities such as film editing are now almost exclusively performed on the computer, this suggested that not only did Mayon Denton have home Internet access through his father's Charter account, but also that he had a large amount of computer expertise with regard to online films.  In addition, according to the public look-up investigation I performed, DRG Films LLC was also being operated from 635 S. Vanderwell Avenue, West Covina, California 91790 -- Mayon had also been involved with another company, Infamous Money, which had also been involved in the film production industry.

38.    In order to rule out neighbors of the property located at 635 S. Vanderwell Avenue, West Covina, California 91790 utilizing the internet

connection, I utilized Google maps and obtained a satellite picture of the property. The satellite photo revealed that the property was a very large estate consisting of a gate for entry and multiple separate houses/structures on the property. Further, through another publically available search, I was able to identify that the house was approximately 1,304 sq. ft. sitting on a 7,620 sq. ft. lot. Considering the position of the house and the neighboring properties, including the seemingly main house on the lot, it seemed clear that, should the household have wireless Internet, it likely was not accessible by its neighbors.

39. Marvin Denton did not respond to the November 8, 2013 letter. Therefore, on November 22, 2013, I sent a second letter to Marvin Denton. A true and correct copy of the November 22, 2013 letter is attached hereto as Exhibit 5. The November 22, 2013 letter recommended that Marvin Denton "retain an attorney;" and again encouraged him, or his attorney, to contact me to discuss this matter. Again, neither Marvin Denton, nor anyone else from his household, responded to my inquiries.

40. Although the respective complaints in Case No. 6662 and 6668 referred to a "snapshot observation", the reference was not intended to be a complete recitation of all of Ingenuity's pre-filing evidence of copyright infringement. The allegations of the complaints were only intended to satisfy Ingenuity's obligation to allege the basis for jurisdiction with a short and plain statement of the claim and demand for relief as required by Fed. R. Civ. P. 8. In the *ex parte* applications for early discovery in Case No. 6662 and 6668, Ingenuity submitted the declaration of Paul Hansmeier who stated in relevant part:

> "In this case, I personally observed John Doe's IP address, listed in the Complaint (ECF No.1 ¶ 4), downloading and uploading the Video in a BitTorrent swarm. **Once obtaining a full version of the Video file, John Doe (then a 'seeder') shared pieces of the copyrighted Video**

1    **file (i.e. 'seed') with other individuals (i.e. 'peers').**"  (Emphasis
2    added).
3 The fact that the infringers in Case No. 6662 and 6668 had completely downloaded
4 the movies in question and had viewable copies of the movies was also confirmed in
5 monitoring reports provided by 6881 Forensics.
6       41.    I compiled a list of cases filed in 2012 in the United States District
7 Court for the Northern District of California in which I have been counsel for
8 copyright holders alleging copyright infringement.  In 2012, I filed 41 cases in the
9 United States District Court for the Northern District of California as counsel for
10 copyright holders alleging copyright infringement.  Of those 41 suits, 10 were
11 dismissed because there was no viable candidate that could be identified as the
12 infringer, 6 were dismissed because the ISP failed to respond to a subpoena and the
13 alleged infringer was identified in 16 suits of which 11 were served with an
14 amended complaint.
15      42.    The fact that the Wagars and Dentons ignored my requests for
16 information that would potentially preclude members of their households as the
17 infringers was significant.  In other cases of alleged copyright infringement that I
18 have prosecuted, I have been contacted by the alleged infringer who explained that
19 they were not the infringer and provided information such as an unsecured Internet
20 connection or possible unidentified third party guests to the residence.  In those
21 instances, the respective complaints were dismissed without naming a defendant.
22      43.    I first became aware of a question regarding the identity of Alan
23 Cooper when it was raised by Mr. Pietz.  I have never been accused by Alan Cooper
24 of misappropriating his identity or forging his signature.
25      44.    A similar issue regarding the validity of the copyright assignments to
26 AF Holdings was raised in a case entitled *AF Holdings, Inc. v. Does 1-96*, United
27 States District Court for the Northern District of California Case No. C-11-03335
28 JSC ("Case No. 3335").  In Case No. 3335, an issue arose regarding whether there

13

1  was a valid assignment from Heartbreaker to AF Holdings because while the
2  assignment was signed by a representative of Heartbreaker, it was not signed by a
3  representative of AF Holdings. Instead, the assignment was signed by a
4  representative of AF Films, LLC. Relying on 17 U.S.C. § 204 and *Effects*
5  *Associates, Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990), the Magistrate Judge
6  determined that the inconsistency did not prevent a prima facie showing of
7  copyright ownership because the law only requires the assignment to be signed by
8  the assignor. Given the court's finding that the copyright assignment in Case No.
9  3335 was prima facie valid despite an issue regarding whether the assignee had
10  properly executed the assignment, I had and have a good faith belief that the
11  assignments in Case No. 6636 and 6669 are valid despite any alleged issue
12  regarding the identity of Alan Cooper.

13

14      I declare under the penalty of perjury under the laws of the United States of
15  America that the foregoing is true and correct. This declaration is executed on the
16  19th day of February 2013, in San Francisco, California.

17
18                                      BRETT L. GIBBS
19
20
21
22
23
24
25
26
27
28

                                    14

1 ANDREW J. WAXLER, SBN 113682
WON M. PARK, SBN 194333
2 WAXLER♦CARNER♦BRODSKY LLP
1960 East Grand Avenue, Suite 1210
3 El Segundo, California 90245
Telephone: (310) 416-1300
4 Facsimile: (310) 416-1310
e-mail: awaxler@wcb-law.com
5 e-mail: wpark@wcb-law.com

6 Specially Appearing for Respondent
BRETT L. GIBBS

7

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11 INGENUITY 13 LLC,                    ) Case No. 2:12-CV-8333-ODW (JCx)
                                        ) [Consolidated with Case Nos.:
12              Plaintiff,              ) 2:12-cv-6636; 2:12-cv-6669; 2:12-cv-
                                        ) 6662; 2:12-cv-6668]
13       vs.                            )
                                        ) [Assigned to Judge Otis D. Wright, II ]
14 JOHN DOE,                            )
                                        ) **DECLARATION OF BRETT L.**
15              Defendant.              ) **GIBBS IN RESPONSE TO THE**
   ─────────────────────────────────   ) **COURT'S FEBRUARY 27, 2013**
16                                      ) **ORDER**

17                                        [Complaint Filed: September 27, 2012]

18                                        Date: March 11, 2013
                                          Time: 1:30 p.m.
19                                        Dept: 11

20                                        Trial date: None set

21            **DECLARATION OF BRETT L. GIBBS**

22       I, Brett L. Gibbs, declare and state as follows:

23       1.      I am an attorney at law duly licensed to practice before all of the courts

24 in the State of California and the United States District Court for the Central District

25 of California. I was "Of Counsel" to Prenda Law, Inc., counsel of record for

26 Plaintiffs AF Holdings, LLC ("AF Holdings") and Ingenuity 13, LLC ("Ingenuity")

27 in the actions entitled *AF Holdings, Inc. v. Doe*, United States District Court for the

28 Central District of California Case No. 2:12-cv-6636-ODW(JCx) ("Case No.

─────────────────────────────────
                              1

6636"), *AF Holdings, Inc. v. Doe*, United States District Court for the Central District of California Case No. 2:12-cv-6669-ODW(JCx) ("Case No. 6669"), *Ingenuity 13 LLC v. Doe*, United States District Court for the Central District of California Case No. 2:12-cv-6662-ODW(JCx) ("Case No. 6662"), *Ingenuity 13 LLC v. Doe*, United States District Court for the Central District of California Case No. 2:12-cv-6668-ODW(JCx) ("Case No. 6668") and *Ingenuity 13 LLC v. Doe*, United States District Court for the Central District of California Case No. 2:12-cv-8333-ODW(JCx) ("Case No. 8333" and collectively the "Copyright Litigations"). I have personal knowledge of the facts set forth below, other than those facts that are identified as stated on information and belief which I also believe to be true, and I could and would competently testify to them if called upon to do so.

2. I make this declaration in response to the Court's February 27, 2013 Order.

3. In my Response and Declaration to the Court's February 7, 2013 Order to Show Cause, I referred to "senior members" of the law firms that employed me in an "Of Counsel" relationship. By "senior members" of the law firms, I was not referring to those persons who may have an ownership interest in the law firms, but rather those attorneys who I was informed communicated with the clients, oversaw the litigations on behalf of the law firm's clients, and provided me with instructions and guidelines, which I was informed, originated from the clients. I reported to those senior members.

4. On March 14, 2011, I was contacted and hired by Steele Hansmeier PLLC (hereinafter "S&H") in an "Of Counsel" relationship. During my time with S&H, John Steele and Paul Hansmeier were the attorneys who informed me that they communicated with S&H's clients, oversaw the litigations on behalf of those clients, and provided me with instructions and guidelines, which I was informed, originated from the clients. I reported to Mr. Steele and Mr. Hansmeier.

5. In or around November 2011, I was informed that S&H, and its book of business, had been sold to a Chicago firm, Prenda Law, Inc. ("Prenda"). It is my understanding that the sole principal of Prenda is Paul Duffy. Mr. Duffy's business address is 161 N. Clark Street, Suite 3200, Chicago, IL. The telephone number for Prenda is (800) 380-0840. I was also informed that I would be continuing my work as "Of Counsel" to Prenda and continue in the same role I had with S&H in prosecuting copyright cases. During the course of my work with Prenda, Mr. Steele and Mr. Hansmeier were the attorneys who informed me that they communicated with Prenda's clients, oversaw the litigations on behalf of those clients, and provided me with instructions and guidelines, which I was informed, originated from the clients. I reported to Mr. Steele and Mr. Hansmeier.

6. I was informed that Mr. Steele and Mr. Hansmeier work for or with Livewire Holdings LLC ("Livewire"). According to Livewire's website, its address is 2100 M. St. NW, Suite 170-417, Washington D.C. 20037-1233 and telephone number is (888) 588-WIRE. I am in possession of the personal addresses and telephone numbers for Mr. Steele and Mr. Hansmeier. However, out of an abundance of caution, I did not believe their private addresses and telephone numbers should be disclosed in a publicly filed document. If the Court requests the addresses and telephone numbers, I would request that the information be filed under seal.

7. The Copyright Litigations with respect to AF Holdings related to a copyrighted work entitled "Popular Demand". "Popular Demand" has a valid registered copyright issued by the United States Copyright Office, registered by Heartbreaker Digital LLC ("Heartbreaker") on August 9, 2011 (Popular Demand, Copyright No. PA0001754383). Pursuant to an assignment agreement dated December 20, 2011, Heartbreaker assigned the rights to reproduce and distribute the film, "Popular Demand" to AF Holdings. AF Holdings was, and is, a limited liability company formed under the laws of the Federation of Saint Kitts and Nevis.

3

Based on information and belief, AF Holdings is located at Springates East, Government Road, Charlestown, Nevis. I am informed that Mark Lutz is the CEO of AF Holdings.

8. The Copyright Litigations with respect to Ingenuity 13 were related to copyrighted works entitled "A Peek Behind the Scenes at a Show" and "Five Fan Favorites". "A Peek Behind the Scenes at a Show" has a valid registered copyright issued by the United States Copyright Office, registered by Ingenuity 13 on August 24, 2012 (A Peek Behind the Scenes at a Show, Copyright No. PA0001802629). "Five Fan Favorites" has a valid registered copyright issued by the United States Copyright Office, registered by Ingenuity 13 on May 29, 2012 (Five Fan Favorites, Copyright No. PA0001791654). Ingenuity 13 was, and is, a limited liability company formed under the laws of the Federation of Saint Kitts and Nevis. Based on information and belief, Ingenuity 13 is located at Springates East, Government Road, Charlestown, Nevis. I am informed that Mark Lutz is the CEO of Ingenuity 13.

9. I believe that Mr. Lutz is living and working from Las Vegas, NV. I am informed that Mr. Lutz also works for Livewire. According to Livewire's website, its address is 2100 M. St. NW, Suite 170-417, Washington D.C. 20037-1233 and telephone number is (888) 588-WIRE. I am not possession of Mr. Lutz's personal address. I am in possession of Mr. Lutz's personal telephone number. However, out of an abundance of caution, I did not believe Mr. Lutz's private telephone number should be disclosed in a publicly filed document. If the Court

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

4

1   requests the telephone number, I would request that the information be filed under
2   seal.
3
4          I declare under the penalty of perjury under the laws of the United States of
5   America that the foregoing is true and correct. This declaration is executed on the
6   1st day of March 2013, in Mill Valley, California.
7
8                                                BRETT L. GIBBS
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  ANDREW J. WAXLER, SBN 113682
   WON M. PARK, SBN 194333
2  WAXLER◆CARNER◆BRODSKY LLP
   1960 East Grand Avenue, Suite 1210
3  El Segundo, California 90245
   Telephone:  (310) 416-1300
4  Facsimile:  (310) 416-1310
   e-mail:     awaxler@wcb-law.com
5  e-mail:     wpark@wcb-law.com

6  Specially Appearing for Respondent
   BRETT L. GIBBS
7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11  INGENUITY 13 LLC,                    )  Case No.  2:12-CV-8333-ODW (JCx)
                                         )  [Consolidated with Case Nos.:
12           Plaintiff,                  )  2:12-cv-6636; 2:12-cv-6669; 2:12-cv-
                                         )  6662; 2:12-cv-6668]
13      vs.                              )
                                         )  [Assigned to Judge Otis D. Wright, II ]
14  JOHN DOE,                            )
                                         )  **SUPPLEMENTAL DECLARATION
15           Defendant.                  )  OF BRETT L. GIBBS IN SUPPORT
    _____)  OF SUPPLEMENTAL BRIEF IN
16                                          RESPONSE TO THE COURT'S
                                            FEBRUARY 7, 2013 OSC**
17
                                            [Complaint Filed: September 27, 2012]
18
                                            Date:  March 11, 2013
19                                          Time:  1:30 p.m.
                                            Dept:  11
20
                                            [Filed Concurrently with Brett Gibbs'
21                                          Supplemental Brief; Supplemental
                                            Request for Judicial Notice; Objections
22                                          to Evidence and Proposed Order re
                                            Objections to Evidence]
23
                                            Trial date: None set
24

25

26

27

28

## SUPPLEMENTAL DECLARATION OF BRETT L. GIBBS

I, Brett L. Gibbs, declare and state as follows:

1.     I am an attorney at law duly licensed to practice before all of the courts in the State of California and the United States District Court for the Central District of California. I was "Of Counsel" to Prenda Law, Inc., counsel of record for Plaintiffs AF Holdings, LLC ("AF Holdings") and Ingenuity 13, LLC ("Ingenuity") in the actions entitled *AF Holdings, Inc. v. Doe*, United States District Court for the Central District of California Case No. 2:12-cv-6636-ODW(JCx) ("Case No. 6636"), *AF Holdings, Inc. v. Doe*, United States District Court for the Central District of California Case No. 2:12-cv-6669-ODW(JCx) ("Case No. 6669"), *Ingenuity 13 LLC v. Doe*, United States District Court for the Central District of California Case No. 2:12-cv-6662-ODW(JCx) ("Case No. 6662"), *Ingenuity 13 LLC v. Doe*, United States District Court for the Central District of California Case No. 2:12-cv-6668-ODW(JCx) ("Case No. 6668") and *Ingenuity 13 LLC v. Doe*, United States District Court for the Central District of California Case No. 2:12-cv-8333-ODW(JCx) ("Case No. 8333" and collectively the "Copyright Litigations"). I have personal knowledge of the facts set forth below and I could and would competently testify to them if called upon to do so.

2.     I make this declaration in support of Brett L. Gibbs' Supplemental Brief in response to the Court's February 7, 2013 OSC.

3.     I no longer have a relationship with Prenda Law, Inc. or Livewire Holdings, LLC. I am also no longer counsel of record for any cases involving Ingenuity and am only counsel of record in one case for AF Holdings pending AF Holdings retaining new counsel.

4.     I first became aware of the allegation that counsel for SBC Internet Services, LLC dba AT&T Internet Services ("AT&T") claimed that a Prenda employee named Angela Van Den Hemel contacted counsel for AT&T regarding the status of a subpoena issued to AT&T in the case entitled *AF Holdings LLC v.*

1   *Doe*, United States District Court for the Central District of California Case No. 12-
2   cv-005075 after the Court issued its October 19, 2012 order vacating the prior early
3   discovery orders when I reviewed the declarations of Bart Huffman and Camille D.
4   Kerr filed by Mr. Pietz on February 20, 2013. I did not instruct Ms. Van Den Hemel
5   to follow-up with AT&T's counsel regarding the status of the subpoena after the
6   Court issued its October 19, 2012 order. In addition, I was not aware of any attempt
7   to follow-up regarding the status of the subpoena until I reviewed Mr. Huffman and
8   Ms. Kerr's declarations. I specifically advised members of Prenda about the Court's
9   October 19, 2012 orders vacating the prior early discovery orders and advised them
10   not to attempt to enforce the subpoenas.

11      5.     I have never met Salt Marsh or had any direct contact with Salt Marsh.
12   I have never forged the signature of "Salt Marsh." I have also never met Alan
13   Moody, Alan Moay, Alan Mony, or Allan Mooney. I have also never had any direct
14   contact with Alan Moody, Alan Moay, Alan Mony, or Allan Mooney. I have never
15   forged the signature of "Alan Moody", "Alan Moay", "Alan Mony", or "Allan
16   Mooney."

17

18      I declare under the penalty of perjury under the laws of the United States of
19   America that the foregoing is true and correct. This declaration is executed on the
20   4th day of March 2013, in Mill Valley, California.

21

22                               BRETT L. GIBBS

23

24

25

26

27

28

1  Heather L. Rosing, Bar No. 183986
2  David M. Majchrzak, Bar No. 220860
   KLINEDINST PC
3  501 West Broadway, Suite 600
   San Diego, California 92101
4  (619) 239-8131/FAX (619) 238-8707
   hrosing@klinedinstlaw.com
5  dmajchrzak@klinedinstlaw.com

6  Attorneys for Defendants
   JOHN STEELE; PAUL HANSMEIER;
7  PAUL DUFFY; and ANGELA VAN
   DEN HEMEL

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 INGENUITY 13 LLC,                Case No.   2:12-cv-8333-ODW(JCx)

12            Plaintiff,            DECLARATION OF JOHN STEELE IN
                                    SUPPORT OF EX PARTE
13    v.                           APPLICATION FOR ORDER
                                    WITHDRAWING ORDER FOR JOHN
14 JOHN DOE,                        STEELE, PAUL HANSMEIER, PAUL
                                    DUFFY, AND ANGELA VAN DEN
15            Defendant.            HEMEL TO APPEAR

16                                  Judge:          Hon. Otis D. Wright, II
                                    Magistrate Judge: Hon. Jacqueline Chooljian
17                                  Courtroom:      11

18                                  Complaint Filed:  September 27, 2012
                                    Trial Date:     None set
19

20        I, John Steele, declare as follows:

21        1.    I am an attorney at law duly licensed to practice before the courts of

22 the State of Illinois.  I am of counsel with the law firm, Prenda Law, Inc.

23        2.    I have personal knowledge of the following facts and, if called upon

24 as a witness, could competently testify thereto.

25        3.    I reside in the State of Florida. I both live in the State of Florida and

26 intend to remain living in Florida. Although I make infrequent appearances in

27 Illinois to perform legal services, I do not provide any legal services in either

28 California or Florida.                        - 1 -
          DECLARATION OF JOHN STEELE IN SUPPORT OF EX PARTE APPLICATION FOR ORDER
       WITHDRAWING ORDER FOR JOHN STEELE, PAUL HANSMEIER, PAUL DUFFY, AND ANGELA
                            VAN DEN HEMEL TO APPEAR
                                2:12-cv-8333-ODW(JCx)

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

4. I know Paul Hansmeier through my work with Prenda Law, Inc. He is also of counsel to the firm. Hansmeier resides in the State of Minnesota in that he lives and works in Minnesota and, on information and belief, intends to remain living and working in Minnesota.

5. I know Paul Duffy through my work with Prenda Law, Inc. He is the firm's principal. Duffy resides in the State of Illinois in that he lives and works in Illinois and, on information and belief, intends to remain living and working in Illinois.

6. I know Angela Van Den Hemel through my work with Prenda Law, Inc. She is a paralegal with the firm. Van Den Hemel resides in the State of Minnesota in that she lives and works in Minnesota and, on information and belief, intends to remain living and working in Minnesota.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed the 8th day of March 2013 at Chicago, Illinois.

John Steele

14630746v1

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

DECLARATION OF JOHN STEELE IN SUPPORT OF EX PARTE APPLICATION FOR ORDER WITHDRAWING ORDER FOR JOHN STEELE, PAUL HANSMEIER, PAUL DUFFY, AND ANGELA VAN DEN HEMEL TO APPEAR
2:12-cv-8333-ODW(JCx)

Morgan E. Pietz, Esq. (SBN 260629)
THE PIETZ LAW FIRM
3770 Highland Avenue Suite 206
Manhattan Beach, CA 90266
Tel: 310-424-5557
Fax: 310-546-5301
Email: mpietz@pietzlawfirm.com

Nicholas R Ranallo
NICHOLAS RANALLO LAW OFFICES
371 Dogwood Way
Boulder Creek, CA 95006
Tel: 831-703-4011
Fax: 831-533-5073
Email: nick@ranallolawoffice.com

Attorneys for Putative John Doe in 2:12-cv-08333-ODW-JC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENUITY 13 LLC,<br><br>    Plaintiff,<br><br>       v.<br><br>JOHN DOE,<br><br>    Defendant. | Case No. 2:12-cv-08333-ODW-JC<br><br>**DECLARATION OF SETH SCHOEN**<br><br>Case Consolidated with Case Nos.:<br>2:12-cv-6636; 2:12-cv-6669; 2:12-cv-6662; and 2:12-cv-6668<br><br>Case Assigned to:<br>District Judge Otis D Wright, II<br><br>Discovery Referred to:<br>Magistrate Judge Jacqueline Chooljian<br><br>Complaint Filed: September 27, 2012<br>Trial Date: None set |

# DECLARATION OF SETH SCHOEN

I, Seth Schoen, declare and state as follows:

1.    I am a Senior Staff Technologist with the Electronic Frontier Foundation (EFF). I am over eighteen years of age. I make this declaration on my own personal knowledge and if called upon to testify thereto, I could and would competently do so.

2.    I have worked with computers and computer networks for over a decade. I have published two peer-reviewed academic papers in the field of computer security, and been interviewed about computer networking and computer security in the national news media. I have testified about electronic communications systems in three courts and before the United States Sentencing Commission, and have submitted expert testimony concerning the analysis of BitTorrent file-sharing networks to the federal courts in at least fifteen other matters.

3.    I was requested by Morgan Pietz, counsel for a putative John Doe in the above-captioned action, to research and provide an objective response to several statements made in the Declaration of Joshua Chin in Support of Response to Order to Show Cause, which was filed on April 8, 2013, and to factual assertions in the oppositions to the Order to Show Cause. Specifically, I was asked to research and respond to these issues:

   a.    Whether the protocol described by Peter Hansmeier in his declaration in the above-captioned case is a reasonably accurate means of identifying the Internet Protocol (IP) addresses of computers involved in file-sharing using the BitTorrent protocol.

   b.    Whether an incomplete download of a video file using BitTorrent results in the downloader having a viewable copy of the file.

   c.    What the metadata associated with the documents filed by the plaintiffs in this action reveal about who was involved in their drafting.

1

4.      In forming these opinions, I relied upon the Declarations of Peter Hansmeier filed in the above-captioned case (ECF No. 8-1) and in case 2:12-06662-ODW (ECF No. 6-1); Brett L. Gibbs' Response to the Order to Show Cause in the above-captioned case (ECF No. 49); the Declaration of Joshua Chin in Support of Response to Order to Show Cause (ECF No. 108-1); the pleadings, declarations, and exhibits filed in connection with the Court's February 7, 2013 Order to Show Cause; certain other pleadings filed in the above-captioned case and in the related cases, all of which were electronically filed on the CM/ECF system by Brett Gibbs' CM/ECF account and are identified below; and the authorities I cite below.

**The Accuracy of Plaintiff's Means of Identifying IP Addresses**

5.      While the Hansmeier Declaration purports to describe the method by which the Plaintiffs in these consolidated cases identify the IP addresses of copyright infringers, the declarations omit information that I believe is material to a determination of whether that method is reasonably accurate.

6.      For example, Mr. Hansmeier states that his software records the "percent of the file downloaded by [his firm]'s software from the infringer's computer" (Hansmeier Decl. at 20), but also that his firm's software "does not [...] allow me to [...] communicate with [the infringer's] computer in any way" (Hansmeier Decl. at 21). It is thus unclear whether or to what extent the software downloaded portions of the file from individual defendants, and Mr. Hansmeier did not file this information with the Court, although he states that he has it on file (Hansmeier Decl. at 26). Similarly, it is unclear to what extent Mr. Hansmeier's software relied on information obtained from third-party BitTorrent trackers (which facilitate downloads) as opposed to information obtained by direct observation of and communication with defendants' computers.

7.      These omitted details could be important because simple methods of attempting to locate copyright infringers can easily go awry. For example, in 2008, researchers from the University of Washington found that, given then-prevalent

2

**PRIVILEGED AND CONFIDENTIAL DRAFT**

methods for investigating BitTorrent transfers, it was straightforward to frame particular IP addresses for downloading files that they had not, in fact, ever attempted to download. The researchers experimentally framed their own laser printer and succeeded in eliciting false allegations of copyright infringement against it. *See* Michael Piatek, Tadayoshi Kohno, and Arvind Krishnamurthy, "Challenges and Directions for Monitoring P2P File Sharing Networks, or, Why My Printer Received a DMCA Takedown Notice," in *Proceedings of the 3rd USENIX Workshop on Hot Topics in Security*, July 29, 2008, available at http://www.usenix.org/event/hotsec08/tech/full_papers/piatek/piatek.pdf.

8.    I do not mean to suggest that Mr. Hansmeier is unable to gather or did not gather relevant information to support Plaintiff's allegations, including by techniques that avoid the pitfalls described by Piatek *et al.* However, paragraphs 20, 25, and 26 of his declaration indicate that he filed with the Court only a small summary portion of the information that he gathered. In paragraph 27, Mr. Hansmeier says he "personally observed" infringing transmissions; his statement that his firm's software does not "communicate" with Defendants' computers leaves some ambiguity about the exact nature of this observation.

9.    Without more information about how Plaintiff gathers IP addresses and attribute infringing activity to them, it is my opinion that an investigation like Plaintiff's could result in the identification of IP addresses of computers that were not actually participating in infringing filesharing activity, or that had not been directly confirmed to have done so.

### The Usability of Partial Downloads

10.    BitTorrent divides each file into "pieces," which are subregions of the file that are downloaded independently of one another. When a BitTorrent user begins downloading a file, the BitTorrent client software receives pieces of the file from many other BitTorrent clients on the Internet. These pieces do not arrive in order, as they would when using the Hypertext Transfer Protocol (HTTP) or File

3

Transfer Protocol (FTP). Thus, at any given point during a BitTorrent download, the user will have some portion of the data in the complete file, but that portion will almost certainly consist of pieces separated by numerous gaps. For example, when downloading a ten-minute video file, a BitTorrent client may receive a few seconds of minute six, followed by a portion of minute two, and so on. At some point, if the download progresses, the user will have a complete or substantially complete copy of the file. It is statistically unlikely that the user would have large contiguous portions of the video early in the download.

11. An incomplete, interrupted BitTorrent download is often not useful to the downloader. For example, a partial video file containing gaps may be difficult to play through even if the majority of the file is present, both because the gaps may be disorienting to a human viewer and because they may cause computer software to regard the file as damaged or corrupt and stop the playback process.

12. I agree with Mr. Chin that the VLC Player is powerful and that under some circumstances it may be used to play portions of incomplete or damaged files. However, gaps in a video file (such as those caused by an incomplete BitTorrent download) could still interrupt the playback.

13. More significantly, VLC cannot easily play certain video file formats if the beginning of the file is missing.

14. I confirmed this by overwriting a small fraction of the beginning of a large video file with zero (null) bytes, which is the same condition as an incomplete BitTorrent download that is missing the beginning of the file. VLC was not willing to play this file when I pressed the "Play" button. Although an expert could use VLC, possibly in combination with other software, to locate and play intact video data from later regions of the file, most users would probably consider this file useless and unplayable.

15. Because BitTorrent client software applications normally download pieces of the file in a completely random order, it is quite possible, even common,

4

DECLARATION OF SETH SCHOEN
**PRIVILEGED AND CONFIDENTIAL DRAFT**

for the beginning of a file to be missing even when a significant fraction of the file's content has already been downloaded. This is an important contrast with other kinds of downloads where a file is downloaded sequentially from beginning to end, such as an HTTP or FTP file download. Unlike these downloads, BitTorrent downloads do not happen in sequential order.

16. Under the assumption that pieces are downloaded in a random order, there is a certain probability of having received at least a specified amount of data intact and contiguous at the beginning of the file. The probability of having at least the first b pieces of the file after downloading k out of n total pieces can be calculated explicitly as

$$p = \frac{\binom{n-b}{k-b}}{\binom{n}{k}}$$

where

$$\binom{x}{y} = \frac{x!}{y!\,(x-y)!}$$

is the "choose" function from probability, indicating the number of distinct ways of choosing y objects from a set of x objects. The general pattern is that this probability remains extremely low while a download is incomplete (even when a substantial majority of the file has been downloaded), and then grows quickly as the download nears completion.

17. For example, consider a 60-minute video file of 300 megabytes in size which is being distributed via a BitTorrent swarm. Suppose that the file has been divided into 1200 pieces of 256 kilobytes each. This graph shows the explicit probability that a given downloader has obtained the first one minute (5 megabytes, or twenty pieces) of contiguous video content, and hence can play through the first

5

DECLARATION OF SETH SCHOEN
**PRIVILEGED AND CONFIDENTIAL DRAFT**

minute of video without interruption, once the downloader has downloaded a specified number of pieces:



Probability of At Least First Minute Intact

Case No. 2:12-cv-08333-ODW-JC

DECLARATION OF SETH SCHOEN
**PRIVILEGED AND CONFIDENTIAL DRAFT**

18. Here is the corresponding graph for the ability to play the first 15 seconds of this file (1.25 megabytes, or five pieces):



19. I have heard that some BitTorrent clients could be set to prioritize downloading the beginning of the file before other parts, but this is not, to my knowledge, standard or default behavior in BitTorrent software because it would have a deleterious effect on the speed and efficiency of a BitTorrent swarm as a whole.

20. According to the Hansmeier Declaration, Plaintiffs use "proprietary forensic software to conduct an exhaustive real time 'fingerprint' of [a BitTorrent] swarm." Hansmeier Decl. ¶ 20. This statement, as well as Mr. Hansmeier's observation that "while [his firm] detects an infringement at a particular instant, the infringer may, and likely is infringing at other times as well" (id. ¶ 21), suggests that

7

DECLARATION OF SETH SCHOEN
**PRIVILEGED AND CONFIDENTIAL DRAFT**

Plaintiffs observe a swarm and a defendant's participation in that swarm at a single moment in time. At any given moment, participants in the swarm will have downloaded different amounts of data.

21. Although Mr. Hansmeier states that "[o]nce obtaining a full version of the Video file, John Doe . . . shared pieces of that copyrighted Video file . . . with other individuals" (id. ¶ 27), it is unclear from his declaration whether Mr. Hansmeier observed that any given Doe did in fact obtain a full version of the video file, or whether Mr. Hansmeier was merely speculating that the Doe would eventually obtain a full version. His testimony at ¶ 21 that "6881 detects an infringement at a particular instant" suggests that his statement at ¶ 27 about a particular Doe "obtain[ing] a full version" is speculative.

22. Many BitTorrent downloads fail to complete or are interrupted. Thus, many of the computers observed to have a partial download at a given time will not complete the download and will not obtain a usable video file. Without more information about how the Plaintiffs determine the nature and extent of a Doe defendant's downloading activity, it is my opinion that the investigation described in the Hansmeier Declaration could result in the identification of IP addresses of computers that did not download a usable video file.

23. In his declaration, Mr. Chin stated that "Use of the VLC Player has produced up to five seconds or more of images from a video file that had been the subject of no more than thirty seconds of downloading." However, Mr. Chin did not specify how the VLC Player was used in that instance, nor what protocol was used to download the file. A file downloaded using HTTP, FTP, or another protocol that downloads a file in linear fashion would, when interrupted, be more likely to result in a file directly usable by an unskilled user. If Mr. Chin was referring to an interrupted BitTorrent download, it is likely that the playback he described required more than simply pressing "Play" in the VLC Player.

8

**Authorship of Plaintiffs' Filings**

24.    Portable Document Format (PDF) files can contain metadata, including fields indicating the author's name and the file's creation and modification dates.

25.    Using the Xpdf software created by Glyph & Cog, LLC, I extracted the metadata from several PDF files that were electronically filed using Brett Gibbs' CM/ECF account in the above-titled case, and in a few of the related cases.

26.    My analysis revealed that the following files[1] were "created" by user "**SH01**":

- Memo iso P's Ex Parte Appl for Expedited Discovery.pdf (ECF No. 8-1, created Oct. 5, 2012)

- Opposition to Ex Parte Application to Stay Pending Subpoena.pdf (ECF No. 14, created November 30, 2012)

- P's Response to Ex Parte re Stay.pdf (ECF No. 16, created November 30, 2012)

27.    My analysis revealed that the following files were "created" by user "**SH05**":

- P's Ex Parte Appl for Expedited Discovery.pdf (ECF No. 8, created Oct. 5, 2012)

- P's Response in Opposition to Movant's Notice of Related Cases.pdf (ECF No. 18, created Dec. 7, 2012)

- P's Response in Opposition to Movant's Supplement to Notice of Related Cases Filed 12-14-12.pdf (ECF No. 21, created Dec. 14, 2012).

And in *AF Holdings, LLC v John Doe*, No. 12-cv-5709:

- P's Response to OSC.pdf (ECF No. 10, created Nov. 1, 2012)

---

[1] The specific titles of these files were assigned when they were downloaded from the CM/ECF system, however, I assume that the underlying PDF metadata is from the original file uploaded to the CM/ECF system by the electronic filer, Brett Gibbs. Except where otherwise indicated, ECF numbers are from 2:12-cv-8333.

9

DECLARATION OF SETH SCHOEN
**PRIVILEGED AND CONFIDENTIAL DRAFT**

28.    My analysis revealed that the following files were "created" by user "**Paul**":

- Ps Sanctions Motion.pdf (ECF No. 22, created Dec. 17, 2012)
- P's Response to Anonymous Doe Movant's Ex Parte Appl for Leave to Take Early Discovery and Stay.pdf (ECF No. 27, created Dec. 20, 2012)
- Motion to Disqualify Judge Wright.pdf (ECF No. 35, created Dec. 30, 2012)
- Opp to Request for Leave to File Response to Motion to Disqualify.pdf (ECF No. 39, created Jan. 7, 2013)
- Notice of Voluntary Dismissal.pdf (ECF No. 43, created Jan. 28, 2013).

And in *AF Holdings, LLC v. John Doe*, No. 12-cv-6636:

- P's Response re Failure to Serve.pdf (ECF No. 15, created Dec. 27, 2012)

And in *AF Holdings, LLC v. Chaz Forsyth*, No. 12-cv-6669:

- P's Response re Failure to Serve.pdf (ECF No. 18, created Dec. 27, 2012)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 16, 2013 at San Francisco, California.

*[signature]*

Seth Schoen

Case No. 2:12-cv-08333-ODW-JC

DECLARATION OF SETH SCHOEN
**PRIVILEGED AND CONFIDENTIAL DRAFT**

1  Morgan E. Pietz (SBN 260629)
   THE PIETZ LAW FIRM
2  3770 Highland Ave., Ste. 206
   Manhattan Beach, CA 90266
3  mpietz@pietzlawfirm.com
   Telephone:  (310) 424-5557
4  Facsimile :  (310) 546-5301

5
   Attorney for Putative John Doe in 2:12-cv-08333-ODW-JC
6
               **UNITED STATES DISTRICT COURT**
7
               **CENTRAL DISTRICT OF CALIFORNIA**
8

9  | INGENUITY 13, LLC, a Limited | Case Number: 2:12-cv-08333-ODW-JC |
10 | Liability Company Organized Under the Laws of the Federation of Saint Kitts and Nevis, | Case Assigned to: District Judge Otis D Wright, II |
11 | | |
12 | Plaintiff, | Discovery Referred to: Magistrate Judge Jacqueline Chooljian |
13 | | |
14 | v. | Case Consolidated with Case Nos.: 2:12-cv-6636; 2:12-cv-6669; 2:12-cv-6662; 2:12-cv-6668 |
15 | JOHN DOE, | |
16 | Defendant. | **DECLARATION OF GRAHAM W. SYFERT** |
17

18

19

20

21

22

23

24

25

26

27

28

-1-

**DECLARATION OF GRAHAM W. SYFERT**

## <u>DECLARATION OF GRAHAM W. SYFERT</u>

I, Graham W. Syfert, have personal knowledge of the facts alleged herein and hereby aver as follows:

     1.    I am a member in good standing of the State Bar of Florida, duly admitted to the practice of law in the state and federal courts of the State of Florida.

     2.    I have represented various clients in cases brought by the law firm Prenda Law, Inc. Notably, I was counsel of record for a defendant in *Sunlust Pictures v. Nguyen*, M.D. Fl. No. 8:12-CV-1685 ("*Sunlust*") and conducted the hearing wherein Mark Lutz was rebuked by Judge Scriven for attempting to defraud the Court. (*See* Dec'l. of Morgan E. Pietz re: Prenda Law, Inc., <u>Exhibit N</u>, ECF No. 40-2).

     3.    I have reviewed <u>Exhibit LL</u> (ECF No. 117-2 at pp. 6-20) in the above entitled action and hereby affirm that it is a true and correct copy of John Steele's answer to the Florida bar complaint I filed against him for impersonating a Florida Attorney, Florida Bar File 2012-403511(B), and that document that I received from the Florida Bar in that matter.

     4.    Red pen mark asterisks were added next to the section captioned "Affidavit of Mark Lutz" and these asterisk were added by a party other than myself or the Florida Bar. The ECF filing stamps were added to the top of the document upon Mr. Pietz's filing, and footer stamps were added to the bottom of the document (presumably by Mr. Peitz), but no other alterations to the substance of the document has been made

**DECLARATION OF GRAHAM W. SYFERT**

I declare under penalty of perjury under the laws of Florida and the United States of America that the foregoing is true and correct.

Respectfully submitted,

DATED: April 18th, 2013, executed this day at Duval County, Florida, by

_____

    Graham W. Syfert, Declarant

**DECLARATION OF GRAHAM W. SYFERT**

Brett L. Gibbs, Esq. (SBN 251000)
Steele Hansmeier PLLC.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AF HOLDINGS LLC, | **No. C-11-03335 JSC** |
| Plaintiff, | **ADR CERTIFICATION BY PARTIES** |
| v. | **AND COUNSEL** |
| DOES 1-96, | |
| Defendants. | |

## ADR CERTIFICATION BY PARTIES AND COUNSEL

Pursuant to Civil L.R. 16-8(b) and ADR L.R. 3-5(b), each of the undersigned certifies that he or she has:

(1) Read the handbook entitled "*Dispute Resolution Procedures in the Northern District of California*" on the Court's ADR Internet site www.adr.cand.uscourts.gov *(Limited printed copies are available from the clerk's office for parties in cases not subject to the court's Electronic Case Filing program (ECF) under General Order 45)*;
(2) Discussed the available dispute options provided by the Court and private entities; and
(3) Considered whether this case might benefit from any available dispute resolution options.

Dated: September 29, 2011          ___/s/ Salt Marsh, AF Holdings Owner___
                                                                    PARTY

Dated: September 29, 2011          ___/s/ Brett L. Gibbs, Esq., Trial Counsel___
                                                                    COUNSEL

1  Brett L. Gibbs, Esq. (SBN 251000)
   Prenda Law Inc.
2  38 Miller Avenue, #263
   Mill Valley, CA 94941
3  415-325-5900
   blgibbs@wefightpiracy.com
4
   *Attorney for Plaintiff*
5

6

7              IN THE UNITED STATES DISTRICT COURT FOR THE

8                   NORTHERN DISTRICT OF CALIFORNIA

9                          OAKLAND DIVISION

10

11  AF HOLDINGS LLC,                    )    **No. C-11-03067 CW**
12                                      )
                 Plaintiff,             )    **RULE 26(f) REPORT**
13        v.                            )
                                        )
14  DOE 1,                              )
                                        )
15              Defendant.              )
                                        )
16  _____)

17

18                          **RULE 26(f) REPORT**

19        Plaintiff AF Holdings LLC, by and through its counsel, hereby submits this Rule 26(f)

20  Report pursuant to the Court's Order Setting Initial Case Management Conference and ADR

21  Deadlines (Doc. No. 3), Federal Rules of Civil Procedure (hereinafter "FRCP") Rules 26(a)(1) and

22  26(f), and Northern District of California Civil Local Rule (hereinafter "L.R.") 16-9(a):

23  **1. Individuals Likely to Have Discoverable Information:**

24        • Salt Marsh, Owner of AF Holdings

25        • Peter Hansmeier – 161 North Clark Street, Suite 3200, Chicago, Ill., 60601.

26        • Person Most Knowledgeable ("PMK") at Internet Service Provider in their Subpoena

27           Department – Custodian of Records.

28

- Subscriber associated with IP address 108.0.221.94 – …[1]

- Doe Suspects – Yet to be identified.

- Plaintiff reserves the right to add to this list of individuals identified as necessary in the future.

## 2. Documents, Electronically Stored Information, and Tangible Things:

- Physical Documents – Plaintiff's copyright records.

- Electronically Stored Information – BitTorrent auditor, forensic information demonstrating infringing activity over the BitTorrent.

## 3. Projected Discovery Timelines:

At this point, any projected timelines are premature for reasons explained in Plaintiff's Case Management Conference Statement. (*See* ECF No. 25).

## 4. Subjects on Which Discovery, Including Electronic Discovery, Will be Needed:

As noted in Plaintiff's Case Management Conference Statement (ECF No. 25), Plaintiff is currently in settlement negotiations with the Subscriber. Plaintiff expects that the settlement will provide Plaintiff with names, and contact information, of the Doe Suspects who likely used Subscriber's IP address to unlawfully upload/download Plaintiff's copyrighted. Once Plaintiff gets this information, it will conduct its own investigation to identify and hopefully name the actual infringer(s) in this case. Until Plaintiff receives a declaration from the Subscriber to this effect, however, Plaintiff cannot guess as to its content. In other words, Plaintiff's next move entirely depends on whether Plaintiff receives that declaration from the Subscriber, and, is so, what the declaration contains. At this point, therefore, Plaintiff cannot foresee anything beyond waiting for the Subscriber's declaration.

Should the declaration name the Doe Suspects, and allow Plaintiff to contact those individuals, Plaintiff will of course do so. Further, while impossible to judge at this juncture,

---

[1] Per the tentative agreement between Plaintiff and Subscriber, Plaintiff will respectfully keep Subscriber's name anonymous when making this filing.

Plaintiff may apply to the Court for a Court-authorized deposition of one (or all) of these individuals with the primary goal of identifying the Doe Defendant remaining in this case. But, again, considering the requisite declaration from the Subscriber does not exist at this time, Plaintiff only guesses as to what may be necessary discovery in the future of this case.

**5. Objections:**

Plaintiff objects to the Court requiring Plaintiff to make any projected deadlines in this case at this time.

**6. Discovery Motion Currently Pending:**

N/A.

**7. Other Issues:**

N/A.

Respectfully Submitted,

PRENDA LAW INC.,

**DATED: January 4, 2012**

By:      /s/  Brett L. Gibbs, Esq.

Brett L. Gibbs, Esq. (SBN 251000)
Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*

1

2 **CERTIFICATE OF SERVICE**

3 The undersigned hereby certifies that on January 4, 2012, all individuals of record who are deemed

4 to have consented to electronic service are being served a true and correct copy of the foregoing document, and all attachments and related documents, using the Court's ECF system, in compliance

5 with Local Rule 5-6 and General Order 45.

6

7                                                        /s/  Brett L. Gibbs

8                                                        Brett L. Gibbs, Esq.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AF HOLDINGS LLC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case : 1:12-cv-00048 |
| | ) | |
| DOES 1 – 1058, | ) | Judge : Hon. Beryl A. Howell |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MOTION FOR PRO HAC VICE ADMISSION OF JOHN L. STEELE

I, Paul A. Duffy, hereby move pursuant to Local Civil Rule 83.2(d) for the *pro hac vice* admission of John L. Steele to the bar of this Court to act as co-counsel in this action.  Mr. Steele is of counsel with the firm of Prenda Law, Inc., and is a member in good standing of the bar of the State of Illinois and the U.S. District Court for the Northern District of Illinois.  On the basis of the foregoing, it is respectfully requested that this Court admit Mr. Steele *pro hac vice* for the purpose of appearing and participating as co-counsel on behalf of Plaintiff, AF Holdings, Inc., in this action.

Dated:  April 20, 2012

Respectfully submitted,

By:  /s/ Paul A. Duffy

Paul A. Duffy (D.C. Bar # IL0014 )
Prenda Law Inc.
161 N. Clark Street, Suite3200
Chicago, IL  60601
Telephone: (312) 880-9160
Facsimile:   (312) 893-5677
Attorneys for Plaintiff,
AF Holdings LLC

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 20, 2012, I caused a true and

correct copy of the foregoing Motion For Pro Hac Vice Admission to be electronically filed with

the Clerk of the District Court using the CM/ECF system, which sent notification of such filing

to all counsel of record.


Dated: April 20, 2012

/s/ *Paul A. Duffy*
Paul A. Duffy

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| AF HOLDINGS LLC, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   **Case : 1:12-cv-00048** |
| | ) |
| DOES 1 – 1058, | )   **Judge : Hon. Beryl A. Howell** |
| | ) |
|       Defendants. | ) |
| | ) |

## <u>DECLARATION OF JOHN L. STEELE</u>

I, John Steele, declare pursuant to 28 U.S.C. § 1746 and Local Civil Rule 83.2(d):

1.    I am of counsel with the law firm of Prenda Law, Inc., counsel for Plaintiff, AF Holdings, LLC in the above-captioned action.  I submit this declaration in support of Paul A. Duffy's Motion pursuant to Local Civil Rule 83.2(d) for the *pro hac vice* admission of John Steele to the bar of this Court.

2.    My full name is John L. Steele.

3.    My office address is 161 N. Clark Street, Suite 3200, Chicago, Illinois 60601.  My office telephone number is (312) 880-9160.

4.    I have also been admitted to practice before, and am a member in good standing of, the bars of the United States Court District Court for the Northern District of Illinois, and the State of Illinois.

5.    I have not been disciplined by any bar.

6.    I have been admitted *pro hac vice* to this Court in one case (1:12-mc-00150-ESH-AK)  in the previous two years.

7.      I do not engage in the practice of law from an office located in the District of Columbia.  I am not a member of the District of Columbia bar, nor do I have an application for membership pending.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:          April 20, 2012

_____/s/  *John Steele*_____

John Steele
Prenda Law Inc.
161 N. Clark St., Suite 3200
Chicago, IL 60601
Telephone: (312) 880-9160
Facsimile:   (312) 893-5677

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

| | |
|---|---|
| AF HOLDINGS LLC, | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
| v. | )   **Case : 1:12-cv-00048** |
| | ) |
| DOES 1 – 1058, | )   **Judge : Hon. Beryl A. Howell** |
| | ) |
|      Defendants. | ) |
| _____ | ) |

## [PROPOSED] ORDER

Upon consideration of the Motion for *Pro Hac Vice* Admission of John L. Steele, it is

hereby

ORDERED that John L. Steele be specially admitted to appear and participate in the

above-captioned matter as counsel for Plaintiff AF Holdings, LLC.

Dated: April 20, 2012      _____

                                    Hon. Beryl A. Howell
                                    United States District Court Judge

Steven James Goodhue (#029288)
Law Offices of Steven James Goodhue
9375 East Shea Blvd., Suite 100
Scottsdale, AZ 85260
Telephone: (480) 214-9500
Facsimile: (480) 214-9501
E-Mail: sjg@sjgoodlaw.com

*Attorney for Plaintiff*
*AF Holdings, L.L.C.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AF HOLDINGS, L.L.C., a St. Kitts and Nevis limited liability company,<br><br>Plaintiff,<br>v.<br><br>DAVID HARRIS,<br><br>Defendant. | **CASE NO.: 2:12-CV-02144-PHX-GMS**<br><br><br>**DECLARATION OF PAUL DUFFY** |

I, Paul A. Duffy, declare as follows:

1. I am national counsel for Plaintiff AF Holdings, L.L.C.

2. On November 13, 2012, our office served the Court's Order of October 19, 2012 (ECF No. 10) on Defendant David Harris via First-Class Mail.

Dated this 14th day of November, 2012.

By: _____
Paul Duffy

1

# Porn Piracy Lawyer John Steele Says He Shouldn't Be Sanctioned

By Rhett Pardon, XBIZ.com

Wed, Apr 10 2013 11:00am PDT

Tweet

English Espa

LOS ANGELES — Chicago attorney John Steele, who through his law firm has sued thousands for downloading porn through file-sharing networks and now sees himself at center of accusations over attorney misconduct, says he shouldn't be sanctioned by a federal judge in Los Angeles.

Steele told XBIZ on Wednesday that while he can't discuss details of his 5th Amendment invocation to the court two weeks ago, he and his law firm, Prenda Law, have done no wrong.

"Obviously I disagree with some of the bizarre claims of criminal conduct thrown around by people without any proof," Steele said.  "I can say that I never even heard of the case in front of Judge [Otis] Wright until two months ago, and have never appeared in a California case in my life."

Prenda Law and numerous affiliated attorneys nationwide have filed thousands of porn file-sharing suits during the past few years, with some describing the enterprise as mass copyright trolling.

But the practice of scooping up thousands upon thousands of John Doe defendants for porn piracy litigation may be coming to an end as U.S. District Judge Otis Wright weighs his next step against Steele and Prenda Law.

Prenda Law isn't the only law firm to sue defendants fingered by Internet service provider's under threat of subpoena, but it may be the most notorious. Steele, according to a Los Angeles Times article published today, has bragged about the huge value of porn-piracy litigation and told Forbes that he has collected as much as $15 million settling such suits.

Today, a San Francisco law firm filed court papers on Steele's behalf, responding to Wright's order to show cause why sanctions should not be levied.

The plaintiffs, Wright said, bet that "because of embarrassment, many Does will send back a nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars."

Prenda's method of operation, according to testimony, was typical of copyright trolls: Obtain IP addresses, send out letters accusing defendants of piracy while mentioning a $150,000 statutory penalties and then offering lower figures, sometimes in the low thousands, to make them go away.

Last week, the court invited Steele to testify in response to an order to show cause over a case involving plaintiff Ingenuity 13 LLC.

But when Steele showed up, he relied on his Fifth Amendment privilege against compelled testimony, and later said that the court indicated it would draw reasonable inferences against him.

"However, the reasonable inferences the court may draw against Steele are limited, based on the lack of

evidence against Steele before this court," Steele attorneys said in a response to the court. "Moreover, because of the criminal nature of these proceedings, where the court has raised and clearly made up its mind against Steele on questions of fraud and has threatened incarceration, Steele's invocation of the 5th Amendment may not be used to formulate presumptions against him."

Morgan Pietz, a Manhattan Beach, Calif., attorney who represents several defendants in the Prenda lawsuits told the Times that "it's unprecedented for a plaintiff's lawyer to invoke the 5th when asked to explain the conduct of his litigation."

According to Pietz, Prenda Law's strategy began to unravel in Wright's court after he submitted evidence that two production companies the firm supposedly represented as clients, Ingenuity 13 and AF Holdings, were shell companies Prenda lawyers set up on the West Indies island of Nevis.

Pietz noted to the court that the Prenda attorneys therefore concealed their direct interest in lawsuits they ostensibly brought on clients' behalf, which violates court rules.

Wright hasn't said what he'll do about Steele or Prenda Law, but his options could include asking federal prosecutors to probe the firm, referring lawyers to various state bars for discipline, even disbarment, and imposing monetary sanctions.

At a hearing last week, Wright delivered a warning to Steele on what might be next: "This court's focus has now shifted dramatically from the area of protecting intellectual property rights to attorney misconduct. If you say answering these kinds of questions would incriminate him, I'm inclined to take you at your word."

Steele on Wednesday admitted that the court proceedings are "unusual" and that he's hoping Wright, or a higher court, will see it his way.

" I am very confident that once the facts are reviewed by Judge Wright, or the 9th U.S. Circuit Court of Appeals if necessary, this latest effort funded by the Electronic Frontier Foundation to stop anti-piracy litigation will fail," he told XBIZ.