# AF Holdings v. Patel – The View From the Courtroom

Posted on July 8, 2013 06:40 by ktetch 7 Comments

*This is based off personal recollection, and intended to paint a picture while being as*
*objective and accurate as possible. Opinions stated are mine alone and do not constitute*
*the views of TorrentFreak, Mr Patel, Mr Chintella, or any other party. If there are error,*
*please contact me to correct them.*

July 2nd, 2013, and it's early morning, as the north Georgia city of Gainsville approaches, beckoning us on. We're due in Courtroom 300 at 10am, for the case of AF Holdings v. Patel, where it's no longer about Mr Patel, but about sanctions and legal fees; about possible improprieties, and alleged frauds on the court; vexatious litigation and improper filings. It would be a clash between lawyers, litigators who had already sparred on paper, and now would battle with words, evidence and argument.

As 10am neared, in that large, empty courtroom on the court-building's 3rd floor in downtown Gainesville, the room was empty, and tensions rose. Blair Chintella sat at the defense table, desk covered in neat piles of papers and a laptop hooked to the computer monitor system, while in the prosecution area, Jacques Nazaire, representing AF Holdings, had a mostly empty desk.

Apart from these two, myself, and one spectator, and the obligatory court officers, the court was deserted, and the space made it seem more oppressive in some ways, the space magnifying every little sound and amplifying any action. Seated at the row of chairs behind Mr. Chintella, just inside the bar, I was extremely nervous – it was my first time at a Federal Court, and the room certainly echoed

Suddenly, the voice calls out from the corner 'All rise', and tension ratcheted another notch. We few lurch nervously to our feet, as in comes Federal District Judge William C. O'Kelley. Stepping deliberately, he walked to the bench with an assured gait, and none of the outside adversity or combative body language I'd been expecting.

" class="alignright" />My knowledge of judges is limited, but as a general rule, they prefer order and control in their courtroom. They are the person in charge, and they're not afraid to let you know. They are the lion-tamer, with the whip and the chair, to keep the slathering beasts that are litigants in line. Yet there are those that are so good, they don't need the chair, the whip or any other tool, but just their eye, and voice. They control the beasts not through force, but through presence. In Judge O'Kelley, there beats that sort of lion-tamer.

While I could go on further, I'll save such colorful, descriptive language for the likes of John Grisham, and stick instead to the facts, as I remember them. Any quotes contained herein, are from recollection only, and are not guaranteed to be 100% accurate. Please refer to the transcript for exact quotations. Every effort has been made to recall statements as accurately as possible, but they may be out of chronological order.

Note the disclosure above. I'm going to be as impartial as I can be, but reactions and observations will be from my perspective, and that was sitting at the defense area. On questions of fact in my area of competency, I'll be as impartial as possible, but I'm human not a robot (and I know about them).

The basic outline is as in the minute sheet (embedded below), but I'm going to expand on it somewhat, but I'm not sticking to that order. It was a lot to concentrate on, and I was (stupidly) not taking notes. I'll have to wait for the transcript for more.

The judge noted there were still 3 pending motions, starting with Motion 16 – a motion for sanctions against the plaintiffs (AF Holdings, through Prenda Law) for costs and fees because of irregularities about the way the case was filed, and then dismissed, as well as numerous issues with evidence, and the various parties involved. This then brought up a whole series of papers and documents from other cases around the country.

There was some unhappiness from the judge both now and later, however, over the amount of times other cases in other courts were referenced, as opposed to matters specifically in this case. On more than one occasion, Judge O'Kelley admonished Mr. Chintella that he's not litigating cases in other states and districts, and he should try and focus more on the facts and details of this case.

However, one fact was brought up that did catch the judge's interest. Specifically, Mr. Nazaire was insistent that he was not working for Prenda, and that Prenda had no relevance to the complaint, something undermined by the contact information in the complaint. In fact this piqued the judge's interest, especially as the contact information was not entirely that of Mr. Nazaire. This is shown below.

Left: The original Complaint

Right: Motion number 21

When asked why he had other peoples contact information in his own details, including the email address of Brett Gibbs in California, Mr. Nazaire replied that these cases are followed closely, and he was warned that if he put his own email address there, it would be all around the net, and that he would get all sorts of threats and attempts at intimidation. The judge looked a little incredulous at this, and instructed his law clerks to check the rules. There they noted that the rule (local rule 11.1, as noted on page 25 of this document) says

"**Counsel's name, complete address (including post office box or drawer number and street address), telephone number, facsimile number and Georgia Bar number shall appear on every pleading and other paper presented for filing.**"

A question was raised about email addresses, and the clerk looked it up in the Federal Rules of Civil Procedure, and yes, there email address is also included. So here the Judge was annoyed, and concerned, and then seemed to give more attention to the references elsewhere.

When it came time for Mr. Nazaire's presentation, he talked about how this case has been dismissed, and that his motion (number 21) is to deal with what he indicated was frivolous or pointless filings, in order to pad the billing out. His sanctions motion seeks to deal with that, and requested just one dollar ($1) as a token fee 'as a matter of principle'.

He also objected to Mr. Chintella's recording of phone calls between the two of them, saying he believed it was illegal. Also that he travelled out of state a lot, including to New York, and that

Federal law, and New York are all-party consent states. Unfortunately, for Mr. Nazaire, that's not the case in law, and if you're reading, I'll help you out.

- Georgia is a single-party state [Ga. Code §§ 16-11-62(1), 16-11-66]. As Mr. Chintella is a party, he could consent and record the call.

- New York is a single party state [N.Y. Penal Law §§ 250.00, 250.05.] Again, it's legal for Mr. Chintella to record.

However, Mr. Nazaire also argued it was against Federal law, the problem is….

- Federal Law – 18USC 2511(2)(d) allows the recording if… one party consents. Hence it's again legal and permitted.

I'm not a lawyer. However, I knew this already. What's more, if I were to bring this topic (or indeed ANY topic) up in Federal court, I'd be sure that I knew the law on the topic beforehand. I'd consider it common sense, and basic practice. I've a feeling as well that the Judge knew the law too, especially as he spent 8 years on the Foreign Intelligence Surveillance Court (from 1980-1987), the court that deals with wiretaps and recording.

The personal matters previously alluded to were also brought up here. The judge was concerned about the unprofessional nature of some of the filings, and at one point in the hearing warned Mr. Nazaire that he had a long way to go to dig himself out (and that Mr. Chintella was not immune from criticism on that point, although for what was not elaborated on).

The judge also showed exasperation at times for the amount of fighting each other, rather than fighting the case, noting that his clerk had almost a foot of papers from this case, and a lot of it was personal stuff that should be separated from the actual matters before the court. This includes things like the 'wiretapping', and terrorism, as well as some derogatory statements about California (presumably the 'Gay Marriage' bit).

The terrorist angle was cleared up though, somewhat. When Mr. Nazaire accused Mr. Chintella of being "a paid attorney for the EFF" (I'm sure he wishes he was), "which has some of the same goals as the anti-government group "Anonymous" as well as the terrorist group "Wikileaks"." (both on page 5 of the aforementioned motion 21) what he meant was that he's listed on the EFF site, and the EFF is about freedoms, a bit like Wikileaks which some people *might* consider a terrorist organization. Of course, some also consider the NRA, the Catholic church, and Congress 'terrorist organizations', just as 'some people' consider AF Holdings, Prenda Law, Alpha Law Group, and other related groups to be criminal organizations. It's not exactly a high barrier, two crazy people are all you need and you've got 'some people'. He wasn't *actually* calling Mr. Chintella a terrorist, or some hippy America-hating California liberal (a funny thing to imply about the ex US-army member), and it won't happen again.

Focus was also made during the morning, of the basis for bringing the suit, and the relationship to Prenda/AF Holdings and Mr. Nazaire. Mr. Nazaire was questioned on the basis for the suit, if he'd checked everything before filing, and the response did not impress the judge. When asked about Mr. Cooper, and other representatives of AF Holdings and Prenda, and if he'd met them, or spoken to them, or other such things, Mr. Nazaire explained to the court that he used to do Credit Card Fraud cases (presumably in New York), and that when working for Bank of America, or Citibank, it was normal for him to deal only with a company representative, and not a CEO or shareholder. The judge, smiling, asked him if he was saying AF Holdings is as established as a City bank.

Other things that grab the judge's attention during this morning session are the number, and type of cases. There have apparently been ten cases that Mr. Nazaire has brought on behalf of AF Holdings. At least one was dealt with in state court, and roughly half settled. That, combined with the nature of the dismissal with prejudice, and other practices in the case seemed to around some suspicion in the judge. He was 'not happy' at all.

The court eventually adjourned for lunch at 12:40, with copies of my professional CV handed to Mr. Nazaire. It would recommence at 2.

2pm rolls around, and in comes the judge. This time he's more laid back – I can't even see his face now most of the time, as he's reclining in his chair, obscured by the water jug. Is that good, or bad? Is he fed up of the case, getting irritated and trying to avoid exploding, or only going to half-listen to what's said, as he digests his lunch? The reality is, he's calm, and in control, he's got the measure of the lawyers, and over lunch he's got some idea of where he wants to go.

As a result, when the afternoon session starts, the mood is palpably different. This was not going to be a 12 minute hearing (we've already had some 3 hours of argument), nor a whitewash for either side – getting their motions granted with a minimum of fuss. The judge is INTERESTED, not just in getting the three motions resolved, but in the whole case and any related ones.

The defendant's desk had been a frenetic whirlwind of energy, as Mr. Chintella attempted to order documents on the laptop, to display to the judge. Over at the plaintiffs desk, there was a change of mood too, gone was the veneer of confidence, buried under the papers and laptop which was not there before lunch.

As the afternoon proceedings start, there's an objection from the plaintiff – they hadn't been given enough notice about me. I was a surprise. There was a short amount of debate, with the end result that this hearing, and seeing me, and being handed a CV directly, constituted notice that I exist, and would testify in future hearings.

Judge O'Kelley also spoke of Judicial notice. He'd been asked to take notice of a number of cases, and he's just not sure at that time which cases to take notice of. So, he'll go away, look over and decide which ones he'll take Judicial Notice of, and will get back as quickly as possible. He also said he wasn't happy about this case at all, And that he expected the utmost professionalism from here on out; NO personal attacks, discrete digs, or 3rd grade name-calling.

This unhappiness revolved around the lack of facts – solid facts. There were assorted facts from other cases nationwide, but nothing in this case, due to a lack of discovery. What he had heard though, from both attorneys, concerned him, so he asked each side if they'd care for discovery. The defendants had mentioned several times that they would have liked discovery, but had not had a chance for any, so the idea was warmly welcomed. When asked what it would like to do regards discovery, the plaintiff's lawyer suggested they might want to depose Mr. Patel (the named defendant in this case), but after some back and forth between the attorneys and the judge, he modified that to an interrogatory (I think).

With that response, and wanting a quick turnaround, Justice O'Kelley set discovery at 60 days, telling both parties they'd better be quick.

As it's a question that was asked on twitter of me, I'll mention this, both parties asked if there were any restrictions on discovery. No, replied the judge, only in terms of time. How you use it is up to you.

I'm not a lawyer, so it may mean something different than what I understand that to mean – again, wait for the transcripts to be sure.

With that, the hearing was basically over, 40 minutes after lunch, and so ends this record. I never got to speak, on the record. My only interaction was in the section shortly before lunch, where I was operating the laptop, switching between documents at Mr. Chintella's direction, while Mr. Chintella described them, and their relevance, to the court. If my words made it onto the record, it was to confirm I'd selected the right file before opening.

With discovery lasting until Labor Day Weekend, the next hearing will be some time in October. We will see what happens between now and then.

And so, as the judge retires to his chambers and the lawyers pack their papers, the camera pulls back as the credit music starts to roll, as, with a rousing flourish, the caption

## *To Be Continued…*

fades in, looks around, sees the courtroom emptying of what few were there, and decides if everyone is leaving it will too, and fades back out again.

To my knowledge, there hasn't been discovery granted in any other case, so in that way, this is a REALLY important case. We'll see what happens in a few months.

Yet the key aspect that troubled the court from what I saw (my opinion), was the multitudes of cases, where those involved swap and change positions like a game of musical chairs. There was also concern over the way many of these cases have been litigated, and how patterns have cropped up in those cases, patterns repeated in this one; documents missing, or suspiciously worded, contradictions left and right, and some corners-cut in the litigating that didn't sit well. When you add in the personal attacks (possibly trying to draw attention away from other areas) then it sticks in the mind of the judge, and may well offend him, bringing his ire down on the motion's author. Of course, this could be part of a strategy to use for removing the judge (as happened in California) if things don't go your way, but who can tell…

For now though, discovery is on-going, so it's going to be interesting to see what develops from that.

Meanwhile Mr Chintella has sent out a release of his own, expressing his views on the hearing, and is embedded below.

Minutes of july 2 hearing AFholdings v Patel by Andrew Norton