IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN  DISTRICT OF GEORGIA
GAINESVILLE DIVISION

AF HOLDINGS, LLC,             :
                                       :
     Plaintiff,               :
                                       :   CIVIL ACTION
v.                               :   NO. 2:12-cv-00262-WCO
                                       :
RAJESH PATEL,             :
                                       :
     Defendant.            :

### **ORDER**

Having found itself litigating against a more formidable adversary than an empty chair, plaintiff turned to unfounded accusations and wholesale obfuscation. The court has before it for consideration a veritable Gordian knot of motions alleging vexatious litigation and bad faith.  This order addresses defendant's motion for sanctions [16], plaintiff's motion for sanctions [21], defendant's motion to strike and for sanctions [30], plaintiff's second motion for protective order with motion to quash and motion to seal [60], defendant's motion for contempt against non-party Comcast [63], plaintiff's motion to quash [68], defendant's motions to compel [74, 75], and defendant's motion for sanctions [76].  Last, but certainly not least, we have defendant's motion for permission to file motions [84].

At the outset, the court would like to express its displeasure that the two litigants have taken what amounts to a relatively simple controversy and converted a legal case into a personal dispute.  The parties, particularly plaintiff and plaintiff's counsel, have shown an utter inability to meaningfully advance the litigation and prefer collateral attacks to focusing on the case's merit.  Plaintiff refuses to disclose basic and incontestably relevant information and makes discovery objections with no legal basis.  Plaintiff's general policy of obstruction culminated when plaintiff's managing member, Mark Lutz, failed to attend a properly noticed deposition.

Flagrant abuse of process and an utter lack of professionalism are not well received in this court. After careful review of the record, the court finds that the parties should show cause why they should not be subject to sanctions. The court will issue a show cause order detailing the court's perceived deficiencies with the parties and schedule a hearing.  This hearing will allow the parties to attempt to justify their conduct and explain why their behavior does not merit sanctions under Rule 11, Rule 37(d), 28 U.S.C. § 1927, and/or the court's inherent authority.  *See Kipperman v. Onex Corp.*, 260 F.R.D. 682, 699 (N.D. Ga. 2009) (citations omitted).  The court may issue sanctions or allow further discovery based on the testimony elicited at the hearing.

The court emphasizes that this hearing will not be a symposium to discuss and review what other courts have done in cases involving AF Holdings nor whether

Prenda Law principals directed a nationwide scheme of similar litigation.  Defendant's attempts to turn this case into a putative class action have been and will continue to be rejected.  At this time, this court's sole interest for the purpose of assessing sanctions is misconduct *in this case*.

## I. Facts and Procedural History

On November 2, 2012, plaintiff AF Holdings, LLC, filed a copyright infringement claim against defendant Rajesh Patel [1].  The complaint alleges that defendant illegally downloaded a pornographic video titled "Popular Demand" using Bittorrent.  (Compl. 1-2, ECF No. 1.)  It is unnecessary to detail the underlying technical processes behind the Bittorrent protocol for this motion except to note that a device can be identified by its IP address while downloading a file from a Bittorrent client.  Plaintiff utilizes forensic software to identify devices downloading its copyrighted content.  (*See id.* at ¶ 21.)  According to plaintiff's complaint, its software identified that a device illegally downloaded a copy of its copyrighted work.  Somehow, plaintiff linked the offending IP address to defendant and filed suit.  The complaint does not contain any allegation connecting defendant to the allegedly illegal download.  Plaintiff filed two exhibits along with its complaint: the copyright listing for Popular Demand and an assignment from the original copyright holder to plaintiff.  (*Id.* at ¶ 17-20.)

Defendant failed to answer the complaint and defaulted. On March 1, 2013, defendant's counsel filed a notice of appearance [12] and sought to set aside defendant's default [13]. On March 18, 2013, plaintiff filed a notice of voluntary dismissal [14]. However, the case remains open to address various allegations of bad faith litigation and vexatious conduct.

Defendant's motion for sanctions [16] claims that plaintiff is one of many entities participating in a form of judicial extortion by filing speculative lawsuits against alleged copyright infringers. According to defendant's motion, these entities either recover the equivalent of a nuisance settlement or voluntarily dismiss the case. (Def.'s Mot. Sanctions 3-4, ECF No. 16.) Defendant's primary basis for sanctions is that plaintiff lacks standing. Defendant claims that non-party principals fraudulently executed the copyright assignment agreement for Popular Demand by forging Alan Cooper's signature. (*See id.* at 22-24.) The pending motions all relate to defendant's attempts to establish that plaintiff and other non-parties committed a fraud upon this court. Plaintiff's responses vehemently deny the allegations and accuse defendant of bad faith by maintaining this suit.

## II.  Pending Discovery Disputes

### A. Plaintiff's Motion for a Protective Order

Plaintiff seeks a protective order from defendant's "breathtakingly overly broad and excessive" discovery requests.  (Pl.'s Mot. Protective Order 4, ECF No. 60.) Defendant filed three requests for admissions, two sets of interrogatories, three requests for production, and several subpoenas.  Plaintiff asks this court to enter a protective order disallowing defendant's "second and third" discovery requests, quashing defendant's subpoenas, and ordering the filing of all future documents under seal.  (*Id.* at 1.)  Plaintiff's motion for a protective order is denied.

The court may "for good cause" issue a protective order to prevent unduly broad discovery.  FED. R. CIV. P. 26(c)(1).  "In other words, 'the court . . . has the authority to confine discovery to the claims and defenses asserted in the pleadings . . . .'" *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 355 (11th Cir. 2012) (quoting FED. R. CIV. P. 26 advisory committee's note (2000 Amendment)).  The party moving for a protective order has the burden of demonstrating "good cause" for the order.  *Estate of Manship v. United States*, 240 F.R.D. 700, 702 (N.D. Ga. 2006) (citing *Williams v. Taser Int'l. Inc.*, 2006 U.S. Dist. LEXIS 47255, 2006 WL 1835437, at *1 (N.D. Ga. June 30, 2006)).  The moving party fails to demonstrate good cause

by making "stereotyped and conclusory statements." *Williams*, 2006 WL 1835437, at *1.

Plaintiff has no support for the requested protective order beyond conclusory allegations. Plaintiff characterizes defendant's admissions requests as "vast in scope, excessive, and represent[ing] nothing more than a fishing expedition." (Pl.'s Mot. Protective Order 2, ECF No. 60.) The motion is a series of conclusory statements that fail to demonstrate good cause. (*See id.* at 3) ("[H]aving a full-blown discovery process . . . represents a very high burden upon the Plaintiff, and one that is not necessary to address the Plaintiff's standing to bring the suit."); (*Id.* at 4) ("There is no justification that would allow defendant to be entitled to second and third sets of discovery in such a period of time."). "Tautology is no substitute for facts and documents." *Thomas Consol. Indus. v. Herbst (In re Thomas Consol. Indus.)*, 456 F.3d 719, 725 (7th Cir. 2006). Therefore, plaintiff's motion as to defendant's second and third sets of discovery requests is denied.

Plaintiff also objects to three third-party subpoenas and a subpoena to plaintiff's corporate representative, Mark Lutz. A party has standing to challenge a subpoena when the party "alleges a personal right or privilege with respect to the materials subpoenaed." *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 554-55 n.3 (N.D. Ga. 2001) (collecting cases) (internal quotation marks omitted). A party may not

object to a third-party subpoena absent an alleged threat to a personal right or privilege. *See Maxwell v. Health Ctr. of Lake City, Inc.*, 2006 U.S. Dist. LEXIS 36774, 2006 WL 1627020, at *2 (M.D. Fla. June 6, 2006) (citations omitted). Plaintiff did not state any reason to quash the third-party subpoenas beyond a completely unsupported allegation that the requested information "may embarrass the third parties or contain the incorrect dates or incorrect IP addresses." (Pl.'s Mot. Protective Order 4, ECF No. 60.) None of these alleged threats have any relationship to plaintiff's rights or privileges.

The remaining subpoena to Mark Lutz is valid. Lutz's affidavit identifies him as plaintiff's "managing member." (Pl.'s Resp. Mot. Sanctions 2, ECF No. 20-2.) Defendant's subpoena for production is largely confined to highly relevant categories of documents. However, the court agrees that some aspects of the subpoena are unduly broad. While information related to Lutz's duties at AF Holdings and AF Holding's corporate structure is highly relevant, queries related to non-actors in this case who engage in similar litigation to plaintiff is not relevant.

The subpoena will remain valid subject to the following revisions. Request number 6 is stricken. Defendant asks Mark Lutz to produce the original assignment agreement. Plaintiff provided a copy of the assignment agreement in the complaint. (ECF No. 1-2.) Defendant may inspect, but not acquire, the original assignment

7

agreement. The court, as part of its show cause order, will require plaintiff to produce the original assignment agreement. Therefore, this request is unnecessary. Request numbers 11 and 12 are limited to AF Holdings and Salt Marsh. Lutz's participation in or ownership of legal entities similar to AF Holdings will not yield admissible evidence.

Finally, plaintiff's request to seal subsequent court filings is denied. Embarrassment and "misleading characterizations" do not merit any limitation on the "common-law right of access to judicial proceedings." *See Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (citing *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 264 F.3d 1304, 1311 (11th Cir. 2001)). Any material filed in connection with a substantive motion will remain unsealed barring good cause. *See id.* at 1245-46 (citation omitted).

## B. Plaintiff's Motion to Quash Subpoenas

Plaintiff also filed a motion to quash multiple non-party subpoenas alleging defective form and attorney-client privilege [68]. Defendant did not file a response within fourteen days, so plaintiff's motion to quash is granted. *See* LR 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.").

## C. Comcast Subpoena

Defendant has a pending motion for civil contempt against Comcast Cable Communications, LLC [63].  Defendant sent a subpoena to Comcast requesting subscriber information related to five IP addresses.  (Def.'s Mot. Contempt 2, ECF No. 63-1.)  Comcast did not respond by the subpoena's deadline.

Comcast, a non-party to this case, filed a response opposing defendant's motion [72].  Comcast's primary defense is that disclosing subscriber information without giving the subscriber notification and an opportunity to object would subject it to liability under federal law.  (Resp. Def.'s Mot. Contempt 4, ECF No. 72.)  Comcast notes that there are two pending motions by plaintiff that would erase Comcast's production obligations. (*Id.* at 5.)  Comcast refuses to respond to the subpoena until the court disposes of the pending motions.  (*Id.*)  If Comcast did comply and this court subsequently granted either motion, Comcast may be liable for the unauthorized disclosure of subscriber information.  (*Id.*)

Failure to comply with a valid subpoena may qualify as civil contempt.  *See Smith v. Pefanis*, 652 F. Supp. 2d 1308, 1339-42 (N.D. Ga. 2009) (citation omitted).  Civil contempt requires the moving party prove by clear and convincing evidence that (1) a valid order was in effect, (2) the order was clear and unambiguous, and (3) the alleged violator could have complied with the court's order, had he chosen to do so.

9

*See id.* at 1339 (citations omitted).  The court may consider whether the accused party's course of conduct evinces a good faith effort at compliance. *Id.* at 1340 (citation omitted).  Civil contempt is a remedial sanction, which should be "used to obtain compliance with court order or to compensate for damage sustained as a result of noncompliance." *Food Lion, Inc. v. United Food and Commercial Workers Int'l Union*, 103 F.3d 1007, 1009, 1016 (D.C. Cir. 1997) (citation omitted).

Comcast's refusal to obey the subpoena is entirely justified.  The court declines to sanction Comcast for satisfying its obligations under federal law.  Furthermore, Comcast complied with prior subpoenas issued by defendant after the subscriber notice and objection period expired.  (Resp. Def.'s Mot. Contempt 4, ECF No. 72.)  There is no indication that Comcast will fail to comply with this subpoena after this court's disposal of the pending motions.  Therefore, because the court sees no need to coerce Comcast's compliance with the subpoena, holding Comcast in civil contempt is inappropriate. *See In re Lawrence*, 279 F.3d 1294, 1300 (11th Cir. 2002) (citation omitted).  Defendant's motion is denied.

### D. Defendant's Motions to Compel

Defendant filed motions to compel responses to his interrogatories and request for production.  (ECF Nos. 74, 75.)  Both of defendant's motions include a certification that defendant's counsel attempted to meet and confer with plaintiff's

counsel before filing the motion.  (Mot. Compel 7, ECF No. 74; Mot. Compel 7, ECF No. 75.)  Defendant sent plaintiff multiple emails noting plaintiff's failure to respond to defendant's discovery requests.   Plaintiff's pleading titled "Affirmation in Opposition and Response to Defendant's Motion for Sanctions and Motions to Compel" [80] does not address defendant's motions to compel, much less provide substantial justification for the failure to respond.  Plaintiff, always mindful of judicial economy, apparently submitted one response to address three of defendant's motions. While plaintiff's response addresses defendant's motion for sanctions, the response does not oppose defendant's motions to compel.  Instead, plaintiff reiterates its general objection to any discovery on the basis that "defendant should have fully investigated the claim for vexatious litigation before filing its [sic] motion."  (*See* Pl.'s Resp. Def.'s Mot. Sanctions 2, ECF No. 80.)  Defendant's motions to compel are granted because plaintiff failed to oppose defendant's motions to compel beyond claiming that any discovery is excessive.  *See* LR 7.1(B), NDGa.  Alternatively, defendant's motions to compel are granted because the information sought by defendant is reasonably calculated to lead to the discovery of admissible evidence.  *See* FED. R. CIV. P. 26(b)(1).

The court must award the prevailing party attorney's fees incurred in making a successful motion to compel barring certain exceptions.  *See* FED. R. CIV. P.

11

37(a)(5)(A).  However, the court may not assess fees until after the opposing party has been given an opportunity to be heard.  *See id.*  Plaintiff and plaintiff's counsel may explain at the show cause hearing why they should not be required to pay defendant's costs associated with his motions to compel.

### E. Defendant's Motion to Strike and for Sanctions

Defendant's motion to strike represents a low point in the litigation.  Defendant filed a notice correcting a citation error and attached a copy of a California district court's order sanctioning AF Holdings.  (*See* Notice 1, ECF No. 27.)  Plaintiff filed a "notice of objection" characterizing defendant's notice as a sur-reply and an "attempt to force a mandate upon this Court by submitting an Order from a California Court as what it [sic] purports to be evidence."[1]  (Notice Objection 1, ECF No. 29.) The notice of objection is legally frivolous and generally incomprehensible.  (*See* Notice Objection 3-16, ECF No. 29.)  Plaintiff appears to argue that this court is not required to find plaintiff liable for sanctions because Judge Wright found that plaintiff engaged in frivolous and vexatious litigation.  (*See id.* at 2-5.)  Plaintiff spends several pages opining on professional rules and the events in this case with no discernable

---

[1.] Preventing the relitigation of issues decided in other courts is more commonly known as issue preclusion or collateral estoppel.

12

logic or purpose. (*See id.* at 7-16.) Plaintiff concludes by asking the court to disregard defendant's filings and to dismiss this case. (*See id.* at 16.)

Defendant's motion to strike asks the court to strike plaintiff's notice [30]. Defendant's motion is equally confusing, though not as atavistic as plaintiff's notice. Defendant claims plaintiff engaged in "brazen misconduct" when plaintiff "willfully filed a document accusing Defendant of violating Local Rule 7.1, a document it knew violated the very same rule." (*See* Mot. Strike 5, ECF No. 30.) As best as this court can determine, defendant wants the court to strike plaintiff's notice as a sanction for litigation misconduct. (*See id.* at 3) (citing *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010).) We will keep things simple. The court may strike any redundant, immaterial, impertinent, or scandalous matter on its own initiative. Fᴇᴅ. R. Cɪᴠ. P. 12(f). Plaintiff's notice is nothing more than disjointed assertions that are completely immaterial to the case; at best, one could characterize plaintiff's notice as a seriously flawed motion to strike. Therefore, plaintiff's notice is hereby stricken.

Defendant also requests attorney's fees for the expenses associated with bringing this motion. The court will refrain from awarding fees in a piecemeal fashion; the court will determine whether defendant is entitled to any attorney's fees at the show cause hearing.

### III. Pending Motions for Sanctions

Having dealt with the pending discovery issues, the court turns to the parties' motions for sanctions. Defendant has two motions for sanctions. The first motion requests sanctions based on plaintiff's conduct *during* the litigation, and the second requests sanctions based on plaintiff's *filing* of the lawsuit. Plaintiff also filed a motion for sanctions and claims that defendant engaged in frivolous and vexatious litigation by reopening this lawsuit and by filing a motion for sanctions.

#### A. Defendant's Motion for Sanctions for Actions During the Case

Defendant requests sanctions based on the failure of Mark Lutz, AF Holdings' managing member and CEO, to attend a properly noticed deposition. On July 22, 2013, Defendant provided a proper notice of deposition to depose Mark Lutz. (Notice Dep., ECF Nos. 76-3, 43.) Lutz failed to attend the deposition. Plaintiff did not provide any reason why Lutz would be unable to attend prior to the deposition. Plaintiff did not have a pending motion for a protective order objecting to the deposition. *See* FED. R. CIV. P. 37(d)(2). Lutz had not been deposed previously. Defendant requests that this court dismiss plaintiff's motion for sanctions, enter adverse inferences, and grant defendant attorney's fees and costs. (Def.'s Mot. Sanctions 1-2, ECF No. 76.)

Plaintiff's excuses for Lutz's failure to attend the deposition are beyond frivolous [80].[2]  Plaintiff's "justification" for the failure of plaintiff's *managing member* to attend his deposition is that Lutz "has been deposed before," which plaintiff considers sufficient to conclude that "the defense wants Mr. Lutz to fly to Georgia by his own expense for the sole purpose of being humiliated."  (Pl.'s Resp. Mot. Sanctions 3-4, ECF No. 80) ("Mr. Lutz has every reason not to appear at a deposition which may also be attend [sic] by individuals who follow a website named **die**troll**die** and which has identified him as a troll as well.") (emphasis in original)). However, Lutz was never deposed *in this case*.  The fact that this would not have been Lutz's first deposition on his relationship to AF Holdings is irrelevant.  (*Id.* at 3.)  The fact that there are individuals on the internet adverse to plaintiff's litigation strategy

---

[2.] Plaintiff's response is so vacuous it barely constitutes a response.  Plaintiff's "argument" section merely recites the standard for contempt and states that "[p]laintiff's actions obviously do not satisfy these contempt criteria."  The entirety of plaintiff's argument section is reproduced below, excluding citations:

> The Court should deny defendant's motion because it fails to establish a lawful basis for the relief he seeks.  Additionally, the Court should consider awarding costs and fees to the plaintiff.

> An order of civil "contempt" is proper only when the moving party proves that an underlying order was violated by the alleged contemnor by clear and convincing evidence, . . . which establishes that: (1) "the allegedly violated order was valid and lawful"; (2) "the order was clear and unambiguous"; and (3) "the alleged violator had the ability to comply." . . . . Plaintiff's actions obviously do not satisfy these contempt criteria.

Pl.'s Resp. Def.'s Mot. Sanctions 5-6, ECF No. 79.

is irrelevant. (*Id.* at 3-4.) However, the court's ability to address blatant and willful discovery violations is very relevant. *See* FED. R. CIV. P. 37(d).

The court finds that Lutz failed to attend a properly noticed deposition and that Lutz's failure to attend was not justified. Rather than provide any meaningful explanation for Lutz's failure, plaintiff offered bizarre tangents about how "any new deposition of Mr. Lutz or any interrogatories or any production responses will be sought solely for the purpose of providing a good laugh for" several websites. (Pl.'s Resp. Def.'s Mot. Sanctions 4-5, ECF No. 80.)

Rule 37(d)(3) *requires* a court to impose reasonable attorney's fees and expenses against a party, a party's attorney, or both for a Rule 37(d) violation. The court finds that plaintiff and Jacques Nazaire shall be jointly and severally liable for failing to appear at a properly noticed deposition. While the court could assess the fees and costs associated with the failed deposition against plaintiff at this time, the court believes it is more prudent to avoid any fee shifting until after the show cause hearing.

The court has the ability to impose further sanctions under Rule 37(d). However, the court would like to hear the parties' arguments at the show cause hearing before determining whether additional sanctions are appropriate. At this time,

16

the court will refrain from imposing a sanction enumerated in Rule 37(b)(2)(A)(i-v) but reserves its right to do so after the show cause hearing.

## B. Plaintiff's Motion for Sanctions

Plaintiff's motion for sanctions is baseless.  In short, plaintiff's motion for sanctions claims that defendant's motion for sanctions has no merit and that defendant's counsel reopened the case "for the sole purpose of harassing individuals and attorneys who protect copyrights." (Pl.'s Mot. Sanctions 14, ECF No. 20.) Plaintiff accuses defendant's counsel of extortion by requesting post-judgment discovery. (*See id.* at 16.) Plaintiff suggests that Blair Chintella, defendant's counsel, reopened the case because of his "deep personal resentment" towards John Steele, an attorney with some kind of connection to AF Holdings. (*See id.* at 4.) Plaintiff claims that Chintella resents Steele because "Chintella perhaps believes that Mr. Steele has spread Chintella's mug shot, from a 2011 DUI arrest, across the Internet." (*See id.*) Plaintiff's attorney helpfully volunteers that he "has a copy of the mugshot and can provide the same to the Court if so requested." (*Id.* at 5.) Plaintiff's motion for sanctions is utterly baseless.  The motion is denied.

## C. Defendant's Motion for Sanctions for Filing the Lawsuit

Defendant's first motion for sanctions relates to plaintiff's standing to file this case and asks the court to sanction plaintiff under its inherent authority.  Defendant

17

requests a number of remedies, one of which is "[a] hearing as to whether bad faith exists on this case on the part of Plaintiff and Plaintiff's counsel . . . ." (Mot. Sanctions 1, ECF No. 16.) The court will grant defendant's motion for sanctions to the extent that defendant petitions the court to issue a show cause order.

### IV. Show Cause Order

The following persons are **ORDERED** to appear and **TO SHOW CAUSE** why they should not be sanctioned for the actions listed below.

#### A. Jacques Nazaire

Jacques Nazaire signed the complaint. Nazaire identifies himself in the complaint's signature as "Of Counsel to Prenda Law Inc." (Compl. 14, ECF No. 1.) Nazaire's phone number is listed as (415) 325-5900, which he identifies as Prenda Law's phone number. (*Id.*; Tr. 37, ECF No. 64.) His email is listed as "blgibbs@wefightpiracy.com." (Compl. 14, ECF No. 1.) Nazaire states that he "reviewed the complaint, [he] went over it with either Mr. Gibbs or Mr. Lutz . . . ." (Tr. 32, ECF No. 64.) Later on, either Gibbs or Lutz asked Nazaire to dismiss the complaint. (*Id.*) Nazaire says he is "absolutely not" a member of Prenda but that Prenda referred cases to him. (*Id.* at 39.)

Nazaire also filed the disclosure statement for AF Holdings [5]. The disclosure statement does not list any interested parties. Nazaire admitted he did not know

whether AF Holdings had a qualifying party under Local Rule 3.3 but states that he had not received any information to the contrary.  (Tr. 52-53, ECF No. 64.)

Nazaire should be prepared to address the following issues during the show cause hearing:

(1) Whether Nazaire violated Local Rule 3.3 by failing to properly disclose all persons, associates, firms partnerships, or corporations having either a financial interest in or other interest which could be substantially affected by the outcome of this particular case in plaintiff's Certificate of Interested Persons and Corporate Disclosure Statement.

(2) Whether Nazaire violated Local Rule 3.3 by failing to provide a complete list of each person serving as a lawyer in this proceeding.

(3) Whether Nazaire violated his obligations to the court under Fed. R. Civ. P. 11 and other applicable rules by failing to make a reasonable inquiry into the facts and law before filing this case and by filing motions that were not warranted by existing law and lacked factual support.

(4) Whether Nazaire performed an adequate investigation into the factual contentions supporting the complaint before filing the complaint.  *See* FED. R. CIV. P. 11(b)(1-4).

(5) Whether Nazaire facilitated vexatious and frivolous litigation by maintaining a meritless suit, filing frivolous and unwarranted motions, and making frivolous and unwarranted objections to defendant's discovery requests.

### B. AF Holdings, LLC

Plaintiff should be prepared to address the following issues during the show cause hearing:

(1) Why plaintiff should not be sanctioned for the acts described defendant's motions for sanctions [16, 76].

(2) Why plaintiff should not be sanctioned for filing frivolous motions and making frivolous objections to discovery requests.

(2) Whether plaintiff committed a fraud on this court by initiating a lawsuit that it lacked standing to bring.

(3) Whether issue preclusion bars plaintiff from relitigating its standing to assert claims based on the Popular Demand copyright.

### C. Blair Chintella

On August 27, 2013, plaintiff filed a notice of objection [71] to defendant's 30(b)(6) deposition notice.   The objection contained a link to a page where defendant's counsel and/or individuals affiliated with defendant's counsel engaged in crowdfunding in order to pay for depositions in this case.   Plaintiff does not say why

this conduct is improper, although it appears plaintiff contends that Chintella violated Georgia Rule of Professional Conduct 1.7(a) and 1.8(f) by soliciting third-party funds to pay for litigation.  Chintella should be prepared to address this accusation.

Additionally, Chintella's conduct during the litigation demonstrates a lack of familiarity with basic evidentiary and procedural rules.  The court is reluctant to fully reimburse a party when the party's inability to effectively litigate a matter drove up the bill.  If the court opts to sanction plaintiff and plaintiff's attorney by awarding attorney's fees, Chintella should explain why his attorney's fees should not be adjusted downwards.

## D. A Note of Caution

In case this order did not adequately drive the point home earlier, the court is not pleased with how this litigation has progressed.  Failure to attend the show cause hearing will not be well received.  Failure to attend *will* result in severe sanctions and may result in referral to the State Bar of Georgia.  Failure to directly address the court's concerns will result in equally severe sanctions.

Notwithstanding this court's prior order prohibiting the parties from filing additional motions, the parties may file a supplemental brief addressing the court's concerns to the extent that the supplemental brief provides facts not already present in the record.  The parties are strongly encouraged to bring any relevant evidence to

the show cause hearing. Specifically, *plaintiff must produce the original assignment agreement for inspection.* If a party wishes to present testimony that it deems critical to its case, the party should be prepared to solicit that testimony through a live witness. The parties are on notice that they may not use affidavits as a means to circumvent cross examination.

### E. Chintella's Bankruptcy Does Not Impact This Court's Jurisdiction

Chintella recently filed for bankruptcy, which has no effect on this court's ability to hold a show cause hearing. The court is a "governmental unit" and is free to determine whether the imposition of sanctions is appropriate even if the potentially sanctioned party is in bankruptcy. *See, e.g.*, *Berg v. Good Samaritan Hosp. (In re Berg)*, 198 B.R. 557, 561-63 (9th Cir. 1996); *McAtee v. The Florida Bar (In re McAtee)*, 162 B.R. 574, 578 (Bankr. N.D. Fla. 1993). Additionally, the court is aware that sanctions other than monetary damages are available in such cases. Therefore, the court is free to go forward with the show cause hearing despite Chintella's ongoing bankruptcy.

### V. Conclusion

The court hereby **GRANTS in part** defendant's motion for sanctions [16] to the extent defendant requests a show cause order. Plaintiff's motion for sanctions [21]

22

is hereby **DENIED**.  Defendant's motion to strike and for sanctions [30] is hereby **DENIED**.  Plaintiff's notice of objection [29] is hereby **STRICKEN**.  Plaintiff's second motion for protective order with motion to quash and motion to seal [60] is hereby **GRANTED in part**.  Defendant's motion for contempt against non-party Comcast [63] is hereby **DENIED**.  Plaintiff's motion to quash [68] is hereby **GRANTED**.  Defendant's motion to compel responses to defendant's interrogatories [74] and  motion to compel responses to defendant's request for production [75] are hereby **GRANTED**.  Defendant's motion for sanctions [76] is hereby **GRANTED in part**.  Defendant's motion for permission to file motions [84] is **DENIED**.  Given the history of this litigation, the court has no interest in the parties clogging up this court's docket with matters that will be addressed at the show cause hearing.  Accordingly, this court's order enjoining the filing of additional motions remains in effect.  To the extent that a party believes the opposing party engaged in sanctionable conduct that is not evidenced in the record, the party may bring the matter to the court's attention by filing a supplemental brief.

       **IT IS SO ORDERED**, this 18th day of December, 2013.


                             s/*William C. O'Kelley*
                             William C. O'Kelley
                             Senior United States District Judge