```
1                   IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF GEORGIA
2                             ATLANTA DIVISION

3   AF HOLDINGS, LLC,              )      CV. NO. 2:12-262
                                   )      ATLANTA, GA
4                 PLAINTIFF,       )      JANUARY 28, 2014
                                   )
5                                  )
                                   )
6       VERSUS                     )
                                   )
7   RAJESH PATEL,                  )
                                   )
8                 DEFENDANT.       )
    _____    )

9              BEFORE THE HONORABLE WILLIAM C. O'KELLEY
               UNITED STATES DISTRICT SENIOR COURT JUDGE
10                           MOTIONS HEARING

11  APPEARANCES:

12  FOR THE PLAINTIFF:            JACQUES NAZAIRE, ESQ.
                                  JACQUES NAZAIRE ATTORNEY AT
13                                   LAW
                                  125 TOWN PARK DRIVE
14                                SUITE 300
                                  KENNESAW, GA  30144
15
    FOR THE DEFENDANT:            BLAIR CHINTELLA, ESQ.
16                                BLAIR CHINTELLA, ESQ.
                                  2483 SHOALS TERRACE
17                                DECATUR, GA  30034

18  COURT REPORTER:               DEBRA R. BULL, RPR, CRR
                                  UNITED STATES COURT REPORTER
19                                1914 RICHARD RUSSELL BUILDING
                                  75 SPRING STREET, SW
20                                ATLANTA, GA  30303

21             STENOTYPE/COMPUTER-AIDED TRANSCRIPTION
                      *** *** *** *** ***
22

23

24

25
```

1                          INDEX

2   MARK LUTZ

3        DIRECT EXAM BY MR. NAZAIRE                    3

4        CROSS EXAM BY MR. CHINTELLA                  15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1            THE COURT:  ALL RIGHT.   PROCEED THEN.

2            MR. NAZAIRE:  I WOULD LIKE TO CALL TO THE STAND MR.

3  MARK LUTZ.

4            THE CLERK:  MR. LUTZ, WILL YOU PLEASE RAISE YOUR

5  RIGHT HAND?

6             MARK LUTZ, HAVING BEEN FIRST DULY SWORN, TESTIFIED

7  AS FOLLOWS:

8            THE CLERK:  IF YOU COULD PLEASE HAVE A SEAT AND SPELL

9  YOUR LAST NAME FOR THE COURT REPORTER.

10           THE WITNESS:  YES.  MARK LUTZ,  L-U-T-Z.

11                          DIRECT EXAM

12 BY MR. NAZAIRE:

13  Q.   GOOD MORNING, MR. LUTZ.  WHAT IS YOUR CONNECTION TO

14 THE PLAINTIFF, AF HOLDINGS?

15  A.   I AM THE TRUSTEE.

16  Q.   YOU IN EFFECT OWN AF HOLDINGS,  CORRECT?

17  A.   FOR LACK OF A BETTER TERM,  YES.

18           THE COURT:  YOU SAY YOU ARE THE TRUSTEE.  IS IT IN

19 BANKRUPTCY?

20           THE WITNESS:  NO.

21           THE COURT:  IT IS UNDER A TRUST CREED.

22           THE WITNESS:  TRUST CREATED IN NEVIS, N-E-V-I-S.

23 BY MR. NAZAIRE:

24  Q.   IS THERE ANYBODY ELSE THAT YOU KNOW OF WHO OWNS MORE

25 THAN TEN PERCENT OF AF HOLDINGS?
```

```
 1    A.    NO.

 2    Q.    IS THERE ANYBODY YOU KNOW OF THAT OWNS ANY OTHER

 3  PERCENTAGE OF AF HOLDINGS?

 4    A.    NO.

 5    Q.    ANYBODY -- DOES PAUL DUFFY OWN ANY PERCENTAGE OF AF

 6  HOLDINGS?

 7    A.    NO.

 8    Q.    DOES MR. JOHN STEELE OWN ANY PERCENTAGE OF AF HOLDINGS?

 9    A.    NO.

10    Q.    DOES MR. PAUL HANSMEIER OWN AF HOLDINGS?

11    A.    NO.

12    Q.    DOES ANYBODY WHO HAS BEEN LISTED BY DEFENDANT'S

13  ATTORNEY OWN AF HOLDINGS?

14    A.    I DON'T KNOW WHO WAS LISTED OFF THE TOP OF MY HEAD.

15    Q.    BUT THERE IS NOBODY ELSE YOU KNOW OF,  CORRECT?

16    A.    NO.

17    Q.    AS FAR AS YOU KNOW, I AM THE ONLY ATTORNEY WORKING ON

18  THIS CASE,  CORRECT?

19    A.    YES.

20          MR. NAZAIRE:  YOUR HONOR, THERE ARE FOUR ISSUES HERE.

21  SINCE I HAVE MR. LUTZ ON THE STAND, I WOULD LIKE TO ASK HIM

22  THE ISSUES REGARDING THE DEPOSITIONS.

23          THE COURT:  ALL RIGHT.

24          MR. NAZAIRE:  AND DISCOVERY.

25
```

1  BY MR. NAZAIRE:

2  Q.    MR. LUTZ, YOU WERE TOLD ABOUT THAT YOU -- WITHDRAWN.

3     YOU WERE REQUESTED TO APPEAR FOR A DEPOSITION, CORRECT?

4  A.    YES.

5  Q.    IS THERE A REASON WHY YOU DID NOT APPEAR FOR THE

6  DEPOSITION?

7  A.    I WAS UNDER THE IMPRESSION THAT IT WAS ESSENTIALLY

8  REQUESTED TO HUMILIATE ME.

9  Q.    LET ME BACK UP.  IT WAS NOT A COURT-ORDERED DEPOSITION,

10 CORRECT?

11 A.    I DON'T KNOW OFFHAND.

12 Q.    BUT -- OKAY.  CAN YOU TELL ME, YOU SAID IT WAS TO

13 HUMILIATE YOU, CAN YOU EXPLAIN?

14 A.    I BELIEVE SO.  AFTER READING MR. CHINTELLA'S WEBSITE

15 AND SEEING VARIOUS WAYS TO FUND THIS DEPOSITION, I ALSO RECALL

16 SOME SORT OF VIDEO BEING OFFERED FOR SOMEWHERE IN THE

17 NEIGHBORHOOD OF A HUNDRED OR A HUNDRED AND FIFTY DOLLARS TO

18 ANYONE WHO WANTED TO SEE THE DEPOSITION AND POKE FUN AT IT.

19 Q.    NOW, HAVE YOU HAD ANYBODY MAKE FUN OF YOU BECAUSE OF

20 THESE CASES, AF HOLDINGS CASES?

21 A.    YES, I THINK SO.

22 Q.    CAN YOU EXPLAIN THAT TO ME?

23 A.    WELL, I WOULD ASSUME THAT QUESTIONS BEING ASKED --

24 THAT WOULD BE ASKED THAT WOULD HAVE NO RELEVANCE TO THIS CASE.

25 Q.    BUT I AM JUST SAYING BEFORE, HAVE YOU EVER HAD ANY

1  EXPERIENCES WITH PEOPLE CALLING YOU OR EMAILING YOU TO HARASS

2  YOU REGARDING AF HOLDINGS?

3  A.   YES.

4  Q.   IS THAT PART OF YOUR REASONING FOR NOT SHOWING UP TO A

5  NON COURT-ORDERED DEPOSITION?

6  A.   ABSOLUTELY,  YES.

7  Q.   DO YOU KNOW WHY SOMEBODY WOULD WANT TO VIDEOTAPE YOU?

8  A.   I AM ASSUMING BECAUSE PEOPLE MAY FIND IT ENTERTAINING,

9  THAT WOULD BE MY GUESS.

10  Q.   SO, THERE WAS NO REAL REASON CONNECTED TO THIS CASE,

11  CORRECT?

12  A.   I DON'T BELIEVE SO,  NO.

13  Q.   NOW, THIS WEBSITE, WHAT ELSE CAN YOU TELL ME ABOUT THE

14  WEBSITE YOU SAW REGARDING YOUR DEPOSITION?

15  A.   NOT TOO MUCH.  THEY WERE JUST AGAIN ADVERTISING VIDEOS

16  OF THE DEPOSITION,  OFFERING THEM FOR RESALE, AND I THOUGHT IT

17  WAS JUST TO MAKE MORE OF A CIRCUS OUT OF SOMETHING THAT

18  SHOULDN'T BE A CIRCUS.  IT IS A COURT OF LAW.  I FIND IT VERY

19  SERIOUS.

20  Q.   EARLIER YOU HEARD THE TESTIMONY OF MR. PATEL,  CORRECT?

21  A.   YES.

22  Q.   HE SAID HE WAS THE DEFENDANT IN THIS CASE AGAINST A BIG

23  CORPORATION, AF HOLDINGS, LLC?

24  A.   YES.

25  Q.   IS AF HOLDINGS, LLC, A BIG CORPORATION?

DIRECT EXAM OF MARK LUTZ

1  A.   UNLESS YOU CONSIDER MYSELF A BIG CORPORATION,  NO.

2  Q.   WHAT DOES AF HOLDINGS CONSIST OF?

3  A.   JUST MYSELF.

4  Q.   NOW,  ARE YOU FAMILIAR WITH THE PATEL CASE?

5  A.   YES.

6  Q.   WHAT DO YOU KNOW ABOUT THE CASE?

7  A.   I BELIEVE I SPOKE TO HIM SHORTLY AFTER -- AT THE TIME

8  IT WOULD HAVE BEEN MR. GIBBS OBTAINED MR. PATEL'S INFORMATION

9  FROM HIS ISP AND WE CONTACTED HIM IN REGARD TO SETTLEMENT, AT

10 WHICH TIME HE INFORMED ME HE RAN A COUPLE OF GAS STATIONS AND

11 ALLOWED HIS CUSTOMERS TO USE THE INTERNET SERVICE,  WHICH I

12 FOUND VERY HARD TO BELIEVE.  I HAVE NEVER GONE TO A GAS

13 STATION AND FILLED UP AND JUMPED ON A WI-FI.  SO I BROUGHT

14 ALL THAT INFORMATION TO MR. BRETT GIBBS AND ASKED HIM TO MOVE

15 FORWARD ACCORDINGLY.

16  Q.   NOW,  WILL YCOU EXPLAIN  -- SO,  BASICALLY, LET ME BACK

17 UP.

18    SO, YOU ARE TESTIFYING THAT MR. PATEL INFRINGED ON YOUR

19 COPYRIGHT OR ON A COPYRIGHT THAT BELONGS TO AF HOLDINGS,

20 CORRECT?

21  A.   SOMEBODY AT ONE OF HIS GAS STATIONS DID,  YES.

22  Q.   SOMEBODY  DID.

23    AND BASICALLY WAS IT EXPLAINED TO YOU THAT IT  -- YOU WERE

24 ABLE TO SUE HIM, THAT YOU HAD A LEGAL RIGHT TO SUE HIM?

25  A.   YES.

1  Q.    NOW,  BASICALLY,  WHAT IS IT THAT YOU UNDERSTAND ARE THE

2  TWO REQUIREMENTS FOR SUING SOMEBODY FOR COPYRIGHT

3  INFRINGEMENT?

4  A.    TO BE HONEST WITH YOU,  I AM NOT AN ATTORNEY,  BUT I

5  CAN GUESS IT WOULD BE THE ILLEGAL DISTRIBUTION OF THE

6  COPYRIGHTED WORK AND REASON TO BELIEVE THAT IT OCCURRED AT A

7  SPECIFIC DATE AND TIME.

8  Q.    OKAY.  NOW,  YOU MUST HAVE AN ASSIGNMENT,  CORRECT,  IF

9  IT WAS -- IF THE COPYRIGHT WAS ASSIGNED TO YOUR COMPANY?

10  A.    YES.

11  Q.    AND THAT ASSIGNMENT WOULD HAVE TO BE ASSIGNED BY AN

12  ASSIGNER, CORRECT?

13  A.    YES.

14  Q.    DID YOU HAVE THAT ASSIGNMENT?

15  A.    I DID NOT, NO.

16  Q.    DID AF HOLDINGS HAVE IT OR SOMEBODY ON BEHALF OF AF

17  HOLDINGS?

18  A.    OUR ATTORNEY BRETT GIBBS WOULD HAVE HANDLED THAT.

19  Q.    THE ASSIGNMENT WAS ASSIGNED BY AN ASSIGNER, CORRECT?

20  A.    YES.

21  Q.    AND AS FAR AS YOU KNOW, IT MET ALL THE REQUIREMENTS TO

22  GO AFTER MR. PATEL?

23  A.    YES.

24  Q.    AND, THEREFORE, YOU ASKED MR. BRETT GIBBS TO GO AFTER

25  MR. PATEL, CORRECT?  OR SOMETHING LIKE THAT?

1   A.   I'M SORRY, CAN YOU REPEAT?

2   Q.   DID YOU ASK AN ATTORNEY TO GO AFTER MR. PATEL?

3   A.   I EXPLAINED TO HIM WHAT MR. PATEL TOLD ME OVER THE

4   PHONE AND IT WAS UP TO HIM ON HOW TO MOVE FORWARD.

5   Q.   HOW DID YOU GET MR. PATEL'S INFORMATION?

6   A.   IT WAS PROVIDED BY MR. GIBBS ONCE THE SUBPOENA WAS

7   RETURNED BY MR. PATEL'S ISP.

8   Q.   WHAT -- DID -- WHERE MR. GIBBS OR SOMEONE ELSE OBTAIN

9   THAT SUBPOENA?

10   A.   FROM THE INTERNET PROVIDER.

11   Q.   AND WHAT GAVE THEM THE RIGHT TO GET THE SUBPOENA?

12   A.   A JUDGE ALLOWED THEM TO ISSUE IT.

13   Q.   DO YOU REMEMBER THE JUDGE'S NAME?

14   A.   I BELIEVE IT WAS IN A DC CASE, I DON'T REMEMBER THE

15   NAME.

16   Q.   WOULD JUDGE HOWELL SOUND FAMILIAR?

17   A.   YES.

18   Q.   SO THEREFORE -- AND SO, THEREFORE, IT WAS A LEGITIMATE

19   SUBPOENA ISSUED, CORRECT?

20   A.   YES.

21   Q.   AS FAR AS YOU KNOW WERE THERE ANY -- DID THE JUDGE

22   REVIEW THE CASE BEFORE ISSUING THE SUBPOENA, IF YOU KNOW?

23   A.   JUDGE HOWELL?

24   Q.   YES.

25   A.   I CAN'T SPEAK FOR JUDGE HOWELL.

1  Q.    I JUST WANT TO GET IT ON THE RECORD IT WAS A LEGITIMATE

2  SUBPOENA,  CORRECT?

3  A.    AGAIN, I AM NOT AN ATTORNEY.  I WOULD ASSUME IF MR.

4  GIBBS SENT OUT A SUBPOENA IT WAS LEGITIMATE.

5  Q.    THAT SUBPOENA WAS RETURNED WITH AN IP ADDRESS, CORRECT?

6  OR WITH THE NAME THAT MATCHED THE IP ADDRESS, CORRECT?

7  A.    YES.

8  Q.    THAT NAME WAS MR. PATEL,  CORRECT?

9  A.    YES.

10  Q.    DID YOU CONTACT MR. PATEL OR HE CONTACTED YOU OR BRETT

11  GIBBS DID?

12  A.    BRETT GIBBS GAVE ME A LIST OF PEOPLE WHO WERE NOT

13  REPRESENTED BY ATTORNEYS AT THE TIME AND ASKED ME TO REACH

14  OUT.

15  Q.    I UNDERSTAND YOU ARE NOT A LAWYER,  BUT WHY IN YOUR

16  MIND DO YOU THINK YOU HAVE A RIGHT IN GENERAL TO GO AFTER

17  PEOPLE WHO VIOLATE YOUR COPYRIGHT?

18  A.    BECAUSE IT IS STEALING.

19  Q.    HOW IS IT THAT THEY STEAL FROM YOU?  IN THE LAYPERSON

20  -- EXPLAIN THAT AS A LAYPERSON.

21  A.    THEY USE SOPHISTICATED SOFTWARE TO TRADE PORTIONS OF A

22  FILE BACK AND FORTH UNTIL SOMEONE OBTAINS THE ENTIRE FILE AND

23  THEN THEY HAVE ALL THE CONTENT THEY WANT,  WHETHER IT BE A

24  SONG,  MOVIE,  SOFTWARE,  WHATEVER IT MAY BE.

25  Q.    HOW DO YOU BELIEVE THAT HURTS YOU AS A LAYPERSON?

1   A.    WELL,  INSTEAD OF GOING TO VARIOUS SITES OR GOING TO

2   ONE OF THE STORES WHERE CONTENT IS DISTRIBUTED,  THEY ARE NOT

3   PAYING FOR IT.

4   Q.    AND THE CONTENT THAT IS INITIALED HERE AS FAR AS YOU

5   KNOW IS POPULAR DEMAND, IS THE NAME?

6   A.    YES.

7   Q.    SO, ONCE YOU OBTAINED INFORMATION THAT MR. PATEL WAS

8   DOING THIS,  YOU SAID EVENTUALLY YOU CONTACTED HIM OR HE

9   CALLED YOU, DO YOU REMEMBER?

10   A.    I WOULD HAVE CALLED HIM.

11   Q.    AND YOU SPOKE WITH HIM,  CORRECT?

12   A.    YES.

13   Q.    EARLIER HE TESTIFIED THAT HE NEVER SPOKE WITH YOU OR HE

14   DOESN'T REMEMBER.

15   A.    UH-HUH (AFFIRMATIVE RESPONSE).

16   Q.    THAT IS FALSE,  CORRECT?

17   A.    THAT IS FALSE,  YES.

18   Q.    AND WHAT WAS THAT CONVERSATION LIKE OR WHAT WAS

19   EXCHANGED?  YOU EARLIER TESTIFIED THAT HE HAD A GAS STATION,

20   TWO GAS STATIONS?

21   A.    YEAH.  HE EXPLAINED TO ME THE SITUATION.  I OWN A

22   COUPLE OF GAS STATIONS,  I DO ALLOW MY CUSTOMERS TO USE THE

23   WI-FI.  HE EXPLAINED TO ME THAT IT WAS PASSWORD PROTECTED AND

24   THAT PEOPLE USE IT ACCORDINGLY.

25        MR. CHINTELLA:  YOUR HONOR, I WOULD LIKE TO MAKE AN

1  OBJECTION.  WE WERE ADDRESSING THE ISSUE OF VALIDITY OF THE

2  ASSIGNMENT AGREEMENT HERE.  I AM NOT SURE WHAT CONVERSATION

3  BETWEEN MR. LUTZ AND POSSIBLE CONVERSATION HAS ANY RELEVANCE

4  TO THAT ISSUE.

5          THE COURT:  I OVERRULE THE OBJECTION.

6          MR. NAZAIRE:  AS I SAID BEFORE --

7          THE COURT:  I OVERRULE THE OBJECTION, GO AHEAD.

8  BY MR. NAZAIRE:

9  Q.    WHAT ELSE DID MR. PATEL TELL YOU,  IF ANYTHING?

10  A.    OFF THE TOP OF MY HEAD I DON'T RECALL.

11  Q.    SO, YOU BELIEVE YOU HAD A VALID BASIS TO GO AFTER HIM,

12  CORRECT?

13  A.    AGAIN,  THAT WAS NOT MY DECISION.  NOTES WERE THEN

14  SENT OVER TO MR. GIBBS AND HE DECIDED TO MOVE FORWARD

15  ACCORDINGLY.

16  Q.    NOW, DID MR. GIBBS THAT YOU KEEP MENTIONING, DID HE

17  EVER EXPLAIN TO YOU THAT COPYRIGHT INFRINGEMENT WAS STRICT

18  LIABILITY IN GEORGIA?

19  A.    I'M SORRY, WAS WHAT?

20  Q.    IT WAS A STRICT LIABILITY STANDARD?  THAT THE STRICT

21  LIABILITY APPLIED TO THE COPYRIGHT INFRINGEMENT?

22  A.    NO.

23  Q.    HE DID NOT EXPLAIN THAT TO YOU? SO, DO YOU BELIEVE YOUR

24  COMPANY LOST MONEY BECAUSE OF THIS?

25  A.    ABSOLUTELY.

1  Q.    IT IS NOT JUST MR. PATEL, RIGHT, IT IS SEVERAL PEOPLE

2  WHO DO THIS?

3  A.    IT IS THOUSANDS IF NOT MILLIONS.

4  Q.    THAT ADDS UP,  CORRECT?

5  A.    THAT ADDS UP REAL QUICK.

6  Q.    NOW,  YOU HAVE HAD -- I UNDERSTAND, I AM NOT TRYING TO

7  GO TOO MUCH INTO OTHER STATES, BUT YOU HAVE HAD OTHER CASES

8  WHERE YOU TRIED TO SUE PEOPLE,  CORRECT?

9  A.    YES.

10  Q.    AND JUDGES HAVE HEARD THESE CASES,  CORRECT?

11  A.    I'M SORRY?

12  Q.    JUDGES HAVE HEARD THESE CASES, HAVE PRESIDED OVER THESE

13  CASES,  OTHER JUDGES?

14  A.    YES.

15  Q.    NOW,  HAVE ANY OF THESE JUDGES FOUND THAT IT WAS

16  REASONABLE FOR YOU TO SUE THESE INDIVIDUALS?

17  A.    LOTS OF THEM HAVE.

18  Q.    SO, THERE HAVE BEEN MORE JUDGES THAT HAVE FOUND THAT IT

19  IS REASONABLE TO SUE FOR THIS ASSIGNMENT THAN THERE HAVE NOT

20  BEEN,  CORRECT?

21  A.    ABSOLUTELY.

22  Q.    HAVE YOU ALWAYS BEEN GIVEN  -- HAVE YOU ALWAYS BEEN

23  GIVEN THE OPPORTUNITY TO TESTIFY?

24  A.    I HAVE NOT.   I HAVE APPEARED IN COURT MULTIPLE TIMES

25  AND NEVER BEEN ASKED TO TESTIFY.

1  Q.    SO, THIS IS THE FIRST TIME ANYONE HAS EVER ASKED YOU TO

2  TESTIFY, CORRECT?

3  A.    YES.

4  Q.    HOW DO YOU THINK THAT HAS AFFECTED YOU BY NOT

5  TESTIFYING EARLIER?

6  A.    IT HAS KILLED MY BUSINESS TO THE POINT WHERE I AM

7  REBUILDING A COMPLETELY DIFFERENT BRAND,  COMPLETELY DIFFERENT

8  INDUSTRY RIGHT NOW.

9  Q.    DO YOU BELIEVE THAT HAS MADE YOU SEEM UNBELIEVABLE AND

10 UNDESIRABLE BECAUSE PEOPLE SAY, HEY, MARK LUTZ NEVER SHOWS UP

11 FOR A DEPOSITION OR PEOPLE BADMOUTH AF HOLDINGS?

12 A.    YES.

13 Q.    EVERYBODY ASSOCIATES AF HOLDINGS WITH YOU,  CORRECT?

14 A.    YES.

15 Q.    NOW,  HAVE YOU MADE  -- HAVE YOU LOST ANY MONEY BECAUSE

16 OF THESE PROCEEDINGS?  NOT ANYTHING ELSE, BECAUSE OF THESE

17 PROCEEDINGS, HAVE YOU LOST MONEY?

18 A.    IN THIS PARTICULAR COURT?

19 Q.    YES.

20 A.    NO.

21 Q.    HAVE YOU SPENT MONEY TO COME HERE?

22 A.    YES.

23 Q.    HOW MUCH MONEY DID YOU SPEND TO COME HERE?

24 A.    APPROXIMATELY FOUR HUNDRED ON AIRFARE AND A HUNDRED

25 DOLLARS FOR A HOTEL ROOM LAST NIGHT.

1  Q.    YOU HAVE TO BUY FOOD AND THINGS OF THAT NATURE?

2  A.    OF COURSE.

3         MR. NAZAIRE:  YOUR HONOR, I HAVE NO FURTHER QUESTIONS

4  AT THIS TIME.   I RESERVE THE RIGHT TO REDIRECT,  HOWEVER.

5         THE COURT:  YOU HAVE CROSS-EXAMINATION,  MR.

6  CHINTELLA?

7         MR. CHINTELLA:  YES,  YOUR HONOR.

8                         CROSS EXAM

9  BY MR. CHINTELLA:

10  Q.    GOOD AFTERNOON,  MR. LUTZ.

11  A.    GOOD AFTERNOON.

12  Q.    ARE YOU FAMILIAR WITH A PERSON NAMED JOHN STEELE?

13  A.    YES.

14  Q.    IS HE HERE TODAY?

15         MR. NAZAIRE:  I OBJECT,  YOUR HONOR.  THAT IS NOT

16  WITHIN THE SCOPE OF MY DIRECT EXAMINATION.

17         THE COURT:  WELL,  I WILL ALLOW BROAD

18  CROSS-EXAMINATION IN REGARD TO THIS MATTER.

19     OVERRULED.

20  BY MR. CHINTELLA:

21  Q.    IS HE HERE TODAY?

22  A.    YES.

23  Q.    WHERE IS HE?

24  A.    NOT IN THE COURTROOM RIGHT NOW.  I DON'T SEE HIM.

25  Q.    WHERE IS THE LAST PLACE YOU SAW HIM?

1  A.    OUT FRONT OF THE BUILDING.

2  Q.    HOW LONG HAVE YOU KNOWN MR. STEELE?

3  A.    THREE YEARS.

4  Q.    WHAT ARE YOU GUYS' RELATIONSHIP?

5  A.    WE ARE FRIENDS.

6  Q.    YOU GUYS ARE ALSO BUSINESS ASSOCIATES, ARE YOU NOT?

7  A.    NOT AS OF NOW, NO.

8  Q.    DO YOU GUYS LIVE TOGETHER?

9  A.    NO.

10 Q.    HAS HE EVER BEEN ON A LEASE WITH YOU?

11 A.    HE MAY HAVE, YES.

12 Q.    WHAT WAS THE ADDRESS FOR THAT LEASE?

13       MR. NAZAIRE:  NOTE MY OBJECTION, YOUR HONOR.  IS THIS

14 A BUSINESS LEASE?

15       THE COURT:   WHERE ARE YOU GOING WITH THIS NOW? I

16 SAID I WOULD ALLOW YOU BROAD CROSS-EXAMINATION, I DIDN'T MEAN

17 I WOULD ALLOW YOU COMPLETE DISCOVERY.

18       MR. CHINTELLA:  WELL, WHERE WE ARE GOING WITH THAT,

19 YOUR HONOR, IS THAT IF WE ARE ALLOWED TO SHOW A CONNECTION

20 BETWEEN JOHN STEELE AND MR. LUTZ THAT TRUE PARTIES AND

21 INTEREST HERE HAVE STILL NOT BEEN DISCLOSED INVOLVED MR.

22 STEELE AND POSSIBLY OTHER PARTIES.

23       THE COURT:  GO AHEAD.

24       MR. NAZAIRE:  RELEVANCE HAS TO BE THE ELEMENTS OF THE

25 ISSUES.  YOU KNOW, JUST SHOWING A CONNECTION THAT THEY WERE

1  FRIENDS, THAT DOESN'T GO TO THE RELEVANCE OF THE ISSUES

2  THEMSELVES -- OF THE ELEMENTS OF THE ISSUES THAT WERE

3  PRESENTED.

4          THE COURT:  I WILL OVERRULE THAT OBJECTION.

5  BY MR. CHINTELLA:

6   Q.    MR. LUTZ, ARE YOU FAMILIAR WITH A CASE OF AF HOLDINGS

7  VERSUS NAVASCA?

8   A.    I'M SORRY?

9          MR. NAZAIRE:  OBJECTION.

10         MR. CHINTELLA:  ARE YOU FAMILIAR WITH A CASE OF AF

11  HOLDINGS -- WITHDRAWN FOR A MOMENT,  YOUR HONOR.

12         YOUR HONOR, IF I MAY, I WOULD LIKE TO APPROACH THE

13  COURT OF PHYSICAL EVIDENCE OF THE WORK AT ISSUE.

14         THE COURT:  YOU MEAN THE CASE YOU JUST REFERRED TO IN

15  CALIFORNIA?

16         MR. CHINTELLA:  I'M SORRY, THE DVD AT ISSUE.  MAY I

17  PRESENT IT TO THE WITNESS?

18         THE COURT:  ALL RIGHT.  YOU MAY.

19         MR. CHINTELLA:  I WOULD LIKE TO SHOW HIM THIS AND ASK

20  HIM A FEW QUESTIONS ABOUT THEM.

21         MR. NAZAIRE:  MAY I GET A COPY?

22  BY MR. CHINTELLA:

23   Q.    WHAT PROPERTY DOES AF HOLDINGS HAVE? WHAT ARE ITS

24  ASSETS?

25   A.    THERE ARE NO ASSETS.

1  Q.    HOW DOES IT CONDUCT BUSINESS?

2  A.    THEY ARE NO LONGER CONDUCTING BUSINESS.

3  Q.    HOW DID IT CONDUCT BUSINESS AT THE TIME MR. PATEL WAS

4  ACCUSED OF INFRINGEMENT?

5  A.    WELL, AT THE TIME THEY HELD A COUPLE OF COPYRIGHTS AND

6  THEY WERE, DUE TO INFRINGEMENT, THE COPYRIGHTS WERE WORTH

7  NOTHING ESSENTIALLY AFTER GOING -- AFTER PEOPLE THAT CHOOSE TO

8  PIRATE CONTENT.  WE WERE HOPING TO OBVIOUSLY ELIMINATE

9  PIRATING AND MOVE FORWARD AND SELL THE CONTENT THROUGH VARIOUS

10  DISTRIBUTORS.

11  Q.    WHEN YOU SAY "WE,"  WHO ARE YOU REFERRING TO?

12  A.    MYSELF.

13  Q.    JUST YOURSELF?

14  A.    UH-HUH (AFFIRMATIVE RESPONSE).

15  Q.    WAS ANYONE ELSE INVOLVED IN THAT BUSINESS?

16  A.    NO.

17  Q.    DID AF HOLDINGS HAVE ANY EMPLOYEES?

18  A.    NO.

19  Q.    DID IT HAVE ANY INDEPENDENT CONTRACTORS?

20  A.    NO.

21  Q.    IS THERE ANYONE WHO PROVIDED SERVICES FREE OF CHARGE TO

22  THE COMPANY?

23  A.    PROVIDE -- CAN YOU REPEAT THE QUESTION?

24  Q.    IS THERE ANYBODY WHO PROVIDED SERVICES TO THE COMPANY

25  FREE OF CHARGE?

1    MR. NAZAIRE:  OBJECTION.  I DON'T SEE THE RELEVANCE.

2    MR. CHINTELLA:  YOUR HONOR, WE ARE GOING TO SHOW THAT

3    THIS IS A SHELL COMPANY.

4    MR. NAZAIRE:  OBJECTION, THAT IS NOT ONE OF THE

5    ISSUES THAT IS PRESENTED HERE.  THE ISSUES ON PAGES 19 AND 20

6    DON'T MENTION ANYTHING ABOUT SHELL COMPANIES.

7    THE COURT:  I WILL OVERRULE THE OBJECTION.

8    BY MR. CHINTELLA:

9    Q.    ARE YOU AWARE OF A PERSON NAMED PAUL HANSMEIER?

10   A.    YES.

11   Q.    WHAT RELATION DOES HE HAVE TO AF HOLDINGS AND YOURSELF?

12   A.    HE HAS REPRESENTED THEM IN CASES BEFORE.

13   Q.    HAS HE EVER DONE ANYTHING ELSE?

14   A.    NO.

15   Q.    HAS HE EVER DONE A DEPOSITION OR SERVED AS A DEPONENT

16   FOR THE COMPANY?

17   A.    I BELIEVE SO ONCE IN CALIFORNIA.

18   Q.    SO, THERE IS IN FACT OTHER ROLES HE HAS FULFILLED FOR

19   THE COMPANY?

20   A.    UH-HUH (AFFIRMATIVE RESPONSE).

21   Q.    WAS HE COMPENSATED FOR THAT?

22   A.    NO.

23   Q.    WHY DID HE DO THAT?

24   MR. NAZAIRE:  NOTE MY OBJECTION.  HE IS TALKING TO

25   HIM ABOUT BEING CALLED AS A DEPONENT IN A CASE AND WHETHER HE

1   IS PAID FOR THAT.   THAT IS IRRELEVANT,   YOUR HONOR.

2           MR. CHINTELLA:  WITHDRAW YOUR HONOR.  WITHDRAW THE

3   QUESTION.

4           THE COURT:  BEG YOUR PARDON?

5           MR. CHINTELLA:  I WITHDRAW THE QUESTION.

6           THE COURT:  GO AHEAD.

7   BY MR. CHINTELLA:

8   Q.    WHEN PAUL HANSMEIER SERVED AS AF HOLDINGS'

9   REPRESENTATIVE, IT WAS IN CALIFORNIA,  WAS IT NOT?

10  A.    IT WAS.

11  Q.    DO YOU REMEMBER THE EXACT CASE NAME?

12  A.    I DO NOT.

13  Q.    DO YOU REMEMBER WHAT JUDGE IT WAS BEFORE?

14  A.    I DO NOT.

15  Q.    DOES JUDGE WRIGHT SOUND FAMILIAR?

16  A.    FOR THAT DEPOSITION,  NO.

17  Q.    HOW ABOUT AF HOLDINGS VERSUS NAVASCA?

18  A.    I AM NOT FAMILIAR WITH THAT CASE.

19  Q.    WHAT CASES ARE YOU FAMILIAR WITH FOR YOUR COMPANY?

20  A.    THE ONES THAT HAVE BEEN BROUGHT TO MY ATTENTION BY MY

21  ATTORNEYS.

22  Q.    WHO ARE YOUR ATTORNEYS?

23  A.    IN THIS PARTICULAR MATTER I HAVE MR. NAZAIRE.

24  Q.    IN ANY MATTERS, WHO ARE YOUR ATTORNEYS?

25  A.    IT WOULD DEPEND ON THE PARTICULAR CASE.

1   Q.   HOW MANY ATTORNEYS ARE THERE?

2   A.   AT ONE TIME WE HAD PROBABLY NINE OR TEN IN VARIOUS

3   STATES OR NINE OR TEN THROUGHOUT THE COUNTRY.

4   Q.   WHEN YOU SAY "WE," YOU ARE REFERRING TO JUST YOURSELF

5   OR WHO?

6   A.   AF HOLDINGS.

7   Q.   WHO ARE THOSE ATTORNEYS?

8   A.   ONE WOULD HAVE BEEN MR. MR. NAZAIRE,  ONE WOULD HAVE

9   BEEN BRETT GIBBS.

10        MR. NAZAIRE:  NOTE MY OBJECTION, YOUR HONOR.  I DON'T

11   SEE WHERE THIS IS LEADING TO AS AN ATTORNEY-CLIENT PRIVILEGE

12   AS TO SEVERAL MATTERS.  HE IS ASKING MR. LUTZ ABOUT -- AGAIN

13   ASKING MR. LUTZ ABOUT ATTORNEY-CLIENT WHEN HE HIMSELF ASSERTED

14   ATTORNEY-CLIENT PRIVILEGE.

15        THE COURT:  HE HASN'T ASKED ANYTHING ABOUT A

16   PRIVILEGE YET.   HE IS ASKING WHO HIS ATTORNEYS WERE AND I

17   WILL OVERRULE THE OBJECTION.

18        MR. NAZAIRE:  YES,  YOUR HONOR.

19   BY MR. CHINTELLA:

20   Q.   WHEN PAUL HANSMEIER SERVED AS A DEPONENT REPRESENTATIVE

21   FOR AF HOLDINGS,  DID YOU TALK TO HIM BEFOREHAND ABOUT THAT?

22   A.   I DID NOT.

23   Q.   DO YOU KNOW WHO DID?

24   A.   YES.

25        MR. NAZAIRE:  NOTE MY OBJECTION,  YOUR HONOR.  HE IS

1  GETTING INTO CONVERSATIONS -- PRIVILEGED CONVERSATIONS BETWEEN

2  AN ATTORNEY AND A CLIENT.

3          MR. CHINTELLA:  IF IT IS AN ATTORNEY, I WOULD ASK

4  THAT HE INVOKE THE PRIVILEGE OR IT COULD BE SOME NON ATTORNEY

5  FOR ALL WE KNOW AT THIS POINT.

6          MR. NAZAIRE:  THE PRIVILEGE ATTACHES BOTH WAYS,

7  TWO-WAY STREET.

8          THE COURT:  I WILL SUSTAIN THE OBJECTION.

9  BY MR. CHINTELLA:

10  Q.    SO YOU DID PREPARE OR YOU DID TALK TO SOMEBODY ABOUT

11  THE DEPOSITION?

12  A.    WHICH DEPOSITION?

13  Q.    THE DEPOSITION OF AF HOLDINGS WHEN PAUL HANSMEIER WAS

14  SERVING AS THE DEPONENT?

15  A.    YES.

16  Q.    YOU DID OR DID NOT?

17  A.    I DID.

18  Q.    DID YOU TALK TO PAUL HANSMEIER ABOUT IT?

19  A.    NO.

20  Q.    WAS IT AN ATTORNEY THAT YOU SPOKE WITH ABOUT IT?

21  A.    YES.

22          MR. NAZAIRE:  NOTE MY OBJECTION, YOUR HONOR.  ONCE

23  AGAIN I BELIEVE THAT MR. CHINTELLA IS TRYING TO GATHER

24  INFORMATION FOR OTHER ATTORNEYS IN OTHER STATES TO USE FOR

25  THEIR DISCOVERY.  IT HAS  -- THAT LINE OF QUESTIONING HAS

1 NOTHING TO DO WITH THIS CASE.

2          THE COURT:   WHAT IS THE RELEVANCE OF THIS?

3          MR. CHINTELLA:  WE ARE TRYING TO SHOW A CONNECTION

4 BETWEEN SOME OF THE THINGS THAT WE WILL EVENTUALLY TRY TO

5 ADMIT INTO EVIDENCE THAT WAS SAID BY THE PLAINTIFF IN THAT

6 DEPOSITION.

7          MR. NAZAIRE:  IF HE HAS PROPER PROOF.  HE CAN'T JUST

8 LET THE COURT JUST GUESS WHY HE MADE SOME TIME DOWN THE LINE.

9          THE COURT:  I WILL SUSTAIN THE OBJECTION.   NOT

10 PROPER, HE HAS TO PROFFER PROOF.

11 BY MR. CHINTELLA:

12  Q.   DO YOU KNOW IF AT THAT DEPOSITION OF YOUR COMPANY THAT

13 IT WAS SAID THAT AF HOLDINGS IS NOT DISTRIBUTING THE

14 COPYRIGHTED WORK?

15          MR. NAZAIRE:  OBJECTION.  THAT OBJECTION WAS

16 SUSTAINED.  YOU ARE ASKING ABOUT THAT SAME DEPOSITION.   I AM

17 SORRY, YOUR HONOR, HE IS ASKING ABOUT THE SAME DEPOSITION.

18          MR. CHINTELLA:  I BELIEVE THAT SUSTAINED OBJECTION

19 WAS REGARDING THE ATTORNEY-CLIENT ISSUE.

20          THE COURT:  I WILL SUSTAIN THE OBJECTION.

21 BY MR. CHINTELLA:

22  Q.   AT THE TIME OF THE ALLEGED INFRINGEMENT BY MR. PATEL,

23 WAS THE COPYRIGHTED WORK BEING DISTRIBUTED?

24  A.   NO.

25  Q.   HAS IT EVER BEEN DISTRIBUTED AT ALL?

1   A.   NOT BY ME, NO.   LET ME MAKE THAT CLEAR.  THE REASON

2   IS I COULDN'T MAKE ANY MONEY OFF OF IT.   WHY WOULD PEOPLE BUY

3   FROM ME WHEN THEY ARE CONSTANTLY STEALING IT?

4   Q.   WHAT I HANDED YOU EARLIER ARE TWO COPIES OF A MOVIE, IS

5   THAT THE SAME WORK AT ISSUE IN THIS CASE?

6   A.   YES.

7   Q.   HOW DO YOU EXPLAIN THAT THOSE WERE BOUGHT ONLINE?

8        MR. NAZAIRE:  I DID NOT GET TO SEE A COPY OF THOSE

9   TAPES.

10       THE COURT:  DID YOU SHOW HIM THE EXHIBITS?

11       MR. CHINTELLA:  MAY I APPROACH?

12       THE COURT:  SHOW THEM TO COUNSEL, YES.

13       MR. CHINTELLA:  I AM NOT SURE HOW TO DO THIS.  I

14  WOULD LIKE TO USE THE PROJECTOR.  I WOULD COVER UP PARTS OF

15  THIS, IF THAT IS ALL RIGHT.

16       MR. NAZAIRE:  YOUR HONOR, I OBJECT TO COUNSELOR

17  CONSTANTLY ASKING FOR INFORMATION FOR THE COURT'S OPINION AS

18  TO HOW HE IS SUPPOSED TO CONDUCT HIS CASE.

19       MR. CHINTELLA:  THE WAY I UNDERSTOOD THAT IS -- I

20  DIDN'T UNDERSTAND THAT ACTUALLY.

21    I GUESS THE PURPOSE OF THAT WOULD BE TO SHOW, TRYING TO

22  SHOW THAT IT WAS IN FACT BEING DISTRIBUTED BY SOMEBODY, WHICH

23  TIES WITH THE ISSUE OF THE COPYRIGHT ASSIGNMENT AND OWNERSHIP,

24  ET CETERA.

25       THE COURT:  IS THAT RELEVANT TO WHAT WE ARE HEARING

1  HERE TODAY?

2         MR. CHINTELLA:  I BELIEVE IT IS.  IT IS TO THE ISSUE

3  OF THE VALIDITY OF THE COPYRIGHT ASSIGNMENT AGREEMENT.   IF

4  THE WORK WAS -- THE PLAINTIFF PRESENTS EVIDENCE THAT IT IS NOT

5  BEING DISTRIBUTED, HE CAN'T MAKE ANY MONEY OFF OF IT,  IT HAS

6  BEEN TWO COPIES OF IT,  THAT WOULD I GUESS BE AT LEAST AN

7  INFERENCE THAT SOMEBODY ELSE OWNS THE RIGHTS TO IT.

8         MR. NAZAIRE:  I OBJECT, YOUR HONOR.  MR. CHINTELLA IS

9  MISSTATING THE FACTS.  I BELIEVE WHAT MR. LUTZ INDICATED WAS

10  THAT THE ASSIGNMENT WAS SOLD TO HIM, BUT THEN AFTER THE

11  ASSIGNMENT WAS SOLD TO HIM HE COULD NO LONGER MAKE MONEY OFF

12  OF IT, NOT THAT HE WAS DISTRIBUTING IT.

13         THE COURT:  I WILL SUSTAIN THE OBJECTION.  I SAID A

14  MOMENT AGO I WAS GOING TO ALLOW YOU BROAD CROSS-EXAMINATION,

15  BUT I AM NOT GOING TO ALLOW YOU TO GO FISHING ALL OVER THE

16  WORLD.  SO LET'S REIGN YOURSELF BACK IN AND DEAL WITH THE

17  ISSUES THAT ARE IN THE SHOW CAUSE.

18  BY MR. CHINTELLA:

19  Q.   YOU JUST TESTIFIED, MR. LUTZ, THAT THE WORK WAS NOT

20  BEING DISTRIBUTED AND NEVER HAS, CORRECT?

21  A.   BY ME.

22  Q.   BY YOU.  WHO HAS IT BEEN DISTRIBUTED BY?

23  A.   I WOULD ASSUME RAY ROGERS,  THE OWNER OF HEARTBREAKER,

24  THE ONE WHO ASSIGNED THE COPYRIGHT TO ME.

25  Q.   AND AT WHAT POINT DID THEY ASSIGN THE COPYRIGHT TO YOU?

1  BY YOU, ARE YOU REFERRING TO YOURSELF OR AF HOLDINGS?

2  A.    AF HOLDINGS.

3  Q.    OKAY.

4  A.    EARLY 2011.

5  Q.    AND SO ARE YOU FAMILIAR WITH COMPANY CALLED CD

6  UNIVERSE?

7          MR. NAZAIRE:  OBJECTION, YOUR HONOR.  I DON'T SEE

8  THE RELEVANCE IN THIS.

9          THE COURT:  WE NEVER WILL FIND OUT IF WE ARE GOING TO

10 OBJECT EVERY TIME A NEW NAME IS BROUGHT UP.  I WILL OVERRULE

11 THE OBJECTION.

12 BY MR. CHINTELLA:

13 Q.    ARE YOU FAMILIAR WITH A COMPANY CALLED CD UNIVERSE?

14 A.    NO.

15 Q.    HOW ABOUT A COMPANY CALLED ADULT DVD EMPIRE?

16 A.    NO.

17 Q.    THE COPYRIGHT ASSIGNMENT WAS SUPPOSEDLY ASSIGNED TO AF

18 HOLDINGS, HOW MANY COPIES DID AF HOLDINGS ACTUALLY RECEIVE OF

19 THE VIDEO?

20 A.    IT WAS THREE YEARS AGO, I DON'T RECALL.

21 Q.    DID THEY RECEIVE ANY?

22 A.    YES.

23 Q.    HOW MANY?

24 A.    I WOULD SAY A HANDFUL.  IT WASN'T NECESSARY, I MEAN,

25 I RECEIVE VIDEOS LIKE THIS.  I DON'T KNOW IF THEY WERE EXACTLY

CROSS EXAM OF MARK LUTZ

1    POPULAR DEMAND,  BUT MR. ROGERS HAS SENT ME BOXES OF VIDEOS.

2    Q.    I AM ASKING ABOUT JUST THIS PARTICULAR VIDEO.

3    A.    I COULDN'T GIVE YOU A NUMBER.

4    Q.    WAS IT MORE THAN TEN?

5    A.    NO.

6    Q.    YOU DID NOT RECEIVE MORE THAN TEN OF THIS VIDEO?

7    A.    NO.

8    Q.    WHAT WAS THE PURPOSE OF HAVING THE COPYRIGHT

9    ASSIGNMENT?

10   A.    TO AGAIN, INCREASE VALUE OF THE ACTUAL COPYRIGHT.

11   Q.    INCREASE THE VALUE THEN WHAT?  HOW DOES AF HOLDINGS

12   MAKE MONEY OFF OF THE COPYRIGHT?

13   A.    THEY DON'T AS OF YET.  AS SOON AS PEOPLE -- THE PLAN

14   WAS AS SOON AS PEOPLE STOP STEALING IT OR STEALING THE NUMBERS

15   WENT WAY DOWN,  WE COULD THEN BEGIN DISTRIBUTION.

16   Q.    HAS AF HOLDINGS EVER DISTRIBUTED A MOVIE?

17   A.    NO.

18   Q.    WE SHOWED YOU THIS AND YOU RECOGNIZED THAT THIS WAS THE

19   COPYRIGHTED WORK,  CORRECT?

20   A.    YES.

21   Q.    DO YOU HAVE ANY IDEA --

22         MR. CHINTELLA:  YOUR HONOR,  WHAT I WOULD LIKE TO DO

23   IS USE THIS HERE AS AN INVOICE TO PRESENT SOME EVIDENCE.

24         THE COURT:  ALL RIGHT.

25

1   BY MR. CHINTELLA:

2    Q.    YOU HAD ALREADY TESTIFIED YOU ARE NOT FAMILIAR WITH

3   THIS COMPANY CALLED ADULT DVD EMPIRE?

4    A.    I AM NOT.

5    Q.    AND OBVIOUSLY AF HOLDINGS HAS NOT GIVEN THEM PERMISSION

6   TO DISTRIBUTE THE MOVIE?

7    A.    NO.

8         MR. CHINTELLA:  YOUR HONOR, WHAT THIS IS, IT IS AN

9   INVOICE TO MY ADDRESS HERE WHERE WE PURCHASED THE WORK AT

10  ISSUE ON THE INTERNET.   WE RECEIVED IT -- TWO COPIES OF IT

11  FROM TWO SEPARATE SOURCES AND WE WOULD LIKE TO ADMIT BOTH OF

12  THESE INTO EVIDENCE.

13        MR. NAZAIRE:  I OBJECT, YOUR HONOR.  MR. CHINTELLA

14  HAS FAILED TO ESTABLISH A FOUNDATION.  THIS LOOKS LIKE

15  ANYTHING AT BEST ANYBODY COULD PRINT OUT.

16        MR. CHINTELLA:  YOUR HONOR,  ON THAT THE AUTHENTICITY

17  ISSUE,  WE BELIEVE THESE ARE UNIQUE CHARACTERISTICS THAT WE

18  ARE NOT GOING TO  -- NO ONE IS GOING TO FABRICATE. I WILL BE

19  WILLING TO TESTIFY THAT I ORDERED IT MYSELF,  IF THAT IS

20  NECESSARY, AND THEN THEY WERE RECEIVED IN THE MAIL.

21        MR. NAZAIRE:  YOUR HONOR, THE ATTORNEY IS SERVING AS

22  A WITNESS.  HE HAS NOT,  MR. LUTZ HAS TESTIFIED HE DOESN'T

23  RECOGNIZE IT.   THE ATTORNEY HAS FAILED TO BRING ANYBODY ON

24  THE STAND WHO RECOGNIZES THIS AND CAN SAY IT IS EVEN

25  RELATIVELY AUTHENTIC IN ANY WAY, SHAPE, OR FORM.   ANYBODY

CROSS EXAM OF MARK LUTZ

1  COULD HAVE TYPED THOSE NAMES ON A PAPER.  THERE IS NOTHING

2  UNIQUE ABOUT THOSE PAPERS.  AND IF IT HAD A UNIQUE NUMBER,

3  SUCH AS A SOCIAL SECURITY NUMBER, THERE IS NOTHING TO COMPARE

4  IT TO.

5          MR. CHINTELLA:  WE WOULD LIKE TO SHOW THE COURT THE

6  COVERS TO MAKE THE DETERMINATION.

7          MR. NAZAIRE:  YOUR HONOR, WE ARE NOT SURE IF THOSE

8  CAME WITH THE DOCUMENT.

9          THE COURT:  LET ME SEE WITH THE CONTENT,  LET ME SEE

10  THEM AND THE ENVELOPE.

11          DID THE INVOICE COME IN THE ENVELOPE?

12          MR. CHINTELLA:  THE TWO PIECES OF PAPER ARE E-MAILED

13  CONFIRMATIONS OF THE ORDER.  THERE ARE INVOICES IN THOSE --

14          THE COURT:   THEY WEREN'T IN THE ENVELOPES,  THOUGH.

15          MR. CHINTELLA:  THERE ARE INVOICES IN THOSE

16  ENVELOPES,  YOUR HONOR.  THE PAPERS I HANDED YOU ARE E-MAILED

17  CONFIRMATIONS OF THE ORDER, WHICH ARE ADDITIONAL.

18          THE COURT:  OH, OKAY.  GIVE HIM THESE BACK.  WAS THIS

19  IN THE ENVELOPE?

20          MR. CHINTELLA:  THOSE ARE TWO SEPARATE BOXES FOR TWO

21  SEPARATE ORDERS OF THE SAME MOVIE,  YOUR HONOR.

22          THE COURT:  NOTHING ELSE WAS IN THERE EXCEPT THESE

23  INVOICES.

24          MR. CHINTELLA:  THE DVD'S THEMSELVES.

25          THE COURT:  LET ME SEE HOW THEY ARE MARKED WITH

1  COPYRIGHT INFORMATION.

2           ARE THERE ANY COPYRIGHT MARKS ON THEM?

3           MR. CHINTELLA:  I WOULD HAVE TO LOOK AT THE BOX.

4           THE COURT:  IF IT IS ON HERE I CAN'T READ IT IT IS SO

5  FAINT.

6           DO YOU KNOW WHICH OF THESE IS WHICH?

7           MR. CHINTELLA:  NOT AFTER NOW.   NOT AFTER THEY HAVE

8  BEEN MIXED UP.

9           THE COURT:  WELL, I DIDN'T MEAN TO MIX THEM UP.

10          MR. CHINTELLA:  I APOLOGIZE I DIDN'T MARK EACH ONE.

11          THE COURT:  THEY ARE IDENTICAL.   I CAN'T FIND A

12 COPYRIGHT MARK ON THEM.  I ASKED YOU TO SEND THEM UP WITH THEM

13 IN THERE AND YOU DIDN'T DO IT.   THAT WAY THEY WOULDN'T HAVE

14 BEEN MIXED UP.   GO AHEAD.

15          FOR THE TIME BEING I WILL OVERRULE THE OBJECTION.

16 GO AHEAD AND TRY TO SEE WHAT YOU ARE TRYING TO DO.

17          MR. CHINTELLA:  MAY I APPROACH THE WITNESS?

18          THE COURT:  YES.  WHAT ARE THOSE?

19          MR. CHINTELLA:  THEY ARE SECRETARY OF STATE

20 REGISTRATIONS.

21          MR. NAZAIRE:  MAY I SEE?

22 BY MR. CHINTELLA:

23  Q.    MR. LUTZ, ARE YOU ABLE TO IDENTIFY THIS DOCUMENT?

24  A.    I CAN'T SEE THE DOCUMENT.

25  Q.    IS THERE A SCREEN IN FRONT OF YOU WORKING?

1  A.   IT IS NOT ON.

2  Q.   ARE YOU FAMILIAR WITH WHAT THOSE DOCUMENTS ARE?

3  A.   IT LOOKS LIKE VARIOUS COMPANIES WERE CLOSED.

4  Q.   I AM ASKING THIS PARTICULAR DOCUMENT,  DO YOU KNOW WHAT

5  IT IS?

6  A.   NO.

7  Q.   IS THAT YOUR SIGNATURE AT THE BOTTOM?

8  A.   NO.

9  Q.   DO YOU KNOW WHOSE SIGNATURE IT IS?

10  A.   I AM ASSUMING --

11  Q.   I'M ASKING IF YOU KNOW WHO IT IS, NOT WHETHER YOU

12  ASSUME.

13  A.   NO.

14  Q.   ARE YOU FAMILIAR WITH LINCOLN ROAD ADDRESS SHOWING

15  RIGHT THERE?

16  A.   YES.

17  Q.   HOW SO?

18  A.   IT IS AN ADDRESS THAT I HAVE WORKED IN.

19  Q.   DOING WHAT?

20  A.   I HAVE WORKED FOR TWO SEPARATE COMPANIES STEELE

21  HANSMEIER AND PRENDA LAW.

22  Q.   WHAT WAS YOUR JOB WITH THOSE COMPANIES?

23  A.   PARALEGAL.

24  Q.   WHAT WERE YOUR DUTIES AS PARALEGAL?

25         MR. NAZAIRE:  OBJECTION, YOUR HONOR.  THE DUTIES OF

1  MARK LUTZ AS PARALEGAL ARE NOT RELEVANT TO THIS CASE.

2  OTHERWISE WE WOULD GO THROUGH MARK LUTZ'S WHOLE LIFE WHERE HE

3  WENT TO HIGH SCHOOL,  THE FIRST PERSON HE WORKED FOR,  SO ON

4  AND SO FORTH.

5          MR. CHINTELLA:  WHAT WE ARE TRYING TO SHOW,  YOUR

6  HONOR, IS THAT ESSENTIALLY -- HE IS SUPPOSEDLY A PARALEGAL AT

7  THE SAME TIME THE CEO OF A CLIENT OF THE VERY SAME LAW FIRM.

8  SO, WE ARE TRYING TO ESTABLISH WHETHER HE WAS ACTUALLY A

9  PARALEGAL.

10          MR. NAZAIRE:  ONCE AGAIN IT IS NOT RELEVANT TO THE

11  ISSUES LISTED ON PAGES 19 AND 20 OF THE SANCTIONS ORDER.

12          MR. CHINTELLA:  WE WILL WITHDRAW THE QUESTION,  YOUR

13  HONOR.

14  BY MR. CHINTELLA:

15  Q.    DO YOU SEE WHERE IT SAYS LEGAL SERVICES?

16  A.    YES.

17  Q.    ARE THOSE LEGAL SERVICES?

18  A.    I DON'T UNDERSTAND THE QUESTION.

19  Q.    WHAT LEGAL SERVICES ARE BEING PROVIDED FOR THE COMPANY?

20          MR. NAZAIRE:  OBJECTION.  ATTORNEY-CLIENT PRIVILEGE

21  MAY APPLY HERE.

22          MR. CHINTELLA:  BUSINESS LEGAL SERVICES IN GENERAL

23  ARE NOT BEING SOUGHT FOR TOPIC.

24          THE COURT:  WHAT IS HIS CONNECTION WITH IT?  YOU

25  HAVEN'T PROVED THAT IS NOT HIS SIGNATURE.  HOW DOES HE KNOW

1  WHAT THE LEGAL SERVICES ARE THAT SOME LAWYER SIGNS UNLESS YOU

2  CAN CONNECT HIM WITH IT?  AND EVEN THE MERE FACT HE WAS -- HAD

3  BEEN A PARALEGAL WOULDN'T NECESSARILY CONNECT HIM WITH HE

4  KNOWS WHAT THAT DOCUMENT IS.

5  BY MR. CHINTELLA:

6  Q.    ARE YOU FAMILIAR WITH THIS SECOND PAGE OF THE DOCUMENT?

7  A.    I AM NOT FAMILIAR WITH IT,  NO.  I AM LOOKING AT IT

8  RIGHT NOW.

9  Q.    I'M SORRY?

10  A.    I AM LOOKING AT IT RIGHT NOW.

11  Q.    I UNDERSTAND.  ARE YOU FAMILIAR WITH THAT?

12  A.    NO.

13  Q.    IS THAT YOUR SIGNATURE AT THE BOTTOM?

14  A.    IT LOOKS LIKE IT,  YES.

15  Q.    YES OR IT JUST LOOKS LIKE IT?

16  A.    YES.

17  Q.    DID YOU SIGN THIS DOCUMENT?

18  A.    YES.

19  Q.    WHAT IS THE DOCUMENT?

20         MR. NAZAIRE:  OBJECTION, YOUR HONOR.  I DON'T SEE

21  WHAT RELEVANCE.

22         THE COURT:  OVERRULE THE OBJECTION.

23         THE WITNESS:  I CAN'T SEE THE ENTIRE DOCUMENT.  I

24  CAN'T SEE THE TOP.

25         THE COURT:  THAT WAS THE PROBLEM WITH THE OTHER ONE,

1  COULDN'T SEE ALL OF THE OTHER ONE EITHER.

2       THE WITNESS:  OKAY.  IT LOOKS LIKE A CERTIFICATE OF

3  DESIGNATION.

4  BY MR. CHINTELLA:

5  Q.    SO, YOU SIGNED THIS DOCUMENT?

6  A.    YES.

7  Q.    ARE YOU FAMILIAR WITH WHAT A REGISTERED AGENT IS?

8  A.    I AM ASSUMING I WOULD BE THE POINT OF CONTACT.

9  Q.    WHAT WERE YOUR DUTIES AS A REGISTERED AGENT?

10 A.    I AT THE TIME -- IS THERE A DATE ON HERE? I DIDN'T KNOW

11 I HAD A SPECIFIC DUTY AS A REGISTERED AGENT.

12 Q.    OKAY.  AND JUST FOR THE RECORD, THIS IS STEELE

13 HANSMEIER, PLLC,  THIS IS THE SAME COMPANY YOU SAID YOU WORKED

14 AS A PARALEGAL FOR?

15 A.    YES.

16 Q.    AS A PARALEGAL FOR STEELE HANSMEIER,  DID YOU EVER WORK

17 ON CASES INVOLVING AF HOLDINGS AS A CLIENT OF STEELE

18 HANSMEIER?

19 A.    WITH STEELE HANSMEIER MAYBE ONE OR TWO,  I DON'T RECALL

20 OFF THE TOP OF MY HEAD.

21 Q.    WHO ARE THE PRINCIPALS OF STEELE AND HANSMEIER?

22 A.    PAUL HANSMEIER AND JOHN STEELE.

23 Q.    IS THAT THE SAME JOHN STEELE THAT WAS HERE TODAY?

24 A.    YES.

25 Q.    IS IT THE SAME PAUL HANSMEIER THAT SIGNATURE YOU

1  POINTED OUT?

2  A.    YES.

3  Q.    CAN YOU IDENTIFY THIS DOCUMENT?

4  A.    YEAH.  IT IS -- I CAN'T SEE THE ENTIRE TOP, BUT IT SAYS

5  APPLICATION BY FOREIGN CORPORATION.

6  Q.    DID YOU SIGN THIS DOCUMENT?

7  A.    YES.

8  Q.    AND YOU ARE A REGISTERED AGENT ON THIS DOCUMENT SHOWING

9  YOU AS A REGISTERED AGENT AS WELL,  ARE YOU NOT?

10  A.    YES.

11  Q.    AND DID PRENDA LAW REPRESENT AF HOLDINGS IN ANY CASES?

12  A.    YES.

13  Q.    ANY CASES HERE IN GEORGIA?

14  A.    I'M SORRY?

15  Q.    ANY CASES HERE IN GEORGIA?

16  A.    I DON'T KNOW.

17  Q.    YOU DO NOT KNOW IF AF HOLDINGS REPRESENTED ANY CASES --

18       MR. NAZAIRE:  ASKED AND ANSWERED.

19       MR. CHINTELLA:  WE WILL ACCEPT THAT ANSWER,  YOUR

20  HONOR.

21       THE COURT:  ARE THESE DOCUMENTS MARKED AS EXHIBITS?

22  YOU HAVEN'T REFERRED TO THEM BY NUMBER.

23       MR. CHINTELLA:  SECRETARY OF STATE FOR STEELE

24  HANSMEIER ARE ONE.   AND PRENDA LAW WOULD BE EXHIBIT TWO.

25  BY MR. CHINTELLA:

1  Q.    LIKE TO DIRECT YOUR ATTENTION TO THE SECOND PAGE OF

2  THIS DOCUMENT.  ARE YOU FAMILIAR WITH A PERSON BY THE NAME OF

3  PAUL DUFFY?

4  A.    YES.

5  Q.    WHAT IS YOUR RELATION TO HIM?

6  A.    HE WAS MY EMPLOYER.

7  Q.    WHAT WAS YOUR ROLE WITH HIM?

8  A.    I WAS HIS PARALEGAL OR PARALEGAL AT PRENDA LAW.

9  Q.    AT PRENDA LAW OR HE WAS YOUR EMPLOYER?

10  A.    IF HE IS THE OWNER OF PRENDA LAW,  HE WAS MY EMPLOYER.

11  Q.    I WANT TO MAKE A DISTINCTION.

12     SO WHAT TYPE OF DUTIES DID YOU PERFORM?

13          MR. NAZAIRE:  NOTE MY OBJECTION,  YOUR HONOR.  YOUR

14  HONOR, I HATE TO BE MEAN, BUT WE COULD BE HERE ALL DAY LONG IF

15  WE DO NOT GET TO THE ISSUES THAT IS LISTED ON PAGES 19 AND 20

16  OF THE ORDER TO SHOW CAUSE MOTION.

17          THE COURT:  HE IS AWARE OF THAT.  I I AM WAITING TO

18  SEE,  BUT THEY COULD POSSIBLY LEAD TO THAT.  AND IF WE HAVE TO

19  BE HERE ALL DAY,  WE WILL.

20  BY MR. CHINTELLA:

21  Q.    CAN YOU ANSWER THE QUESTION?

22  A.    CAN YOU REPEAT IT?

23  Q.    WHAT DUTIES DID YOU PERFORM -- I GUESS FIRST QUESTION,

24  WHAT WAS YOUR JOB TITLE?

25  A.    PARALEGAL.

1  Q.    AND WHO DIRECTLY OVERSAW ALL OF YOUR WORK?

2  A.    PAUL DUFFY.

3  Q.    ONLY PAUL DUFFY?

4  A.    YES.

5  Q.    DID YOU HAVE ANY COMMUNICATION WITH JOHN STEELE AT THE

6  TIME?

7  A.    WELL, YES, AS I STATED EARLIER, HE IS A FRIEND OF

8  MINE.

9  Q.    JUST ON A PERSONAL LEVEL OR A PROFESSIONAL LEVEL AS

10 WELL?

11 A.    PERSONAL.

12 Q.    NO BUSINESS DEALINGS WITH HIM WHATSOEVER?

13 A.    WHEN?

14 Q.    ANY TIME WHILE AS A PARALEGAL AT PRENDA?

15 A.    NOPE.

16 Q.    HOW ABOUT PAUL HANSMEIER?

17 A.    HOW ABOUT HIM?

18 Q.    ANY COMMUNICATIONS WITH HIM DURING THIS SAME TIME?

19 A.    ON A PERSONAL BASIS, YES.

20 Q.    PROFESSIONAL BASIS?

21 A.    NONE.

22 Q.    DO YOU KNOW IF ANY OF THE SAME CLIENTS OF STEELE

23 HANSMEIER, PLLC, WERE ALSO CLIENTS OF PRENDA?

24        MR. NAZAIRE:  OBJECTION, YOUR HONOR.  I DON'T SEE THE

25 RELEVANCE.

1  BY MR. CHINTELLA:

2  Q.    WAS AF HOLDINGS A CLIENT IN BOTH COMPANIES RATHER?

3  A.    YES.

4  Q.    DID YOU WORK ON BOTH OF THEIR CASES?

5  A.    WELL AF HOLDINGS HAS HAD MORE THAN TWO CASES, I DON'T

6  UNDERSTAND THE QUESTION.

7  Q.    I WILL CLARIFY.  WORK ON AF HOLDINGS AS CASES FOR BOTH

8  EMPLOYERS?

9  A.    YES.

10  Q.    AND WHO OVERSAW YOUR WORK WHILE YOU WERE AT STEELE

11  HANSMEIER?

12  A.    JOHN STEELE AND PAUL HANSMEIER.

13  Q.    JUST JOHN STEELE OR PAUL HANSMEIER?

14  A.    I SAID BOTH, JOHN STEELE AND PAUL HANSMEIER.

15  Q.    OH, OKAY.  WHILE YOU WERE WORKING FOR EITHER OF THESE

16  COMPANIES, WAS THE WORK POPULAR DEMAND BEING DISTRIBUTED BY

17  ANYBODY?

18  A.    NO, NOT THROUGH ME, NO.  BY ANYBODY, I CAN'T ANSWER

19  THAT QUESTION.

20  Q.    DO YOU KNOW ANYONE ELSE WHO WAS DISTRIBUTING IT IN

21  VIOLATION OF COPYRIGHT INFRINGEMENT OTHER THAN PEOPLE USING

22  BITTORRENT?

23  A.    I WASN'T AWARE OF IT.

24  Q.    SO, YOU ARE NOT AWARE OF ANYONE SELLING COPIES OF DVDS

25  --

1        MR. NAZAIRE:  NOTE MY OBJECTION, ASKED AND ANSWERED.

2        THE COURT:  I WILL OVERRULE THE OBJECTION.  STATE

3   THE QUESTION AND LET'S GET AN ANSWER AND MOVE ON.

4   BY MR. CHINTELLA:

5   Q.   ARE YOU AWARE OF ANYBODY DISTRIBUTING THE WORK POPULAR

6   DEMAND OTHER THAN THROUGH BITTORRENT, USING BITTORRENT TO

7   DOWNLOAD IT AT THE TIME YOU WERE WORKING FOR THESE COMPANIES?

8   A.   I WAS NOT, NO.

9        MR. CHINTELLA:  YOUR HONOR, I WOULD LIKE TO TENDER

10  INTO EVIDENCE THESE DVDS AND THE DATES OF THE PURCHASE AS

11  SHOWN ON THE INVOICES.

12       MR. NAZAIRE:  I OBJECT, YOUR HONOR.

13       THE COURT:  YOU SAID NO OBJECTION?

14       MR. NAZAIRE:  NO, I DO OBJECT, YOUR HONOR.

15  AUTHENTICITY.

16       THE COURT:  AS TO WHAT?

17       MR. NAZAIRE:  AUTHEN -- WE DON'T KNOW WHAT THESE DVDS

18  ARE, YOUR HONOR.

19       THE COURT:  WELL, I DON'T KNOW WHAT DVDS HE IS

20  TALKING ABOUT EITHER.  HE HASN'T USED AN EXHIBIT NUMBER.

21       MR. CHINTELLA:  EXHIBITS 3 AND 4, YOUR HONOR.

22       MR. NAZAIRE:  THEY HAVE NOT BEEN PREMARKED AS

23  EXHIBITS.  HE HAS NOT USED A WITNESS TO ACTUALLY LEAD TO

24  GETTING THEM INTO EVIDENCE.  HE NEVER PREMARKED THEM, HE

25  NEVER SAID THAT HE WAS PREMARKING THEM AS EXHIBITS.

1           YOUR HONOR, THE PROBLEM IS I DON'T KNOW WHAT THE

2   RELEVANCE THOSE DVDS HAS,  BECAUSE I THINK BASICALLY WHAT THIS

3   CASE IS ABOUT IS THERE IS DIFFERENT PEOPLE IN THE COUNTRY

4   COPYRIGHTING THESE DVDS,  AND THEY ARE SELLING THEM,

5   DISTRIBUTING THEM, MAILING THEM TO ANYBODY WHO ASKS FOR THEM.

6           THE COURT:  WHAT IS THE RELEVANCE TO THOSE AS TO THE

7   ISSUE BEFORE THE COURT?

8           MR. CHINTELLA:  YOUR HONOR, SOMEBODY IS DISTRIBUTING

9   THESE DVDS, AND AF HOLDINGS HAS TESTIFIED IN CALIFORNIA THAT

10  THEY ARE NOT DISTRIBUTING IT.

11          MR. NAZAIRE:  THAT IS EXACTLY OUR POINT, YOUR HONOR.

12          THE COURT:  HE TESTIFIED HERE HE IS NOT DISTRIBUTING

13  IT,  I BELIEVE.

14          MR. NAZAIRE:  THAT IS OUR THEORY IS THAT OTHER PEOPLE

15  ARE DISTRIBUTING IT VIA STEALING IT.

16          THE COURT:  IF YOU WOULD QUIT INTERRUPTING US.  I

17  CHASTISED MR. CHINTELLA FOR THAT A MOMENT AGO AND THE SAME TO

18  YOU.

19          MR. NAZAIRE:  YES,  YOUR HONOR.

20          MR. CHINTELLA:  I CAN MOVE ON TO A DIFFERENT TOPIC,

21  YOUR HONOR.

22          THE COURT:  ALL RIGHT.  GO AHEAD THEN.

23  BY MR. CHINTELLA:

24   Q.    WHO OWNS AF HOLDINGS?

25   A.    A TRUST.

1  Q.    I THOUGHT PREVIOUSLY YOU TESTIFIED YOU OWNED IT?

2  A.    I SAID FOR LACK OF A BETTER TERM.

3  Q.    SO, THE MEMBERS OF AF HOLDINGS ARE HELD BY YOU OR A

4  TRUST?

5  A.    THE TRUST.

6  Q.    WHAT IS THE TRUST'S NAME?

7  A.    THE -- RIGHT NOW IT IS THE SOFTMARSH TRUST.

8  Q.    WAS IT EVER A DIFFERENT NAME?

9  A.    THERE WAS ONE AT THE VERY BEGINNING,  YES.

10  Q.    WHAT WAS THE NAME?

11  A.    I DON'T RECALL OFF THE TOP OF MY HEAD.

12  Q.    DID YOU FORM THE TRUST?

13  A.    NO,  A COMPANY ASSISTED ME IN THAT, NEVIS.

14  Q.    SOMEONE ASSISTED YOU, WHAT COMPANY WAS THAT?

15  A.    NEVIS TRUST SERVICES, I BELIEVE.

16  Q.    YOU DON'T REMEMBER THE NAME OF THE TRUST? DO YOU KNOW

17  WHO IN THAT COMPANY ASSISTED YOU SPECIFICALLY?

18  A.    A LADY BY THE NAME OF MS. NISBIT.

19  Q.    ARE YOU FAMILIAR WITH AN ATTORNEY NAMED STEVEN J.

20  GOODHUE?

21  A.    YES.

22  Q.    WHAT IS YOUR RELATION TO HIM?

23  A.    MR. GOODHUE WAS AN ATTORNEY FOR US IN ARIZONA.

24  Q.    IS HE STILL REPRESENTING YOU DOWN IN ARIZONA?

25  A.    I DON'T BELIEVE SO, ALL OF THOSE CASES ARE CLOSED.

1  Q.   REGARDING AF HOLDINGS,  CORRECT?

2  A.   YEAH,  I BELIEVE SO.

3       MR. CHINTELLA:  YOUR HONOR, ON THE SCREEN HERE IS A

4  TRANSCRIPT FROM A HEARING THAT WAS CONDUCTED ON JULY 19,

5  2013.  AND IT IS IN A CASE WHERE THE PLAINTIFF IS THE SAME AS

6  THE ONE HERE,  THE DEFENDANT IS A DEFENDANT HARRIS.  AS YOU

7  WILL SEE DOWN ON THE FIRST LINE THERE STEVEN GOODHUE IS

8  REPRESENTING THE PLAINTIFF.

9  BY MR. CHINTELLA:

10 Q.   ARE YOU FAMILIAR WITH THIS CASE,  MR. LUTZ?

11 A.   YES.

12 Q.   DID YOU EVER DEAL WITH MR. GOODHUE?

13 A.   YES.

14 Q.   ANYONE EVER HELP YOU DEAL WITH MR. GOODHUE?

15 A.   I'M SORRY?

16 Q.   ANYBODY EVER DEAL WITH HIM WITH YOU OR ON YOUR BEHALF?

17 A.   BRETT GIBBS WOULD HAVE.

18 Q.   DO YOU SEE WHERE THE ORANGE STICKY STAB IS?  TO THE

19 LEFT OF THAT, MR. GOODHUE THERE STATES:

20       "MR. LUTZ IS A TRUSTEE OF SALT

21       MARSH, A TRUST WHICH IS A MEMBER OF

22       AF HOLDINGS,  HOWEVER, IT IS NOT THE

23       AF TRUST."

24   CAN YOU RECONCILE THAT STATEMENT WITH WHAT YOU JUST SAID?

25 REGARDING THE NAME OF THE TRUST?

1          MR. NAZAIRE:  I OBJECT,  YOUR HONOR.

2          THE WITNESS:  IT LOOKS LIKE --

3          MR. NAZAIRE:  I OBJECTED, MARK.

4          THE COURT:  WHAT IS YOUR OBJECTION?

5          MR. NAZAIRE:  YOUR HONOR, THIS IS TESTIMONY FROM

6    SOMEBODY WHO COULD HAVE EASILY BEEN CALLED HERE SO THAT WE

7    COULD CROSS-EXAMINE THAT PERSON AS TO THAT TESTIMONY.  MR.

8    CHINTELLA FAILED TO CALL MR. GOODHUE TO TESTIFY TO FACTS THAT

9    ARE DIFFERENT THAN WHAT MR. LUTZ BELIEVES THE FACTS -- MAY

10   BELIEVE THE FACTS TO BE.  I HAVE HAD NO CHANCE OR MR. LUTZ

11   HAS HAD NO CHANCE TO CROSS-EXAMINE THAT PERSON, AND MR.

12   CHINTELLA IS TRYING TO PRESENT WHAT IS STATED HERE AS ACTUAL

13   FACT.

14         MR. CHINTELLA:  YOUR HONOR,  WE BELIEVE THIS DOCUMENT

15   IS SELF-AUTHENTICATING, IT IS A PARTY ADMISSION.  WE ARE

16   WILLING TO AUTHENTICATE IT RIGHT NOW IF REQUESTED.

17         THE COURT:  YOU DIDN'T READ IT CORRECTLY A MINUTE AGO

18   WHEN YOU READ IT.  I WAS FOLLOWING YOU AT THE TIME.  YOU

19   MISREAD IT.  WHAT IS INCONSISTENT ABOUT THIS WITH WHAT HE

20   SAID?

21         MR. CHINTELLA:  WELL, THIS STATEMENT HERE, WHICH WE

22   BELIEVE IS A PARTY ADMISSION, AF HOLDINGS IS STATING THAT ITS

23   OWNER IS CALLED THE AF TRUST, AND WE JUST HEARD TESTIMONY THAT

24   IT IS CALLED SALTMARSH.

25         THE COURT:  WELL, HE SAID A MOMENT AGO THE TRUST WAS

1  CALLED SALTMARSH AT ONE TIME.  I HEARD HIM TESTIFY TO IT NOT

2  TWO MINUTES AGO.

3        MR. CHINTELLA:  YES, YOUR HONOR.  THEN HE TESTIFIED

4  IT IS CURRENTLY NAMED SALTMARSH.  AND WHETHER IT HAS HAD ANY

5  OTHER NAME, HE SAID ONE NAME MAYBE AT ITS INCEPTION, BUT HE

6  DIDN'T REMEMBER.  THIS HEARING WAS HELD IN JULY OF 2013.

7        THE COURT:  I SUSTAIN THE OBJECTION.  LET'S MOVE ON

8  TO SOMETHING IMPORTANT.  YOU ARE NOT MAKING A VERY GOOD

9  IMPRESSION WITH ME ON THESE THINGS.  IF YOU HAVE SOMETHING

10 THAT IS WORTHWHILE THEN FINE.  HE TESTIFIED SO I DON'T KNOW

11 WHY -- HE TESTIFIED THAT AT ONE TIME IT WAS KNOWN AS

12 SALTMARSH.  I DON'T KNOW WHAT IS INCONSISTENT WITH WHAT WAS

13 IN THAT.

14        MR. CHINTELLA:  THE INCONSISTENCY IS THAT AF HOLDINGS

15 IS SAYING IT IS CALLED AF TRUST INSTEAD OF SALTMARSH.  WE

16 WOULD ARGUE THAT TO RAISE THE INFERENCE THAT MR. LUTZ DOESN'T

17 KNOW THIS OVERARCHING COMPANY OR SOMEBODY ELSE IS INVOLVED, OR

18 HE IS NOT REALLY TRULY IN CONTROL, DOESN'T EVEN KNOW THE

19 OWNER -- HE SAYS HE IS TRUSTEE, BUT HE DOESN'T KNOW THE NAME

20 OF THE TRUST, THAT IS WHAT WE WOULD ARGUE, YOUR HONOR, TO

21 USE THAT FOR.

22        MR. NAZAIRE:  I OBJECT, YOUR HONOR.  THIS IS NOT A

23 PROCEEDING AGAINST MR. GOODHUE AND HOW HE PRACTICES LAW, SO I

24 DON'T SEE HOW THAT WOULD BE RELEVANT, YOUR HONOR.

25        THE COURT:  YOU KNOW I AM SORT OF IN YOUR RIGHT, BUT

1  SINCE ARE YOU INSISTING IN INTERRUPTING AND OBJECTING, I THINK

2  I WILL LET HIM GO AHEAD WITH IT.

3  BY MR. CHINTELLA:

4   Q.    HAS THE TRUST EVER BEEN NAMED  AF TRUST?

5   A.    YES.

6   Q.    WHEN WAS IT NAMED AF TRUST?

7   A.    ACTUALLY I AM GLAD YOU BROUGHT THIS DOCUMENT TO MY

8  ATTENTION.   BECAUSE WHAT MR. GOODHUE DOES STATE THERE IS

9  CORRECT.  ESSENTIALLY WHAT HAPPENED IS WHEN WE -- WHEN I SET

10  UP THE TRUST INITIALLY WITH MS. NISBIT AND NEVIS, I NEEDED A

11  COPY OF MY PASSPORT.  I WAS OUT OF TOWN AT THE TIME, DIDN'T

12  HAVE A COPY OF MY PASSPORT, SO WE CALLED IT THE SALTMARSH

13  TRUST, THE SALTMARSH TRUST.  A DAY OR TWO LATER I PROVIDED HER

14  WITH MY PASSPORT, WHICH THEN ALLOWED ME TO CHANGE IT TO THE AF

15  TRUST.

16   Q.    AND WHAT IS IT CURRENTLY NAMED AGAIN?

17   A.    THE AF TRUST.

18   Q.    DID YOU TESTIFY EARLIER THAT IT WAS SALTMARSH?

19   A.    YES,  I MADE A MISTAKE.

20   Q.    ANY OTHER NAMES OF THIS TRUST THAT YOU ARE AWARE OF?

21   A.    NO.

22   Q.    DOES THE TRUST RECEIVE ANY MONEY FROM AF HOLDINGS?

23   A.    IT HAS,  YES.

24   Q.    WHAT TYPE OF MONEY?

25   A.    THE KIND -- THE TYPE YOU SPEND.

1  Q.    WHAT GAVE IT THE LEGAL RIGHT TO OBTAIN THE MONEY?

2  A.    I DON'T KNOW.  I AM NOT AN ATTORNEY.  I DON'T SEE

3  WHAT IS WRONG WITH ME  -- I AM NOT AN ATTORNEY,  I DON'T KNOW.

4  Q.    HAVE YOU EVER HANDLED MONEY FOR THIS TRUST?

5  A.    YES.

6  Q.    HOW DID YOU HANDLE IT?

7  A.    I PUT MONEY INTO AN ACCOUNT FOR THEM.

8  Q.    FROM AF HOLDINGS?

9  A.    NO.  IT ACTUALLY WOULD HAVE BEEN FROM A PRENDA LAW

10  TRUST ACCOUNT AT THE BEGINNING OF 2013.

11  Q.    ANY OTHER MONEY THAT THE TRUST RECEIVES FROM ENTITIES

12  OTHER THAN PRENDA LAW?

13  A.    IT NEVER RECEIVED ANY OTHER MONIES.

14  Q.    JUST FROM PRENDA LAW IS THE OTHER MONEY THEY RECEIVED?

15  A.    YES.

16  Q.    WHAT IS THIS MONEY FOR?  WHERE IS THE ORIGIN OF THIS

17  MONEY?

18  A.    IT WAS FROM SETTLEMENTS.

19  Q.    AND SETTLE WHAT?

20  A.    TO SETTLE VARIOUS MATTERS.

21  Q.    SUCH AS?

22  A.    SUCH AS COPYRIGHT INFRINGEMENT.

23  Q.    OKAY.  CASES LIKE THIS,  ATTEMPTS FOR SETTLEMENTS WERE

24  MADE IN THIS CASE,  SAME SITUATION?

25  A.    YES.

CROSS EXAM OF MARK LUTZ

1  Q.    HOW MANY SETTLEMENTS HAVE BEEN OBTAINED FROM GEORGIA

2  RESIDENTS?

3  A.    I HAVE NO IDEA.

4  Q.    NOT EVEN A BALLPARK?

5  A.    NOPE.

6  Q.    WHO WOULD KNOW?

7  A.    IT DEPENDS ON WHO WAS HANDLING THE MATTER.

8  Q.    IS THERE ANYBODY WHO WOULD KNOW THE TOTAL NUMBER?

9  A.    OFF THE TOP OF THEIR HEAD I DOUBT IT.

10  Q.    WELL, HOW ABOUT IF THEY DID A LITTLE RESEARCH?

11  A.    THEY PROBABLY COULD FIGURE IT OUT.

12  Q.    WHO?

13  A.    IN THIS PARTICULAR MATTER PAUL DUFFY.

14  Q.    PAUL DUFFY WOULD?

15  A.    UH-HUH (AFFIRMATIVE RESPONSE).

16  Q.    SO, HE IS AWARE OF THESE CASES?

17  A.    YES.

18  Q.    OKAY.  ANYONE ELSE?

19  A.    BRETT GIBBS.

20  Q.    ANYONE ELSE?

21  A.    NOPE.

22  Q.    HOW ABOUT JOHN STEELE?

23  A.    NOPE.

24  Q.    OKAY.  WHAT IS HIS PURPOSE FOR BEING HERE TODAY?

25  A.    I DON'T KNOW.

1   Q.    DID YOU RIDE WITH HIM?

2          MR. NAZAIRE:  OBJECTION,  YOUR HONOR.

3          THE WITNESS:  I WAS ON THE SAME FLIGHT WITH HIM.

4   BY MR. CHINTELLA:

5   Q.    ARE YOU AWARE DISCOVERY HAS BEEN CONDUCTED IN THIS

6   CASE?

7   A.    YES.

8   Q.    WERE YOU ABLE TO RECEIVE ANY COPIES OF INTERROGATORIES

9   FROM YOUR ATTORNEY,  I GUESS THE PLAINTIFF'S ATTORNEY?

10  A.    I WOULD ASSUME SO,  YES.

11  Q.    IS THAT A YES OR YOU ARE GUESSING?

12  A.    YES.

13  Q.    DID YOU HAVE A CHANCE TO REVIEW THOSE?

14  A.    YES.

15  Q.    DID YOU PROVIDE RESPONSES TO YOUR ATTORNEY?

16  A.    YES.

17  Q.    ARE YOU AWARE THAT  -- WELL,  I WILL NOT GO THERE.

18          MR. CHINTELLA:  YOUR HONOR,  IF I CAN APPROACH THE

19  WITNESS AND THOSE RESPONSES.

20          THE COURT:  ALL RIGHT.

21          WHAT ARE YOU TRYING TO ACCOMPLISH?  IF YOU WANT TO

22  USE THE RESPONSES TO INTERROGATORIES, YOU DON'T HAVE TO PROVE

23  THEM BY HIM,  THEY ARE IN THE FILE, YOU ARE JUST WASTING TIME.

24

25

1  BY MR. CHINTELLA:

2  Q.    ARE YOU FAMILIAR WITH THESE DOCUMENTS?

3  A.    YES.

4  Q.    ARE THESE THE RESPONSES THAT YOU INSTRUCTED YOUR

5  ATTORNEY TO PROVIDE?

6  A.    YES.

7  Q.    DID YOU LIKEWISE --

8        MR. CHINTELLA:  FOR THE RECORD, YOUR HONOR, I WOULD

9  LIKE TO MARK THESE AS EXHIBITS 5, 6, AND 7.

10  BY MR. CHINTELLA:

11  Q.    I WOULD LIKE TO SHOW YOU AS WELL REQUESTS FOR

12  PRODUCTION THAT WERE SERVED AS WELL.

13  A.    OKAY.

14  Q.    ARE YOU FAMILIAR WITH THESE DOCUMENTS?

15  A.    YES.

16  Q.    BRIEFLY DESCRIBE WHAT THEY ARE, PLEASE.

17  A.    I DON'T KNOW, I AM NOT AN ATTORNEY.  THEY LOOK LIKE

18  SOME LEGAL DOCUMENT.

19  Q.    DID YOU PROVIDE THE RESPONSES TO THESE DOCUMENTS?

20  A.    I WOULD ASSUME I DID, YES.

21        MR. CHINTELLA:  ONE LAST DOCUMENT.  THIS IS

22  DEFENDANT'S SECOND REQUEST FOR ADMISSIONS, YOUR HONOR.

23        THE COURT:  WHAT ARE YOU TRYING TO PROVE BY THESE?

24  THESE ARE IN THE RECORD.  YOU DON'T NEED TO PROVE THESE BY A

25  WITNESS.  WHAT ARE YOU TRYING TO DO? IT IS WASTING TIME.

1  COURT HAS ALREADY CLOSED DOWN IN ATLANTA.   WE WILL GO ON AND

2  MAYBE YOU WILL GET TO SPEND THE REST OF THE WEEK UP HERE IN A

3  MOTEL SOMEWHERE.

4         MR. CHINTELLA:  CHANGE THE LINE OF QUESTIONING.   WE

5  ARE SHOWING THAT MR. LUTZ ACTUALLY PROVIDED THE RESPONSES.

6         THE COURT:  WHAT IMPORTANCE IS THAT? WHAT DOES THAT

7  HAVE TO DO WITH WHAT WE ARE DEALING WITH?

8         MR. CHINTELLA:  BECAUSE IF THEY ARE FRIVOLOUS, WE

9  WANT TO ESTABLISH IT SHOULD BE IMPOSED ON IF NOT JUST THE

10 ATTORNEY THE PARTY AS WELL UNDER RULE 11, WHICH WAS I BELIEVE

11 MENTIONED IN THE COURT'S ORDER.   BECAUSE THAT THE CLIENT

12 HERE, WE BELIEVE, AT LEAST FOR A VAST MAJORITY OF THE THINGS

13 MAY HAVE MISLED MR. NAZAIRE IF THEY WEREN'T OUTRIGHT MR.

14 NAZAIRE'S FAULT.   WE WOULD LIKE TO AT LEAST SHOW SOME

15 EVIDENCE THAT MR. LUTZ IS AWARE OF ALL OF THE DISCOVERY AND

16 THE RESPONSES.

17        THE COURT:  AS TO THE LAST, THEY HAD HIS SIGNATURE ON

18 IT,  DID IT NOT?

19        MR. CHINTELLA:  NO,  THESE ARE OUR DISCOVERY TO THEM,

20 YOUR HONOR.

21        THE COURT:  THE INTERROGATORIES THAT YOU HAD HAD HIS

22 SIGNATURE ON IT, DIDN'T IT?

23        MR. CHINTELLA:  NO,  IT DID NOT, THEY HAD MR. MR.

24 NAZAIRE'S SIGNATURE,  YOUR HONOR.

25        THE COURT:  ALL RIGHT.

1        MR. CHINTELLA:  NO DISCOVERY DEVICES HAVE BEEN SIGNED

2   BY ANYBODY AT AF HOLDINGS OTHER THAN MR. MR. NAZAIRE.

3        THE COURT:  OKAY.  WELL YOU WENT THROUGH IT

4   AGONIZINGLY.

5        MR. CHINTELLA:  I APOLOGIZE.

6        THE COURT:  YOU COULD HAVE ASKED HIM IF HE WAS

7   FAMILIAR WITH IT AND HE FURNISHED THE ANSWERS.  INSTEAD OF

8   ASKING 25 QUESTIONS, YOU HAD TWO.  GO AHEAD.

9      HOW MUCH LONGER DO YOU HAVE?

10       MR. CHINTELLA:  WELL,  YOUR HONOR,  WE CAN END

11   WHENEVER YOU LIKE TO, BUT I GUESS THE MAIN ISSUES WE WERE HERE

12   TO ADDRESS WERE THE LACK OF DISCOVERY.  WE DON'T HAVE THE

13   EXTENSIVE MATERIALS.  WE HAVE NOT HAD A SINGLE INTERROGATORY

14   RESPONDED TO WITH A SUBSTANTIVE ANSWER.  NO DOCUMENTS HAVE

15   BEEN PRODUCED. I BELIEVE THIS COURT ACTUALLY ORDERED THE

16   PLAINTIFF TO PRODUCE DOCUMENTS IN ITS MOST RECENT ORDER, BUT

17   THEY STILL HAVE NOT COMPLIED WITH THAT AND WE HAVE TRIED TO

18   -- I HAVE MADE MULTIPLE ATTEMPTS TO TRY TO GET THE DOCUMENTS,

19   ANY SORT OF DOCUMENTATION.  THE ASSIGNMENT AGREEMENT WAS

20   SUPPOSED TO BE PRODUCED TODAY, IT HAS NOT BEEN PRODUCED IN

21   CONTRAVENTION OF THE COURT'S ORDER.

22       THE COURT:  THE ASSIGNMENT AGREEMENT? CAPITAL RIGHT

23   ASSIGNMENT AGREEMENT?

24       MR. CHINTELLA:  YES,  YOUR HONOR.  WHICH WAS

25   EXPLICITLY ORDERED BY YOURSELF TO BE PRODUCED.  IT WAS ECF 90,

1    THE COURT ORDERED THEM TO COMPLY WITH AT LEAST THE FIRST

2    INTERROGATORIES AND REQUESTS TO PRODUCE.  THE OTHERS,  THE

3    SECOND AND THIRD SETS, THE COURT DIDN'T SPECIFICALLY ADDRESS,

4    BUT I FOLLOWED UP WITH MR. MR. NAZAIRE TO TRY TO GET RESPONSES

5    TO THOSE AS WELL.  THEY HAVE NOT RESPONDED OTHER THAN WHAT WE

6    HAVE SHOWN AS FAR AS BLANKET OBJECTIONS THAT THE COURT HAS

7    COMMENTED ON IN ITS ORDER.

8         THE COURT:  DO YOU HAVE FURTHER QUESTIONS OF HIM? YOU

9    HAVEN'T ANSWERED MY QUESTION, HOW MUCH MORE DO YOU HAVE?

10        MR. CHINTELLA:  IF WE COULD HAVE 20 MORE MINUTES.

11        THE COURT:  ARE YOU GOING TO HAVE REDIRECT?

12        MR. NAZAIRE:  NO,  YOUR HONOR.  BUT I WOULD LIKE TO

13   MOVE ON TO THE MOTION TO WITHDRAW AS I CANNOT COME BACK HERE

14   TOMORROW,  YOUR HONOR.

15        THE COURT:  WELL,  I HAVE TO BE CONCERNED ABOUT THE

16   SAFETY OF THE COURT EMPLOYEES, THEY HAVE ALREADY RELEASED

17   EVERYBODY IN ATLANTA IS MY UNDERSTANDING.

18        MR. NAZAIRE:  GIVE ME TEN MINUTES TO MAKE MY MOTION

19   TO WITHDRAW.

20        THE COURT:  I DON'T KNOW WHAT THE RELATIONSHIP IS

21   ABOUT YOU BEING ON DUTY AND HANDLING THIS MATTER,  BUT WE ARE

22   GOING TO TAKE A RECESS SO I CAN CHECK WHAT IS GOING ON

23   ELSEWHERE IN THE DISTRICT.  THE LAST TIME I LOOKED OUT THE

24   WINDOW IT WASN'T NOTHING BUT APPARENTLY THEY HAVE MORE

25   INFORMATION THAN I DO.  AND IN THE MEANTIME YOU BRING YOUR

```
 1  MACHINE IN CHAMBERS, I WANT TO SEE COUNSEL IN CHAMBERS:

 2  EVERYBODY ELSE WAIT, WE WILL TAKE A FIFTEEN-MINUTE RECESS AND

 3  WE WILL DO THAT IN CHAMBERS.

 4  (WHEREUPON, THE FOLLOWING WAS HEARD IN CHAMBERS.)

 5              *** END OF REQUESTED TRANSCRIPT ***

 6  * * * * * * * * * * * * * * * * * * * * * * * * * * * *

 7                  CERTIFICATE OF REPORTER

 8      I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

 9  MY STENOGRAPHIC NOTES IN THE ABOVE-ENTITLED MATTER.

10

11

12

13

14   S/DEBRA R. BULL, RPR, CRR        NOVEMBER 10, 2014
                                      DATE
15

16

17

18

19

20

21

22

23

24

25
```

## 1

**10** [1] - 53:14
**11** [1] - 50:10
**125** [1] - 1:13
**15** [1] - 2:4
**19** [4] - 19:5, 32:11, 36:15, 42:4
**1914** [1] - 1:19

## 2

**20** [4] - 19:5, 32:11, 36:15, 52:10
**2011** [1] - 26:4
**2013** [3] - 42:5, 44:6, 46:10
**2014** [2] - 1:4, 53:14
**2483** [1] - 1:16
**25** [1] - 51:8
**28** [1] - 1:4
**2:12-262** [1] - 1:3

## 3

**3** [2] - 2:3, 39:21
**300** [1] - 1:14
**30034** [1] - 1:17
**30144** [1] - 1:14
**30303** [1] - 1:20

## 4

**4** [1] - 39:21

## 5

**5** [1] - 49:9

## 6

**6** [1] - 49:9

## 7

**7** [1] - 49:9
**75** [1] - 1:19

## 9

**90** [1] - 51:25

## A

**ABLE** [3] - 7:24, 30:23, 48:8
**ABOVE-ENTITLED** [1] - 53:9
**ABSOLUTELY** [2] - 6:6, 12:25, 13:21
**ACCEPT** [1] - 35:19
**ACCOMPLISH** [1] - 48:21

**ACCORDINGLY** [2] - 7:15, 11:24, 12:15
**ACCOUNT** [1] - 46:7, 46:10
**ACCUSED** [1] - 18:4
**ACTUAL** [1] - 27:10, 43:12
**ADDITIONAL** [1] - 29:17
**ADDRESS** [2] - 10:5, 10:6, 16:12, 28:9, 31:14, 31:18, 51:12, 52:3
**ADDRESSING** [1] - 12:1
**ADDS** [2] - 13:4, 13:5
**ADMISSION** [1] - 43:15, 43:22
**ADMISSIONS** [1] - 49:22
**ADMIT** [2] - 23:5, 28:11
**ADULT** [1] - 26:15, 28:3
**ADVERTISING** [1] - 6:15
**AF** [3] - 1:3, 17:10, 42:23
**AF** [52] - 3:14, 3:16, 3:25, 4:3, 4:5, 4:8, 4:10, 4:13, 5:20, 6:2, 6:23, 6:25, 7:2, 7:19, 8:16, 14:11, 14:13, 17:6, 17:23, 18:17, 19:11, 20:8, 20:17, 21:21, 22:13, 23:13, 26:1, 26:2, 26:17, 26:18, 27:11, 27:16, 28:5, 34:17, 35:11, 35:17, 38:2, 38:5, 38:7, 40:9, 40:24, 41:3, 42:1, 42:22, 43:22, 44:14, 45:4, 45:6, 45:22, 46:8, 51:2
**AF** [5] - 21:6, 43:23, 44:15, 45:14, 45:17
**AFFECTED** [1] - 14:4
**AFTERNOON** [2] - 15:10, 15:11
**AGENT** [5] - 34:7, 34:9, 34:11, 35:8, 35:9
**AGO** [5] - 25:14, 26:20, 40:17, 43:17, 43:25, 44:2
**AGONIZINGLY** [1] - 51:4
**AGREEMENT** [1] - 12:2, 25:3, 51:19, 51:22, 51:23
**AHEAD** [3] - 12:7, 16:23, 20:6, 30:14,

30:16, 40:22, 45:2, 51:8
**AIDED** [1] - 1:21
**AIRFARE** [1] - 14:24
**ALLEGED** [1] - 23:22
**ALLOW** [1] - 11:22, 15:17, 16:16, 16:17, 25:14, 25:15
**ALLOWED** [1] - 7:11, 9:12, 16:19, 45:14
**ANSWER** [1] - 35:19, 36:21, 38:18, 39:3, 51:14
**ANSWERED** [1] - 35:18, 39:1, 52:9
**ANSWERS** [1] - 51:7
**APOLOGIZE** [1] - 30:10, 51:5
**APPEAR** [1] - 5:3, 5:5
**APPEARANCES** [1] - 1:11
**APPEARED** [1] - 13:24
**APPLICATION** [1] - 35:5
**APPLIED** [1] - 12:21
**APPLY** [1] - 32:21
**APPROACH** [1] - 17:12, 24:11, 30:17, 48:18
**ARGUE** [1] - 44:16, 44:20
**ARIZONA** [1] - 41:23, 41:24
**ASSERTED** [1] - 21:13
**ASSETS** [1] - 17:24, 17:25
**ASSIGN** [1] - 25:25
**ASSIGNED** [1] - 8:9, 8:11, 8:19, 25:24, 26:17
**ASSIGNER** [1] - 8:12, 8:19
**ASSIGNMENT** [1] - 8:8, 8:11, 8:14, 8:19, 12:2, 13:19, 24:23, 25:3, 25:10, 25:11, 26:17, 27:9, 51:19, 51:22, 51:23
**ASSISTED** [1] - 41:13, 41:14, 41:17
**ASSOCIATES** [1] - 14:13, 16:6
**ASSUME** [5] - 5:23, 10:3, 25:23, 31:12, 48:10, 49:20
**ASSUMING** [1] - 6:8, 31:10, 34:8
**ATLANTA** [1] - 50:1, 52:17
**ATLANTA** [1] - 1:2, 1:3, 1:20
**ATTACHES** [1] - 22:6

**ATTEMPTS** [1] - 46:23, 51:18
**ATTENTION** [1] - 20:20, 36:1, 45:8
**ATTORNEY** [1] - 1:12, 4:13, 4:17, 8:4, 8:18, 9:2, 10:3, 21:11, 21:13, 21:14, 22:2, 22:3, 22:4, 22:20, 23:19, 28:21, 28:23, 32:20, 41:19, 41:23, 46:2, 46:3, 48:9, 48:15, 49:5, 49:17, 50:10
**ATTORNEY-CLIENT** [1] - 21:11, 21:13, 21:14, 23:19, 32:20
**ATTORNEYS** [1] - 10:13, 20:21, 20:22, 20:24, 21:1, 21:7, 21:16, 22:24
**AUTHEN** [1] - 39:17
**AUTHENTIC** [1] - 28:25
**AUTHENTICATE** [1] - 43:16
**AUTHENTICATING** [1] - 43:15
**AUTHENTICITY** [1] - 28:16, 39:15
**AWARE** [1] - 19:9, 36:17, 38:23, 38:24, 39:5, 45:20, 47:16, 48:5, 48:17, 50:15

## B

**BADMOUTH** [1] - 14:11
**BALLPARK** [1] - 47:4
**BANKRUPTCY** [1] - 3:19
**BASIS** [3] - 12:11, 37:19, 37:20
**BEFORE** [1] - 1:9
**BEFOREHAND** [1] - 21:21
**BEQ** [1] - 20:4
**BEGIN** [1] - 27:15
**BEGINNING** [1] - 41:9, 46:10
**BEHALF** [1] - 8:16, 42:16
**BELIEVES** [1] - 43:9
**BELONGS** [1] - 7:19
**BEST** [1] - 28:15
**BETTER** [1] - 3:17, 41:2
**BETWEEN** [1] - 12:3, 16:20, 22:1, 23:4
**BIG** [3] - 6:22, 6:25, 7:1

**BITTORRENT** [1] - 38:22, 39:6
**BLAIR** [1] - 1:15, 1:16
**BLANKET** [1] - 52:6
**BOTTOM** [1] - 31:7, 33:13
**BOUGHT** [1] - 24:7
**BOX** [1] - 30:3
**BOXES** [2] - 27:1, 29:20
**BRAND** [1] - 14:7
**BRETT** [1] - 10:10
**BRETT** [1] - 7:14, 8:18, 8:24, 10:12, 21:9, 42:17, 47:19
**BRIEFLY** [1] - 49:16
**BRING** [1] - 28:23, 52:25
**BROAD** [1] - 15:17, 16:16, 25:14
**BROUGHT** [1] - 7:13, 20:20, 26:10, 45:7
**BUILDING** [1] - 1:19, 16:1
**BULK** [2] - 1:18, 53:14
**BUSINESS** [1] - 14:6, 16:6, 16:14, 18:1, 18:2, 18:3, 18:15, 32:22, 37:12
**BUY** [2] - 15:1, 24:2
**BY** [23] - 5:1, 15:9, 15:20, 17:5, 17:22, 19:8, 20:7, 21:19, 23:11, 23:21, 25:18, 26:12, 28:1, 30:22, 33:5, 34:4, 35:25, 36:20, 38:1, 39:4, 40:23, 45:3, 49:10

## C

**CALIFORNIA** [1] - 17:15, 19:17, 20:9, 40:9
**CANNOT** [1] - 52:13
**CAPITAL** [1] - 51:22
**CASE** [24] - 4:18, 5:24, 6:10, 6:22, 7:4, 7:6, 9:14, 9:22, 17:6, 17:10, 17:14, 19:25, 20:11, 20:18, 20:25, 23:1, 24:5, 24:18, 32:1, 40:3, 42:5, 42:10, 46:24, 48:6
**CASES** [9] - 5:20, 13:7, 13:10, 13:12, 13:13, 19:12, 20:19, 34:17, 35:11, 35:13, 35:15, 35:17, 38:4, 38:5, 38:7, 41:25,

46:23, 47:16
**CD** [2] - 26:5, 26:13
**CEO** [1] - 32:7
**CERTIFICATE** [1] - 53:7
**CERTIFICATE** 34:2
**CERTIFY** - 53:8
**CETERA** - 24:24
**CHAMBERS** - 53:1, 53:3, 53:4
**CHANCE** [3] - 43:10, 43:11, 48:13
**CHANGE** [2] - 45:14, 50:4
**CHARACTERISTIC** 28:17
**CHARGE** - 18:21, 18:25
**CHASTISED** - 40:17
**CHECK** [4] - 52:22
**CHINTELLA** [5] - 1:15, 1:16, 2:4, 17:19, 22:9, 23:18, 32:14, 32:22, 40:20, 42:3, 42:9, 43:21, 48:4, 49:8, 49:21
**CHINTELLA** [70] - 11:25, 15:7, 15:9, 15:20, 16:18, 17:5, 17:10, 17:16, 17:22, 19:2, 19:8, 20:2, 20:5, 20:7, 21:19, 22:3, 23:3, 23:11, 23:21, 24:11, 24:13, 24:19, 25:2, 25:18, 26:12, 27:22, 28:1, 28:8, 28:16, 29:5, 29:12, 29:15, 29:20, 29:24, 30:3, 30:7, 30:10, 30:17, 30:19, 30:22, 32:5, 32:12, 33:5, 34:4, 35:19, 35:23, 35:25, 36:20, 38:1, 39:4, 39:9, 39:21, 40:8, 40:23, 43:14, 44:3, 44:14, 45:3, 48:18, 49:1, 49:10, 50:4, 50:8, 50:19, 50:23, 51:1, 51:5, 51:10, 51:24, 52:10
**CHINTELLA** - 15:6, 22:23, 25:8, 28:13, 40:17, 43:8, 43:12
**CHINTELLAS** [1] - 5:14
**CHOOSE** [1] - 18:7
**CIRCUS** [2] - 6:17, 6:18
**CLARIFY** - 38:7
**CLEAR** - 24:1
**CLERK** [2] - 3:4, 3:8

**CLIENT** [9] - 21:11, 21:13, 21:14, 22:2, 23:19, 32:7, 32:20, 34:17, 38:2, 50:11
**CLIENTS** - 37:22, 37:23
**CLOSED** - 31:3, 41:25, 50:1
**COMMENTED** - 52:7
**COMMUNICATION** - 37:5
**COMMUNICATIONS** - 37:18
**COMPANIES** [3] - 19:6, 31:3, 31:20, 31:22, 38:2, 38:16, 39:7
**COMPANY** [9] - 8:9, 12:24, 18:22, 18:24, 19:3, 19:16, 19:19, 20:19, 23:12, 26:5, 26:13, 26:15, 28:3, 32:19, 34:13, 41:13, 41:14, 41:17, 44:17
**COMPARE** - 29:3
**COMPENSATED** - 19:21
**COMPLETE** - 16:17
**COMPLETELY** 14:7
**COMPLIED** - 51:17
**COMPLY** [1] - 52:1
**CONCERNED** - 52:15
**CONDUCT** - 18:1, 18:3, 24:18
**CONDUCTED** - 42:4, 48:5
**CONDUCTING** - 18:2
**CONFIRMATIONS** 29:13, 29:17
**CONNECT** - 33:2, 33:3
**CONNECTED** - 6:10
**CONNECTION** - 3:13, 16:19, 16:25, 23:3, 32:24
**CONSIDER** - 7:1
**CONSIST** - 7:2
**CONSTANTLY** 24:3, 24:17
**CONTACT** - 10:10, 34:8
**CONTACTED** - 7:9, 10:10, 11:8
**CONTENT** - 10:23, 11:2, 11:4, 18:8, 18:9, 29:9
**CONTRACTOR**

18:19
**CONTRAVENTION** 51:21
**CONTROL** - 44:18
**CONVERSATION** 11:18, 12:2, 12:3
**CONVERSATIONS** 22:1
**COPIES** [3] - 24:4, 25:6, 26:18, 28:10, 38:24, 48:8
**COPY** [4] - 17:21, 24:8, 45:11, 45:12
**COPYRIGHT** [11] - 7:19, 8:2, 8:9, 10:17, 12:17, 12:21, 24:23, 25:3, 25:24, 25:25, 26:17, 27:8, 27:10, 27:12, 30:1, 30:2, 30:12, 38:21, 46:22
**COPYRIGHTED** 8:6, 23:14, 23:23, 27:19
**COPYRIGHTING** 40:4
**COPYRIGHTS** - 18:5, 18:6
**CORPORATION** 6:23, 6:25, 7:1, 35:5
**CORRECT** - 3:16, 4:15, 4:18, 5:3, 5:10, 6:11, 6:20, 7:20, 8:8, 8:12, 8:19, 8:25, 9:19, 10:2, 10:5, 10:6, 10:8, 11:11, 11:16, 12:12, 13:4, 13:8, 13:10, 13:20, 14:2, 14:13, 25:20, 27:19, 42:1, 45:9, 53:8
**CORRECTLY** 43:17
**COUNSEL** - 24:12, 53:1
**COUNSELOR** 24:16
**COUNTRY** - 21:3, 40:3
**COUPLE** - 7:10, 11:22, 18:5
**COURSE** - 15:2
**COURT** [4] - 5:9, 6:5, 6:18, 14:18, 17:13, 23:8, 29:5, 40:7, 50:1, 51:15, 52:1, 52:3, 52:6, 52:16
**COURT** - 3:9, 13:24, 17:18, 32:24, 43:25
**COURT** [68] - 1:1, 1:9, 1:18, 1:18, 3:1, 3:18, 3:21, 4:23, 12:5, 12:7, 15:5, 15:17, 16:15, 16:23, 17:4,

17:14, 19:7, 20:4, 20:6, 21:15, 22:8, 23:2, 23:9, 23:20, 24:10, 24:12, 24:25, 25:13, 26:9, 27:24, 29:9, 29:14, 29:18, 29:22, 29:25, 30:4, 30:9, 30:11, 30:18, 33:22, 33:25, 35:21, 36:17, 39:2, 39:13, 39:16, 39:19, 40:6, 40:12, 40:16, 40:22, 43:4, 43:17, 44:7, 44:25, 48:20, 49:23, 50:6, 50:17, 50:21, 50:25, 51:3, 51:6, 51:22, 52:8, 52:11, 52:15, 52:20
**COURS** [3] - 24:17, 50:11, 51:21
**COURT-ORDERED** - 5:9, 6:5
**COURTROOM** 15:24
**COVER** - 24:14
**COVERS** - 29:6
**CREATED** - 3:22
**CREED** - 3:21
**CROSS** - 2:4, 15:5, 15:8, 15:18, 16:16, 25:14, 43:7, 43:11
**CROSS-EXAMINATION** [4] - 15:5, 15:18, 16:16, 25:14
**CROSS-EXAMINE** [2] - 43:7, 43:11
**CRR** [2] - 1:18, 53:14
**CUSTOMERS** - 7:11, 11:22
**CV** [1] - 1:3

## D

**DATE** [3] - 8:7, 34:10, 53:14
**DATES** [3] - 39:10
**DC** [1] - 9:14
**DEAL** [4] - 25:16, 42:12, 42:14, 42:16
**DEALING** - 50:7
**DEALINGS** - 37:12
**DEBRA** [1] - 1:18
**DECATUR** - 1:17
**DECIDED** [1] - 12:14
**DECISION** - 12:13
**DEFENDANT** - 1:7
**DEFENDANT** - 1:15, 6:22, 42:6
**DEFENDANTS** [2] - 4:12, 49:22

**DEMAND** [4] - 11:5, 27:1, 38:16, 39:6
**DEPONENT** - 19:15, 19:25, 21:20, 22:14
**DEPOSITION** [8] - 5:3, 5:6, 5:9, 5:15, 5:18, 6:5, 6:14, 6:16, 14:11, 19:15, 20:16, 22:11, 22:12, 22:13, 23:6, 23:12, 23:16, 23:17
**DEPOSITIONS** - 4:22
**DESCRIBE** - 49:16
**DESIGNATION** - 34:3
**DETERMINATION** 29:6
**DEVICES** [1] - 51:1
**DIFFERENT** 14:7, 40:3, 40:20, 41:8, 43:9
**DIRECT** - 2:3, 3:11, 15:16, 36:1
**DIRECTLY** - 37:1
**DISCLOSED** - 16:21
**DISCOVERY** - 4:24, 16:17, 22:25, 48:5, 50:15, 50:19, 51:1, 51:12
**DISTINCTION** - 36:11
**DISTRIBUTE** - 28:6
**DISTRIBUTED** - 11:2, 23:23, 23:25, 24:22, 25:5, 25:20, 25:22, 27:16, 38:16
**DISTRIBUTING** 23:13, 25:12, 38:20, 39:5, 40:5, 40:8, 40:10, 40:12, 40:15
**DISTRIBUTION** 8:5, 27:15
**DISTRIBUTORS** 18:10
**DISTRICT** - 52:23
**DISTRICT** [3] - 1:1, 1:1, 1:9
**DIVISION** [1] - 1:2
**DO** [1] - 30:6
**DOCUMENT** [8] - 29:8, 30:23, 30:24, 31:4, 33:4, 33:6, 33:17, 33:19, 33:23, 34:5, 35:3, 35:6, 35:8, 36:2, 43:14, 45:7, 49:18, 49:21
**DOCUMENTATION** 51:19
**DOCUMENTS** [8] - 31:2, 35:21, 49:2,

49:14, 49:19, 51:14, 51:16, 51:18
**DOLLARS** [5] - 5:17, 14:25
**DONE** [2] - 19:13, 19:15
**DOUBT** [1] - 47:9
**DOWN** [5] - 23:8, 27:15, 41:24, 42:7, 50:1
**DOWNLOAD** [1] - 39:7
**DRIVE** [1] - 1:13
**DUE** [1] - 18:6
**DUFFY** [4] - 37:2, 37:3, 47:13, 47:14
**DUFFY** [4] - 4:5, 36:3
**DULY** [1] - 3:6
**DURING** [3] - 37:18
**DUTIES** [5] - 31:24, 31:25, 34:9, 36:12, 36:23
**DUTY** [2] - 34:11, 52:21
**DVD** [3] - 17:16, 26:15, 28:3
**DVD'S** [1] - 29:24
**DVDS** [5] - 38:24, 39:10, 39:17, 39:19, 40:2
**DVDS** [2] - 40:4, 40:9

**E**

**E-MAILED** [2] - 29:12, 29:16
**EARLY** [1] - 26:4
**EASILY** [1] - 43:6
**ECF** [1] - 51:25
**EFFECT** [1] - 3:16
**EITHER** [3] - 34:1, 38:15, 39:20
**ELEMENTS** [2] - 16:24, 17:2
**ELIMINATE** [1] - 18:8
**ELSEWHERE** [1] - 52:23
**EMAILING** [1] - 6:1
**EMPIRE** [2] - 26:15, 28:3
**EMPLOYEES** [2] - 18:17, 52:16
**EMPLOYER** [2] - 36:6, 36:9, 36:10
**EMPLOYERS** [1] - 38:8
**END** [1] - 53:5
**END** [1] - 51:10
**ENTERTAINING** [1] - 6:8
**ENTIRE** [4] - 10:22, 33:23, 35:4
**ENTITIES** [1] - 46:11

**ENTITLED** [1] - 53:9
**ENVELOPE** [3] - 29:10, 29:11, 29:19
**ENVELOPES** [3] - 29:14, 29:16
**ESQ** [3] - 1:12, 1:15, 1:16
**ESSENTIALLY** [5] - 7:7, 18:7, 32:6, 45:9
**ESTABLISH** [1] - 28:14, 32:8, 50:9
**ET** [1] - 24:24
**EVENTUALLY** [2] - 11:8, 23:4
**EVIDENCE** [7] - 17:13, 23:5, 25:4, 27:23, 28:12, 39:10, 39:24, 50:15
**EXACT** [1] - 20:11
**EXACTLY** [2] - 26:25, 40:11
**EXAM** [4] - 2:3, 2:4, 3:11, 15:8
**EXAMINATION** - 15:5, 15:16, 15:18, 16:16, 25:14
**EXAMINE** [2] - 43:7, 43:11
**EXCEPT** [1] - 29:22
**EXCHANGED** [1] - 11:19
**EXHIBIT** [1] - 35:24, 39:20
**EXHIBITS** [5] - 24:10, 35:21, 39:21, 39:23, 39:25, 49:9
**EXPERIENCES** [1] - 6:1
**EXPLAIN** [4] - 5:13, 5:22, 7:16, 10:20, 12:17, 12:23, 24:7
**EXPLAINED** [4] - 7:23, 9:3, 11:21, 11:23
**EXPLICITLY** [1] - 51:25
**EXTENSIVE** [1] - 51:13

**F**

**FABRICATE** [1] - 28:18
**FACT** [7] - 19:18, 24:22, 33:2, 43:13
**FACTS** [4] - 25:9, 43:8, 43:9, 43:10
**FAILED** [3] - 28:14, 28:23, 43:8
**FAINT** [1] - 30:5
**FALSE** [3] - 11:16, 11:17
**FAMILIAR** [5] - 7:4, 9:16, 15:12, 17:6, 17:10, 20:15, 20:18,

20:19, 26:5, 26:13, 28:2, 31:2, 31:14, 33:6, 33:7, 33:11, 34:7, 36:2, 41:19, 42:10, 49:2, 49:14, 51:7
**FAR** [5] - 4:17, 8:21, 9:21, 11:4, 52:6
**FAULT** [1] - 50:14
**FEW** [1] - 17:20
**FI** [2] - 7:13, 11:23
**FIFTEEN** [1] - 53:2
**FIFTEEN-MINUTE** [1] - 53:2
**FIFTY** [1] - 5:17
**FIGURE** [1] - 47:11
**FILE** [3] - 10:22, 48:23
**FILLED** [1] - 7:13
**FINE** [1] - 44:10
**FIRM** [1] - 32:7
**FIRST** [7] - 3:6, 14:1, 32:3, 36:23, 42:7, 52:1
**FISHING** [1] - 25:15
**FLIGHT** [1] - 48:3
**FOLLOWED** [1] - 52:4
**FOLLOWING** [2] - 43:18, 53:4
**FOLLOWS** [1] - 3:7
**FOOD** [1] - 15:1
**FOR** [2] - 1:1, 1:12
**FOREGOING** [1] - 53:8
**FOREIGN** [1] - 35:5
**FORM** [2] - 28:25, 41:12
**FORTH** [2] - 10:22, 32:4
**FORWARD** [5] - 7:15, 9:4, 12:14, 18:9
**FOUNDATION** [1] - 28:14
**FOUR** [3] - 4:20, 14:24
**FREE** [3] - 18:21, 18:25
**FRIEND** [1] - 37:7
**FRIENDS** [3] - 16:5, 17:1
**FRIVOLOUS** [1] - 50:8
**FRONT** [2] - 16:1, 30:25
**FULFILLED** [1] - 19:18
**FUN** [2] - 5:18, 5:19
**FUND** [1] - 5:15
**FURNISHED** [1] - 51:7

**G**

**GA** [4] - 1:3, 1:14, 1:17, 1:20
**GAS** [6] - 7:10, 7:12, 7:21, 11:19, 11:20, 11:22

**GATHER** - 22:23
**GENERAL** [1] - 10:16, 32:22
**GEORGIA** [2] - 12:18, 35:15, 47:1
**GEORGIA** [2] - 1:1, 35:13
**GIBBS** [13] - 7:8, 7:14, 8:18, 9:6, 9:8, 10:4, 10:11, 10:12, 12:14, 12:16, 21:9, 42:17, 47:19
**GIBBS** [1] - 8:24
**GIVEN** [3] - 13:22, 13:23, 28:5
**GLAD** [1] - 45:7
**GOODHUE** [5] - 41:20, 42:12, 42:14, 42:19, 43:8, 44:23, 45:8
**GOODHUE** [2] - 41:23, 42:7
**GUESS** [5] - 6:9, 8:5, 23:8, 24:21, 25:6, 36:23, 48:9, 51:11
**GUESSING** [1] - 48:11
**GUYS** [2] - 16:6, 16:8
**GUYS** [1] - 16:4

**H**

**HAND** [1] - 3:5
**HANDED** [2] - 24:4, 29:16
**HANDFUL** [1] - 26:24
**HANDLE** [2] - 46:6
**HANDLED** [2] - 8:18, 46:4
**HANDLING** [2] - 47:7, 52:21
**HANSMEIER** [1] - 19:9, 20:8, 21:20, 22:13, 22:18, 31:21, 34:13, 34:16, 34:18, 34:19, 34:21, 34:22, 34:25, 35:24, 37:16, 37:23, 38:11, 38:12, 38:13, 38:14
**HANSMEIER** [1] - 4:10
**HARASS** [1] - 6:1
**HARD** [1] - 7:12
**HARRIS** [1] - 42:6
**HATE** [1] - 36:14
**HEAD** [5] - 4:14, 12:10, 34:20, 41:11, 47:9
**HEARD** [1] - 6:20, 13:10, 13:12, 43:23, 44:1, 53:4
**HEARING** [1] - 1:10
**HEARING** [1] - 24:25,

42:4, 44:6
**HEARTBREAKER** [1] - 25:23
**HELD** [1] - 18:5, 41:3, 44:6
**HELP** [1] - 42:14
**HIGH** [1] - 32:3
**HIMSELF** [1] - 21:13
**HOLDINGS** [33] - 3:14, 3:16, 3:25, 4:3, 4:6, 4:8, 4:10, 4:13, 5:20, 6:2, 6:23, 6:25, 7:2, 7:19, 8:16, 8:17, 14:11, 14:13, 17:6, 17:23, 18:17, 19:11, 20:17, 21:21, 22:13, 23:13, 26:1, 26:2, 26:18, 27:11, 27:16, 28:5, 34:17, 35:11, 35:17, 38:2, 38:5, 38:7, 40:9, 40:24, 41:3, 42:1, 42:22, 43:22, 44:14, 45:22, 46:8, 51:2
**HOLDINGS** [5] - 1:3, 17:11, 21:6
**HOLDINGS** [1] - 20:8
**HONEST** [1] - 8:4
**HONOR** [1] - 16:13, 17:12, 20:2, 21:10, 40:11, 40:21, 42:3
**HONOR** [7] - 4:20, 11:25, 15:3, 15:7, 15:15, 16:19, 17:11, 19:2, 20:1, 21:18, 21:25, 22:22, 23:17, 24:16, 25:8, 26:7, 27:22, 28:8, 28:13, 28:16, 28:21, 29:7, 29:16, 29:21, 31:25, 32:6, 32:13, 33:20, 35:20, 36:13, 36:14, 37:24, 39:9, 39:12, 39:14, 39:18, 39:21, 40:1, 40:8, 40:19, 43:1, 43:5, 43:14, 44:3, 44:20, 44:22, 44:24, 48:2, 48:18, 49:8, 49:22, 50:20, 50:24, 51:10, 51:24, 52:12, 52:14
**HONORABLE** [1] - 1:9
**HOPING** [1] - 18:8
**HOTEL** [1] - 14:25
**HOWELL** [4] - 9:16, 9:23, 9:25
**HUMILIATE** [2] - 5:8, 5:13
**HUNDRED** [2] - 5:17,

14:24
HURTS [1] - 10:25

**I**

IDEA [2] - 27:21, 47:3
IDENTICAL - 30:11
IDENTIFY - 30:23, 35:3
ILLEGAL - 8:5
IMPORTANCE - 50:6
IMPORTANT - 44:8
IMPOSED [1] - 50:9
IMPRESSION - 5:7, 44:9
IN [1] - 1:1
INCEPTION - 44:5
INCONSISTENCY - 44:14
INCONSISTENT - 43:19, 44:12
INCREASE - 27:10, 27:11
INDEPENDENT - 18:19
INDEX [1] - 2:1
INDICATED - 25:9
INDIVIDUALS - 13:16
INDUSTRY - 14:8
INFERENCE - 25:7, 44:16
INFORMATION - 7:8, 7:14, 9:5, 11:7, 22:24, 24:17, 30:1, 52:25
INFORMED - 7:10
INFRINGED - 7:18
INFRINGEMENT - 8:3, 12:17, 12:21, 18:4, 18:6, 23:22, 38:21, 46:22
INITIALED - 11:4
INSISTING - 45:1
INSTEAD - 11:1, 44:15, 51:7
INSTRUCTED - 49:4
INTEREST - 16:21
INTERNET - 7:11, 9:10, 28:10
INTERROGATORIE - 48:8, 48:22, 50:21, 52:2
INTERROGATOR - 51:13
INTERRUPTING - 40:16, 45:1
INVOICE [1] - 27:23, 28:9, 29:11
INVOICES [3] - 29:13,

29:15, 29:23, 39:11
INVOKE [1] - 22:4
INVOLVED - 16:21, 18:15, 44:17
INVOLVING - 34:17
IP [1] - 10:5
IP [1] - 10:6
IRRELEVANT - 20:1
ISP [1] - 7:9
ISP [1] - 9:7
ISSUE [5] - 9:12, 12:1, 12:4, 17:13, 17:16, 23:19, 24:5, 24:23, 25:2, 28:10, 28:17, 40:7
ISSUED [1] - 9:19
ISSUES [11] - 4:20, 4:22, 16:25, 17:1, 17:2, 19:5, 25:17, 32:11, 36:15, 51:11
ISSUING [1] - 9:22

**J**

JACQUES - 1:12, 1:12
JANUARY - 1:4
JOB [2] - 31:22, 36:24
JOHN [1] - 34:23
JOHN [9] - 4:8, 15:12, 16:20, 34:22, 37:5, 38:12, 38:13, 38:14, 47:22
JUDGE [2] - 9:12, 9:16, 9:21, 9:23, 9:25, 20:13, 20:15
JUDGE [1] - 1:9
JUDGS [1] - 9:13
JUDGES - 13:10, 13:12, 13:13, 13:15, 13:18
JULY [2] - 42:4, 44:6
JUMPED [1] - 7:13

**K**

KEEP [1] - 12:16
KENNESAW - 1:14
KILLED - 14:6
KIND [1] - 45:25
KNOWN [1] - 16:2, 44:11
KNOWS [1] - 33:4

**L**

L-U-T-Z [1] - 3:10
LACK [1] - 3:17, 41:2, 51:12
LADY [1] - 41:18
LAST [1] - 3:9, 14:25,

15:25, 49:21, 50:17, 52:23
LAW [3] - 1:13, 6:18, 31:21, 32:7, 35:11, 35:24, 36:8, 36:9, 36:10, 44:23, 46:9, 46:12, 46:14
LAWYER - 10:15, 33:1
LAYPERSON - 10:19, 10:20, 10:25
LEAD [2] - 36:18, 39:23
LEADING - 21:11
LEASE [1] - 16:10, 16:12, 16:14
LEAST - 25:6, 50:12, 50:14, 52:1
LEFT - 42:19
LEGAL [1] - 7:24, 32:15, 32:17, 32:19, 32:22, 33:1, 46:1, 49:18
LEGITIMATE - 9:18, 10:1, 10:4
LEVEL - 37:9
LIABILITY - 12:18, 12:20, 12:21
LIFE - 32:2
LIKEWISE - 49:7
LINCOLN - 31:14
LINE - 22:25, 23:8, 42:7, 50:4
LIST - 10:12
LISTED - 4:12, 4:14, 32:11, 36:15
LIVE [1] - 16:8
LLC [2] - 6:23, 6:25
LLC [1] - 1:3
LOOK - 30:3, 49:17
LOOKED - 52:23
LOOKING - 33:7, 33:10
LOOKS - 28:14, 31:3, 33:14, 33:15, 34:2, 43:2
LOST - 12:24, 14:15, 14:17
LUTZ - 2:2, 3:6, 16:20
LUTZ [24] - 3:3, 3:4, 3:10, 3:13, 4:21, 5:2, 12:3, 14:10, 15:10, 17:6, 21:12, 21:13, 25:9, 25:19, 28:22, 30:23, 32:1, 42:10, 42:20, 43:9, 43:10, 44:16, 50:5, 50:15
LUTZS [1] - 32:2

**M**

MACHINE [1] - 53:1
MAIL [1] - 28:20
MAILED [1] - 29:12, 29:16
MAILING [1] - 40:5
MAIN [1] - 51:11
MAJORITY - 50:12
MARK [1] - 2:2, 3:3, 3:6, 3:10, 14:10, 30:10, 30:12, 32:1, 32:2, 43:3, 49:9
MARKED - 29:25, 35:21
MARKS - 30:2
MARSH [1] - 42:21
MATCHED - 10:6
MATERIALS - 51:13
MATTER - 15:18, 20:23, 47:7, 47:13, 52:21, 53:9
MATTERS - 20:24, 21:12, 46:20
MEAN [5] - 16:16, 17:14, 26:24, 30:9, 36:14
MEANTIME [1] - 52:25
MEMBER [1] - 42:21
MEMBERS [1] - 41:3
MENTION [1] - 19:6
MENTIONED [1] - 50:11
MENTIONING - 12:16
MERE [1] - 33:2
MET [1] - 8:21
MILLIONS - 13:3
MIND [1] - 10:16
MINE [1] - 37:8
MINUTE [2] - 43:17, 53:2
MINUTES [3] - 44:2, 52:10, 52:18
MISLED [1] - 50:13
MISREAD [1] - 43:19
MISSTATING - 25:9
MISTAKE [1] - 45:19
MIX [1] - 30:9
MIXED [2] - 30:8, 30:14
MOMENT [4] - 17:11, 25:14, 40:17, 43:25
MONEY [18] - 12:24, 14:15, 14:17, 14:21, 14:23, 24:2, 25:5, 25:11, 27:12, 45:22, 45:24, 46:1, 46:4, 46:7, 46:11, 46:14, 46:16, 46:17

MONIES [1] - 46:13
MORNING [1] - 3:13
MOST [1] - 51:16
MOTEL [1] - 50:3
MOTION [8] - 36:16, 52:13, 52:18
MOTIONS [1] - 1:10
MOVE [8] - 7:14, 9:4, 12:14, 18:9, 39:3, 40:20, 44:7, 52:13
MOVIE - 10:24, 24:4, 27:16, 28:6, 29:21
MR [76] - 5:1, 11:25, 15:7, 15:9, 15:20, 16:18, 17:5, 17:10, 17:16, 17:22, 19:2, 19:8, 20:2, 20:5, 20:7, 21:19, 22:3, 22:22, 22:3, 23:11, 23:21, 24:8, 24:11, 24:13, 24:19, 25:2, 25:18, 26:7, 26:12, 27:22, 28:1, 28:8, 28:16, 29:5, 29:12, 29:15, 29:20, 29:24, 30:3, 30:7, 30:10, 30:17, 30:19, 30:22, 32:5, 32:12, 33:5, 34:4, 35:19, 35:23, 35:25, 36:20, 38:1, 39:4, 39:9, 39:21, 40:8, 40:14, 40:23, 43:14, 44:3, 44:14, 45:3, 48:18, 49:1, 49:10, 50:4, 50:8, 50:19, 50:23, 51:1, 51:5, 51:10, 51:24, 52:10, 52:12
MULTIPLE - 13:24, 51:18
MUST [1] - 8:8

**N**

N-E-V-I-S [1] - 3:22
NAME [18] - 3:9, 9:13, 9:15, 10:6, 10:8, 11:5, 20:11, 26:10, 36:2, 41:6, 41:8, 41:10, 41:16, 41:18, 42:25, 44:5, 44:19
NAMED [7] - 15:12, 19:9, 41:19, 44:4, 45:4, 45:6, 45:16
NAMES [2] - 29:1, 45:20
NATURE - 15:1
NAVASCA - 17:7
NAVASCA - 20:17

**NAZAIRE** [6] - 5:1, 22:22, 24:8, 26:7, 40:14, 52:12

**NAZAIRE** [1] - 1:12, 1:12, 2:3, 3:2, 3:12, 3:23, 4:20, 4:24, 12:6, 12:8, 15:3, 15:15, 16:13, 16:24, 17:9, 17:21, 19:1, 19:4, 19:24, 21:10, 21:18, 21:25, 22:6, 23:7, 23:15, 24:16, 25:8, 28:13, 28:21, 29:7, 30:21, 31:25, 32:10, 32:20, 33:20, 35:18, 36:13, 37:24, 39:1, 39:12, 39:14, 39:17, 39:22, 40:11, 40:19, 43:1, 43:3, 43:5, 44:22, 48:2, 52:18

**NAZAIRE** [1] - 20:23, 21:8, 50:13, 51:2, 52:4

**NAZAIR'S** [2] - 50:14, 50:24

**NECESSARILY** [1] - 33:3

**NECESSARY** [1] - 26:24, 28:20

**NEED** [1] - 49:24

**NEEDED** [1] - 45:10

**NEIGHBORHOOD** [1] - 5:17

**NEVER** [1] - 7:12, 11:13, 13:25, 14:10, 25:20, 26:9, 39:24, 39:25, 46:13

**NEVIS** [1] - 3:22

**NEVIS** [3] - 41:13, 41:15, 45:10

**NEW** [1] - 26:10

**NIGHT** [1] - 14:25

**NINE** [2] - 21:2, 21:3

**NISBIT** [2] - 41:18, 45:10

**NO** [1] - 1:3

**NOBODY** [1] - 4:15

**NON** [2] - 6:5, 22:4

**NONE** [1] - 37:21

**NORTHERN** 1:1

**NOTE** [1] - 16:13, 19:24, 21:10, 21:25, 22:22, 36:13, 39:1

**NOTES** [1] - 12:13, 53:9

**NOTHING** [1] - 18:7, 23:1, 29:1, 29:3, 29:22, 52:24

**NOVEMBER** [1] - 53:14

**NUMBER** [1] - 27:3,

29:2, 29:3, 35:22, 39:20, 47:8

**NUMBERS** [1] - 27:14

**O**

**O'KELLEY** [1] - 1:9

**OBJECT** [1] - 15:15, 24:16, 25:8, 26:10, 28:13, 39:12, 39:14, 43:1, 44:22

**OBJECTED** [1] - 43:3

**OBJECTING** [1] - 45:1

**OBJECTION** [1] - 12:1, 12:5, 12:7, 16:13, 17:4, 17:9, 19:1, 19:4, 19:7, 19:24, 21:10, 21:17, 21:25, 22:8, 22:22, 23:9, 23:15, 23:18, 23:20, 25:13, 26:7, 26:11, 30:15, 31:25, 32:20, 33:20, 33:22, 36:13, 37:24, 39:1, 39:2, 39:13, 43:4, 44:7, 48:2

**OBJECTIONS** [1] - 52:6

**OBTAIN** [1] - 9:8, 46:1

**OBTAINED** [1] - 7:8, 11:7, 47:1

**OBTAINS** [1] - 10:22

**OBVIOUSLY** [1] - 18:8, 28:5

**OCCURRED** [1] - 8:6

**OF** [3] - 1:1, 53:5, 53:7

**OFFERED** [1] - 5:16

**OFFERING** [1] - 6:16

**OFFHAND** [1] - 5:11

**ONCE** [1] - 9:6, 11:7, 19:17, 22:22, 32:10

**ONE** [19] - 7:21, 11:2, 19:4, 21:2, 21:8, 25:24, 28:18, 30:10, 33:25, 34:1, 34:19, 35:24, 41:9, 42:6, 44:1, 44:5, 44:11, 49:21

**ONES** [1] - 20:20

**ONLINE** [1] - 24:7

**OPINION** [1] - 24:17

**OPPORTUNITY** [1] - 13:23

**OR** [1] - 6:1

**ORANGE** [1] - 42:18

**ORDER** [1] - 29:13, 29:17, 32:11, 36:16, 50:11, 51:16, 51:21, 52:7

**ORDERED** [1] - 5:9, 6:5, 28:19, 51:15,

51:25, 52:1

**ORDERS** [1] - 29:21

**ORIGIN** [1] - 46:16

**OTHERWISE** [1] - 32:2

**OUTRIGHT** [1] - 50:13

**OVERARCHING** [1] - 44:17

**OVERRULE** [1] - 12:5, 12:7, 17:4, 19:7, 21:17, 26:10, 30:15, 33:22, 39:2

**OVERRULED** [1] - 15:19

**OVERSAW** [1] - 37:1, 38:10

**OWN** [6] - 3:16, 4:5, 4:8, 4:10, 4:13, 11:21

**OWNED** [1] - 41:1

**OWNER** [1] - 25:23, 36:10, 43:23, 44:19

**OWNERSHIP** [1] - 24:23

**OWNS** [4] - 3:24, 4:2, 25:7, 40:24

**P**

**PAGE** [2] - 33:6, 36:1

**PAGES** [1] - 19:5, 32:11, 36:15

**PAID** [1] - 20:1

**PAPER** [1] - 29:1, 29:12

**PAPERS** [1] - 29:2, 29:16

**PARALEGAL** [1] - 31:23, 31:24, 32:1, 32:6, 32:9, 33:3, 34:14, 34:16, 36:8, 36:25, 37:14

**PARDON** [1] - 20:4

**PARK** [1] - 1:13

**PART** [1] - 6:4

**PARTICULAR** [1] - 14:18, 20:23, 20:25, 27:2, 31:4, 47:13

**PARTIES** [1] - 16:20, 16:22

**PARTS** [1] - 24:14

**PARTY** [1] - 43:15, 43:22, 50:10

**PASSPORT** [1] - 45:11, 45:12, 45:14

**PASSWORD** [1] - 11:23

**PATEL** [4] - 6:20, 7:4, 7:18, 8:22, 8:25, 9:2, 9:3, 10:8, 10:10, 11:7, 12:9, 13:1, 18:3, 23:22

**PATEL** [1] - 1:6

**PATES** [3] - 7:8, 9:5,

9:7

**PAUL** [2] - 34:22, 34:25

**PAUL** [16] - 4:5, 4:10, 19:9, 20:8, 21:20, 22:13, 22:18, 36:3, 37:2, 37:3, 37:16, 38:12, 38:13, 38:14, 47:13, 47:14

**PAYING** [1] - 11:3

**PEOPLE** [1] - 6:1, 6:8, 10:12, 10:17, 11:24, 13:1, 13:8, 14:10, 14:11, 18:7, 24:2, 27:13, 27:14, 38:21, 40:3, 40:14

**PERCENT** [1] - 3:25

**PERCENTAGE** [1] - 4:3, 4:5, 4:8

**PERFORM** [1] - 36:12, 36:23

**PERMISSION** [1] - 28:5

**PERSON** [1] - 15:12, 19:9, 32:3, 36:2, 43:7, 43:11

**PERSONAL** [1] - 37:9, 37:11, 37:19

**PHONE** [1] - 9:4

**PHYSICAL** [1] - 17:13

**PIECES** [1] - 29:12

**PIRATE** [1] - 18:8

**PIRATING** [1] - 18:9

**PLACE** [1] - 15:25

**PLAINTIFF** [1] - 1:4, 1:12

**PLAINTIFF** [1] - 3:14, 23:5, 25:4, 42:5, 42:8, 51:16

**PLAINTIFFS** [1] - 48:9

**PLAN** [1] - 27:13

**PLLC** [2] - 34:13, 37:23

**POINT** [1] - 14:6, 22:5, 25:25, 34:8, 40:11

**POINTED** [1] - 35:1

**POKE** [1] - 5:18

**POPULAR** [1] - 11:5, 27:1, 38:16, 39:5

**PORTIONS** [1] - 10:21

**POSSIBLE** [1] - 12:3

**POSSIBLY** [1] - 16:22, 36:18

**PRACTICES** [1] - 44:23

**PREMARKED** [1] - 39:22, 39:24

**PREMARKING** [1] - 39:25

**PRENDA** [1] - 31:21

**PRENDA** [10] - 35:11, 35:24, 36:8, 36:9,

9:7

**PAUL** [2] - 34:22, 34:25

36:10, 37:14, 37:23, 46:9, 46:12, 46:14

**PREPARE** [1] - 22:10

**PRESENT** [1] - 17:17, 27:23, 43:12

**PRESENTED** [1] - 17:3, 19:5

**PRESENTS** [1] - 25:4

**PRESIDED** [1] - 13:12

**PREVIOUSLY** [1] - 41:1

**PRINCIPALS** [1] - 34:21

**PRINT** [1] - 28:15

**PRIVILEGE** [1] - 21:11, 21:14, 21:16, 22:4, 22:6, 32:20

**PRIVILEGED** [1] - 22:1

**PROBLEM** [1] - 33:25, 40:1

**PROCEED** [1] - 3:1

**PROCEEDING** [1] - 44:23

**PROCEEDINGS** [1] - 14:16, 14:17

**PRODUCE** [1] - 51:16, 52:2

**PRODUCED** [1] - 51:15, 51:20, 51:25

**PRODUCTION** [1] - 49:12

**PROFESSIONAL** [1] - 37:9, 37:20

**PROFFER** [1] - 23:10

**PROJECTOR** [1] - 24:14

**PROOF** [1] - 23:7, 23:10

**PROPER** [1] - 23:7, 23:10

**PROPERTY** [1] - 17:23

**PROTECTED** [1] - 11:23

**PROVE** [1] - 48:22, 49:23, 49:24

**PROVED** [1] - 32:25

**PROVIDE** [1] - 18:23, 48:15, 49:5, 49:19

**PROVIDED** [1] - 9:6, 18:21, 18:24, 32:19, 45:13, 50:5

**PROVIDER** [1] - 9:10

**PURCHASE** [1] - 39:10

**PURCHASED** [1] - 28:9

**PURPOSE** [1] - 24:21, 27:8, 47:24

**PUT** [1] - 46:7

**Q**

**QUESTIONING** [1] - 22:25, 50:4

**QUESTIONS** [1] - 5:23, 15:3, 17:20, 51:8,

52:8
**QUICK**[1] - 13:5
**QUIT**[1] - 40:16

**R**

**RAISE**[1] - 3:4, 44:16
**RAJESH** - 1:6
**RAN**[1] - 7:10
**RATHER** - 38:2
**RAY**[1] - 25:23
**REACH** - 10:13
**READ**[3] - 30:4, 43:17, 43:18
**READING** - 5:14
**REAL**[2] - 6:10, 13:5
**REALLY** - 44:18
**REASON** - 5:5, 6:10, 8:6, 24:1
**REASONABLE** 13:16, 13:19
**REASONING** - 6:4
**REBUILDING** - 14:7
**RECEIVE** - 26:18, 26:21, 26:25, 27:6, 45:22, 48:8
**RECEIVED** - 28:10, 28:20, 46:13, 46:14
**RECEIVES** - 46:11
**RECENT** - 51:16
**RECESS** - 52:22, 53:2
**RECOGNIZE** - 28:23
**RECOGNIZED** - 27:18
**RECOGNIZES** - 28:24
**RECONCILE** 42:24
**RECORD** - 10:1, 34:12, 49:8, 49:24
**REDIRECT** - 15:4, 52:11
**REFERRED** 17:14, 35:22
**REFERRING** 18:11, 21:4, 26:1
**REGARD** - 7:9, 15:18
**REGARDING** - 4:22, 6:2, 6:14, 23:19, 42:1, 42:25
**REGISTERED** 34:7, 34:9, 34:11, 35:8, 35:9
**REGISTRATION** - 30:20
**REIGN** [1] - 25:16
**RELATION** - 19:11, 36:5, 41:22
**RELATIONSHIP**

16:4, 52:20
**RELATIVELY** 28:25
**RELEASED** - 52:16
**RELEVANCE** - 5:24, 12:3, 16:24, 17:1, 19:1, 23:2, 26:8, 33:21, 37:25, 40:2, 40:6
**RELEVANT** 24:25, 32:1, 32:10, 44:24
**REMEMBER** - 9:13, 9:14, 11:9, 11:14, 20:11, 20:13, 41:16, 44:6
**REPEAT** - 9:1, 18:23, 36:22
**REPORTER** [3] - 1:18, 1:18, 53:7
**REPORTER** 3:9
**REPRESENT** 35:11
**REPRESENTATIVE** 20:9, 21:20
**REPRESENTED** 10:13, 19:12, 35:17
**REPRESENTING** 41:24, 42:8
**REQUEST** - 49:22
**REQUESTED** - 5:3, 5:8, 43:16
**REQUESTED** [1] - 53:5
**REQUESTS** - 49:11, 52:2
**REQUIREMENTS** 8:2, 8:21
**RESALE** - 6:16
**RESEARCH** 47:10
**RESERVE** - 15:4
**RESIDENTS** - 47:2
**RESPONDED** - 51:14, 52:5
**RESPONSE** - 11:15, 18:14, 19:20, 47:15
**RESPONSES** - 48:15, 48:19, 48:22, 49:4, 49:19, 50:5, 50:16, 52:4
**REST** - 50:2
**RETURNED** - 9:7, 10:5
**REVIEW** - 9:22, 48:13
**RICHARD** - 1:19
**RIDE** - 48:1
**RIGHTS** - 25:7
**ROAD** - 31:14
**ROGERS** - 25:23, 27:1
**ROLE** - 36:7

**ROLES** - 19:18
**ROOM** - 14:25
**RPR** [2] - 1:18, 53:14
**RULE** - 50:10
**RUSSELL** - 1:19

**S**

**S/DEBRA** - 53:14
**SAFETY** - 52:16
**SALT** - 42:20
**SALTMARSH** 43:24, 44:1, 44:4, 44:12, 44:15, 45:12, 45:13, 45:18
**SANCTIONS** - 32:11
**SAW** [2] - 6:14, 15:25
**SCHOOL** - 32:3
**SCOPE** - 15:16
**SCREEN** - 30:25, 42:3
**SEAT** [1] - 3:8
**SECOND** - 33:6, 36:1, 49:22, 52:3
**SECRETARY** 30:19, 35:23
**SECURITY** - 29:3
**SEE** [25] - 5:18, 15:24, 19:1, 21:11, 24:8, 26:7, 29:9, 29:25, 30:16, 30:21, 30:24, 32:15, 33:20, 33:23, 33:24, 34:1, 35:4, 36:18, 37:24, 42:7, 42:18, 44:24, 46:2, 53:1
**SEEING** [1] - 5:15
**SEEM** [1] - 14:9
**SELF** - 43:15
**SELF-AUTHENTICATING** [1] - 43:15
**SELL** - 18:9
**SELLING** - 38:24, 40:4
**SEND** [1] - 30:12
**SENIOR** - 1:9
**SENT** [3] - 10:4, 12:14, 27:1
**SEPARATE** - 28:11, 29:20, 29:21, 31:20
**SERIOUS** - 6:19
**SERVED** - 19:15, 20:8, 21:20, 49:12
**SERVICE** - 7:11
**SERVICES** - 18:21, 18:24, 32:15, 32:17, 32:19, 32:22, 33:1, 41:15
**SERVING** - 22:14, 28:21

**SET** [1] - 45:9
**SETS** [1] - 52:3
**SETTLE** - 46:19, 46:20
**SETTLEMENT** 7:9
**SETTLEMENTS** 46:18, 46:23, 47:1
**SEVERAL** - 13:1, 21:12
**SHAPE** [1] - 28:25
**SHELL** - 19:3, 19:6
**SHOALS** - 1:16
**SHORTLY** - 7:7
**SHOW** [4] - 16:19, 17:19, 19:2, 23:3, 24:10, 24:12, 24:21, 24:22, 25:17, 29:5, 32:5, 36:16, 49:11, 50:14
**SHOWED** [1] - 27:18
**SHOWING** [1] - 6:4, 16:25, 31:14, 35:8, 50:5
**SHOWN** [1] - 39:11, 52:6
**SHOWS** [1] - 14:10
**SIGN** [2] - 33:17, 35:6
**SIGNATURE** - 31:7, 31:9, 32:25, 33:13, 34:25, 50:17, 50:22, 50:24
**SIGNED** [1] - 34:5, 51:1
**SIGNS** [1] - 33:1
**SINGLE** - 51:13
**SITES** [1] - 11:1
**SITUATION** - 11:21, 46:24
**SOCIAL** - 29:3
**SOFTMARSH** 41:7
**SOFTWARE** 10:21, 10:24
**SOLD** - 25:10, 25:11
**SOMEONE** [1] - 9:8, 10:22, 41:14
**SOMEWHERE** - 5:16, 50:3
**SONG** - 10:24
**SOON** [2] - 27:13, 27:14
**SOPHISTICATED** 10:21
**SORRY** - 9:1, 12:19, 13:11, 17:8, 17:16, 23:17, 33:9, 35:14, 42:15
**SORT** [1] - 5:16, 44:25, 51:19
**SOUGHT** - 32:23

**SOUND** [2] - 9:16, 20:15
**SOURCES** - 28:11
**SPECIFIC** - 8:7, 34:11
**SPECIFICALLY** 41:17, 52:3
**SPELL** - 3:8
**SPEND** [3] - 14:23, 45:25, 50:2
**SPENT** [1] - 14:21
**SPRING** - 1:19
**STAB** [1] - 42:18
**STAND** [3] - 3:2, 4:21, 28:24
**STANDARD** - 12:20
**STATE** - 30:19, 35:23, 39:2, 45:8
**STATEMENT** - 42:24, 43:21
**STATES** [3] - 1:1, 1:9, 1:18
**STATES** - 13:7, 21:3, 22:24, 42:19
**STATING** - 43:22
**STATION** - 7:13, 11:19
**STATIONS** - 7:10, 7:21, 11:20, 11:22
**STEAL** - 10:19
**STEALING** - 10:18, 24:3, 27:14, 40:15
**STEELE** [3] - 4:8, 15:12, 16:20, 31:20, 34:12, 34:16, 34:17, 34:19, 34:21, 34:23
**STEELE** [1] - 16:2, 16:22, 34:22, 35:23, 37:5, 37:22, 38:10, 38:12, 38:13, 38:14, 47:22
**STENOGRAPHIC** 53:9
**STENOTYPE/ COMPUTER** [1] - 1:21
**STENOTYPE/ COMPUTER-AIDED** [1] - 1:21
**STEVEN** - 41:19
**STEVEN** - 42:7
**STICKY** - 42:18
**STILL** - 16:21, 41:24, 51:17
**STOP** - 27:14
**STORES** - 11:2
**STREET** - 1:19, 22:7
**STRICT** - 12:17, 12:20
**SUBPOENA** - 9:6, 9:9, 9:11, 9:19, 9:22,

10:2, 10:4, 10:5
**SUBSTANTIVE** [1] -
51:14
**SUE** [5] - 7:24, 13:8,
13:16, 13:19
**SUING** [1] - 8:2
**SUITE** [1] - 1:14
**SUPPOSED** [1] -
24:18, 51:20
**SUPPOSEDLY** -
26:17, 32:6
**SUSTAIN** [1] - 22:8,
23:9, 23:20, 25:13,
44:7
**SUSTAINED** -
23:16, 23:18
**SW** [1] - 1:19
**SWORN** [1] - 3:6

**T**

**TAPES** [1] - 24:9
**TEN** [6] - 3:25, 21:2,
21:3, 27:4, 27:6,
52:18
**TENDER** [1] - 39:9
**TERM** [1] - 3:17, 41:2
**TERRACE** [1] - 1:16
**TESTIFIED** [1] - 3:6,
11:13, 11:19, 25:19,
28:2, 28:22, 40:9,
40:12, 41:1, 44:3,
44:10, 44:11
**TESTIFY** - 13:23,
13:25, 14:2, 28:19,
43:8, 44:1, 45:18
**TESTIFYING** - 7:18,
14:5
**TESTIMONY** - 6:20,
43:5, 43:7, 43:23
**THE** [79] - 1:1, 1:1,
1:9, 1:12, 3:1, 3:4,
3:8, 3:10, 3:18, 3:20,
3:21, 3:22, 4:23, 6:20,
6:22, 12:5, 12:7, 15:5,
15:17, 16:15, 16:23,
17:4, 17:14, 19:7,
20:4, 20:6, 21:15,
22:8, 23:2, 23:9,
23:20, 24:10, 24:12,
24:25, 25:13, 26:9,
27:24, 29:9, 29:14,
29:18, 29:22, 29:25,
30:4, 30:9, 30:11,
30:18, 33:22, 33:23,
33:25, 34:2, 35:21,
36:17, 39:2, 39:13,
39:16, 39:19, 40:6,
40:12, 40:16, 40:22,
43:2, 43:4, 43:17,

44:7, 44:25, 48:3,
48:20, 49:23, 50:6,
50:17, 50:21, 50:25,
51:3, 51:6, 51:22,
52:8, 52:11, 52:15,
52:20
**THEMSELVES** [1] -
17:2, 29:24
**THEORY** - 40:14
**THEREFORE** - 8:24,
9:18
**THIRD** [1] - 52:3
**THOUSANDS** - 13:3
**THREE** [4] - 16:3,
26:20
**THROUGHOUT** [1] 21:3
**TIES** [1] - 24:23
**TITLE** [1] - 36:24
**TODAY** [6] - 15:14,
15:21, 25:1, 34:23,
47:24, 51:20
**TOGETHER** - 16:8
**TOMORROW** - 52:14
**TOP** [7] - 4:14, 12:10,
33:24, 34:20, 35:4,
41:11, 47:9
**TOPIC** [2] - 32:23,
40:20
**TOTAL** - 47:8
**TOWN** [1] - 1:13,
45:11
**TRADE** - 10:21
**TRANSCRIPT** [1] -
53:5
**TRANSCRIPT** [1] 42:4,
53:8
**TRANSCRIPTION** [1]
- 1:21
**TRIED** [1] - 13:8, 51:17
**TRUE** [1] - 16:20
**TRULY** - 44:18
**TRUST** [8] - 3:21,
3:22, 40:25, 41:4,
41:5, 41:7, 41:12,
41:15, 41:16, 42:21,
42:23, 42:25, 43:23,
43:25, 44:15, 44:20,
45:4, 45:6, 45:10,
45:13, 45:15, 45:17,
45:20, 45:22, 46:4,
46:10, 46:11
**TRUST** [1] - 45:4
**TRUST** [1] - 41:6
**TRUSTEE** - 3:15,
3:18, 42:20, 44:19
**TRY** [4] - 23:4, 30:16,
51:18, 52:4
**TRYING** [1] - 13:6,
22:23, 23:3, 24:21,
30:16, 32:5, 32:8,

43:12, 48:21, 49:23,
49:25
**TWO** [7] - 8:2, 11:20,
22:7, 24:4, 25:6,
28:10, 28:11, 29:12,
29:20, 31:20, 34:19,
35:24, 38:5, 44:2,
45:13, 51:8
**TWO-WAY** [1] - 22:7
**TYPE** [3] - 36:12,
45:24, 45:25
**TYPED** [1] - 29:1

**U**

**UNBELIEVABLE** [1] -
14:9
**UNDER** [1] - 3:21, 5:7,
50:10
**UNDERSTOOD** -
24:19
**UNDESIRABLE** -
14:10
**UNIQUE** [3] - 28:17,
29:2
**UNITED** [3] - 1:1,
1:9, 1:18
**UNIVERSE** - 26:6,
26:13
**UNLESS** [1] - 7:1, 33:1
**UP** [17] - 5:9, 6:4,
7:13, 7:17, 9:4, 13:4,
13:5, 14:10, 24:14,
26:10, 30:8, 30:9,
30:12, 30:14, 45:10,
50:2, 52:4

**V**

**VALID** [1] - 12:11
**VALIDITY** [1] - 12:1,
25:3
**VALUE** [1] - 27:10,
27:11
**VARIOUS** - 5:15,
11:1, 18:9, 21:2, 31:3,
46:20
**VAST** [1] - 50:12
**VERSUS** [1] - 1:5
**VERSUS** [1] - 17:7,
20:17
**VIA** [1] - 40:15
**VIDEO** [4] - 5:16,
26:19, 27:2, 27:6
**VIDEOS** [3] - 6:15,
26:25, 27:1
**VIDEOTAPE** - 6:7
**VIOLATE** - 10:17
**VIOLATION** - 38:21

**W**

**WAIT** [1] - 53:2
**WAITING** - 36:17
**WASTING** - 48:23,
49:25
**WAYS** [2] - 5:15, 22:6
**WEBSITE** [5] - 5:14,
6:13, 6:14
**WEEK** [1] - 50:2
**WHATSOEVER** -
37:12
**WHOLE** - 32:2
**WI** [2] - 7:13, 11:23
**WI-FI** [2] - 7:13, 11:23
**WILLIAM** - 1:9
**WILLING** - 28:19,
43:16
**WINDOW** [1] - 52:24
**WITHDRAW** - 20:2,
20:5, 32:12, 52:13,
52:19
**WITHDRAWN** - 5:2,
17:11
**WITNESS** [7] - 3:10,
3:20, 3:22, 33:23,
34:2, 43:2, 48:3
**WITNESS** - 17:17,
28:22, 30:17, 39:23,
48:19, 49:25
**WORLD** - 25:16
**WORTH** - 18:6
**WORTHWHILE** -
44:10
**WRIGHT** - 20:15

**Y**

**YEARS** [3] - 16:3,
26:20
**YOU** [1] - 12:11
**YOURSELF** - 18:13,
19:11, 21:4, 25:16,
26:1, 51:25