UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| **AF HOLDINGS, LLC,**<br><br>*Plaintiff,*<br><br>*v.*<br><br>**RAJESH PATEL,**<br><br>*Defendant*. | Civil No. 2:12-cv-00262-WCO |

**SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S
<u>DECEMBER 18, 2013, ORDER TO SHOW CAUSE</u>**

AF Holdings LLC ("AF Holdings") respectfully submits this supplemental brief in response to the Court's December 18, 2013, Order to Show Cause. (Dkt. 90.)

## DISCUSSION

### I. ORDERS TO SHOW CAUSE AGAINST NAZAIRE

The Order to Show Cause raised five issues regarding Nazaire's conduct. AF Holdings responds to each issue in turn, as each issue impacts its position in these proceedings—indirectly, or otherwise.

> **1)** **Whether Nazaire violated Local Rule 3.3 by failing to properly disclose all persons, associates, firms, partnerships or corporations having either a financial interest in or other interest which could be substantially affected by the outcome of this particular case in plaintiff's Certificate of Interested Persons and Corporate Disclosure Statement.**

Nazaire did not violate Local Rule 3.3. Patel asserts that there are dozens of third-parties with a financial stake in the outcome of this case. This is not true. No one with actual knowledge of AF Holdings' corporate existence has ever testified otherwise. This includes Mark Lutz, who testified before this Court that he has sole control over AF Holdings. Lutz's testimony on this issue was subject to cross-examination before this Court. It is unrebutted by contradictory evidence.

Patel alleges that AF Holdings is, "intentionally hiding the parties with a pecuniary interest." (Dkt. 16 at 4.) He has not substantiated his allegation with evidence. Patel has had ample opportunity. This Court has presided over two show

cause hearings. Lutz has been cross-examined. Patel has filed hundreds of documents in this case. Over eighteen months have passed since Patel's Motion for an Order to Show Cause was filed.

Patel's allegation appears to rest exclusively on findings in the sanctions order issued in *Ingenuity13 LLC v. John Doe*, No. 12-cv-8333 (C.D. Cal. May 5, 2013). This order is currently under appeal. Its findings are not the proper subject of judicial notice, as this Court has previously recognized. (*See* Dkt. 45.)

The Court should not overlook Local Rule 3.3's purpose. The rule exists, "[T]o enable judges and magistrate judges of this court to evaluate possible disqualification or recusal …." *See* LR 3.3(a). Rule 3.3, thus, serves to promote judicial impartiality. Taking Patel's allegations as true—and they most certainly are not—there is no suggestion that this charged conduct implicates, in any manner whatsoever, the reason for the Rule's existence.

**2)  Whether Nazaire violated Local Rule 3.3 by failing to provide a complete list of each person serving as a lawyer in this proceeding.**

Nazaire did not violate Local Rule 3.3. As a matter of record, Nazaire was the sole attorney who represented AF Holdings during the proceedings giving rise to the Show Cause Order.

> **3)** **Whether Nazaire violated his obligations to the court under Fed. R. Civ. P. 11 and other applicable rules by failing to make a reasonable inquiry into the facts and law before filing this case and by filing motions that were not warranted by existing law and lacked factual support.**

There is a threshold procedural issue. A district court's authority under Federal Rule of Civil Procedure 11 is constrained once a case is voluntarily dismissed. Specifically, a district court may not threaten monetary sanctions on its own initiative after voluntary dismissal. *See* Fed. R. Civ. P. 11(c)(5). This case was voluntarily dismissed on March 18, 2013. (*See* Dkt. 14.) The Court's Order to Show Cause was entered six months later. Thus, the Order to Show Cause cannot give rise to monetary sanctions under Rule 11. Patel has the ability to obtain monetary sanctions under Rule 11—so long, of course, as he abides by Rule 11's safe harbor provisions. He has not done so with respect to any pending motion.

The Court continues to have the authority impose non-monetary sanctions under Rule 11. Further, it is clear that the Court has considerable concerns about these post-dismissal proceedings. For these reasons, AF Holdings addresses the substance of the Court's inquiry.

*Filing This Case*

AF Holdings' complaint alleges a prima facie claim of copyright infringement. Specifically, the complaint alleges that AF Holdings: (1) owns a valid copyright; and (2) that Patel copied a constituent element of AF Holdings'

copyright that is original. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Neither of these elements is legitimately in dispute. For the reasons stated in Section II.3, *infra*, AF Holdings is, as a matter of law, the owner of the copyright in the work, "Popular Demand," and has standing to pursue this lawsuit; the Alan Cooper controversy has no bearing whatsoever on AF Holdings' standing. Further, Patel has made no actual showing that AF Holdings' accusations against him were in any manner ill-founded.

*Filing Motions*

The Order to Show Cause references three motions filed by AF Holdings. The Court denied these motions and described them in less-than-glowing terms. AF Holdings does not seek to relitigate the Court's decision. Instead, AF Holdings offers two points—one of which is procedural and one of which is substantive. Procedurally, Rule 11 does not apply to discovery matters. *See* Fed. R. Civ. P. 11(d). Thus, Rule 11 has no application to plaintiff's second motion for protective order with motion to quash and motion to seal (Dkt. 60) and plaintiff's motion to quash (Dkt. 68).

Substantively, the core assertion in Nazaire's filings has merit. Patel's multi-year "crowd funded" post-dismissal sanctions odyssey is a flagrant abuse of process because, among other things, it is founded on an utterly frivolous accusation: specifically, the accusation that AF Holdings lacks standing to assert

5

claims for infringement of its copyright in the work, "Popular Demand." Under the plain language of the Copyright Act and Eleventh Circuit precedent, the Alan Cooper controversy has no bearing whatsoever on AF Holdings' standing, as every court to decide the issue has held. The standing issue is addressed in Section II.3, *infra*. To the extent that the Alan Cooper controversy gives rise to claims, it certainly does not give rise to any conceivable claims in Patel's favor before this Court. Patel, after all, is a separate and distinct human being from Cooper and has no standing to seek relief on Cooper's behalf.

Additionally, the core point of Nazaire's discovery motions also has merit. The vast majority of the discovery sought by Patel had nothing to do with the issue before this Court: whether AF Holdings had standing to bring its lawsuit. The standing issue comes down to two facts: was the assignment (a) written; and (b) signed by the assignor? While the point may have been obscured by the mud-slinging between counsel, it does not make the point any less valid.

**4) Whether Nazaire performed an adequate investigation into the factual contentions supporting the complaint before filing the complaint.**

AF Holdings incorporates by reference its response in Section I.3, *supra*.

    **5)**    **Whether Nazaire facilitated vexatious and frivolous litigation by maintaining a meritless suit, filing frivolous and unwarranted motions, and making frivolous and unwarranted objections to defendant's discovery requests.**

Nazaire did not maintain a meritless suit. AF Holdings, as a matter of law, had standing to bring its claims. Patel's culpability has never been litigated before this Court. Nazaire dismissed this case before Patel was required to take meaningful actions in his defense. The post-dismissal proceedings are a product of Patel's making. As for the substance of the motions filed on AF Holdings' behalf, AF Holdings incorporates by reference its response in Section I.3, *supra*.

**II.**    **ORDERS TO SHOW CAUSE AGAINST AF HOLDINGS LLC**

    **1)**    **Why plaintiff should not be sanctioned for the acts described in defendant's motion for sanctions.**

According to the Court's Order to Show Cause, Patel's "primary basis for sanctions is that [AF Holdings] lacks standing." (*See* Dkt. 90, at 4.) Patel's accusation is utterly frivolous, for the reasons stated in Section II.3, *infra*.

    **2)**    **Why plaintiff should not be sanctioned for filing frivolous motions and making frivolous objections to discovery requests.**

AF Holdings incorporates by reference its arguments presented in Section I.3, *supra*.

> 3) **Whether plaintiff committed a fraud on the court by initiating a lawsuit that it lacked standing to bring.**

Patel's accusation that AF Holdings lacked standing to bring its lawsuit is utterly frivolous.

> a. **The formal elements of copyright assignment are a <u>writing</u> signed by the <u>copyright owner</u>**

Transfer of copyright ownership requires a <u>writing</u> signed by the <u>copyright owner</u> which memorializes the rights conveyed. *See* 17 U.S.C. § 204(a). *See also Imperial Residential Design v. Palms Development*, 70 F.3d 96, 99 (11th Cir. 1995) (citing 17 U.S.C. § 204); *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir 1990) ("The rule is really quite simple: if the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Charta; a one-line pro forma statement will do.")

Nothing in § 204(a) requires an assignee to execute a transfer of copyright ownership. *Capital Concepts, Inc. v. Mountain Corp.*, Civil No. 3:11-CV-00036, 2012 WL 6761880, at *8 (W.D. Va. Dec. 30, 2012) ("Section 204(a) of the Copyright Act imposes no requirement that the recipient of the rights to the copyright also sign the agreement, or even that the agreement identifies the assignee."); *Johnson v. Tuff-n-Rumble Mgmt., Inc.*, No. CIV.A.99-1374, 2000 WL 1145748, at *7 (E.D. La. Aug. 2000) ("[S]ection 204(a) does not expressly require

that the transferee of the copyright interests sign the instrument of conveyance . . . ."). See generally 2 William F. Patry, Patry on Copyright § 5:47 (2014) ("Unlike Section 204(a), which requires, in the case of conveyances between strangers, that only the transferor sign the document assigning rights, Section 201(b) requires both the employer and the employee to sign an agreement transferring rights in the work made for hire to the employee . . . .").

### b. Neither of these elements is disputed

The assignment at issue in this case satisfies the formal requirements of copyright transfer. It was written and it was signed by the copyright owner. (*See* Dkt. 1-2.) Neither of these elements is even in dispute. (*See* Dkt. 16) (attacking Alan Cooper's signature, but not mentioning Raymond Rogers' signature.) Nor could they be. Raymond Rogers signed an affidavit affirming his signature and his intention to transfer the copyright in the work, "Popular Demand," to AF Holdings. (*See* Rogers Affidavit, Dkt. 127-1.)

### c. The Alan Cooper controversy is a personal dispute that does bear on any issue before this Court

The Alan Cooper controversy boils down to a personal dispute between Cooper and a third-party attorney, John Steele. Apparently, Mr. Steele evicted Cooper from his land after Cooper started engaging in erratic behavior. Shortly thereafter, Cooper decided to "repudiate" his signature and sued Steele for identity theft. While such attorneys as Patel's counsel have made repeated efforts to

bootstrap Cooper's repudiation into an attack on AF Holdings' standing, none have succeeded.

This is because Cooper's signature is utterly irrelevant to the mechanics of copyright transfer, and thus AF Holdings' standing. *See* 17 U.S.C. § 204(a); *cf. Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 601 (4th Cir. 2013) ("Courts have held that, in situations where 'the copyright [author] appears to have no dispute with its [assignee] on this matter, it would be anomalous to permit a third party infringer to invoke [Section 204(a)'s signed writing requirement] against the [assignee].'" (alterations in original)); *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1157 (9th Cir. 2010) ("When there is no dispute between the copyright owner and transferee, it would be unusual and unwarranted to permit a third-party infringer to invoke § 204(a) to avoid suit for copyright infringement." (internal quotation marks omitted)).

**4)     Whether issue preclusion bars plaintiff from litigating its standing to assert claims based on the Popular Demand copyright.**

No federal court has ever held that AF Holdings lacks standing to assert claims based on its copyright in the work "Popular Demand." For this reason, issue preclusion cannot possibly bar AF Holdings from asserting claims based on the Popular Demand copyright.

**III. OTHER MATTERS**

To the extent the Court believes that sanctions against AF Holdings are warranted, AF Holdings would ask the Court to consider the following mitigating factors. First, Patel has suffered minimal harm, if any, as a result of the issues identified in the Court's Order to Show Cause. As other filings in this case have made clear, and as the Court expressly noted in the Order to Show Cause, this case has been "crowd-funded." In other words, Patel has not come out-of-pocket for any costs or fees in these proceedings. These costs and fees have been paid by third-parties. Leaving aside concerns of champterty, barratry and bright-line violations of Georgia's Rules of Professional Conduct, the third-party funding has minimized any harm Patel could conceivably claim.

Second, the discovery issues giving rise to some of the Court's sharpest criticisms are at least in part a product of Patel's own making. By way of example, the Court criticized Lutz for not attending a properly noticed deposition. Yet, Patel substantially contributed to the confusion regarding this deposition by filing a "Motion for a Ruling on the Proper Method to Compel the Attendance of Mark Lutz for a Deposition." (*See* Dkt. 44.) Thus, at the time of the noticed deposition, it was not clear (even to Patel) that the Lutz deposition was properly noticed.

Third, it cannot be overemphasized that the core allegation giving rise to these post-dismissal proceedings is utterly frivolous. Patel has never had a good

11

faith basis for accusing AF Holdings of lacking standing. Thus AF Holdings has been exposed to a multi-year sanctions odyssey that is premised on an accusation that is directly contrary to the plain language of the Copyright Act and Eleventh Circuit precedent.

Finally, Patel's counsel's extortionate settlement demands, reaching as high as $90,000, are not only wildly improper, but are inconsistent with Patel's counsel's prior representations to the Court. For example, at the August 19, 2013 Show Cause Hearing, Patel's counsel stated, "Personally, I'd like to be done with the case so I'm not going to sit here and try to gain 10s of thousands of dollars in attorney's fees, and I don't think that would be likely anyhow." (*See* Tr. of Aug. 19, 2013 hearing, at p. 23:19–21.) Meanwhile, Patel's counsel has since made every effort to extend these proceedings and has demanded $90,000 to shut this case down. The Court may consider Patel's counsels conduct when it considers what, if any, sanction to impose.

Finally, the Court should not overlook Patel's total failure to substantiate any of his allegations with admissible evidence.

## CONCLUSION

For the reasons stated herein, the Court should not sanction Nazaire or AF Holdings.

November 20, 2014                    AF HOLDINGS, LLC Plaintiff

                                                By:   s/ Paul Duffy
                                                           One of its attorneys
                                                           Paul A. Duffy, Esq.
                                                           Duffy Law Group
                                                           321 N. Clark Street
                                                           5th Floor
                                                           Chicago, IL 60654
                                                           312-952-6136