IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

AF HOLDINGS, LLC,                    :
                                     :
      Plaintiff,                     :
                                     :      CIVIL ACTION
v.                                   :      NO. 2:12-cv-00262-WCO
                                     :
RAJESH PATEL,                        :
                                     :
      Defendant.                     :

**<u>ORDER</u>**

This comedy of errors–sometimes inaccurately described as litigation–was about whether defendant committed copyright infringement by downloading a file through a peer-to-peer sharing system. That initial complaint, however, has long since been resolved.  The action remained open to assess whether plaintiff committed sanctionable activity by filing and maintaining this lawsuit.  Defendant accused plaintiff of committing the equivalent of judicial extortion by filing meritless suits based on a fraudulent assignment agreement with little or no evidence to support its allegations of infringement.  Plaintiff claimed defendant's post-judgment motions were the only shakedown relevant to this case.

Unfortunately, the parties proved incapable of conducting efficient and effective litigation in federal court.  The parties' inability to resolve even the most routine

issues in this litigation placed the court in a quandary.  On one hand, it is readily apparent that plaintiff's behavior during this proceeding significantly deviates from what this court deems to be acceptable conduct during the course of litigation. Moreover, the court had–and still has–serious concerns about the extent of plaintiff's fraudulent conduct.  On the other, defendant's attempts to establish sanctionable conduct were generally procedurally defective and short of proving either the truth or falsity of the asserted sanctionable conduct.  Later salvos of sanctions motions were neither dispositive nor instructive.

After much thought, the court concludes that plaintiff ought to be sanctioned and that defendant should be entitled to recover some of his incurred attorney's fees. Defendant, however, does not have an absolute right to recover attorney's fees.  The amount will be drastically decreased to account for defendant's failure to litigate this case in an economically efficient manner.  Defendant's attorney secured the ideal result for his client: his appearance in the case led to plaintiff's dismissing, with prejudice, the claims levied against his client.  The entirety of the litigation past that point, however, inured no additional benefit to defendant.  Instead, defendant's counsel created an ouroboros–generating attorney's fees for attempts to recover attorney's fees.

Further litigation on this matter will not shed any more light on the scope and extent of plaintiff's potentially uncouth actions.   The court will not authorize additional discovery and will leave the task of untangling the relationship between plaintiff, various nonparty principals, and related entities to another case.   As defendant emphasized *ad nauseam*, plaintiff is involved in other sanctions proceedings across the United States.   Those proceedings, perhaps, may lead to clarity, but the court is confident that additional litigation in this case will not.

## I. Procedural History and Broader Context

On November 2, 2012, plaintiff filed a copyright infringement claim against defendant [1].  The complaint alleges that defendant used BitTorrent–a file sharing program–to illegally download a pornographic video titled "Popular Demand." (Compl. 1-2, ECF No. 1).  Defendant failed to appear and defaulted, and plaintiff dutifully filed a motion for clerk's entry of default [11].  It was at this point that the case went from a relatively routine proceeding into something considerably more unsettling.

Shortly after plaintiff filed its motion for a default judgment, defendant appeared and filed a motion to set aside his default [13].  Defendant claimed that plaintiff was part of an enterprise that used copyright law as a means of judicial

extortion.  The enterprise's strategy was to apply the worst of "non-practicing entity"

patent litigation tactics to copyright claims.

The principals behind the scheme would create a shell entity, purchase

worthless copyrights to pornographic films, and initiate numerous "John Doe"

copyright infringement lawsuits.  The Court of Appeals for the District of Columbia

Circuit succinctly described the principals' litigation strategy:

> These suits took advantage of judicial discovery procedures in order to identify persons who might possibly have downloaded certain pornographic films. Such individuals, although generally able to use the Internet anonymously, are, like all Internet users, linked to particular Internet Protocol (IP) addresses, a series of numbers assigned to each Internet service subscriber. Internet service providers . . . can use IP addresses to identify these underlying subscribers, but not necessarily the individuals actually accessing the Internet through the subscribers' connections at any given time. Confronted with these realities, Prenda Law's general approach was to identify certain unknown persons whose IP addresses were used to download pornographic films, sue them in gigantic multi-defendant suits that minimized filing fees, discover the identities of the persons to whom these IP address [sic] were assigned by serving subpoenas on the Internet service providers to which the addresses pertained, then negotiate settlements with the underlying subscribers–a "strategy [that] was highly successful because of statutory-copyright damages, the pornographic subject matter, and the high cost of litigation."

*AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 992-93 (D.C. Cir. 2014) (citations

and internal quotation marks omitted).

Defendant asserted that plaintiff lacked the ability to maintain a lawsuit based

on the copyright in this case because several non-party principals, a still-unknown

mixture of counsel and client, forged the signature of the purported assignee to obscure the relationship between themselves and the copyright holding entity.  (*See* Mot. Lift Default 4-7, ECF No. 13).  Plaintiff was not the original copyright holder; it purchased Popular Demand from Heartbreaker Digital LLC.  (*See* Compl. Ex. B, ECF No. 1-2).  An individual named Alan Cooper signed the assignment agreement on plaintiff's behalf, and defendants in other actions claimed that Prenda Law principals forged Cooper's signature.  (*Id.*).  At the time of filing, other courts were exploring whether plaintiff and related entities should be sanctioned for filing and prosecuting cases based on the "Popular Demand" copyright.  (*See id.* at 4-6).

Plaintiff's response to defendant's motion was to dismiss the action with prejudice [14].  This appears to be the default response when a litigant actually appears.  *See AF Holdings, LLC v. Does 1-1058*, 752 F.3d at 993 (citing *Ingenuity 13 LLC v. John Doe*, 2013 U.S. Dist. LEXIS 64564, 2013 WL 1898633, at *6-7 (C.D. Cal. May 6, 2013) ("If an identified defendant sought to actually litigate, Prenda Law would simply dismiss the case.")).

Soon after plaintiff dismissed its claims, defendant filed a motion for sanctions [16].  The motion is wide-ranging and often veers into conspiratorial asides.  In short, defendant characterizes plaintiff as a vehicle for extracting nuisance payments from defendants in copyright lawsuits.  Plaintiff was one of many entities used by the

attorneys of Prenda Law as a sort of placeholder client. The LLC, a citizen of St. Kitts and Nevis, would ostensibly purchase the copyrights to various pornographic films. After buying the rights to the film, plaintiff would monitor peer-to-peer file sharing sites–primarily BitTorrent–and obtain the IP addresses of infringing parties. Plaintiff would subsequently subpoena internet service providers to link an infringing IP address with a person. IP address in hand, plaintiff would initiate suit and attempt to settle the case. If the case did not settle, the suit would be dismissed.

The court, understandably alarmed at the allegations levied in defendant's motion for sanctions, held a hearing on defendant's motion [16] and authorized a two-month discovery period. (*See* Minutes, ECF Nos. 39).

Post-judgment discovery proceedings quickly devolved. Defendant was categorically incapable of limiting himself to the case at hand. He routinely filed copies of orders or motions in other cases addressing potential sanctions against plaintiff. (*See, e.g.*, ECF Nos. 26-29, 31, 33, 37, 38, 73). What defendant did not appear to grasp is that requesting judicial notice of filings in other cases *did not* establish any fact in this litigation other than the fact that the documents were filed. (*See* Order 8, ECF No. 45) (recognizing that "it is entirely improper to take judicial notice of testimony filed in another court" because the documents "often present

6

conflicting accounts of the same facts, making them subject to dispute and thus improper subjects of judicial notice").

Plaintiff made matters worse.  Its filings were often inflammatory and nonsensical–full of personal attacks and completely non-responsive to defendant's assertions.  Defendant's requests for various forms of discovery [41-43, 54-59] were met with vociferous protests and multiple protective motions.  The court does not believe that plaintiff produced a single document in response to a discovery request.  Plaintiff's intransigence begat new rounds of motions for sanctions, and the litigation degenerated into a back and forth free-for-all.

In September 2013, the court enjoined the parties from filing any motion of any kind without the court's prior approval.  (*See* Order, ECF No. 82).  The preceding week convinced the court that the litigation had devolved into a personal spat and that further briefing on the issues would not meaningfully advance the litigation.  The parties validated the court's concern by filing numerous "notices" requesting court action in what this court views as attempts by both parties to file motions without receiving leave from the court.

Soon afterwards, the court entered an order directing the parties to show cause why they should not be sanctioned for their conduct during the litigation [90].  The court held two hearings on the issues presented in the show cause order, and neither

was a productive use of time.  Defendant was chronically unable to establish the rudimentary facts necessary to enable a more expansive inquiry into plaintiff's activity, and plaintiff appeared content to let defendant continue his snipe hunt or helpfully point him in the wrong direction.

After the second show cause hearing and much thought, the court has determined that plaintiff should be sanctioned for its conduct in this case and that further inquiry into plaintiff's conduct is an ill-advised venture.  All things, even this litigation, must come to an end.

## II. Overview of the Sanctions Order

The court will begin by analyzing whether plaintiff should be estopped from contesting certain facts based on findings of fact made in another case.  After consideration, the court finds that issue preclusion is appropriate.  With these crucial facts established, the court will examine whether plaintiff should be sanctioned for filing this case.  Next, the court will assess whether the conduct during this case is sufficiently egregious to form a separate basis for sanctions.  Finally, the court concludes by imposing sanctions.

## III. Issue Preclusion Bars Plaintiff From Contesting Findings Made Related to Fraudulent Activity

Approximately two months before defendant filed his motion for sanctions, the United States District Court for the Central District of California confronted the same

issues raised by defendant's motion for sanctions in *Ingenuity 13 LLC v. John Doe*. *See* 2013 U.S. Dist. LEXIS 17693, 2013 WL 765102 (C.D. Cal. Feb. 7, 2013). The California court ordered plaintiff and other parties to appear and show cause why they should not be sanctioned for, among other things, filing a lawsuit asserting claims that they lacked standing to bring. *Id.* at *4-7.

The California court believed that plaintiff AF Holdings and other shell entities may have defrauded the court when the principals operating them misappropriated the identity of Alan Cooper and improperly executed the copyright assignment agreement by forging his signature. *See id.* at *6. The California court pointed out that these allegations, if true, would have serious repercussions. First, if the assignment agreement were invalid, plaintiff may lack standing to bring claims based on the Popular Demand copyright. *Id.* Second, plaintiff's conduct could be considered vexatious because the cases would have been filed for a "facially improper purpose." *Id.* Third, the California court, like this one, views the usurpation of the court's authority for an unlawful purpose in a very poor light. *Id.*

The California court consolidated several related cases and held a show cause hearing to investigate the allegations of fraud and misconduct. *Id.* After reviewing oral and written testimony from the parties, the court issued an order imposing

sanctions against plaintiff and other parties.[1]  *Ingenuity 13 LLC v. John Doe*, 2013 U.S. Dist. LEXIS 64564, 2013 WL 1898633, at *1 (C.D. Cal. May 6, 2013).  As part of its order imposing sanctions, the court made the following findings of fact:

> 1. Steele, Hansmeier, and Duffy ("Principals") are attorneys with shattered law practices. Seeking easy money, they conspired to operate this enterprise and formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for the sole purpose of litigating copyright-infringement lawsuits. They created these entities to shield the Principals from potential liability and to give an appearance of legitimacy.

> 2. AF Holdings . . . [has] no assets other than several copyrights to pornographic movies. There are no official owners or officers for [this entity], but the Principals are the de facto owners and officers.

> 3. The Principals started their copyright-enforcement crusade in about 2010, through Prenda Law, which was also owned and controlled by the Principals. Their litigation strategy consisted of monitoring BitTorrent download activity of their copyrighted pornographic movies, recording IP addresses of the computers downloading the movies, filing suit in federal court to subpoena Internet Service Providers ("ISPs") for the identity of the subscribers to these IP addresses, and sending cease-and-desist letters to the subscribers, offering to settle each copyright infringement claim for about $4,000.

> 4. This nationwide strategy was highly successful because of statutory copyright damages, the pornographic subject matter, and the high cost of litigation. Most defendants settled with the Principals, resulting in proceeds of millions of dollars due to the numerosity of defendants. These settlement funds resided in the Principals' accounts and not in

---

[1] The district court imposed sanctions against AF Holdings, LLC (the plaintiff in this case), Ingenuity 13 LLC, Prenda Law, and various members of the preceding organizations. *See Ingenuity 13 LLC v. John Doe*, 2013 U.S. Dist. LEXIS 64564, 2013 WL 1898633, at *1 n.1 (C.D. Cal. May 6, 2013).

accounts belonging to AF Holdings . . . . No taxes have been paid on this income.

5. For defendants that refused to settle, the Principals engaged in vexatious litigation designed to coerce settlement. These lawsuits were filed using boilerplate complaints based on a modicum of evidence, calculated to maximize settlement profits by minimizing costs and effort.

6. The Principals have shown little desire to proceed in these lawsuits when faced with a determined defendant. Instead of litigating, they dismiss the case. . . .

8. The Principals maintained full control over the entire copyright-litigation operation. The Principals dictated the strategy to employ in each case, ordered their hired lawyers and witnesses to provide disinformation about the cases and the nature of their operation, and possessed all financial interests in the outcome of each case.

9. The Principals stole the identity of Alan Cooper (of 2170 Highway 47 North Isle, MN 56342). The Principals fraudulently signed the copyright assignment for "Popular Demand" using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings. Alan Cooper is not an officer of AF Holdings and has no affiliation with Plaintiffs other than his employment as a groundskeeper for Steele. There is no other person named Alan Cooper related to AF Holdings. . . .

11. Plaintiffs have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared. Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies. But this deception was calculated so that the Court would grant Plaintiffs' early-discovery requests, thereby allowing Plaintiffs to identify defendants and exact settlement proceeds from them. With these granted requests, Plaintiffs borrow the authority of the Court to pressure settlement.

*Id.* at \*2.

After defendant asked the court to investigate the same conduct by the same plaintiff involving the same copyright, the court ordered plaintiff to show cause why the California court's findings did not preclude it from contesting the invalidity of the copyright assignment agreement and, necessarily, whether fraudulent activity occurred.  (*See* Order 20, ECF No. 90).

The court concludes that plaintiff is barred from relitigating the findings of fact listed above.

## IV. The Doctrine of Issue Preclusion

"Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit."  *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003) (quoting *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986) (internal quotation marks omitted)).  One subspecies of issue preclusion is offensive nonmutual issue preclusion.  This doctrine allows a party to prevent an opposing party from relitigating an issue decided in an earlier case in which the moving party was not involved.  *See Demaree v. Fulton Cnty. Sch. Dist.*, 515 F. App'x 859, 863 (11th Cir. 2013).  Generally, issue preclusion must meet four requirements: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior

litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *CSX Transp., Inc.*, 327 F.3d at 1317 (quoting *I.A. Durbin, Inc.*, 793 F.2d at 1549).[2] Offensive nonmutual issue preclusion is subject to two additional conditions: a court should not allow the application of the doctrine when (5) the party requesting preclusion stayed out of the prior case to avoid the risk of an adverse ruling or (6) if it would be unfair to the party opposing preclusion. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-31 (1979).

Issue preclusion is appropriate. First, the issues in the California court's order are identical to the issues in this case. As set forth in this court's show cause order, the court's primary concern is whether plaintiff had standing to bring suits based on the Popular Demand copyright. The California court faced, and answered, the same questions presented by defendant's motion for sanctions. The California court found that plaintiff's assignment agreement was valid because "a recipient of a copyright

---

[2] Federal preclusion principles govern. When a federal court examines the preclusive effect of a prior federal judgment, based on diversity or federal question jurisdiction, it must apply federal common law. *See CSX Transp., Inc.*, 327 F.3d at 1316.

More specifically, the court applies the Eleventh Circuit's interpretation of federal issue preclusion law. *See Goodin v. Fidelity Nat'l Title Ins. Co.*, 491 F. App'x 139, 142-43 (11th Cir. 2012) (using Eleventh Circuit law to determine the preclusive effect of a federal court's judgment in the Ninth Circuit).

assignment need not sign the [assignment agreement]" but that "a forgery is still a forgery" and "trying to pass that forged document by the Court smacks of fraud." *See Ingenuity 13 LLC*, 2013 WL 1898633, at *4-6. Therefore, the issues confronted and determined by the California court are identical to the issues presented in this case.

Second, the issues were actually litigated in the prior case. This circuit has repeatedly cited with approval the Restatement's formulation that "[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated." *See Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. D (1982)). The California court's show cause order specifically states that the parties should explain why they should not be sanctioned for "perpetrating fraud on the Court by misappropriating the identity of Alan Cooper and filing lawsuits based on an invalid copyright assignment." *Ingenuity 13 LLC*, 2013 WL 765102, at *7.[3] The parties presented both oral and written testimony on this aspect of the court's show cause order, and a significant portion of the hearing was dedicated to questions surrounding the assignment agreement. *See generally Ingenuity 13 LLC*, 2013 WL 1898633, at *4-6. Ultimately, the California court determined that plaintiff and others

_____

[3] Initially, AF Holdings was not ordered to respond to the district court's show cause order. However, the district court expanded its show cause order prior to the show cause hearing to include AF Holdings. *See Ingenuity 13 LLC*, 2013 WL 1898633, at *1 (ordering AF Holdings LLC to appear at the show cause hearing).

"stole the identity of Alan Cooper" and "fraudulently signed" the copyright assignment agreement for Popular Demand. *Id.* at *6. Therefore, the issues were actually litigated in the prior case.

Third, the determination of the issues was a critical and necessary part of the judgment in the California action. *See Christo*, 223 F.3d at 1339. "If a judgment does not depend on a given determination, relitigation of that determination is not precluded . . . . A determination ranks as necessary or essential only when the final outcome hinges on it." *Bobby v. Bies*, 556 U.S. 825, 834, 835 (2009).

The validity of the Popular Demand assignment agreement and plaintiff's misappropriation of Alan Cooper's identity were critical and necessary parts of the judgment. The California court based its imposition of sanctions on plaintiff's "brazen misconduct and relentless fraud." *Ingenuity 13 LLC*, 2013 WL 1898633, at *5. Although the court undoubtedly factored in other bad faith conduct, like the sanctioned parties' failure to obey a discovery order, the presence of additional misconduct does not diminish the importance of the California court's findings that plaintiff and others misappropriated Alan Cooper's identity and submitted a fraudulent assignment agreement to the court.

Fourth, plaintiff had a full and fair opportunity to litigate the issues in the earlier proceeding. Plaintiff became a party in the earlier proceeding after the California

court consolidated several related cases.  *See Ingenuity 13 LLC*, 2013 WL 765102, at

*1 n.1.  The California court ordered plaintiff to appear and show cause why it should

not be sanctioned under Rule 11 and/or the court's inherent authority.  *Ingenuity 13*

*LLC*, 2013 WL 1898633, at *3.  No representative for plaintiff appeared at the court's

show cause hearing.   Nonetheless, the fact that plaintiff declined to appear at the

hearing does not mean plaintiff lacked an opportunity to litigate the disputed issues.

*See In re Corey*, 583 F.3d 1249, 1253 (10th Cir. 2009) (upholding the application of

issue preclusion to a default judgment imposed as a sanction and finding that "[t]he

policies underlying issue preclusion are best served by precluding [the litigant] from

contesting . . . that he committed fraud").   Therefore, plaintiff had a full and fair

opportunity to litigate the issues in the earlier proceeding.

Fifth, defendant did not stay out of the earlier proceeding to avoid an adverse

ruling.  The California court issued its show cause order before defendant appeared

in this case, and the show cause hearing took place on March 11, 2013, ten days after

defendant's attorney filed his notice of appearance.  (Notice Appearance, ECF No.

12); *see also Ingenuity 13*, 2013 WL 765102, at *1 (scheduling the show cause

hearing for March 11, 2013).   Defendant did not abstain from the California

proceeding to avoid an adverse ruling because he did not begin to litigate this issue

until after the California court took the matter under advisement.

Sixth, adopting the district court's findings is fair. The application of issue preclusion in this case would prevent unnecessary relitigation, and there are no countervailing policy considerations that counsel otherwise. *See, e.g.*, *AF Holdings, LLC v. Navasca*, 2013 WL 5701104, at *1, 12-16 (N.D. Cal. Oct. 16, 2013) (adopting a magistrate judge's report and recommendation applying issue preclusion and proposing sanctions). Therefore, plaintiff is precluded from relitigating the California court's findings of facts listed above.

This finding does not end this litigation as much as provide the factual predicate necessary to determine whether sanctions are appropriate.

## V. The Court's Authority to Impose Sanctions

The Federal Rules of Civil Procedure supply a district court with "ample tools to deal with a recalcitrant litigant." *Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993); *see also Friends of Animals, Inc. v. U.S. Surgical Corp.*, 131 F.3d 322, 334 (2d Cir. 1997) ("A district court has broad power to impose Rule 37(b) sanctions in response to abusive litigation practices.") (citation omitted). These Rules allow a court to rectify actual harm to a litigant, as well as "allow for sanctions for a [party's] failure to maintain and preserve the sanctity of the court and to respect its rules." *Action Marine, Inc. v. Cont'l Carbon Co.*, 243 F.R.D. 670, 679 (M.D. Ala. 2007).

17

The court's ability to impose sanctions is not limited to relief requested in pending motions. Courts are imbued with the inherent authority and power to control litigants and counsel. *Id.* Although a court's inherent power to sanction should be exercised in a cautious and judicious manner, this discretionary power may be invoked when the parties engage in bad-faith conduct. *Id.* Accordingly, the court will supplement the parties' requests for sanctions with the court's own prophylactic where appropriate.

And where "counsel clearly should have understood his duty to the court the full range of sanctions may be marshalled. Indeed, in this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where . . . they are clearly warranted." *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979).

## VI. Sanctions

### A. Standing

Defendant claims that plaintiff should be sanctioned for forging Alan Cooper's signature on the assignment agreement. Plaintiff claims that a valid copyright assignment requires only the signature of the assignor and that it had standing to bring this suit. *See* 17 U.S.C. § 204(a).

Plaintiff is correct.  Nothing in § 204(a) requires an assignee to execute a transfer of copyright ownership.  *See AF Holdings LLC v. Doe*, 2014 WL 128575, at *4 (D. Minn. March 31, 2014) (citation omitted).  Nonetheless, "a forgery is still a forgery," and submitting a forged document to the court–even if the forgery does not affect the validity of the transfer–still constitutes sanctionable conduct.  *See Ingenuity 13 LLC*, 2013 WL 1898633, at *4.

The court has the power to sanction plaintiff under the court's inherent authority to prevent misrepresentations and bad-faith conduct.  A finding of bad faith is warranted where a party knowingly or recklessly raises a frivolous argument or delays or disrupts the litigation.  *See Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985).  Unlike Rule 11 or Rule 37 sanctions, a sanction imposed under the court's inherent authority hinges on "the conduct and motive of a party, rather than on the validity of the case."  *Rothenberg v. Sec. Mgmt. Co.*, 736 F.3d 1470, 1472 (11th Cir. 1984).

Based on the above findings, the court finds that plaintiff must be sanctioned for presenting a forged agreement to the court in order to obscure the relationship between Prenda Law, AF Holdings, and the principals who controlled the preceding organizations.  Incontestable facts demonstrate that plaintiff and its controlling principals leveraged the court's authority in order to extract nuisance settlements and

19

initiated litigation only as a means to pressure defendants into a quick settlement. Plaintiff and others deliberately obfuscated the relationship between copyright-holding entities and their managing members in an attempt to shield their racket from court scrutiny.

## B. Failure to Provide Adequate Discovery Responses

After the court enjoined the parties from filing motions without court authorization, defendant filed a motion for leave to file several motions for sanctions based on plaintiff's responses to defendant's discovery requests [84]. The motion for leave to file contains plaintiff's responses–but not defendant's corresponding requests.[4]

The flaws in plaintiff's responses are readily apparent even without the original questions. Plaintiff's objections to twenty one of defendant's first request for admissions are that the documents are "possibly protected by attorney client privilege." (ECF Nos. 84-1, 60-1.) Plaintiff's sole objection to fifty three of defendant's second request for admissions is vagueness. (ECF No. 84-4.) Plaintiff's objections to vagueness include a number of very clear questions.[5] For the third set,

_____

[4] The court assumes that the discovery requests are identical to the ones attached as exhibits to plaintiff's second motion for a protective order [60].

[5] Plaintiff objected to the following admissions as vague: (2) Admit that technical reports regarding the detection of the alleged download in this action were not provided to counsel for Plaintiff in this case prior to filing; (3) Admit that Plaintiff sent Defendant a letter discussing

a whopping seventy eight of ninety eight requests are "objected to under FRE 1002." (ECF No. 84-4.)  Apparently, plaintiff and plaintiff's counsel do not understand the difference between authenticity, admissibility, and the best evidence rule and that requests for admission are commonly used to authenticate documents. *Compare* FED. R. EVID. 901-02 *with* FED. R. EVID. 1001-07; *see* FED. R. CIV. P. 36(a)(1); *JZ Buckingham Investments LLC v. United States*, 77 Fed. Cl. 37, 45 (Fed. Cl. 2007) ("[T]he propounding party can indeed request admission as to the genuineness or authenticity of documents.").  The entirety of plaintiff's responses to defendant's discovery requests yields not a single substantive response.  *Cf. SEC v. Happ*, 295 F. Supp. 2d 189, 190-94 (D. Mass. 2003) (imposing sanctions when party refused to stipulate or admit authenticity despite "no reasonable ground to believe" the objections were valid).

Rather than examine the alleged discovery violations as a separate basis for sanctions, the court has factored plaintiff's failure to provide satisfactory discovery responses in determining the amount of reasonable attorney's fees that defendant is entitled to recover and as supplemental support for the findings of fact made by the California court.

---

settlement prior to the filing of this action; (6) Admit that an IP address can be "spoofed" or faked; (8) Admit that Defendant is seeking attorneys' fees in this action; (50) Admit that Prenda or its agents or employees provided services in connection with this action.  (ECF No. 84-4).

## VII. Amount of Sanction Imposed Against Plaintiff

Defendant is entitled to recoup some of his accrued attorney's fees. Rather than require defendant to submit billing records, the court will enter a sanction amount commensurate with what it considers to be appropriate. The vast majority of the work performed on this case was simply unnecessary; the court is confident that its fee award amounts to no more than a fraction of what defendant would seek to recover for his time expended on this matter.

The court determines what constitutes a reasonable sanction by applying the lodestar approach. *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1195-96 (11th Cir. 2002). District courts may award reasonable fees without an evidentiary hearing or additional pleadings as long as the court's order awarding attorney's fees articulates "the decisions it made, give[s] principled reasons for those decisions, and show[s] its calculation." *Id.* at 1196 (quoting *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1301, 05-06 (11th Cir. 1988)).

The first step in the computation of a reasonable fee is determining a reasonable hourly rate. *Girard L. McEntee Ins. Agency, Inc. v. Valley Nat'l Bank*, 2006 WL 1097839, at *6 (N.D. Ga. April 21, 2006). Defendant claims an hourly rate of $200 per hour. The court has considered the *Johnson* factors and its familiarity with appropriate rates in the Gainesville legal community and finds defendant's requested

hourly rate to be a reasonable rate.  *See, e.g.*, *Ayers v. Harrison*, 2014 WL 2712297, at *1-2 (N.D. Ga. June 13, 2014) (determining that hourly rates ranging from $200 to $400 fell within the prevailing market rate in the Gainesville legal community).

Next, the court turns to the amount of hours reasonably expended.  A sanction may not include "excessive, redundant or otherwise unnecessary hours" and time spent upon "discrete and unsuccessful claims."  *Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996) (quoting *Norman*, 836 F.2d at 1301).  The court has no obligation to reward excessive or unnecessary litigation.

After a detailed review of the prosecution of this case, the court is pressed to find time well spent.  Defendant's counsel is entitled to time spent as part of the prefiling investigation and filing his initial motion for sanctions.  These actions inured a clear and significant benefit to his client; the filing almost certainly led plaintiff to dismiss its claims with prejudice.  The court finds that twenty hours represents a reasonable period of time for the work preceding plaintiff's notice of voluntary dismissal.

The bulk of defendant's other filings, however, were entirely unnecessary. Defendant's flurry of notices was neither helpful nor productive.  (*See, e.g.*, Notices, ECF Nos. 17, 18, 27, 28, 33, 37, 38, 49, 69, 70, 71, 77, 96, 97, 104, 108, 114, 127, 128, 129).  His expenses incurred in coordinating his own bankruptcy and this case

shall not be shifted to plaintiff, and fees based on his misapprehension or lack of comprehension of this court's orders and the Federal Rules are similarly excluded. *See Popham v. City of Kennesaw*, 802 F.2d 1570, 1578-79 (11th Cir. 1987) (holding that the court has the authority to reduce requested sanctions "if it believes [the requested amount] is excessive in relation to the [party's] relief"); *see also Sussman v. Salem, Saxon, and Nielsen, P.A.*, 152 F.R.D. 648, 653 (M.D. Fla. 1994) (recognizing that courts should exclude from consideration any hours "not reasonably expended" and that "hours that are 'not properly billed to one's client also are not properly billed to one's adversary'" (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980))).

The court will add an additional twenty hours of time for defendant's time spent preparing for and appearing at the initial hearing on this matter and responding to plaintiff's motions for sanctions, which yields $8,000 reached by multiplying forty hours at defendant's rate of $200 per hour. Beyond that, the court believes additional remuneration would reimburse defendant for creating problems.

## VIII. Sanctions: Failure to Appear at a Properly Noticed Deposition

Plaintiff and plaintiff's counsel, Mr. Jacques Nazaire, shall be sanctioned for failing to appear at a properly noticed deposition.

24

In July 2014, defendant filed a notice of deposition for Mark Lutz, the variously described "managing member" or CEO of AF Holdings. Plaintiff did not file a motion for a protective order. Plaintiff did not claim that the time proposed by defendant was inconvenient. Instead, plaintiff did nothing.

Subsequently, defendant moved for sanctions against plaintiff based on Lutz's failure to appear at a duly noticed deposition [76]. Defendant stated that he called plaintiff's counsel multiple times after the failed deposition and that plaintiff's counsel did not return his calls.

The court may sanction a party and/or the party's counsel if a party's officer, director, or managing agent fails, after being served with proper notice, to appear for that person's deposition. FED. R. CIV. P. 37(d)(1)(A)(I). Available sanctions include entering adverse inferences, striking pleadings in whole or in part, dismissing the action in whole or in part, and other means of securing compliance. Additionally, the court "must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(d)(3).

Sanctions are clearly appropriate. According to plaintiff's own filings, Mark Lutz is the managing member of AF Holdings. (*See* Lutz Aff., ECF No. 20-2).

25

Therefore, he is certainly considered an officer or managing agent. Because plaintiff's managing agent failed to appear at a properly noticed deposition, the court must award defendant's reasonable expenses associated with the failed deposition unless plaintiff's failure was substantially justified or other circumstances make an award of expenses unjust. FED. R. CIV. P. 37(a)(5)(A)(i-iii).

Plaintiff's response is incomprehensible; it completely fails to justify Lutz's non-attendance. Plaintiff appears to argue that plaintiff does not have the obligation to respond to any discovery requests because defendant never filed an answer to the complaint. (*See* Resp. 1-3, ECF No. 80) ("The defendant's refusal to submit an Answer on time clearly prevented initial disclosures. Nevertheless, the defendant was granted discovery."). Defendant had a very good reason to not file an answer; plaintiff dismissed its claims against him. (*See* Notice Voluntary Dismissal, ECF No. 14). Next, plaintiff claims that the deposition was improper because "it seeks information that are [sic] not related to this action but rather related to actions in other jurisdictions." (Resp. 3, ECF No. 80). That may be true, but the fact that a deposition might go outside the bounds of permissible discovery is not a license to skip the deposition.

Plaintiff also claims that Lutz "has every reason not to appear for a deposition" because the deposition was meant only to "ridicule" him. (*Id.*). Plaintiff believed the

deposition and other discovery was sought only "for the purpose of providing a good laugh" for websites that monitor "copyright troll" litigation.  (Pl.'s Resp. Def.'s Mot. Sanctions 4-5, ECF No. 80) ("[A]ny new deposition of Mr. Lutz or any interrogatories or any production responses will be sought solely for the purpose of providing a good laugh for [several websites].").

These arguments in no way justify Lutz's failure to attend the deposition.  A common sticking point for both parties in this case is that *this case* is a separate case from *other cases* where AF Holdings is also engaged in sanction-related litigation. This means that facts submitted in briefs in other litigation are not necessarily established in this case and that the defendant in this case has the right to pursue discovery to establish whatever predicate facts are necessary to grant defendant relief. Lutz failed to appear at a properly noticed deposition, and plaintiff and its counsel should be sanctioned for this failure.

The court has "wide latitude" to determine the appropriate sanction when faced with a party's failure to attend a duly noticed deposition.  *See Dean v. Ellington*, 115 F.R.D. 576, 578 (N.D. Ga. 1987); *see also Reed v. Fulton Cnty. Gov't*, 170 F. App'x 674, 675-76 (11th Cir. 2006).  After consideration, the court finds that defendant is entitled to recoup his attorney's fees from both plaintiff and plaintiff's counsel. Defendant's counsel stated that he spent 8.6 hours preparing for the Lutz deposition

and that his rate is $200 per hour.  He also incurred $108.70 in costs.  Defendant's requested sanction is reasonable, and the court will add it to the sanction imposed under the court's inherent power.

## IX. Why Additional Discovery and Sanctions Are Not Appropriate

As the preceding discussion makes clear, there is something clearly foul about plaintiff's business model and its conduct in federal and state courts across the United States.  Nonetheless, the court will not authorize additional discovery or sanctions proceedings against plaintiff.

The court may extend the discovery period for "good cause."  FED. R. CIV. P. 6(b)(1)(A).  To establish good cause, the party seeking the extension must establish that the schedule could not be met despite the party's diligence.  *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the [good cause] inquiry should end.").  Motions requesting extensions of time for discovery *must* be made prior to the expiration of the existing discovery period.  *See* LR 26.2B, NDGa.

The court originally authorized a post-judgment discovery period of sixty days ending in September 2013.  Defendant requested a three-day extension to complete discovery.  (*See* Order 3, ECF No. 50).  The court granted defendant's request and

extended the discovery period until September 5, 2013.  (*Id.*).  The September 5 deadline came and went, and defendant did not file another motion to extend the discovery period.[6]

The additional practical consideration is that the court sees no reason to pursue further discovery.  Defendant has essentially received what he has requested.  The court found that the "Popular Demand" copyright bears the forged signature of Alan Cooper, that plaintiff committed fraud on the court, and that plaintiff should be sanctioned for its conduct in this proceeding.  The only remaining relief that plaintiff could possibly request would be to have the sanctions against AF Holdings extended to certain third-party principals.  Yet the pursuit of this claim would be futile.  Even assuming that these non-parties committed sanctionable conduct, the court finds no evidence tying them to this proceeding or to Georgia.  Defendant is not entitled to turn post-judgment sanctions proceedings into a fraud or Racketeer Influenced and Corrupt Organization Act counterclaim against plaintiff more than two years after the dismissal of plaintiff's complaint.

---

[6] Defendant devoted one line of his motion for sanctions related to Mark Lutz's failure to attend his deposition to a request for an order "granting further discovery in order to obtain the deposition of Mr. Lutz until it is obtained." (Mot. Sanctions 1, ECF No. 76).  The court declines to construe this fragment of a thought as a motion for an extension of time and, even if the court viewed this solitary line as a properly made motion, the court would deny the request because it fails to establish good cause for an additional extension.

Finally, the court has no confidence in defendant's counsel.  Based on his filings and performance during the show cause hearing, the court believes that defendant's counsel lacks the requisite capability to untangle a network of shell corporations or perform discovery on a national scale in a remotely efficient manner. The court seriously considered replacing defendant's counsel to help it determine whether sanctionable activity occurred in this case and regrets its decision not to do so.  That defendant was ultimately able to secure *any* sanctions against plaintiff is in spite of, not due to, counsel's involvement in the case.

Defendant's counsel freely admits that his tactics in this litigation have been less than efficient and that this case has been "a learning experience."  But the court hasn't learned much about the scope or scale of the misrepresentation and fraud perpetuated by plaintiff, though it is certain that defendant isn't the proper instructor. Further discovery in this case is neither necessary nor advisable.

## X. Other Bases For Sanctions

The court's show cause order included numerous other potential bases for sanctions.  After review, the court finds that the other matters raised in the court's show cause order do not constitute sanctionable conduct.

## XI. Conclusion

The court finds that plaintiff should be sanctioned for submitting a fraudulent assignment agreement to the court and engaging in misconduct during discovery to obscure the exact parameters of its scheme. The court also finds that plaintiff should be sanctioned because its managing member failed to attend a properly noticed deposition. Therefore, the court hereby **SANCTIONS** plaintiff in the amount of $9,828.70, payable to defendant. Plaintiff's counsel Jacques Nazaire is jointly and severally liable for $1,828.70 of the imposed sanction.

**IT IS SO ORDERED**, this 8th day of July, 2015.

s/*William C. O'Kelley*
William C. O'Kelley
Senior United States District Judge